United States District Court,
Western District of Washington

Lance P. McDermott
     Plaintiff, *Pro Se*,

vs.

U.S. Postal Service (USPS),
Postmaster General, Megan Brennan, *Et Al*;
    and
Greater Seattle Area Local (GSAL),
American Postal Workers Union
(APWU), AFL-CIO, President, Myrna
Umali; *Et Al*, Salaried Union Officials.
    and

    Defendants.

Case No. **16 CV - 00377**

Complaint of Constitutional, Statutory, and State Law violations.

Noted for Consideration on    2015

_____ FILED    _____ ENTERED
_____ LODGED    _____ RECEIVED

MAR 1 4 2016  DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY    DEPUTY

This is a hybrid action against the Agency and the Union brought under Title VII of the Civil Rights Act (CRA) of 1964, 42 U.S.C. § 2000e-16 and the CRA of 1991, Title I, Section 1977A(a)(1) that provides the right of review – "In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e-5 and 2000e-16) against a respondent who engaged in unlawful intentional discrimination prohibited under section 703, 704, or 717 of the Act [42 U.S.C.A. §§ 2000e-2, 2000e-3, or 2000e-16]."

The Court has original jurisdiction by virtue of 28 U.S.C. § 1331 (the General Federal Question Statute), 28 U.S. Code § 1339 - Postal matters, Declaratory Judgment 28 U.S.C. § 2201 - for the injunctive relief, 28 U.S. Code § 1357 - Injuries under Federal laws, 28 U.S.C. 1361 mandamus statute, and 28 U.S. Code

§ 1343(1) - deprivation of any right or privilege of a citizen of the United States,

by any act done in furtherance of any conspiracy mentioned in <u>section 1985 of</u>

<u>Title 42</u>(1) "Preventing officer from performing duties."

With original jurisdiction of the violations for the Title VII of the Civil Rights I

ask the Court to grant its supplemental jurisdiction, 28 U.S. Code § 1367, over

Constitutional, 28 U.S.C. § 2679(b)(2)(A), Statutory, 28 U.S.C. § 2679(b)(2)(B)

and State Law violation claims.

I also ask for the Court's supplemental jurisdiction over hybrid claims brought

against Union Officials (28 U.S.C. § 2671, Employee of the Government) of the

Greater Seattle Area Local (GSAL) American Postal Workers Union (APWU).

For self-enrichment of Union Officer from the Union Trust Funds.  39 U.S.C.

§ 1208(b) allows - "Any labor organization may sue or be sued as an entity and in

behalf of the employees whom it represents in the courts of the United States."

I seek the Court's *De Nova* review and Decision of:

1. Title VII Age Discrimination – Violation of the Age Discrimination in

Employment Act (ADEA), 29 U.S.C. §§ 631, 633a©, *Bowman v. Department of*

*Agriculture*, <u>113 M.S.P.R. 214113 M.S.P.R. 214</u> (2010).  Made under the ADEA

and Civil Rights Act, *Davis v. Department of the Interior*, <u>14 M.S.P.R. 527114</u>

M.S.P.R. 527 (2010).   Filed within the ADEA three year limit for a willful

violations, 29 U.S.C. § 255.

Regional Code of Washington (RCW) 49.60.180(2), - "To discharge or bar any

person from employment because of age or physical disability."  RCW 49.44.090,

-"Unfair practices in employment because of age of employee."

(1)  I am 56 years of age (born 1959).

(2)  I was placed on unpaid Enforced Leave and younger employees Scott

Myhrwell and Manny Castillo (less qualified) where brought in to do my work. (A

"Sufficiently younger person," *Tomasso v. Boeing Co.*, 445 F.3d 702, 706n. 4

(3dCir.2006).)

(3)  The Agency tried to deprive me of my [old age] benefits.

18 April 2013 (MSPB SF-0752-13--0633-B-1 exhibit 106), Email MM Norris

to Denver (?) Henderson, - "…No where in his files anywhere has such a

disclosure been made before…"  19 April 2013, Email SMO Dow to MMO

Marzec, - "I did not realize that if an employee lies on his application and that

once it was discovered that employee would be removed from the postal service

and no benefits would be paid."  MMO Marzec, - "What are you talking about?

What lie?  Is there proof?"  SMO Dow, - "He did not state that he was colored

blind or could not distinguish colors when he applied for work with the Postal Service."

SMO Dow created and gave me the first "notice" (after my stress leave and Federal Law Enforcement action), 8 April 2013 (MSPB -0633-I-1 agency exhibit 6) being place on enforced leave because of my handicap.

MMO Marzec (created?) gave me the second "notice" of Enforced Leave, 8 May 2013 (MSPB agency exhibit 7).

30 May 2013 (MSPB agency exhibit 8), That lead to me being placed on "Enforced Leave" by Maintenance Manager (MM) James Norris knowing issued without an Agency policy or process for doing so.

(4)  The 9-months of unpaid Enforced Leave deprived me of:

(a) 9-months of pay towards my [old age] retirement.

(b)  I will have to work an extra 9-months before retiring.

©  I lost 960-hours of saved leave that I could have sold back on retirement.

(d) I will have to work another 5 years (without taking leave) to earn 960-hours back before retiring.

ADEA 29 U.S.C. § 631(a) indirect evidence – (1) born in 1959, (2) I met my employer's "legitimate performance expectations" for 17 years, (3) I suffered adverse action – unpaid Enforced Leave, (4) younger employees were given my work, and (5) no other over-forty years of age employee has suffered enforced leave. *McDonnell Douglas Corp. v. Green*, 441 U.S. 792, 802, 99 S.Ct. 2400, 60 L.Ed.2d 646 (1973). *Ueon C. BAK, v. USPS,* No. 93-56249, (9th Cir. 7 April 1995). *Simonton v. Runyon,* 232 F.3d 33 (2d Cir. 2000). In *Gomez-Perez v. Potter,* (No. 06-1321), 553 U.S. 474 (2008), 29 U. S. C. §633a(a).

2. Title VII Disability discrimination – violations of the Rehabilitation Act, 29 U.S.C. § 791, with standard of review under Title I Americans with Disabilities Act (ADA) (42 U.S.C. 12101 et seq.), 42 U.S.C. § 12132. By asking for medical documents for my perceived (42 U.S.C. 12102(1)©) disability – color blindness, violated, 42 U.S.C. 12112(b), - "Discrimination against a qualified individual on the basis of disability, includes … (d)(1)…shall include medical examinations and inquires…. (4)(A) A covered entity shall not require a medical examination…"

42 U.S. Code § 12112 ©(4)(A) Prohibited examinations and inquiries – "A covered entity shall not require a medical examination and shall not make

inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability…"

Washington State RCW 49.60.180(2), - "…physical disability." RCW 70.84.080, Employment of handicapped persons – "unless it is shown that the particular disability prevents the performance of the work involved."

42 U.S.C. § 2000e-3(a), - "An employer makes an adverse employment decision "solely" because of an employee's disability [color blindness]… has no reason left to rely on to justify its decision…" - *Verkade v. USPS,* 378 Fed.Appx. 567, 578 (6th Cir. 2010).

42 U.S.C. § 12112(a) claim: I had a handicap – genetic birth defect of partial color blindness, that my employer perceived as a disability; (2) I was qualified to perform the essential functions of my job without accommodation by an Agency Doctor (OPF, PS Form 2484, Medical Examination, 24 October 1996); (3) my employer took an adverse employment action – unpaid enforced leave, because of the alleged disability. See *Colon-Fontanez v. Municipality of San Juan,* 660 F.3d 17, 32 (1st Cir. 2011).

EEO #1E-985-0005-13 Investigative Affidavit of Supervisor of Maintenance Operations (SMO) Ken Dow (EEO Investigative Report page 0770 Affidavit B, page 43), Question 46, - "Mr. McDermott alleges you gave him a letter dated April

8, 2013, that warned that him could be placed in an, 'enforced leave status' and demanded that he participate in the 'District Reasonable Accommodation Committee (DRAC).  Did you give him such a letter?  If so, explain the reasons for warning him…"  Answer #46, - "He was given the letter because his is color blind and for his safety and the post office."

I was considered disabled under 29 C.F.R. § 1630.2(g).

I was "qualified" to perform the "essential functions of the job in question with or without reasonable accommodation." 29 C.F.R. § 1630.2(m).

Section 501 of the Rehabilitation Act standard proof:  (1) When I was prevented from working because of my handicap I became disabled within the meaning of the statute; (2) I otherwise qualified for the position; (3) I was adversely treated because of my disability; and (4) I worked for the federal government." *Boyd v. U.S. Postal Service,* 752 F.2d 410, 413 (9th Cir.1985); see also, *Johnson v. U.S. Postal Service*, 861 F.2d 1475, 1478 (10th Cir. 1988). (See Statement of Facts.)

I seek Make-Whole remedies and damages.



3. Title VII Hostile Work Environment – harassment and retaliation in response to protected activity. See *Ray v. Henderson,* 217 F.3d 1234, 1240 (9th Cir. 2000)

("A postal employee may bring suit under § 2000e-3(a)16 pursuant to 42 U.S.C. § 2000e-16. See *Ayon v. Sampson*, 547 F.2d 446, 450 (9th Cir.1976).

Hostile Work Environment - The hostile work environment claim that has been recognized under the ADA is "modeled after the similar claim under Title VII [of the Civil Rights Act of 1964]." *Flowers v. Southern Regional Physician Serv.,* 247 F.3d 229, 233 (5th Cir. 2001) at 235. Allegations of HWE reprisal "based upon exercising one's right to complain" are protected under 5 U.S.C. § 2302(b)(9), while those that are "based on disclosure of information," (5 C.F.R. § 1201.56(c)(2), *disclosure*) are protected under 5 U.S.C. § 2302(b)(8). *Serrao v. Merit Systems Protection Board*, 95 F.3d 1569, 1574-75 (Fed. Cir. 1996); *Luecht v. Department of Navy*, 87 M.S.P.R. 297, ¶ 9 (2000). Noting that claims for improper disability-related inquiries or retaliation may be brought under 42 U.S.C. 12112(b)(4), *Cossette v. Minnesota Power & Light,* 188 F.3d 964, 969-70 (8thCir.1999).

The Ninth Circuit recognizes federal employee claims of retaliation in response to making a claim of discrimination. See *Ray v. Henderson,* 217 F.3d 1234, 1240 (9th Cir. 2000) ("A postal employee may bring suit under § 2000e-3(a)16 pursuant to 42 U.S.C. § 2000e-16. See *Ayon v. Sampson*, 547 F.2d 446, 450 (9th Cir.1976) ['We conclude that in enacting § 2000e-16, Congress intended to, and did

incorporate into that section the provisions of the Civil Rights Act prohibiting

harassment or retaliation for the exercise of those remedial rights established by

the Act.'] The term "discriminate" the meaning used in Title VII cases for

harassment: a materially adverse employment action. Materially adverse: "which

in this context means it well might have dissuaded a reasonable worker from

making or supporting a charge of discrimination." *Rochon v. Gonzales,* 438 F.3d

1211, 1219 (D.C. Cir. 2006).

A hostile work environment occurs "[w]hen the workplace is permeated with

discriminatory intimidation, ridicule, and insult that is sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an abusive

working environment." *Bowman v. Shawnee State University*, 220 F.3d 456, 463

(6th Cir. 2000). )

I participated in a protected activity – HWE Investigation December 2012

(MSPB 27). The Management knew I stated during the HWE Initial Management

Inquiry Process (IMIP) investigation's Interview, 3 December 2012 (MSPB

exhibit 27), - "...the supervisor know I am color blind."

Email of HWE IMIP reviewing official LR Dan Foster, 3 February 2013 (MSPB

exhibit 96), - "I read the IMIP file...Regarding his claim to be color blind. I

suggest that you instruct him to perform the task and that he would have to bring

in medical evidence to show he has the defect…"

Email OHS Nurse Daniels to, MM Norris, LR Foster, 7 February 2013 (MSPB

exhibit 96), - "Jim, A few thoughts about Mr. McDermott and color blindness: …

Has his work <u>performance been acceptable?  - Minimally but yes performance has</u>

<u>not been a issue</u>… We may be able to keep him in his job but he would have to be

excluded from doing any electrical work…"

After complaining about a HWE, I suffered numerous discrete acts and

adverse actions.  There is a causal connection between the protected activity and

the adverse employment actions. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d

166, 173 (2d Cir. 2005).

HWE reprisal "based upon exercising one's right to complain" are protected

under <u>5 U.S.C. § 2302</u>(b)(9), while those that are "based on disclosure of

information," (<u>5 C.F.R. § 1201.56</u>(c)(2), *disclosure*) are protected under <u>5 U.S.C.</u>

<u>§ 2302</u>(b)(8).

4.    Whistleblower Protection Act of 1989 ("WPA"), 5 U.S.C. § 1201 and

Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002, (NoFEAR), 29 U.S.C. 206(d), 631, 633a, 791, 42 U.S.C. 2000e-16.

12.   Whistleblower reprisal (Handbook ELM 666.38) complaints may be made during the appeal process for adverse actions (ELM 652.23) defined by ELM 669k.   (S. Rep. No. 100–413, at 6–16 (1988) and Federal Employee Protection of Disclosures Act, S. 274, 16 November 2007)

Federal Register/Vol. 72, No. 14/Tuesday, January 23, 2007, Postal Service, No Fear Act Notice, - "The Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002 (No FEAR Act) requires each Federal agency… Retaliation against an employee or applicant for making whistleblower protected disclosures is prohibited by ELM 666.18…"

That an employee could reasonably conclude that the actions of the government evidence wrongdoing as defined by the WPA.  See *Downing v. Department of Labor*, 98 M.S.P.R. 64, 69-70 (2004).  With an Individual Right of Action appeal pursuant to the Whistleblower Protection Act. 5 U.S.C. § 1221(a).   5 U.S.C. § 2302(a)(2)(A); 5 C.F.R. § 1209.4(a).  If an employee's disclosure adds "additional information necessary to recognize" the nature or seriousness of a publicly known problem, and this is information the public would not have otherwise had, then the disclosure is protected under the WPA. *Wadhwa v. Department of Veterans*

*Affairs*, 110 M.S.P.R. 615, ¶ 9 (2009).  See (for the Postmaster General & Judicial

Officer), NEEOISO Manager William Caldwell's "response," 25 April 2013

(exhibit N2, - "EEOC regulations do not provide for the consideration of criminal

matters…"

    a.  Allegations of violations of 5 U.S.C. § 2302(b)(2) (protected activity and

disclosures) and related provisions of law can sometimes constitute

whistleblowing.  See *McDonnell v. Department of Agriculture,* 108 M.S.P.R. ¶¶ 9-

13 (2008); see also *Baldwin v. Department of Veterans Affairs,* 113 M.S.P.R. 469

(2010).   Given that Postal Service employees may raise whistleblower claims in

conjunction with an otherwise appealable actions. See *Mack v. U.S.P.S.,* 48

M.S.P.R. 617, 620 (1991).  Where the Board has found that Postal Employees may

raise a whistleblower defense pursuant to section 7701(c)(2)(B) because "[b]y the

plain terms of § 7701 all employees who have the right to appeal must have the

same rights."10 M.S.P.R. 45, 48 (1982).  *Butler v. U.S. Postal Service*, 10

M.S.P.R. 45, 48 (1982).

    Agency Handbook Employee and Labor Relations Manual (ELM) 665.23,

666.12.   5 U.S.C. § 2302(b)(8), which evidence a "(i) violation of any law, rule, or

regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of

authority or a substantial and specific danger to public health and safety." 5 U.S.C. § 2302 (b)(8)(A); 5 U.S.C. § 1213(a), and 5 U.S.C. §§ 1221(a).

     b.  The Whistleblower Section 11(c) of the *Occupational Safety and Health Act of 1970* (OSH Act) prohibits retaliation against employees for filing a complaint with OSHA or raising a health and safety concern with their employers. I have filed OHEA complaints and had raised safety concerns that the Kent Wa. Priority Mail Annex (PMA) facility does not had the Public Buildings Act and Agency Regulations required HVAC system for the health and safety of all employees (and myself) suffering insects bites and other injuries from the "unbearable" hot and cold working conditions.

    My individual and class claims that the closure and destruction of the SeaTac Post Office and Air Mail Center Facility (owned Public Property) was unlawful (fraud) because it was not excess to the needs of the Postal Service (or Public) since the Agency is leasing other facilities at a greater cost (waste) to the Public (Taxpayer suit) paying the higher costs (abuse) of leasing (the PMA a facility without HVAC) and the added equity of the Public Property (access) lost creating a – Public Nuisance (mis-management).

With regard to premises liability specifically, Washington has adopted the Restatement (Second) of Torts sections 343 and 343A (1965). Section 343 provides liability:

(1) "Exercise of reasonable care to discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and…"

The number one reported on-the-job injury in the Kent PMA is insect bites. June 2013 Safety and Health Inspection Report #8"Mail Processing:  Bug Zappers are not plugged in, mosquitos are biting."   "The defendant had actual or constructive notice of the unsafe and unhealthy conditions." - *Gonzalez v. Wal-Mart Stores, Inc.,* 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004) (citing *Taylor v. United States,* 121 F.3d 86, 89-90 (2d Cir. 1997)). And, the Employer knows that West Nile and Zika viruses are also threatening employee's health and safety.

(2) "should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and;" (Employer Knowledge – Grievance MNT 49-10, 21 July 2010 (exhibit Q1), - "… forcing employees to work in unbearable working conditions…" – Steward Brenda Burke.

(3) "Fails to exercise reasonable care to protect them against the danger." In fact a HVAC was ordered in response to the grievance, 11/11/2011 and cancelled 04/09/2012 (USPS Facilities Management System Status Report).

Washington State WISHA regulations create a duty toward employees performing work on the property. *Baerlein v. State*, 92 Wash. 2d 229, 232, 595 P.2d 930,932 (1979).   (1) My protected activity and disclosures were protected under the WPA and (2) those disclosures were a contributing factor to the Enforced Leave. See *Schaeffer v. Dep't of Navy,* 86 M.S.P.R. 606, 616 (2000).

I have reported fraud, waste, abuse, mismanagement, loss of postal property, criminal acts, unsafe and unhealthy working conditions, suffering numerous discrete acts and adverse actions.

5.  Violation of the Hatch Act's prohibition on federal employees influencing elections.   *OSC v. Lewis* (postal employee), 2014 MSPB 33, Docket No. CB-1216-13-0063-T-1, (15 May 2014). *Id.,* ¶ 2; *see* 39 U.S.C. § 410(b)(1); 5 U.S.C. § 7323(a)(3); *Special Counsel v. Simmons*, 90 M.S.P.R. 83, ¶ 12 (2001).   5 U.S. Code § 7323 (a)(1), - "use his official authority or influence for the purpose of interfering with or affecting the result of an election;…"

Hatch Act Violations (5 U.S.C. 7321-7326), I ask for the Court's de nova review (exhibit O).

(1) Have Agency Officials used their official authority and influence to influence the results of elections?

(2)  Have Agency Officials knowingly solicited "political activity" from individuals "with business before their employing office?"

(3)  Have Agency Officials engaged in political activity while on duty?

(4)  Does $300 million in discounts given to political parties and candidates for political their "message" mailings violate the Hatch Act?  (See USPS SEC 2013 Form 10-K, $263 million in political mail revenue.)

USPS Sales Newsletter, Revin' You Up, November 2014 (exhibit O), "Political Mail payoff," – "…Cutburth made the six-hour trip to southern Oregon to lay out his strategy to the state leader… and showed the GOP leader how they could sue the mail to grow their base and increase incremental funding… he referred local candidates to the Field Sales Representatives (FSRs).  The FSR's in the office responded by sending the endorsement letter to key candidates… The strong push by the GOP captured the attention of the Democratic candidates who also asked Cutburth how they could succeed with direct mail…"  (See USPS SEC 2013 Form 10-K, $263 million in political mail revenue.)

AP News Article, 19 September 2010 (exhibit O), - "… Not only is the Franking Group the dominate direct-mail vendor for taxpayer financed mailings directed by Republicans, it easily outpaces leading Democratic Firms …"

6.   The Agency was willful (3-year limit) violated the Family Medical Leave

Act ("FMLA" or "Act"), 29 U.S.C. § 2601 et seq.  29 U.S.C. § 2617, authorizes

civil actions for violations of the FMLA.  29 CFR 825.220 - Protection for

employees who request leave or otherwise assert FMLA rights and § 825.220

Protection for employees who request leave or otherwise assert FMLA rights.

Pursuant to § 825.400(a)(1) I did file a FMLA complaint with the a complaint with

the U.S. Department of Labor (DOL), Wage and Hour Division (WHD) and

receive a right to file a private lawsuit pursuant to section 107 of FMLA, 15 April

2013 (exhibit A).

Family Medical Leave Act (FMLA) - I have exhausted my remedies with the DOL

WHD, 15 April 2013, and was issued a right to "bring a private action in civil

court."  (exhibit A)

29 U.S. Code § 2615(a)(1), - "Exercise of rights.  It shall be unlawful for any

employer to interfere with, restrain, or deny the exercise of or the attempt to

exercise, any right provided under this subchapter." Section 107 imposes liability

on an employer who "violates section 2615" 29 U.S.C. § 2617(a)(1), (a)(2).

13 June 2012 (Statement of Fact), I was granted FMLA #110000387180, for a

bad back condition.  I had to get that protection because I was the only MPE on

day-shift (out of five positions) since MPE Nolan Parrish's retirement in

November 2011.  My Supervisor SMO Ken Dow was saving the heavy work for me to do aggravating my bad back and then denying me leave because of "staffing."  When I did use my FMLA leave SMO Dow would dispose of one or more of the maintenance shop tools or equipment I used to do my job and causing me more stress.  (29 CFR § 825.208(a) and § 825.208(b)(1) FMLA covered condition.)

(FMLA), 29 U.S. Code § 2612(a)(1)(D), *Doe v. U.S.P.S.,* 317 F. 3d 339, 7 February 2003, - "...pursuant to the Family and Medical Leave Act alleges that one of those officials disclosed his HIV status to his co-workers in violation of both the Privacy Act and the Rehabilitation Act."

MMO Marzec, 6 February 2013 (MSPB -0633 agency exhibit 2), - "Recently you have brought to the attention of Management on a couple occasions [HWE investigation] that you have two physical impairments.  You claim to have an impairment that has to do with your back [FMLA] and another concerning your vision.  In order to determine whether these impairments **pose a threat**..." (See 29 CFR § 825.305, certification of serious health condition and § 825.310, fitness for duty exam.) Asking for medical documents for my FMLA condition violated, 29 U.S.C. § 2614(a)(1).  "Generalized" fears about an individuals' disability cannot be used by the employer to discipline or disqualify an employee.

1    *Mantolete v. Bolger* [USPS], 767 F.2d 1416 (9thCir.1985), *Bentivegna v. DOL*,

2    694 F.2d 619 (9thCir.1982).

3
4    Washington RCW 49.78.300(1)(a) FMLA prohibited acts, - "Interfere with,

5    restrain, or deny the exercise of, or the attempt to exercise, any right."

6    FMLA leave Act recognizes two theories of civil liability (*Wysong v. Dow*

7
8    *Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007) (citing *Edgar v. JAC Prods., Inc.*,

9    443 F.3d 501, 507 (6th Cir. 2006)):  (1) the interference or entitlement theory

10   under 29 U.S.C. § 2615(a)(1); and (2) the retaliation or discrimination theory

11
12   under 29 U.S.C. § 2615(a)(2).  Causing Harm - *Edgar,* 443 F.3d at 507-08 (citing

13   *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S.Ct. 1155, 152

14   L.Ed.2d 167 (2002)).  FMLA 29 U.S. Code § 2617 (a)(1), liable to any eligible

15   employee affected—.  29 U.S. Code § 2617©(2), for a willful violation.

16
17   Notice of Enforced Leave, 8 May 13, MMO Marzec (MSPB A. ex.7).  MMO

18   Marzec's "notice" also includes the work restriction (light duty), - "You are

19   hereby prohibited from working on any wiring and performing any duties that

20
21   requires the ability to distinguish colored wiring."

22   MM Norris' "notice" allowing me to return to work, 6 March 2014, gives me a

23
24   work restriction for my FMLA condition, - "Rick [MMO Sudduth] presented you

25   with various colors of wires and you successfully identified all of them.  You

provided Rick with documentation I further instruct you that if you are required to do any electrical work which involves distinguishing shades of colors that you seek confirmation [tell someone about my FMLA handicap] of the colors from with either a coworker and/or supervisor.  Your safety record is commendable…"

I was given work restrictions after I reported to "Management" during a protected activity 5 U.S.C. 2303 HWE investigation (MSPB exhibit 27), HWE Interview, 3 December 2013, - "… Why I am being instructed to place color dots on things when he, the supervisor, knows I am color blind…")

Permanent "work restrictions," (adverse actions) that prevent me from being promoted (or perform the functions of my job) – permanently – because of my handicap.  See HRSSC Combined Field User guide, Feb 2012 (with exhibit Z, 6 March 2014, MM Norris) Bidder Review Process Steps, - "Review each Senior Bidder on the report to determine if one of the following applies: … (2) If the employee has a condition making it unlikely that he or she can currently perform the essential functions of the position… Selection may indicate the position cannot be awarded…"

Prima facie – (1) I was given and denied FMLA protected leave; - (2) I suffered discrete acts, adverse actions, other serious and material changes in working conditions; and - (3) there is a direct connection to my FMLA usage and the

adverse actions suffered.  *Chapman v. USPS*, 11-11028, D.C. Docket No. 5:10-cv-00635-CLS, (11thCir.2011).  "At least" a motivating factor.  DiCarlo v. Potter, 358 F.3d 408, 415 (6thCir.2004).

7.  For willful violations of the Fair Labor Standards Act (FLSA) 5 CFR part 551, 551.103(3) – "Suffered or permitted to work by an agency whether or not formally appointed."  Title 29, Part 785, § 785.11.  I filed a Complaint with the DOL WHD and received a right to file a private action, 6 January 2015 (exhibit B) Complaint pages 39-41.

I worked, 30 June 2013, 1 July 2013, 1 September 2013, and did not get paid for working (and also lost 3 days of leave).

Handbook ELM 434.12©(1), Hours actually worked, - "a time that management suffers or permits an employee to work."  Handbook PO-702, Tort Claims, 4223.2 Negligence, 422.3 Liability, and 423 Scope of Employment.  A Tort may be filed after exhaustion of administrative remedies, 28 U.S.C. §§ 1345, 1346, and § 2875(a).

Washington State RCW 49.46.090(1), - "Any employer who pays any employee less than wages to which such employee is entitled…"

I ask that the Agency pay me for the work that and pay me one day of pay for, 30 June 2013, 1 July 2013 and 1 September 2013. I also ask for the return of the 5.5 hours of time owed for, 30 May 2013, for the rest of the day-pay after being placed on enforced leave and the return of the 5.5 hours of leave taken. I also ask for a day of pay for, 9 October 2015, penalty overtime not paid.

8. 3 July 2013 (exhibit C) I filed a MSPB SF-0752-13-0633-I-1 Complaint "…I was placed on enforced leave because I complained in a Hostile Work Environment investigation…" (exhibit C, MSPB Form 185-2). Hearing was held, 21 November 2013. MSPB Judge Grace Carter issued an unfavorable Initial Decision, 28 April 2015 (exhibit D, untimely 15-months). I appealed and Appeal Remand Order was issued, 13 October 2015 (exhibit E). Re-hearing was held, 28 January 2015 and 12 February 2016 (exhibit F), MSPB AJ Grace Carter issued an Initial Decision on the remanded appeal for. Page 22, - "…you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. See 5 U.S.C. 794a…"

Generally, the Court of Appeals for the Federal Circuit has exclusive jurisdiction over appeals of MSPB determinations. See 5 U.S.C. § 7703(b)(1). However, "where certain discrimination claims are presented before the MSPB . . .

, the plaintiff may seek review in district court." *Kelliher v. Veneman*, 313 F.3d

1270, 1274 (11th Cir. 2002) (citing 5 U.S.C. § 7703(b)(2)) (footnote omitted).  "In

these 'mixed' cases where discrimination claims … the district court has

jurisdiction to review both the discrimination and nondiscrimination claims." Id.

(citation omitted).   The term "mixed case appeal" refers to a case which presents

an appealable non-discrimination claim coupled with a discrimination claim. Id.

(citing 29 C.F.R. 1614.302(a)(2) (1997)).


a.  Non-discrimination allegation – During the pre-hearing I ask that the

Agency appoint a non-attorney to represent management.  The Administrative

Dispute Resolution Act (ADRA) requiring each federal agency to adopt the

ADRA's rule to create policy federal Administrative Dispute Resolution.

Congress' intent is clear in the 1996 ADRA, Pub. Law 104-320, Section 9. Use of

Nonattorneys, - "(a) Representation of Parties.--Each agency, in developing a

policy on the use of alternative means of dispute resolution under this Act, shall

develop a policy with regard to the representation by persons other than attorneys

of parties in alternative dispute resolution proceedings…"

The MSPB August 21, 2013, Order, - "… the Board rules provide that a party

may designate whomever they desire "as long as that person is willing and

available to serve." 5 C.F.R. § 1201.31(b)… The Board has long held that "an agency may choose to be represented by an attorney or no-attorney, at its discretion."

Congress' public policy in the ARDA clearly states to develop administrative procedures that do not use attorneys.  "The first exception to the public duty doctrine, "Legislative intent" exception, applies if there a regulatory statute that evidences a clear legislative intent intended to protect a particular class of citizens. If a statute evidences an intent to protect a particular class of individuals, a member of the class may bring a tort action against a governmental entity for its violation of the statute." *Burnett v. Tacoma City Light,* 124 Wash. App. 550, 104 P.3d 677 (Div. 2 2004), *Halvorson v. Dahl, 89 Wash.* 2d 229, 595 P.2d 930 (1979).

The Agency's Attorney did not have a written delegation of authority from any higher level Agency Official required by law to represent the Agency.

(1)  The Attorney did not represent the Agency.

(2)  The Attorney represented the Agency's management employees.

(3)  I am an Agency employee and under the constitution's fair and equal principles I deserved the same level of representation.

(4)   The Attorney's conduct did not meet the standard of care of a reasonably prudent attorney. *In re Guardianship of Karan,* 110 Wash. App. 76, 38 P.3d 396 (2002).

As in *Grichenko v. USPS,* 524 F. Supp. 672 (E.D.N.Y. 1981) the MSPB determination would have been an affirmative one absent interference by the Agency's Attorney and entitles me to damages for that injury as well.[8]*See id.* at 260, 261 n. 16, 98 S. Ct. at 1050, 1051 n. 16; *Bishop v. Tice,* 622 F.2d 349, 357 n. 17 (8th Cir. 1980). "The threshold question is whether or not the attorney's services were intended to benefit the plaintiff [Agency]."

Whether or not a duty is owed is a question of law for the court to decide. *Trask v. Butler,* 123 Wash. 835, 841, 872 P.2d 1080, 1083 (1994). See Attorney Malpractice – Standard of Care, *In re Guardianship of Karan,* 110 Wash. App. 76, 38 P.3d 396 (2002).  Recoverable damages in an attorney malpractice case are measured by the amount of loss actually sustained. *Matson v. Weidenkopf,* 101 Wash. App. 472 3 P.3d 805 (2000).

Under RCW 4.84.185 the Court was equitable authority to award damages to the opposing party subjected to frivolous claims advanced without reasonable cause.  Rogerson Hiller Corp. v. Port of Port Angeles, 96 Wash. App. 918, 982 P.2d 131 (1999) (bad faith conduct in litigation.)

Because of the Agency Attorney's lack of candor (ABA Rule 3.3) the Board's

Decisions, contain numerous erroneous findings of material fact:

    b. Due Process - 28 April 2015 (exhibit D), Initial Decision, page 8, - "…

During the hearing conference, I found … because the agency had provided the

appellant <u>minimal due process</u> in effecting the enforced leave, and…"

Fifth Amendment's Due Process Clause, denial of written charges and oral

hearing before a higher authority.  The Postal Reorganization Act (PRA) 39

U.S.C. §§ 1001-1011, 1201-1209, provides that the Postal Service shall establish

procedures guaranteeing its employees "an opportunity for a fair hearing on

adverse actions."   39 U.S.C. § 1001(b);  *Bennett v. Barnett,* 210 F.3d 272, 275

(5th Cir. 2000) & § 1206(b) of the PRA Pipkins v. USPS, 951 F.2d 272, 275

(10thCir.1991).  Showing that "the employer has deviated inexplicably for one of

its standard business practices." - *Kouvchinov v. Parametric Tech. Corp.*, 537 F.3d

62, 69 (1stCir.2008).

MSPB Remand, -0633-I-1, 13 October 2015 (exhibit E), page 4, - "… The

agency did not provide a label for its charge, but described the basis of its action

as its inability to determine…"

    1.  The charges where never written clearly for me to respond.

2. I was not provided a 30-day notice to respond.

3. I was not provided an oral hearing before a higher official before being deprived of my property (sick and annual leave) and my livelihood.

The Enforced Leave violated the Eight Amendment's prohibition on cruel and unusual punishment, - Unpaid Enforced Leave for a serious medical condition that did not and does not now affect job performance.

(1) Duty to use reasonable care – Negligent Investigation, RCWA 26.44.050 (Employer's negligent investigation leading to an erroneous adverse employment action and (2) Employer's has promised (Collective Bargaining Agreement) that adverse actions would be preceded by reasonable investigation. *Gaglidari v. Denny's Restaurants,* 117 Wash. 2d 426, 815 P.2d 1362 (1991)(employer's failure to follow procedure in employee handbook created triable issue of wrongful [adverse action].)

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 1949 (2009), cited in Platt v. USPS and Smith, So.Dist. Indiana, Case 1:09-cv-00347-SEB-DML, Doc. 22, Filed 12/01/09 Page 2.

In *Bivens v. Six Unknown Fed. Narcotics Agents,* <u>403 U.S. 388</u>, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), the Supreme Court held that violation of the Fourth Amendment "by a federal agent acting under color of his authority gives rise to a

cause of action for damages consequent upon his unconstitutional conduct." *Id.* at

390, 91 S. Ct. at 2001. The Court framed the question in *Bivens* as "whether the

petitioner, if he can demonstrate an injury consequent upon the violation by

federal agents of his Fourth Amendment rights, is entitled to redress his injury

through a particular remedial mechanism normally available in the federal courts."

*Id.* at 398, 91 S. Ct. at 2005.

(2) Fifth Amendment's Due Process Clause, denial of written charges and

oral hearing before a higher authority.  The Postal Reorganization Act (PRA) 39

U.S.C. §§ 1001-1011, 1201-1209, provides that the Postal Service shall establish

procedures guaranteeing its employees "an opportunity for a fair hearing on

adverse actions, with representatives of their own choosing."  39 U.S.C. §

1001(b);  Bennett v. Barnett, 210 F.3d 272, 275 (5th Cir. 2000) & § 1206(b) of the

PRA Pipkins v. USPS, 951 F.2d 272, 275 (10thCir.1991).  Showing that "the

employer has deviated inexplicably for one of its standard business practices." -

Kouvchinov v. Parametric Tech. Corp., 537 F.3d 62, 69 (1stCir.2008).

In *Carey v. Piphus, supra,* the Supreme Court, in an action brought under 42

U.S.C. § 1983, considered the claims of public school students who had been

suspended without the due process guaranteed them by the Fourteenth

Amendment. The issue before the Court involved the measure of damages

available and the proof of damages required. The Court recognized the importance

of guaranteeing that procedural due process be afforded regardless of the

substantive merits of the claim. *Id.* at 261-62, 98 S. Ct. at 1051.[6] The Court

distinguished between injury caused by the suspensions themselves and the injury

caused by the failure to afford to the students those procedures to which they were

entitled. *Id.* at 260-62, 98 S. Ct. at 1050-51. In order to recover damages for

injuries caused by the suspensions, the plaintiffs were required to prove that had a

proper hearing been held, they would not have been suspended. Otherwise, a

recovery for those damages would constitute a windfall. *Id.* at 260, 98 S. Ct. at

1050. On the other hand, plaintiffs were entitled to recover actual damages,

including mental and emotional distress, caused by the denial of procedural due

process "even if their suspensions were justified." *Id.* at 262-64, 98 S. Ct. at 1051-

52, 1053. *See also, Bishop v. Tice,* 622 F.2d 349, 357 (8th Cir. 1980).

In *Grichenko v. USPS,* 524 F. Supp. 672 (E.D.N.Y. 1981), the Court did not

find any special factors "counselling hesitation" or suggesting the

inappropriateness of a *Bivens* type action. *Carlson v. Green,* 446 U.S. at 19, 100 S.

Ct. 1472

(3) Eight Amendment's prohibition on cruel and unusual punishment, -

Enforced Leave for a serious medical condition. The analysis of *Bivens*-type

actions was further refined *in Carlson v. Green*, <u>446 U.S. 14</u>, 100 S. Ct. 1468, 64

L. Ed. 2d 15 (1980). In *Carlson,* the plaintiff asserted the federal question

jurisdiction of the Court, claiming that the defendant had violated the Eighth

Amendment prohibition against cruel and unusual punishment.


    c.  Just Cause - 28 April 2015 (exhibit D, Initial Decision (ID), page 10, -

"…nexus exists between the conduct and the service efficiency and that the

penalty was reasonable. …I find no need to reopen the record in this appeal,

because the record is fully developed on the merits of the agency's **charge**…"

CHARGES:

    ID page 10 "…The reason cited by the agency to place the appellant on

enforced leave was that the agency was "unable to determine that you can work

safely due to your color blindness and repeated attempts to engage you have been

unsuccessful."

    ID Page 11, "…HCD, Norris Testimony.  He testified that after the

appellant's impairment was brought to his attention, he felt that the agency could

be exposing itself to liability and that he would "feel personally liable" if he

allowed the appellant to continue working… advised him in writing that an

adverse action could result should he fail to cooperate... that the appellant refused to cooperate with the agency's efforts to evaluate his colorblindness..."

Statements concerning the reasons for an adverse employment action are admissible under Rule 801 (d)(2)(D) only if the declarant was involved in the decision. *Aliotta v. Nat'l R.R. Passenger Corp.,* 315 F.3d 756 (7th Cir.2003)).

The Agency failed to articulate a legitimate cause of action reason for the Enforced Leave suspension for my "serious medical condition," *Davis v. Team Elec. Co.,* 520 F.3d 1080 (9th Cir.2008), terminations for "just cause" or a specified infraction constituted breaches of the employment contracts. See *Gaglidari v. Denny's Restaurants. Inc.,* 117 Wash.2d 426.815 P.2d 1362 (1991). See USPS Employee Labor-Relations Manual (ELM) Chapter 660, Conduct, 661.2 (dd), - "The prohibition against certain personnel practices (5 U.S.C. § 2302, Prohibited Personnel Practices (iii) an action under Title 5 chapter 75)."

I was not "involved" in the decision to place me on enforced leave because of my handicap. In fact I clearly stated that I did not want to participate in the "interactive process" to determine if I posed a Threat because of my handicap.

d. FMLA - 28 April 2015 (exhibit D), Initial Decision, page 8, - "In addition, the following affirmative defenses raised by the appellant were acknowledged: ...

The appellant alleges that the FMLA was violated when the agency continued to maintain him in enforced leave status after his physician cleared him to return to duty based on his FMLA approved impairment...”  Page 12, - “He submitted evidence that during the course of this appeal, he applied for FMLA certification for his colorblindness condition. *Id.,* Tab 8, Exhibit 40. The appellant asserts that because his FMLA certification does not indicate a need for him to be absent from work, the agency violated the FMLA by continuing him in enforced leave status.... Here, the record shows that as of May 30, 2013, the appellant’s colorblindness was not a FMLA protected serious medical condition...”  Page 13, - “...Thus, I find no evidence that the appellant’s placement in enforced leave status contravened [to prevent or obstruct] his FMLA rights. The charge is SUSTAINED.”

23 November 2012, EEO 1E-985-0004-12, Affidavit SMO Dow (Affidavit B, page 21), Question 3, - “During the Pre-Disciplinary Interview, did Complainant offer an explanation for his failure to meet the attendance requirements?...”  Answer 3, - “Yes he did said, I Have FMLA.”

20 February 2013, I applied for and received FMLA approval for a serious medical condition – color blindness #110000402232.  I was required to take (FMLA approved) leave, pay for a medical exam out of my own pocket and

provide medical documents to the Agency.  I also provided those medical documents to the HRSSC FMLA Office.

10 May 2013, I sent the HRSSC FMLA Office a copy of the 8 May 2013 "notice" of enforce leave "because of your serious medical condition – color blindness."  15 May 2013, HRSSC forwarded my FMLA Certification and WORK RESTRICTIONS to the OHNA Western (Seattle District) for review of the DRAC.

23 May 2013, I asked for and was approved (signed by SMO Dow) a FMLA 110000402232 day off to see my doctor. 23 May SMO Dow emailed the HRSSC FMLA Office and they told him that my FMLA was disapproved.  (30 May enforced leave start) 5 June 2013, SMO Dow took by my FNKA leave pay and changed it to Leave without pay. A grievance was filed and I got my pay back.

30 May 2013, When SMO Dow "placed" me the Enforced Leave he tore up my FMLA Leave request.  (Noting that I never signed a PS Form 3971 Request for Leave to authorize the taking of my save sick and annual leave (Theft).)

EEO 1E-985-0006-13 Investigative Affidavit (page 0767, Affidavit B, page 48) SMO Dow, 2 July 2013, Question 56, - "Mr. McDermott alleges on or about May 30, 2013, you tore up his FMLA leave request.  Did you tear up Mr. McDermott's FMLA leave request?  If so, why did you do so?  Answer 56, - "Yes,

I told him he needed to request annual or sick leave not FMLA he was being sent home on enforced leave which is not his FMLA case."

2 June 2013, I requested 160 of FMLA leave for 2 June – 3 July on the HRSSC 1-800 leave request. 4 June ERMS generated a PS Form 3971 for FMLA 110000402232 and SMO Dow sent a copy to me to sign and return. I did sign it and sent back the FMLA Leave Request back to SMO Dow.

1 July 2013, before SMO Dow called the Inspectors and had me tossed out, I gave SMO Dow a PS Form 3971 FMLA Leave Request for 30 – May – 29 June. SMO Dow disapproved it "Employee on Enforced Leave."

11 July 2013, EEO #1E-985-0006-13 Investigative Affidavit of MM Norris (EEO Investigative Report page 0838, Affidavit E, page 10), Question 27, - "Mr. McDermott contends he has been denied FMLA leave during his 'Enforced Leave' period. Has he been denied FMLA leave during his 'Enforced Leave period? If so, why?" Answer 27, - "I do not know."

DOL OWCP, Denial Decision #146093140 (stress), 10 December 2015 (exhibit P), reason for denial #1, - "You alleged that the medical restrictions were 'forced upon you.' As you provided the information to the agency about your back injury [FMLA] and being colorblind [FMLA], it is found that no medical restrictions were 'forced upon you'." #6, - "You alleged the manager was saving

heavy work for you to do by yourself. … Your claim of FMLA protection does not apply to work assignments only the use of Leave Without Pay. Therefore, this is found to not have occurred…"

e. Hostile Work Environment - MSPB Initial Decision, 28 April 2015 (exhibit U), page 8, "…because the agency had provided the appellant minimal due process… The appellant alleges that he was subjected to a hostile work environment and retaliated …" Page 9, - "… The appellant also alleges that he was retaliated against for protected disclosures made to the Judicial Officer … in contravention of the Whistleblowers' Protection Act." Page 21, - "Although it is questionable whether any of the 'statements' made by the appellant actually constitute a 'protected disclosure,' I find it unnecessary to make a determination since even if the appellant made a protected disclosure to the AJO and to the NEEOISO, there is no evidence that anyone in his management chain was aware…"

I have reported Criminal Acts – Agency "Judicial" Decision, 25 April 2013 (exhibit N2), - "The Office of the Postmaster General has asked me to respond to your misguided April 6, 2013, filing with the Postal Service's Judicial Officer. … You also appear to believe that you can mix 'criminal actions' … EEOC

regulations do not provide for the consideration of criminal matters…   Follow the remand, you chose to file a civil action…"

Public Policy Exception – The Court in *Hanson v. America Online, Inc.,* 96 P.3d 950 (Utah 2004), outlined categories of public policies eligible for consideration:  (1) refusing to commit an illegal or wrongful act. – I was forced to work with (criminal) Contractor under threat of discharge and given a Letter of Warning (discipline) for protesting a criminal act.  I suffered other adverse actions by the Agency Official(s) involved in the criminal acts and who created the HWE. Hanson, Justice Nehring, - "The Public Policy exception may be invoked only sparingly in circumstances where the cause of the employee's discharge implicates a public policy of such clarity and substance to impose on the employer a legal duty…  to be free from discharge for exercising statutory rights," – *Perks v. Firestone Tire & Rubber Co.,* 611 F.2d 1363 (3d Cir. 1979).  I did report criminal acts to the Agency, *Fox v. MCI* Communications, 931 P.2d 857 (Utah 1997), - "discharge resulting from informing authorities will support an action for wrongful discharge."  In some circumstances, warnings may be considered adverse actions. *Pantoja v. Am. NTN Bearing Mfg. Corp.,* 495 F.3d 840, 849 (7th Cir. 2007).

I have reported Criminal Acts of my "management chain" to the Agency's

Judicial Officer, 25 April 2013 (exhibits N, N1, N2 & MSPB exhibits 10, 11, 12),

- "The Office of the Postmaster General has asked me to respond to your

misguided April 6, 2013, filing with the Postal Service's Judicial Officer. … You

also appear to believe that you can mix 'criminal actions' … EEOC regulations do

not provide for the consideration of criminal matters…"

A Work Environment so hostile that the Agency's Postmaster General and

Judicial Officer, NEEOISO Manager, William Caldwell, and Postal Inspectors

know the possibly criminal (18 U.S.C. 207) contracts to retired Postal Employees

and did nothing (but harass or allowed harassment of me).   After filing my HWE

complaint, claiming the loss of postal property, I was subjected to more retaliation

and harassment, by the very same Federal Officials I was alleging to have

committed criminal acts against me.  I was again injured.


f.  Postal Inspectors - Inspection Service, Threat Summary Report, 16

February 2010, - "On February 10, 2011, Seattle Postal Inspector were notified …

during a meeting with Maintenance Employee Brenda BURKE, Shop Steward

Lance McDermott, Maintenance Supervisor Kenneth Dow… [page 4] According

to Dow, BURKE made a statement referring to a postal employee that was

1   murdered by another postal employee.  Burke also made a statement that she was

2   going home to get her…" 10 March 2011, Notice of 14-Day suspension, Brenda

3   Burke, - "… When Mr. Dow explained to you that the District Assessment Team

4   was unable to find productive work … and that you would be placed on

5   administrative leave, you began yelling.  You stated … 'I understand why people

6

7   go postal…"

8

9   EEO #1E-985-0006-13 Investigative Affidavit of Supervisor of Maintenance

10   Operations (SMO) Ken Dow (EEO Investigative Report page 0769 Affidavit B,

11   page 42), Question 45, - "Mr. McDermott alleges that you filed a false threat

12   report on him which led to the April 8, 2013 questioning by inspectors.  What role

13

14   if, any, did you have in initiating the inspector's inquiry …" Answer #45, - "See

15   attached report."

16

17   2 July 2013, EEO 1E-985-0006-13 Investigative Affidavit (page 0767, Affidavit

18   B, page 48) SMO Dow, Question 64, - "Mr. McDermott contends he has been

19   treated similarly to former employee Brenda Burke in that she was placed on leave

20   and then fired after you filed a false threat report against her.  … In addition,

21   explain if and why that report was made regarding her, and if and why she was

22

23   placed on leave and fired…"  Answer 64, - "… Brenda said she knew why postal

24

25

1 employees do what they do Lance McDermott told the inspection service about

2 Brenda saying she was going to get a gun?"

3       11 July 2013, EEO 1E-985-0006-13 Investigative Affidavit (page

4,5 0839, Affidavit E, page 11) MM Norris, Question 31, - "Mr. McDermott contends

6 he has been treated similarly to former employee Brenda Burke in that she was

7 placed on leave and then fired after a false threat report was filed..."   Answer 31, -

8,9 "... The threat report was made after the employee made a comment regarding a

10 USPS employee (Deceased by gunshot) and what happened to him... Ms. Burke's

11 case involved the lack of available work within her medical restrictions resulting

12,13 from an On the Job injury.  Ms. Burke was never fired..."

14       Email SMO Dow to MMO Marzec, 3 April 2013 (while I was on stress

15,16 leave 1-5 April) 7:48am, Subject:  "McDermott machete."  Email MMO Marzec to

17 Western Area Attorney Tita (Attorney involved in my EEOs and MSPB

18 complaints) & Threat Assessment Team Leader Dr. Picard (former EAP

19 Contractor unlawfully give a Civil Service position), - "McDermott is getting to be

20,21 a concern.  I told Dow to call 911 the next time he see him with a machete on the

22 property." (My car in the public parking lot was not on "postal" property.)

23       Email Dr. Picard to MMO Marzec & Attorney Tita, 3 April 2013,

24,25 4:22pm, - "Also, go ahead and fill out an incident report."  (Note MM Norris

contacted "legal regarding the individual we identified as color blind…" (email 2 April 2013 and noting that I was given the enforced leave "notice" 8 April.)

Emial MMO Marzec SMO Dow, 3 April 2013 5:07pm, - "Go to the District home page and fill out an incident report on what you observed with Lance and the machete…  I would do it, but is specifically states that the Immediate supervisor should do it [by the end of the day the incident happened]."

Email SMO Dow to Dr. Picard & Inspector Parkinson, 4 April 2013 7:36am, Subject:  "Threat Assessment Notification…"

Email Inspector Brooks to SMO Dow & Dr. Picard, 4 April 2013 8:27am - "… There was no threat communicated by McDermott with the machete, he was only seen carrying it from his car to the green belt along the property [Green River cutting blackberries back during lunch to pick later in the summer]…"

U.S. Postal Inspection Service, Seattle Division, Initial Report by Inspector Brooks, 1 July 2013, - "On July 1, 2013 … Inspector Brooks was notified that Kent Police Department was also notified by Supervisor Ken Dow, because Mr. Dow felt threatened by McDermott's presence and unusual behavior…"

Inspector Dahlin, Memorandum of Interview, Case # 1898225-WPV, 1 July 2013, -"… Mr. McDermott was interviewed regarding his illegal entry into the postal PMA facility and his suspicious behavior… Mr. McDermott was informed he was trespassing on federal property…"

16 July 2013, EEO #1E-985-0005-13 Investigative Affidavit of Inspector Brooks (EEO Investigative Report page 0873 Affidavit G, page 3), Answer 7, - "… No report was made, due to this issue not being associated to a threat…"

16 July 2013, EEO #1E-985-0005-13 Investigative Affidavit of Inspector Bonds (EEO Investigative Report page 0871 Affidavit G, page 3), Answer 7, - "… No report was made, due to this issue not being associated to a threat…"


g. Postal Property -

(1)  Priority Mail Annex (PMA) - 26 September 2012, EEO 1E-985-0004-12, Affidavit MMO Norris (Affidavit D, page 4), Issue #20, - "On (unidentified date(s)) your Supervisor disposed of Postal property and equipment you needed to perform your work.  On (unidentified date) due to a hazardous

condition, you suffered three insect bites this year." Answer, - "I have no knowledge of this complaint…"

Undated and unsigned, EEO 1E-985-0004-12, Affidavit SMO Dow (Affidavit B, page 5), Question 22, - "Since January 2012, did you remove the toaster, microwave, icebox, table, chairs and stools from the PMA? If you removed all or any of these items [postal property], please explain…" Answer 22, - ""I was told by my manager to remove all non-tool & parts related item …" Page 8, Question 40, - "… did you tell an employee to discard metal and wood from the Complainant's work area?..." Answer 40, - "All employees are told to put recycled materials in the recycle bins, it is not one employee job, Lance puts material in the recycle bin." Page 9, Question 47, - "… did you direct someone to place a chair the Complainant had been using in the dumpster? If so, please explain..." (Note: SMO Dow moved the icebox, microwave, toaster (purchased by Brenda Burke), and TV into his office and when he left/retired, they were all broken.)

Email SMO Dow, 24 October 2012 (MSPB 110), - "…He started to yell at me saying I have gotten rid of 50,000 dollars' worth of stuff…" Email SMO Dow to OIG Inspector Casey Snyder, 3 April 2013 (While I was on stress leave), copy of 7 November 2012 email SMO Dow to MMO Marzec, SUBECT: "McDermott

stealing postal property." Noting that Inspector Snyder investigated (took into

account before adverse action – VEOA) my military status – "Affiliation Service

Retiree."

14 May 2013, EEO #1E-985-0006-13 Investigative Affidavit of Supervisor of

Maintenance Operations (SMO) Ken Dow (EEO Investigative Report page 0739

Affidavit B, page 12), Question 18, - "Mr. McDermott contends that on January

13, 2013, he became aware that you disposed of more equipment he used

including:  Metal lathe…"  Answer 18, - "No, it is located at the main plant."

15 May 2013, EEO #1E-985-0006-13 Investigative Affidavit of MMO Marzec

(EEO Investigative Report page 0803 Affidavit D, page 4), Question 10, - "Mr.

McDermott contends that he became aware on January 13, 2013 that more of his

equipment had been disposed of by Ken Dow…"  Answer 10, - "This equipment is

the property of the U.S. Postal Service, was moved by to the Seattle P&DC under

the direction of Mr. Dow, as part of the housekeeping effort…"

24 May 2013, EEO #1E-985-0006-13 Investigative Affidavit of MMO Allen

(WHE Investigator) (EEO Investigative Report page 0789 Affidavit C, page 16),

Question 14, - "Mr. McDermott contends that he became aware on January 13,

2013 that more of his equipment had been disposed of by Ken Dow…"  Answer

14, - "I have no knowledge of what specific Postal equipment was removed from

the Seattle PMA facility.  What knowledge I do have is from overheard

conversations and Mr. McDermott ranting [protected activity – HWE

investigation] to me about equipment being removed.  I do not know who made

the decision to remove the equipment or why."


(2)  Air Mail Center (AMC) - My individual and class claims that the closure

and destruction of the SeaTac Post Office and Air Mail Center Facility (owned

Public Property) was unlawful because it was not excess to the needs of the Postal

Service (or Public) since the Agency is leasing other facilities at a greater cost to

the Public (Taxpayer suit) paying the higher costs of leasing (the PMA a facility

without HVAC) and the added equity of the Public Property (access) lost creating

a – Public Nuisance.

With regard to premises liability specifically, Washington has adopted the

Restatement (Second) of Torts sections 343 and 343A (1965). Section 343

provides liability;

(a) "Exercise of reasonable care to discover the condition, and should

realize that it involves an unreasonable risk of harm to such invitees, and;"

The number one reported on-the-job injury in the Kent PMA is insect bites.

June 2013 Safety and Health Inspection Report #8"Mail Processing:  Bug Zappers

are not plugged in, mosquitos are biting."   "The defendant had actual or

constructive notice of the unsafe and unhealthy conditions." - *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004) (citing *Taylor v. United States*, 121 F.3d 86, 89-90 (2d Cir. 1997)). And, the Employer knows that West Nile and Zika viruses are also threatening employee's health and safety.

(b) "should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and;" (Employer Knowledge – Grievance MNT 49-10, 21 July 2010, - "… forcing employees to work in unbearable working conditions…" – Steward Brenda Burke.

(c) "fails to exercise reasonable care to protect them against the danger." In fact a HVAC was ordered in response to the grievance, 11/11/2011 and cancelled 04/09/2012 (exhibit Q1).  Requiring a Court Order (exhibit Q1 & MSPB 44) to install.

Washington State WISHA regulations create a duty toward employees performing work on the property.  *Baerlein v. State*, 92 Wash. 2d 229, 232, 595 P.2d 930,932 (1979).

The Port of Seattle Commission, 26 August 2008, voted to terminate the land lease for the U.S. Postal Service's SeaTac Air Mail Center (AMC) and Post Office.  This was done with out any Public notice, opportunity to be heard, or

comments taken into account.  Changing a public paid for federal facility serving the public's needs into a "cell phone parking lot."

I wrote the Mayor of SeaTac, 4 May 2009.  I met with the City Manager Craig Ward and Mayor Ralph Shape showing them that the Port and the Postal Service had not had the required public meeting or produced the required Feasibility Study and Area Mail Processing Plan.

The Mayor wrote Seattle District Manager, Katherine Nash, and she lied to the Mayor, 9 May 2009, - "...As I suspected notice to city officials is mandatory only when the USPS discontinues a post office station or branch...  The Postal Service has lost the lease of the AMC..."

Mayor Shape's letter to me, 18 May 2009, - "... We cannot find anything to dispute her statements... The Port replied that the leases expires on December 31, 2030, but included a clause that allowed the Port to terminate the lease with one year notice if the site was needed for a capital project which was approved by the Commission.  According to the Port, the site is needed for hardstand for parking aircraft..."  According to the Port's Commission Agenda, 26 August 2008, the property was needed for a "cell phone lot" which is not a capital project.

The Postal Accountability and Enhancement Act (PAEA), Public Law 109-435, 120 Stat 3198, § 302 Network Plan, requires an Area Mail Processing Plan (AMP)

Notification Process, that includes notification to state and local community leaders of the start of the "process."  The Agency is also required to having a Public Meeting before any decision is made to close a Public Serving Post Office or Mail Processing Facility.

I have protested for myself and other employees (class) the unsafe and unhealthy working conditions:

(a) USPS Handbook AS-503, Standard Design Criteria, 4-2 HVAC, 4-2.15.3, - "Indoor Air Quality Standards These standards encompass control technologies that provide for the health and safety of building occupants…"

(b) USPS Handbook RE-5, Building and Site Security Requirements, Purpose, 1-1.1, - "The standards in this handbook are intended to ensure a safe and secure environment for Postal Service employees…"

© 39 U.S. Code § 409(f)(1) Each building constructed or altered by the Postal Service shall be constructed or altered, to the maximum extent feasible as determined by the Postal Service, in compliance with 1 of the nationally recognized model building codes and with other applicable nationally recognized codes.

"Workers' legitimate concerted activities," - *NLRB v. Washington Alum Co.*, 370 U.S. 9 (1962).  See St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993) -

"a crusade to terminate him." "… For the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."- *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). "A jury should decide," *Taylor v. Runyon [USPS],* 175 F.3d 861 (11th Cir. 1999).

Constitution Article IV, section 3, clause 2, vests in Congress the power to "dispose of" and make "all needful rules" regarding federal property. My individual and Class claims are arguably within the zone of interest protected by federal statute and the requirements of Article III remain: "the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants" with a "fairly traceable" causal connection between the claimed injury and the challenged conduct. – *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26 (1976) (Constitutional Law, WEST (1991) pages 75-77.) In *Nebbia v. New York*, 281 U.S. 502 (1934), the Court stated that the Court's function – "is to determine in each case whether circumstances vindicate the challenged regulation as a reasonable exertion of governmental regulation as a reasonable exertion of governmental authority or condemn it as arbitrary or discrimination."

The large SeaTac AMC facility had a Heating Ventilation Air Condition (HVAC) as required by the Public Buildings Act, title 4, and Agency Standard

Design Criteria for the health and safety of all employees.  The Kent PMA where I work does not have a HVAC system and employees work in 85+ degree heat and are constantly bite by insects in the summer since the Agency saw fit to lease a "temporary" facility between the Green River and a wetlands wildlife habitat.  The BOG approved a Logistics and Distribution Center to be built in 2008 to replace the "temporary" PMA.  Then the Agency said that it did not have the money.   The Union tried to get the Agency to move the PMA into the empty AMC facility to save money and improve the working condition of employees.  I attended the first Union/Management meeting concerning the AMC.  The Union asked for a copy of the Area Mail Processing Plan or the written decision that the AMC needed to be destroyed.  At the meeting was newly promoted Plant Manager Don Jacobus with a from Employee Assistance Program (EAP) contractor Dr. Picard who had been unlawfully hired and given a management job as the District Complement Coordinator in violation of the Civil Service Reform Act.  I.E. Dr. Picard went for helping stressed out employees as a contractor into a hit-man for management getting rid of employees via the unlawful Treat Assessment Team (TAT) and the District Reasonable Accommodation Committee (DRAC).

Under Washington law, a negligence claim requires a showing of "the existence of a duty, breach of that duty, resulting injury and proximate cause." *Charlton v.*

*Toys "R" Us—Delaware, Inc.,* 158 Wn. App. 906, 912 (2010). With regard to premises liability specifically, Washington has adopted the Restatement (Second) of Torts sections 343 and 343A (1965). Section 343 provides that:  A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he: (28 U.S.C. §§ 2674, 1346(b)(1))

   (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and;

   (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and;

   (c) fails to exercise reasonable care to protect them against the danger.

----No HVAC system in the Kent, PMA, causing insect bites – injuries to all employees with exposure to possibly fatal (West Nile) injures.

----No HVAC system in the Kent, PMA, causing insect bites – injuries.

*Brant v. Market Basket Stores, Inc.,* 72 Wn.2d 446 (1967).  "The defendant should have known of any dangerous condition." Id. at 446-47.  "Exercise of ordinary care, to have removed the danger." *Ingersoll v. DeBartolo, Inc.,* 123 Wn.2d 649, 652 (1994) (citing *Smith v. Minning's, Inc.,* 13 Wn.2d 573 (1942)).

(*Meling v. USPS, E.Dist. of Washington*, Case 2:10-cv-03017-RMP, Document 43, Filed 07/22/11, Judge Peterson.)

5 U.S.C. § 2302(a)(2)(D) disclosures of (D)(i), - "any violation of any law, rule, or [criminal] regulation; or (ii) gross mismanagement [beyond the scope of discretionary authority], a gross waste of [Public] funds, an abuse of [federal] authority…"

I seek the Court's injunctive relief for an Order to the Agency to install a HVAC system in the Kent PMA for the safety and health of all employees. I ask the court to Order the Agency to build the Logistic & Distribution Center (with HVAC) that Management promised to employees, before tearing down the AMC facility.

h. Injury – Insect Bites (class), 24 May 2013, EEO #1E-985-0006-13

Investigative Affidavit of MM Norris (EEO Investigative Report page 0830 Affidavit E, page 2), Question 6, - "To your knowledge, have you been named by Mr. McDermott as a Responsible Management Official …"Answer 6, - "Mr. McDermott named me …a supervisor disposing of Postal Property and suffering 3 insect bites…"

Undated and unsigned, EEO 1E-985-0004-12, Affidavit SMO Dow (Affidavit B, page 17), Question 92, - "The Complainant reported that due to unhealthy

conditions insect bites were the number one reportable injury at the facility.  Is this a true statement?  If so, have you and/or the Postal Service taken any action concerning the unhealthy conditions?..."  Answer 92, - "No one has ever come to me about insect bite, I had a contractor come out and spray [expose employees to non-OSHA approved insecticide] for mosquitos so we would not have a problem."

The number one reported on-the-job injury (PEG Interview Questions, FY 2009-2010, MSPB exhibit 64) in the Kent PMA is insect bites. June 2013 (exhibit K12) Safety and Health Inspection Report #8"Mail Processing:  Bug Zappers are not plugged in, mosquitos are biting."   "The defendant had actual or constructive notice of the unsafe and unhealthy conditions." - *Gonzalez v. Wal-Mart Stores, Inc.,* 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004) (citing *Taylor v. United States,* 121 F.3d 86, 89-90 (2d Cir. 1997)).

I seek monetary compensation to all employee who's safety and health has suffered because the Agency has not proved the required HVAC system in the Kent PMA.

i.  No Agency Policy for Enforced Leave -

MSPB Remand -0633-I-1, 13 October 2015 (exhibit E), page 15, "… Although we have considered the appellant's remaining arguments, such as his allegation that the agency has no official policy concerning enforced leave …"

MSPB -0633, exhibit 30, 7 June 2013, Steward Cornette Request for Information, Question #2, - "Copy of the policy for enforced leave." Q#5 – Copy of all investigation records on McDermott by Jim Norris…" Q#9, - "Copy of document(s) and or policy stating what constitutes placing Lance McDermott on enforced leave." MM Norris Answer #2 - "There is no policy for enforced leave." A#5 - Jim Norris does not have any investigation records…"

A#9, - "Mr. McDermott refusal to speak with management …"

5 CFR § 630.1203(a)(4), an agency may establish a uniformly applied practice or policy applying to all similarly-situated employees.

See generally *Drumheller v. Department of the Army,* 49 F.3d 1566, 1574 (Fed. Cir. 1995) (agencies are required to follow their own regulations). USPS policy prohibits employees from engaging in conduct that would contribute to an unpleasant working environment, harassment, intimidation, threats, or bullying. *Ahmed v. U.S. Postal Service*, 230 F.3d 1366 (9th Cir. 2000) *& Beno v. U.S.*, 1994 WL 457232 (N.D. Ill. 1994).

The Agency does not have an Office of Personnel Management (OPM) approved PS Form 3971 Leave Request, Leave Code, for Enforced Leave.  I never signed a PS Form 3971 authorizing the Agency to take my saved annual and sick leave.

The Agency does not have an OPM approved Personnel Action Code for the require PS 50 to (illegally) place an employee in an Enforced Leave Status.   The required PS 50 was never created and a copy placed in my Official Personnel File (OPF).  My OPF does not contain any documents showing that I was placed on unpaid Enforced Leave for over nine months.

I ask the Court to Order the Agency to remove all reference of the unlawful enforced leave and associated actions from my Federal Record – the Agency's, Federal Law Enforcement, and linked DOL OWCP/FMLA, etc.


9.  23 March 2015 (exhibit G), I filed a Merit System Protection Board (MSPB) Veterans Employment Opportunities Act (VEOA), for stripping me of my Desert Strom veterans' preference, and Uniformed Services Employment and Reemployment Rights Act (USERRA), for retaliation from trying to protect other veterans' rights (Brenda Burke) complaints.  It has been over 180 days without a Decision made.

The Court has VEOA and USERRA jurisdiction for claims of discrimination of any benefit of employment 38 U.S.C. § 4311(a) and claims of reprisal, 38 U.S.C. § 4311(b). *Lazaro v. Dept. of Veterans Affairs*, 666 F.3d 1316, 1319 (Fed.Cir. 2013).

2 December 2015 (MSPB SF-3330-15-0432-I-1, Doc. 23) Administrative Judge (AJ) Grace Carter issued a Dismissal Without Prejudice so that "the hearing in remand appeal and the hearing in this appeal occur at the same time… hearings can be conducted simultaneously" (page 2).

26 January 2015, AJ Carter issued an Order that my MSPB SF-3330-15-0432-I-1 VEOA and USERRA complaints would have a combined hearing with the remanded appeal SF-0752-13-0633-I-1 hearing 28 January 2016.

12 February 2016, after the hearing AJ Carter issued an Initial Decision for SF-0752-13-0633-I-1 and not SF-3330-15-0432-I-1. Therefore pursuant to 5 U.S.C. 3330a I terminated the MSPB proceeding to file a civil action (amended complaint) under 38 U.S.C. 3330b, 25 February 2016, Termination Order.

5 U.S.C. § 1208.15 USERRA Remedies, to compensate for the loss of wages or benefits under 38 U.S.C. 4324©(3). "Military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Fink v. City of New York*, 129 F.Supp.2d 511, 520 (E.D.N.Y.

2001), citing Robinson, 974 F.Supp. at 576.  § 1208.25. (the "motivating factor").

See *Robinson v. Morris Moore Chevrolet Buick, Inc.*, 974 F. Supp. 571 (E.D. Tex.

1997). 38 U.S.C. § 4311(c)(1).

4 February 2013 (MSPB -13-0633- exhibit 96), email MM Jim Norris – "I will

have Dave Marzec take the steps from here with EAP and medical.  One thing I

notice … had 5 point veteran preference.  He maintained this veteran's preference

until 2007 and then was no longer considered a 5-point veteran… Perhaps the root

of his discontenting attitude at work is he lost being considered a preference

veteran…"

For the VEOA and USERRA violations I seek 5 U.S. Code § 3330c - Remedy

(a) If the court determines that such violation was willful, it shall award an amount

equal to back-pay amount as liquidated damages.  "Willful" in 5 U.S.C. § 3330c(a)

as meaning that the employer either knew or showed reckless disregard for the

matter of whether its conduct was prohibited by VEOA. *Weed v. Social Security*

*Administration,* 107 M.S.P.R. 142, ¶¶ 6-8 (2007)).

10.  I ask for review of my Mixed-Case EEOC Complaints. 29 CFR § 1614.310

Right to file a civil action authorized by 5 U.S.C. 7702 to file a civil action §

1614.310**(i),** - "After 180 days from the date of filing a petition."

29 August 2013 (exhibit H) I wrote the Seattle EEO Commission asking to combine my EEO complaint with my MSPB for one hearing.  23 September 2013 (exhibit H, EEOC Judge Steven Gaffin issued an Order Dismissing my EEOC "Mixed Case" for MSPB Process." "… Appealable matter to the MSPB include adverse actions as denial of restoration claims, including reduction of work hours, and other 'whistle blower' activities. 5 CFR 353.301…"  However, the Agency did not process my EEOC mixed-case with my MSPB SF-0752-13-0633-I-1.  I Motioned to Consolidate 25 September 2013 (MSPB Doc. 20).  I filed a copy of the EEOC Mixed-Case decision, 17 November 2013 (MSPB Doc. 28.  MSPB Judge Grace Carter refused to hear my mixed-case claims for the hearing held 7 November 2013 and did not issue a decision on their merits.  12 November 201 (exhibit H) under 28 U.S.C. §2679(d)(4)(B), I Motioned the EEOC for a hearing for my unheard claims.  9 January 2015 (exhibit H), EEOC Judge Steven Gaffin ordered responses for jurisdiction.   However, it has been over 180 days and I have not had a hearing or Final Decision issued.  Therefore, I ask the Court's *de nova* review of my EEO Complaints and a Judicial Decision on the merits:

a.  EEOC Complaint No. 1E-985-0004-12, formal filed 21 June 2012, Agency FAD issued 12 February 2013 (exhibit I).  21 Agency created "Specific Issues" for alleged "discriminatory harassment based on Retaliation."  MM Jim Norris EEO

Investigative Affidavit, 26 September 2012 (exhibit I1 & MSPB -0633 exhibit

111), Response, "I have no knowledge of this complaint and was not involved in

any way with the issues claimed by the Complainant."

   b.  EEOC Complaint No. 1E-985-0006-13, formal filed 2 March 2013,

Agency FAD Mixed-Case, 4 November 2013 (exhibit J & MSPB -0633 Agency

exhibit 9).  28 Agency created "Statement of Claim[s]" that I did not agree to and

are different than the 17 claims I agreed to, 21 February 2013 (exhibit J1).

   NEEOISO Eric Wilson, 7 June 2013 (exhibit J1), - "...If you do not agree with

the defined accepted issue(s), you must provide a written response specifying the

nature of the disagreement..."   NEEOISO Eric Wilson, Response to Objection to

Accepted Issues, 16 July 2013 (exhibit J1), - "... regarding your disagreement ...

would not alter the agency's investigation of the allegations of discrimination.

Therefore, the accepted issues will remain the same."

   c.  EEOC Complaint, Agency No. 1E-985-0001-14, filed 20 November 2013,

FAD dismissal issued, 24 January 2014, (exhibit K).  6 Agency created "Specific

Issues" are different than the 12 issues I agreed to, 6 November 2013 (exhibit K1).

   d.  EEOC Complaint Agency No. 4E-980-0032-14, filed 14 March 2014,

FAD dismissal, 17 April 2014 (exhibit L). 7 Agency created "Specific Issues."

11. I seek review of my EEOC "Spin-Off" complaints.  It has been over 180-days and:

a. I have not had a decision given on my Class Complaint filed 10 November 2012 (exhibit M).

b. I have not had a decision from the Agency's Judicial Officer, 6 April 2013 (exhibit I), for a decision on the jurisdiction (exhibit N) and delegation of authority of the National EEO Investigative Service Office (NEEOISO, located in S.C.)  Contractors (retired federal employees, exhibit H2) performing governmental functions and making Final Agency Decisions.

12. I have exhausted my administrative remedies for the theft of the Union Trust funds.  I filed an NLRB complaint, 12 November 2014 (exhibit P) that the U.S. Postal Service violated Section 8(a)(2) and Section 7 rights of Employees by unlawfully dominating the Union by paying the salaries of Union Officers (for not working) for Union activities.  This I believe violates the NLRA § 8(a)(2), LMRA § 302, and LMRDA §§ 101, 102, 202, 203, 501 and 609.  The dominating Management and the overpaid Union Officials have failed to bargain over working conditions within the meaning of Section 2(5) and making bad faith "sweetheart" deals (contracting, facility closers, loss of jobs) with the Union violating Sections

8(a)(3) and 8(b)(3)…" NLRB Chad Markham, 5 January 2013 (exhibit P), that I had the right, 29 U.S.C. 412, Section 102, to file a civil action for the return of the Trust Funds.

Fiduciary Responsibility of Officers of Labor Organizations, 29 U.S.C. § 501(a), requires that, - "The Officers … of a labor organization occupy positions of trust … to hold its money and property solely for the benefit of the organization and its members … in accordance with its constitution and bylaws…" Individual Union Trust Fund participants have standing to sue under 29 U.S.C. § 1132(a)(1), for the unlawful use of the Union Trust Funds 29 U.S.C. § § 186(c)(6) and 1101 through 1114, - *Donohue v. Teamsters Local 282 Trust Funds,* 12 F.Supp.2d 273 (1998).

In *Highway Truck Drivers and Helpers Local 107 v. Cohen*, 182 F.Supp. 608 (E.D.Pa. 1960), affirmed, 284 F.2d 162 (3d Cir. 1960), denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961), a suit was brought under the recently enacted Labor Management Reporting and Disclosure Act (LMRDA) of 1959, Public Law 860257, 29 U.S.C.A. 401 et seq. The Court found that the LMRDA established a fiduciary responsibility on the part of officers of a labor organization, 501(a) and further provided for a right to sue, 501(b).

In *Theresa DONOHUE, Plaintiff, v. Teamsters Local 226 Trust Funds*, 12 F.Supp.2d 273 (1998) the plaintiff claimed Union Trust Funds were not operated for the exclusive benefit of the participants and beneficiaries.  The Court found standing to bring Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, claims under Section 1964(c) of Title 18 that authorizes private actions.

Bill of Rights, 29 U.S.C. § 411, Section 101(a)(3)(ii) (exhibit P), - "by majority vote of the members in good standing…" § 412, Section 102, - "Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court…"

'AFL-CIO Codes of Ethical Practice, Minimum Accounting & Financial Controls, D, (exhibit P) page 23, - "…should be regarded as one of the junctions expected to be performed by him in the normal course of his duties and not an extra function requiring further compensation…"  page 41, – "Salaries of elected officials should be established only by constitutional provisions…"

GSAL APWU Constitution and By-Laws (exhibit P), Members' Bill of Rights, page v, - "Member shall not be denied the right to … or the right to vote in this Union…"  Section 5, Locals (b), - "…vote of the majority of the members …"

GSAL APWU Officials have improperly used the vote from a General Membership Meeting (GMM) and not the vote of the "majority of all members" to change the Local Constitution to pay themselves extra salaries (self-enrichment) from the Union Trust Funds.

The GSAL APWU Officers receive (exhibit P) bi-weekly salaries from the Union Trust funds:  President 32 hours, Vice-President 16 hours, Secretary 12.8 hours, Treasurer 16 hours, Editor 16 hours, Trustees (each) 6.4 hours, Sergeant-At-Arm 3.2 hours, Mail Processing Clerk Craft Director 32 hours, Customer Services Clerk Craft Director 25.6 hours, Maintenance Craft Director 16 hours, MVS Craft Director 11.2 hours, and Associate Office Representative 16 hours (203.2 total, $145,000 per year, exhibit P).

Considering that Union Officials also receive hundreds of hours of on-the-clock (Handbook F-21.252) paid for doing their Union Steward work and receive regular over-time paid for by a Federal Agency (public funds).

13.  Privacy Act violations - 39 CFR 268.2(a), - "The Privacy Act authorizes any individual, whether or not an employee, to bring a civil action…" 5 U.S.C. § 552a(g)(1)(B).

a. 29 November 2013 (exhibit Q), I wrote the Seattle HR Manager that I was ready to return to work from my FMLA approved leave without accommodation and with return-to-work documents filled out by my medical provider. I sent a copy of my Desert Strom DD 214 to correct my Official Personnel File (OPF) and give me back my 5-point veteran preference. I also ask that Disciplinary Notices and Decision Letters be removed from my OPF.

11 February 2014 (exhibit Q), HR Manager Alexis Delgado wrote me back – "…management cannot make a proper determination and cannot return you to work…"

14 February 2014 (exhibit Q) I wrote HR Manager Delgado, - "As a former Personnel Officer I appeal to, a higher level HR Officer with authority to help me…" I pointed out that my OPF's 1996 Medical Examination performed by an Agency Doctor found me qualified without the need for any accommodation. I again ask that my OPF be corrected.

3 March 2014 (exhibit Q) and 11 December 2015, I wrote to the Agency's Record Office, Western Area HRSSC and Seattle District HR that I was ready willing and able to return to work amend my OPF – 39 CFR 266.6. I included a PS Form 8043 Request to Amend Electronic Official Personnel Folder (eOPF) and 12 documents that I wanted adding to my OPF.

28 April 2015, MSPB SF-0752-13-13-0633-I-1, Initial Decision (exhibit D),

page 8, - "In addition, the following affirmative defenses raised by the appellant

were acknowledged: …The agency violated the ADA by requesting medical

information concerning the appellant's impairments…"

USPS Handbook AS-353, Guide to Privacy, 3-4.2 Requests to Amend

Information (b)(1) requires Records Custodians to respond to request to amend

records within 10-days and act on the request within 30-days, 1-4.2.6(b)(2).

39 CFR 266.3(b), - "Custodians are responsible for adherence to this part within

their respective units…"  (3) "… the custodian will respond … within ten (10)

days."

39 CFR 266.6(1), - "Inquiries regarding the contents of records systems or

access or amendment to personal information should be submitted in writing to the

custodian of the official record, if known, or to the Manager, Records Office,

USPS, 475 L'Enfant Plaza SW…"

I seek a writ of *mandamus* ordering the Agency to correct my OPF. (See, e.g.

*Cheney v. United States Dist. Court For D.C.* (03-475) 542 U.S. 367 (2004) 334

F.3d 1096.)   5 U.S.C. § 552a(g)(1)(A).

39 CFR § 552(g)(1)(C) permits action when the agency fails to properly

maintain records that results in adverse determination. *Hewitt v. Grabicki*, 974

F.2d 1373, 1379 (9thCir.1986).  Applying damages for the adverse effect resulting

from the injuries of the [failure] of the record keeping, *Doe v. Chao*, 540 U.S. 614,

627, 124 S.Ct. 1204 (2004).  § 552a(g)(1)(C) (permits action where agency's

failure to maintain proper records results in adverse determination against

individual)." 5 U.S.C. § 552a(g)(1)(C), (D).

## Summary

I had a handicap – genetic birth defect of partial color blindness that never harm

myself or others.  I reported my handicap on, 24 October 1996, PS Form 2485

Medical Examination.  An Agency Doctor approve me to work without

accommodation.  I engaged in numerous protected activities reporting and trying

to correct mismanagement's fraud, waste, abuse, and criminal acts that the

Agency's Postmaster, Judicial Officer, Postal Inspectors, and numerous Executive

Officers knew about and did nothing to correct (exhibit N2, 25 April 2013).

The maintenance staffing at the Kent PMA was reduce from five on day-shift to

one (me).  Everyday brought my Supervisor SMO Dow harass me saving heavy

work to do by myself and I was denied any leave "because of staffing."  (Noting

that the Agency (MM Norris) has not hired a new Mail Processing Mechanic

(MPE) in five years.)  So I got FMLA protection for my bad back problem that

was being aggravated by the extra heavy work.  However, every time I used

FMLA leave SMO Dow would remove tools and equipment that I needed to do my job (easier).  December 2012, I complained to MM Norris about the Hostile Work Environment (HWE).  MM Norris sent MMO Allen to the PMA to conduct an HWE Initial Management Inquiry Process (IMIP) investigation.  I mentioned that I was color blind to MMO Allen.  Nothing was done about any of my HWE complaints.  However, February 2013, MMO Marzec demanded medical documents to prove my "impairments" did not pose a threat.  I complied and took time off (my own leave time) and paid for a doctor visit out of my own pocket (turn in the bill but did not get reimbursed).  I sent the medical documents to the Occupational Health Services (OHS).  Nurse Daniels created a "Duty Status Form" placing me on light duty with work restrictions and "recommended" that I "volunteer" for accommodation.  After passing around my personal medical information.  March 2013, MMO Marzec asked me if I wanted reasonable accommodation and I said no – "I don't want to be fired like Brenda Burke."  The HWE continued and SMO Dow continued to deny me any requested leave.  I got a doctor's note to take stress leave, 1-5 April 2013.  While I was on stress leave Management conspired together and SMO Dow file a false Threat Report against me with Inspection Service.  When I returned from stress leave I was subject to a without reasonable or probable cause Federal Law Enforcement detention, search and taking of my property.  During Law Enforcement (criminal investigation?)

action I told the Inspectors about several criminal actions of Management – loss of

postal property.  Inspectors said they would look into the crimes.  When the

Inspectors left, SMO Dow gave the first "notice" that I would be placed on

enforced leave if I did not volunteer for accommodation (that would lead to being

fired).  I did not respond to SMO Dow (blow up from the added stress).  I fell

silent and stopped talking to SMO Dow thinking that the Inspector would charge

SMO Dow for the loss of thousands of dollars of postal property.  8 May 2013,

when MMO Marzec gave me the second "notice" with a light duty work

restriction (not to work on colored electrical wires – i.e. my job) demanding that I

apply for accommodation for my "permanent work restrictions," I remain silent.

However, I sent a copy of the "notice" that I had to take leave for a "serious

medical condition" into the HRSSC FMLA Office and received FMLA approval.

30 May 2013, when SMO Dow placed me on enforced leave, I remained silent

(not blowing up from the stress).  While on enforced leave, MMO Norris sent me a

"notice" that my start time was changed to 5am starting 29 June 2013.  1 July

2013, I started a 5am as the letter stated.  However, SMO Dow called the Kent

Police and told them I was an "ex-employee."  I showed the Kent Police that I had

FMLA return to work, SMO Dow said I could stay and the Kent Police left.  SMO

Dow then demanded that I "request" accommodation.  I refused and SMO Dow

again called the Postal Inspectors, falsely charged with trespassing, I was again

subjected to a Federal Law Enforcement detention, search, and ejection from the PMA. I asked the Inspector why they have not conduct the criminal investigation like they said they would and was told that "they" did not have jurisdiction. 1 September 2013, after receiving from the OHS and HRSSC FMLA return-to-work (RTW) documents filled out by my doctor, with no accommodation needed, I returned to work. However, Inspectors were called and again I was ejected after I showed the Inspectors the RTW documents.

Before the MSPB Hearing started with the help of an Agency Attorney lacking candor, Judge Carter already decided that the Agency had provided "minimum due process" and that I had committed a misdemeanor recording the Kent Police and Inspector's detention and search (trying to protect myself). Judge Carter excluded relevant evidence and determine that I was "untrustworthy." Judge Carter stripped me of my affirmative defenses (disability discrimination) and declared that I did not have FMLA protection. Judge Carter found that the Agency had given me proper "notice" and in awarding me one week of pay out of 9-months of unpaid enforce leave the MSPB found me 97% guilty of "failure to interact" with Management.

This "process" would have never happened if I did not have a handicap.

This "process" would have never happened if I had not disclosed my handicap during a protected activity.

I plead to be made-whole, back-pay and the return of the over 900-hours of saved leave (my property) unlawfully taken.

Remedies

1. Age Discrimination – For the intentional ADEA violations of Title VII injuries I suffered, I ask for liquidated or double damages, equal to the amount of back pay, Part **29** U.S.C.A. §1216(b).

2. For the intentional handicap/disability discrimination injuries suffered violating the ADA, Title VII, I ask for I ask for back-pay, other make-whole relief and damages equal to the amount of back pay, 42 U.S. Code § 1981a, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964.

3. For the intentional Hostile Work Environment harassment and retaliation injuries suffered caused by Agency Management, the Agency is vicariously liable, *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). The Agency's Executive, Human Resource, Medical, Law Department, and Law Enforcement Officers (Public Trust Officials) empowered local Management Officials to "take tangible employment actions against" me, *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1173 (9th Cir.2003). For, Manual Model of Jury Instruction 10.2B Civil Rights-

Title VII- Hostile Work Environment Caused by Supervisor, I ask for damages equal to the amount of back -pay.

4.   Whistleblower/No FEAR – Title II Federal Employee Discrimination and Retaliation, Section 201(a) applies with respect to any payment made in accordance with section 2414, 2517, 2672, or 2677 of title 28, United States Code, and under section 1304 of title 31, United States Code (relating to judgments) to any Federal employee. Therefore, I ask for damages equal to the amount of back - pay.

5.   For the Hatch Act violations (exhibit O):

a.   I ask the Court to find that the Postal Mailing Discounts for Political Mailings violate the Hatch Act's rule against Government Agency contributing money to political organizations (exhibit O).

b.   I ask the Court to find that the Agency's Employees are violating the Hatch Act by using their official authority and influence to interfere with the election process (exhibit O).

6.   For the willful Family and Medical Leave Act (FMLA), violations and injuries suffered I ask for, Section 825.400(c), - "If an employer has violated one or more of FMLA… an employee may receive one or more … any actual monetary loss … An amount equaling the preceding sum may also be awarded as liquidated

damages…" See 29 U.S.C. § 2617(a), *Ragsdale v. Wolverine World Wide Inc.*, 535 U.S. 81, 89 (2002).

7. For the willful Fair Labor Standards Act (FLSA) willful violations injuries suffered I ask for payment of the lost wages and an equal amount as liquidated damages, 29 U.S. Code § 216©.

8. MSPB Complaint SF-0752-13-0633-I-1 (exhibits C, D, E, F):

a. I ask the Court order the Agency not to use adversarial Federal Attorneys to represent Management and not employees in the non-adversarial judicial processes, EEOC, MSPB, etc.

b. I ask the Court find that the MSPB made mistakes in its rulings and award me make-whole remedies (i.e. back-pay) or an additional amount equal to back pay.

9. For my MSPB VEOA and USERRA, SF-3330-15-0432-I-1 (exhibit G), complaints that the agency knew and showed reckless disregard in violating I ask an additional amount equal to back pay. 5 U.S.C. § 3330c.

10. For the unlawful discrimination detailed in my EEO Complaints: 1E-985-0004-12, 21 June 2012 (exhibit I); 1E-985-0006-13, 2 March 2013 (exhibit J); 1E-985-0001-14, 20 November 2013 (exhibit K); and 4E-980-0032-14, 14 March

2014 (exhibit L), I ask for Supervisor level pay from the time I first complained I

was not promoted (exhibit I, "January 2012") and front pay until I retire.  I also

ask for the maximum $300,000 allowed for damages for each complaint.

*Hemmings v. Tidyman's* Inc., 285 F.3d 1174, 1196 (9th Cir. 2002) (Title VII

damages cap inapplicable to $ 650,000 award of noneconomic damages under

Washington Law Against Discrimination).

11.    11.  For my unprocessed and unheard EEO "spin-off" Class Complaint

(exhibit H) and Complaint to the Agency's Judicial Officer (exhibit I) , I ask:

a.  The Court order the Agency not to use adversarial Federal Attorneys to

represent Management and not employees in the non-adversarial judicial

processes, EEOC, MSPB, etc.

b.  I ask the Court to order the closer of the unlawful and unconstitutional

tribunals:

(1)  The District Reasonable Accommodation Committees (DRACs).

(2)  The District Threat Assessment Teams (TAT).

Doctrine states that Constitutional Jurisdictional questions can be made before,

during or after any penal process or tribunal.  I clearly challenged the jurisdiction

and authority of these Tribunals (NEEOISO, District Reasonable Accommodation

Committee (DRAC), Threat Assessment Team (TAT)) created by the Agency to bypass constitutional, statutory and collective bargaining agreement rights.

The TAT is not legally established by any statute authorized by Congress such as 5 U.S. Code § 7902 - Safety programs - (d) The head of each agency shall develop and support organized safety promotion to reduce accidents and injuries among employees of his agency, encourage safe practices, and eliminate work hazards and health risks.

There is a disputed question of material fact with respect to whether Defendant intentionally discriminated against employees over the age of forty when it designed and implemented the October 15, 1995 RIF. There is also a dispute of material fact with respect to whether the RIF had an impermissible disparate impact on a protected class of employees over the age of forty.

Both the TAT and the DRAC "regulations" are not approved by a majority of the employees being subjected to their "jurisdiction."   5 U.S. Code § 7117 - Duty to bargain in good faith; compelling need; duty to consult (a)(3), - "… less than a majority of the employees in the issuing agency or primary national subdivision, as the case may be, to whom the rule or regulation is applicable."  (b)(1), - "In any case of collective bargaining in which an exclusive representative alleges that no compelling need exists for any rule or regulation referred to in subsection…"

c. I ask the Court to consider class injunctive relief and order the closer of National EEO Services Investigation Office (NEEOISO) contractors performing "inherently governmental" work.

d. I ask the Court to consider class injunctive relief and order the closer of the contracted Human Resource Shared Services Center (HRSSC) contractors performing "inherently governmental" work.

e. I ask that the Court to order the Agency's OIG Inspectors to conduct all administrative investigations of employee all misconduct, EEOC, MSPB, HWE, etc.

f. I ask the Court to strip the Agency given Federal Law Enforcement authority of the administrative OIG Investigators along with strip them of the right to carrying firearms and an un-earned 20-year Law Enforcement Retirement.

12. Union Trust Funds unlawfully taken for self-enrichment by the Union Fiduciary Officials.  RCW 11.98.085

a. Ask the Court to order the return of the Union Trust Funds unlawfully taken for self-enrichment by the Union Fiduciary Officials.  RCW 11.98.085

b. Ask the Court to reverse the "sweetheart" staffing deals made between Management and the Union to pre-Hostile Work Environment levels (Western Area approved and negotiated with the Union).

13. For violations of the Privacy Act, Section 3 of the Act, 5 U.S.C. Sec. 552a(i) I ask that HR Manager Alexis Delgado (exhibit Q) be fined $5,000 for:

a. Knowingly and willfully disclosing individually identifiable (medical) information which is prohibited from such disclosure by the Act and by agency regulations;

b. Knowingly and willfully requesting or gaining access to a record about an individual under false pretenses.

c. For not correcting my OPF when requested – duty to act.

I also ask that my OPF, Medical Record and Law Enforcement Record be corrected and cleaned of any reference of the unlawful Enforced Leave and Threat Investigations.  And, $10,000 from the Agency for violating my Privacy Act rights.

Respectfully submitted and sworn to this 14th of March 2016,

Lance McDermott
1819 So 104 ST
Seattle, WA  98168
206 331-1990
treke@hotmail.com