*pet:tion 2 Tace* D

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### WESTERN REGIONAL OFFICE

LANCE MCDERMOTT,               DOCKET NUMBER
        Appellant,           SF-0752-13-0633-I-1

    v.

UNITED STATES POSTAL SERVICE,   DATE: April 28, 2015
        Agency.

Lance McDermott, Seattle, Washington, pro se.

Steven B. Schwartzman, Seattle, Washington, for the agency.

### BEFORE
Grace B. Carter
Administrative Judge

## INITIAL DECISION

## INTRODUCTION

On June 25, 2013, the appellant timely filed an appeal challenging the agency's action dated May 30, 2013 placing the appellant in an enforced leave status from his position as Maintenance Mechanic. Initial Appeal File (IAF) Tab 2. A hearing was held on November 21, 2013. Hearing Compact Disc (HCD). The appellant is a preference eligible.[1] The Board has jurisdiction over this

---

[1] The agency filed a motion to dismiss this appeal based on a lack of Board jurisdiction asserting that the appellant did not have status as a preference eligible. IAF, Tab 6. This issue was fully litigated by the parties, and I issued an order on August 21, 2013 finding that the appellant had shown by preponderance evidence that he was preference eligible based on his service in the U.S. Army between December 6, 1990 and July 12,

appeal pursuant to 5 U.S.C. §§ 7511, 7512 and 7701 (and others if applicable). For the following reasons, the agency's action is AFFIRMED AS MODIFIED.

## ANALYSIS AND FINDINGS

General Legal Standards

To sustain an adverse action before the Board, the agency must prove by preponderant evidence[2] the factual basis for the misconduct charged, and establish that disciplinary action, based on the proven misconduct, promotes the efficiency of the service. *See* 5 U.S.C. §§ 7513(a) and 7701(c)(1)(B); 5 C.F.R. § 1201.56(a)(ii). The "efficiency of the service" requirement includes a showing that some disciplinary action is warranted (the "nexus" requirement) and that the particular penalty imposed by the agency is within the tolerable limits of reasonableness. Thus, three distinct elements must be proven by the agency in any adverse action. *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1147 (Fed. Cir. 1997); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 302-303 n. 67, 307-308 (1981). Proof of one or more specifications supporting a charge is sufficient to sustain the charge. *See Greenough v. Department of the Army*, 73 M.S.P.R. 648, 657 (1997), *review dismissed*, 119 F.3d 14 (1997); *James v. Department of the Air Force*, 73 M.S.P.R. 300, 303 (1997).

Background

After a review of the documentary evidence, including stipulations made by the parties, and the hearing testimony, the following facts are undisputed or

---

1991. IAF, Tab 13. Based on this finding, I found that the appellant did have Board appeal rights and was entitled to challenge the agency's action before the Board. *Id.*

[2] A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.56(c)(2).

where disputed, are my findings of fact.  In resolving issues of credibility, and the weight to be given declarations, written statements and other documentary evidence, I have been guided by *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83-87 (1981),[3] and *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987).  According to *Hillen,* when resolving issues of credibility, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version she believes, and explain in detail why she found the chosen version more credible, considering such factors as:  (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor.

As a Maintenance Mechanic MPE ("MPE")(P7-09), Occupational Code 5350-0001, the appellant's position "involved trouble-shooting and complex maintenance work throughout the system of mail processing equipment," and performing "preventative maintenance inspections of mail processing equipment, building and building equipment." IAF, Tab 21, Agency Hearing Exhibit (AgHE) 1.  MPEs are highly trained and must pass examinations and specialized training

---

[3] The following factors affect the weight to be accorded to hearsay evidence:  (1) the availability of persons with firsthand knowledge to testify at the hearing; (2) whether the statements of the out-of-court declarants were signed or in affidavit form, and whether anyone witnessed the signing; (3) the agency's explanation for failing to obtain signed or sworn statements; (4) whether declarants were disinterested witnesses to the events, and whether the statements were routinely made; (5) consistency of declarants' accounts with other information in the case, internal consistency, and their consistency with each other; (6) whether corroboration for statements can otherwise be found in the agency record; (7) the absence of contradictory evidence: (8) credibility of declarant when he made the statement attributed to him. *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 87 (1981).

in order to qualify for the position. *Id.* The position requires knowledge of basic mechanical, electricity and electronic principles, and requires application of these principles in the daily duties a MPE may be tasked to accomplish. The position is physical in nature and may "require arduous exertion involve[ing] prolonged standing walking, bending and reaching and may involve handling heavy objects." *Id.* In addition, the position requires the "ability to distinguish colors." *Id* at 4.

After being hired as a Custodian in 1998, the appellant became a MPE at the Seattle Priority Mail Annex (PMA) and continued to hold this position at all times relevant to this appeal. According to Jim Norris, the Manager of Maintenance for the Seattle District, he instituted a color-coded sticker system to provide a visual check of carrier cells that had been serviced by Maintenance Operations at the PMA. HCD, Norris Testimony. Soon after this system was implemented he was informed by Dave Marzac, Manager of Maintenance Operations for the PMA and Seattle Processing and Distribution Center, that the appellant complained that he could not work with the color-coded sticker system because he was colorblind. *Id.*

On February 6, 2013, Occupational Health Services for the Seattle District sent the appellant a request for medical documentation for two impairments – "an impairment that has to do with your back, and another concerning your vision." IAF, Tab 21, AgHE 2. Within the timeframe required, and relevant to this appeal, the appellant submitted a medical report by Arthur B. Lum, Jr., Doctor of Optometry dated February 13, 2013. *Id.*, Tab 21, AgHE 3. Dr. Lum reported that he had performed a routine eye examination of the appellant and concluded that "[h]e exhibits red green color blindness." He noted that "color vision testing did show red/green color blindness, which does affects 5% of the male population." *Id.* (as in original). Citing Dr. Lum's report, Tanya L. Daniels, Registered Nurse, Occupational Health Services, Seattle District prepared a Duty Status Form concerning the appellant dated February 15, 2013 in which she stated that the

appellant "may return to work with the following RESTRICTIONS: **VISION:** Has difficulty distinguishing certain colors and shades of color." *Id.*, Tab 21, AgHE 4. Dr. Lum provided no specific instruction as to how the "red green color blindness" should be managed in the appellant's MPE position.



According to the appellant's first line supervisor, Kenneth Dow, Supervisor, Maintenance Operations PMA, the appellant's revelation of his colorblindness raised issues beyond whether he could distinguish the colored dots (red, yellow, green and blue). Because of the appellant's objections, Mr. Dow testified the use of the colored dots ceased in March 2013. However, he testified that the greater concern was how the appellant's colorblindness affected those aspects of his job which involved electric wiring in the building and in machinery. HCD, Dow Testimony. Mr. Dow made several efforts to talk to the appellant about the issue, but the appellant refused to talk about it. *Id.* As the appellant's first line supervisor, he testified that there were concerns about whether the appellant could safely perform his work. *Id.*



On March 19, 2013, Dave Marzac referred the appellant to the District Reasonable Accommodation Committee (DRAC) for assessment on an involuntary basis. IAF, Tab 21, AgHE 5. He advised the DRAC of management's discovery of the appellant's colorblindness, and of their request that he submit a "Request for Permanent Light Duty Assignment" but that the appellant had not returned the form. Additionally, Mr. Marzac related that he had requested that the appellant request a reasonable accommodation and the appellant had "replied that he did not want to participate in the DRAC process . . . [because] you fired Brenda Burke on light duty. I don't want to be on light duty." *Id.* The appellant did not contact the DRAC or Mr. Marzac.



On April 8, 2013, Mr. Dow wrote the appellant a letter concerning his colorblindness. Citing the permanent restrictions due to his colorblindness, the appellant was formally offered the opportunity to request a Permanent Light Duty Assignment and engage in discussions with DRAC "to discuss your permanent

restriction as it related to the essential functions of your position, and possible accommodations." *Id.,* Tab 21, AgHE 6. The letter requested that the appellant respond by April 12, 2013 regarding whether he wished to request light duty and/or engage in the reasonable accommodation process. *Id.* The letter warned appellant that while requesting either light duty or a reasonable accommodation was entirely voluntary, "absent participation in [one] or the other process, management is unable to conclude that you can perform the essential functions of your position with or without reasonable accommodation." *Id.* Additionally, the appellant was warned that "your refusal to take advantage of either avenue may result in your placement in an enforced leave status." *Id.* Despite an invitation to "[hear] from you at your earliest possible convenience," the appellant did not contact Mr. Dow to discuss the matter.[4]

On May 8, 2013, Mr. Marzac sent the appellant correspondence concerning his failure to contact him to either request light duty and/or a reasonable accommodation relative to his color blindness. *Id,* Tab 21, AgHE 7. The letter informed the appellant:

> [y]our duties involve attending to equipment and wiring. This function requires the ability to distinguish among various colored wires and if you are not able to distinguish colored wires, your work can result not only in damage to the equipment but also pose a significant safety risk.

*Id.* Mr. Marzac reiterated the history of the appellant's refusal to cooperate, and advised him that he was once again extending him the option of requesting light duty and/or reasonable accommodation, and was also prohibiting him from performing any duties that involve working on wiring and that require the ability to distinguish colors. *Id.* As well, the correspondence advised the appellant that "this letter shall serve as proposed notice to place you on enforced leave effective

---

[4] The letter was hand-delivered to the appellant on April 8, 2013 at 1:45, and is annotated that during the meeting the appellant "refused to speak." IAF, Tab 21, AgHE 6.

no sooner than ten (10) days from your receipt of this letter.   The appellant was informed that he should respond orally or in writing to Jim Norris. *Id.*

The appellant did not respond to the letter.  On May 30, 2013, Mr. Norris issued a decision sustaining the proposal to place the appellant on enforced leave. The letter considered the above cited reasons for placing the appellant on enforced leave, and noted:

> I want to make clear that your placement on enforced leave is a direct result of your refusal to interact with management on this very important issue.  Should you decide that you would like to interact with management, please feel free to contact myself or Dave Marzec.   You continue to have the right to request reasonable accommodation and/or light duty.   However, as previously mentioned you must avail yourself of these options which includes a willingness to sit down and discuss your medical limitations, if any, and the impact of your medical limitations on the performance of the essential functions of your job.  Absent your participation, management cannot make a proper determination.  By and through this letter. I encourage you to avail yourself of your options.

*Id.,* Tab 21, AgHE 8.  The enforced leave was implemented on May 30, 2013. The appellant filed his petition for appeal on June 25, 2013, more than 14 days after the enforced leave began.

In his petition for appeal, the appellant complained the agency's action was taken contrary to his FMLA and EEO rights.  He alleged that he disclosed his colorblindness and complained about his back condition in the course of an EEO complaint to "stop my Supervisor Ken Dow to stop saving the heavy work for me to do by myself that aggravated [my] FMLA protected back problem and stop using color dots to tag equipment (EEO)." IAF, Tab 2. Addendum at 3.

The appellant denied that the agency had the authority to refer him to DRAC or to offer him the opportunity to request a permanent light duty position. The appellant raised a wide variety of issues, some dating back years, and involving other employees, but did not allege that he filed a response to the notice of enforced leave with Mr. Norris, or that he otherwise responded to the

agency's correspondence concerning his color blindness. *Id.* Tab 2 at 2-11. He alleged that he was improperly placed on enforced leave, "denied an advisory arbitration hearing[5]" which constituted harmful procedural error.

During the hearing, the appellant testified that he had "partial color blindness" and mixes up "greens and browns and blues and purples." HCD, McDermott Testimony. He stated that he didn't know why Dr. Lum described his impairment as involving the colored red. *Id.* He professed that he never had any problem dealing with different color wiring because "all the wiring is tagged and numbered," and that "before I take it apart, it is tagged and numbered." HCD, McDermott Hearing. He testified that he does not believe he needs a reasonable accommodation to do his job, noting that he had done his job for 16 years and expected to continue to do it until retirement. *Id.*

During the prehearing conference, I found that because the appellant was a preference eligible U.S. Postal Service employee, because the agency had provided the appellant minimal due process in effecting the enforced leave, and because more than 14 days had passed since the appellant was placed on enforced leave, the Board had jurisdiction over the agency's enforced leave adverse action. IAF, Tab 38.



In addition, the following affirmative defenses raised by the appellant were acknowledged:

> The appellant alleges that he was subject to a hostile work environment and retaliated against for his prior EEO activity and other protected activity.
>
> The appellant alleges that the FMLA was violated when the agency continued to maintain him in enforced leave status after

---

[5] The appellant cites multiple statutes, rules, regulations, and cases throughout his submission. In this demand for relief, he cited "Theodore Mercer," a reference to *Mercer v. Department of Health and Human Services*, 772 F.2d 856 (1985). In *Mercer*, the agency's internal procedures provided for a pre-action "arbitration hearing." There is no evidence that such a process exists in the U.S. Postal Service, and I do not consider it further.

> his physician cleared him to return to duty based on his FMLA approved impairment.
>
> The agency violated the ADA by requesting medical information concerning the appellant's impairments.
>
> The appellant also alleges that he was retaliated against for protected disclosures made to the Judicial Officer of the agency's Office of Administrative Law Judge in contravention of the Whistleblowers' Protection Act.

A hearing was held on November 21, 2013, and the record closed after the hearing. HCD. During the hearing, appellant's Hearing Exhibits 116 & 117 were admitted. IAF, Tab 51. After the hearing, several submissions were made by the appellant. IAF, Tabs 42-48, 50. To the extent these submissions supplement the evidentiary record, they have not been considered.

<u>The agency action is SUSTAINED</u>

In *Abbott v. U.S. Postal Service,* 121 M.S.P.R. 294, ¶ 9(2014), the Board stated its longstanding practice of interpreting *Pittman v. Merit Systems Protection,* 832 F.2d 598, 599-600 (Fed. Cir. 1987) as holding that "placement in enforced leave status for more than fourteen days, based on alleged physical or mental disability, constitutes a constructive suspension appealable to the board". [6] Instead, the Board held that "an agency's placement of an employee on enforced leave for more than 14 days constitutes an appealable suspension within the Board's jurisdiction. *Id.* at ¶ 10. Thus, the Board noted that the line of decisions using the constructive suspension paradigm were overruled. *Id.* In light of *Abbott,* I have thoroughly reviewed the record in this case and find that the parties were fully and appropriately apprised that the action was within the Board's jurisdiction, and that the agency bore the burden of proving its charge,

---

[6] *Abbott,* 121 M.S.P.R. 294, ¶ 9 citing *Childers v. Department of the Air Force,* 36 M.S.P.R. 486, 488-89 (1988); *see also Bean v. U.S. Postal Service,* 120 M.S.P.R. 397 (2013) (considering the parameters of a constructive suspension); *Romero v. U.S. Postal Service,* 121 M.S.P.R. 606 (2014) (finding no jurisdiction over a constructive suspension).

that a nexus exists between the conduct and the service efficiency and that the penalty was reasonable. Accordingly, unlike in *Abbott*, where the Board found it necessary to remand for further record development, I find no need to reopen the record in this appeal, because the record is fully developed on the merits of the agency's charge, and the hearing was conducted by properly placing the burden of proof of the charge on the agency.

Prior to *Abbott*, in *Gonzalez v. Department of Homeland Security*, 114 M.S.P.R. 318, ¶¶ 12- 13 (2010), the Board recognized that although chapter 75 contains no specific reference to "indefinite" suspensions, the requirements of the statute applies even though a suspension is imposed without an end date, if it lasts for more than 14 days. The Board cautioned that the use of indefinite suspensions were limited, and recognized only three circumstances where such suspension have been properly imposed including, relevant here, "when the agency has a legitimate concern that an employee's medical condition makes his continued presence in the workplace dangerous or inappropriate – pending a determination that the employee is fit for duty. *Id.* at ¶ 13.

The reason cited by the agency to place the appellant on enforced leave was that the agency was "unable to determine that you can work safely due to your color blindness and repeated attempts to engage you have been unsuccessful." Here, the record is undisputed that the appellant complained that the use of colored dots interfered with the performance of his duties because of his colorblindness, and that he presented evidence of his colorblindness impairment. Dr. Lum's assessment of "red/green color blindness" was so nonspecific that the only "restriction" that could be deigned was that the appellant "has difficulty distinguishing certain colors and shades of color." *See* IAF, Tab 21, AgHE 3, 4. The diagnosis alone was I find insufficient for the agency to determine the impact of the impairment on the appellant's work or whether his color blindness could be managed with modifications to standard procedures or other accommodations. *See* IAF, Tab 21, AgHE 4.

While the only issue identified by the appellant as problematic because of his colorblindness was discerning the colored dots, I find no error in the agency's determination that other aspects of the appellant's job were impacted by his colorblindness. Mr. Norris testified that merely knowing that the appellant was colorblind was inadequate to assess how and to what extent his ability to perform his duties was impaired. HCD, Norris Testimony. He testified that after the appellant's impairment was brought to his attention, he felt that the agency could be exposing itself to liability and that he would "feel personally liable" if he allowed the appellant to continue working without addressing the question of the nature and extent of his impairment. *Id.* He testified that the agency wanted clarification of the nature of the safety risk presented by the appellant's impairment, both to him and to co-workers. *Id.* Moreover, he testified that without knowing the extent of the appellant's colorblindness, he could not evaluate him for placement in other positions in the agency's industrial environment within contractual requirements and without first having the information to ascertain whether the appellant would be a safety risk. *Id.*

I find that the agency repeatedly contacted the appellant to discuss the issue, provided him several avenues to address the concerns, and advised him in writing that an adverse action could result should he fail to cooperate. The appellant repeatedly refused to discuss the issue with his supervisor or managers, refused to contact the DRAC to discuss the referral, and declined to respond to the agency's proposal to place him on enforced leave.

In circumstances such as these, I find that the agency's charge must be sustained. The agency has shown by preponderant evidence that it was unable to determine from the information provided by the appellant that he could safely perform his duties, and that the appellant refused to cooperate with the agency's efforts to evaluate his colorblindness and its impact on the performance of the essential duties of his positions.

The appellant has alleged that the agency violated the Family Medical Leave Act in placing him on enforced leave. The Board has held that the agency bears the burden of proving that it complied with the FMLA as part of its overall burden of proving a leave-based charge. *Moore v. U.S. Postal Service*, 83 M.S.P.R. 533, ¶ 21 (1999); *Ellshoff v. Department of the Interior*, 76 M.S.P.R. 54, 74 (1997). The record reflects that the appellant has had FMLA approval for a serious medical condition concerning his back, which he referenced as FMLA Case No. 110000402232. IAF, Tab 2, Addendum at 39. He submitted evidence that during the course of this appeal, he applied for FMLA certification for his colorblindness condition. *Id.*, Tab 8, Exhibit 40. The appellant asserts that because his FMLA certification does not indicate a need for him to be absent from work, the agency violated the FMLA by continuing him in enforced leave status. The FMLA allows an employee to take up to 12 weeks of leave per year (paid or unpaid) for various purposes, including an employee's own serious health condition that makes the employee unable to perform the functions of the employee's position. *See* 5 U.S.C. § 6382(a)(1)(D); *Dias v. Department of Veterans Affairs*, 102 M.S.P.R. 53, ¶ 5 (2006), *aff'd*, 223 Fed. Appx. 986 (Fed. Cir. 2007); 5 C.F.R. § 630.1203(a)(4). The FMLA does not provide that an employee who refuses to participate in the interactive process to determine his work restrictions, if any, must be allowed to work in accord with his self-determined limitations. Here, the record shows that as of May 30, 2013, the appellant's colorblindness was not a FMLA protected serious medical condition. After the August 14, 2013 certification, the appellant points to no basis by which his physician's certification could be used to compel the agency to return him to duty without addressing the fundamental questions concerning the impact of the appellant's colorblindness condition[7] on his abilty to perform the essential



---

[7] The medical certification, by the appellant's general physician, noted that the appellant had been prevented by his colorblindness from working on wiring, but specifically stated this was not a medical restriction. IAF, Tab 10, Exhibit 83.

functions of his position in a safe and compliant manner.   Thus, I find no evidence that the appellant's placement in enforced leave status contravened his FMLA rights.  The charge is SUSTAINED.

 Affirmative Defenses

As previously noted, the appellant raised several affirmative defenses: that he was subjected to a hostile work environment and retaliated against for his prior EEO activity and other protected activity, violation of the ADA for requesting medical information, and retaliation for protected disclosures made to the Judicial Officer of the agency's Office of Administrative Law Judge in contravention of the Whistleblowers' Protection Act.  I consider these *in seriatum*.

The appellant was not subject to a hostile work environment or retaliated against for his prior EEO or other protected activity

The appellant alleges that he was subject to a hostile work environment and retaliated against for engaging in prior EEO and other protected activities. Where, as here, the appellant has been affected by an appealable action, the Board has authority to adjudicate claims of discrimination under 42 U.S.C. § 2000e-16 by virtue of 5 U.S.C. § 7702(a)(1).

After a hearing, the administrative judge will not inquire into whether the action under review could have been retaliatory, whether the appellant has made out a *prima facie* case of retaliation, or whether some other threshold of proof has been met so as to shift the burden to the agency. *See Simien v. U.S. Postal Service,* 99 M.S.P.R. 237, ¶ 28 (2005).  Rather, the inquiry proceeds to the ultimate question, which is whether, upon weighing the evidence presented by both parties, the appellant has met his overall burden of proving retaliation. *See Berry v. Department of Commerce*, 105 M.S.P.R. 596, ¶ 10 (2007) (the ultimate question is whether the appellant has demonstrated by preponderant evidence that the agency's reason for its actions was a pretext for retaliation). Evidence to be considered at this stage may include: (1) the elements of the *prima facie* case; (2) any evidence the employee presents to attack the employer's proffered

explanations for its actions; and (3) any further evidence of retaliation that may be available to the employee, such as independent evidence of retaliatory statements or attitudes on the part of the employer, or any contrary evidence that may be available to the employer. *See Marshall v. Department of Veterans Affairs,* 111 M.S.P.R. 5, ¶ 17 (2008).

In evaluating the efficacy of a claim of retaliation because of prior EEO activity, an appellant is required to prove by preponderant evidence, the following:

> [T]hat he engaged in protected activity, the accused official knew of such activity, the adverse action could, under the circumstances, have been retaliation, and after carefully balancing the intensity of the motive to retaliate against the gravity of the misconduct, or inadequacy of the performance of duties, a genuine nexus is established between the protected activity and the subsequent action. *See Warren v. Department of the Army,* 804 F.2d 654, 656-58 (Fed. Cir. 1986); *Williams v. Social Security Administration,* 101 M.S.P.R. 587, ¶¶ 11-12 (2006).

*Mahaffey v. Department of Agriculture,* 105 M.S.P.R. 347, 360 (2007); *see also Mingoia v. U.S. Postal Service,* 33 M.S.P.R. 169, 172 (1987) citing *Warren v. Department of the Army,* 804 F.2d 654 (Fed. Cir. 1986).

The record indicates that the appellant engaged in prior EEO activity consisting of an EEO case filed on April 1, 2006 (Case No. 1E-981-0018-06), June 21, 2012 (Case No. 1E-985-004012) and a complaint filed on March 2, 2013 (Case No. 1E-985-0006-13). IAF, Tab 10, Exhibit 82 at 5. On August 9, 2013, the Office of Federal Operations (OFO) issued a Final Decision in *McDermott v. Donohoe,* Appeal No. 0120131641 (Agency Case No. 1E-985-004-12. *Id.,* Tab 10, Exhibit 81. Relevant to this appeal, concerning Mr. Dow and Mr. Marzac, the OFO found that "the Agency's record of Complainant's previous complaints indicate that he did not name either Supervisor or Manager as responding management officials." *Id.* at 7. Accordingly, OFO found that the appellant had failed to meet the first prong of a *prima facie* case of retaliation in that he was

unable to demonstrate that the supervisor and manager had knowledge of his prior EEO (i.e., 2006) activity. Moreover, the OFO found that the appellant "fails the third prong because he does not provide any evidence tending to establish that any of the 21 alleged actions occurred as a result of Complainant's prior EEO activity." *Id.*

Relative to the appellant's allegation that the enforced leave action was taken in retaliation for his prior EEO activity, I find that management knew of his 2012 EEO activity, and was aware of his 2013 EEO activity. Nevertheless, the appellant has failed to submit any evidence that either Mr. Dow, Mr. Marzac or Mr. Norris were seeking to retaliate against him based on his prior EEO activity. At each step of the process toward the implementation of enforced leave, the appellant alone possessed the ability to provide the necessary information and cooperation which would assist management in addressing its valid concerns about the effect of the appellant's colorblindness on his ability to perform his work. The appellant points to correspondence by Mr. Norris as evidence that the actions were taken to create a hostile work environment and retaliate against him for prior EEO activity. *See* IAF, Tab 26, Exhibit 96. The appellant annotated the email chain at points suggesting the communication was indicative of a hostile work environment. *Id.* at 1. The documentation actually reflects Mr. Norris' efforts to obtain counsel about how to appropriately deal with the appellant's colorblindness issue from various agency professionals who are charged with providing such advice and counsel to management. Mr. Dan Foster, whose email is annotated, and Alexis Delgado is a Labor Relations Specialist and Human Resources Manager, respectively. Tanya Daniels, RN is the Occupational Health – Nurse Administrator for the Seattle District.

The correspondence reflects that Mr. Norris approached them (and others who are not identified in the record) with his concern about how best to approach the issue of the appellant's colorblindness. The record reflects that he directed Mr. Marzac and Mr. Dow to follow the advice he was given, allowing the



appellant multiple opportunities and avenues to address the impact of his colorblindness on his ability to perform his job.   In addition to this correspondence, I thoroughly reviewed all the evidence of record, considered the testimony on the issue and conclude that the appellant has failed to meet his burden of showing that the inquiry into his colorblindness, or the events leading to his placement on enforced leave constituted a hostile work environment. Additionally, he has presented no evidence that the agency's action was causally or even casually, taken in retaliation for his prior EEO activity. Accordingly, this affirmative defense is DENIED and DISMISSED.

<u>The agency did not violate the Americans with Disability Act of 1990 (ADA)</u>

As a Federal employee, the appellant's claim arises under the Rehabilitation Act of 1973.  The regulatory standards for the Americans with Disabilities Act (ADA) have been incorporated by reference into the Rehabilitation Act, and the Board applied them to determine whether there has been a Rehabilitation Act violation.  29 U.S.C. § 791(g); *Pinegar v. Federal Election Commission,* 105 M.S.P.R. 677, ¶ 36 n. 3 (2007); 29 C.F.R. § 161.203(b).

The ADA Amendments Act of 2008 (ADAAA or Amendments) liberalized the definition of disability and were effective at all times relevant to this appeal. *See* P.L. 110-325, 122 Stat. 3553 (2008), codified at 2 U.S.C. 12010, et.seq. Although the record contains scant evidence of the extent of the appellant's colorblindness, I note that he represented to management that his impairment was significant enough for him to be unable to discern the difference between the colored dots which were implemented to track maintenance tasks.   Thus, I conclude that his colorblindness impacted the major life activity of seeing, and that he is an individual with a disability.

The agency is required to provide reasonable accommodation to the known limitations of a qualified individual with a disability.   A qualified individual with a disability is one with the skills, training and experience to perform the

essential functions of a position, with or without reasonable accommodation. 42 U.S.C. § 12111(8). Because of the dearth of evidence on this point, I assume, without finding, for the purpose of evaluating the appellant's claim, that he is a qualified individual with a disability.

The Board had held that an employee need only let his employer know in general terms that he needs accommodation for a medical condition, and is not required to use the magic words of "reasonable accommodation" in order to invoke the agency's responsibility to engage in the interactive process. *See Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 16 (2010) citing *Paris v. Department of the Treasury*, 104 M.S.P.R. 331 ¶ 17 (2006); 29 C.F.R. § 1630.2(o)(3); *EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, www.eeoc.gov/policy/docs/accomodation.html, at 5 (to make an accommodation request, an individual need only let the employer know that he needs an adjustment or change at work for a reason related to a medical condition and need not use the words "reasonable accommodation"). Thus, despite his claim otherwise, I find that the appellant's request for the agency to cease using the colored dots because of his colorblindness was a request for a reasonable accommodation. His request invoked the agency's obligation to engage in the interactive process to determine an appropriate accommodation. *Id.* However, the appellant was also required to cooperate in the interactive process, as the Board noted in *Simpson*, [b]oth parties have an obligation to assist in the search for appropriate accommodation, and both have an obligation to act in good faith in doing so." *Id.* citing *Collins v. U.S. Postal Service*, 100 M.S.P.R. 332, ¶ 11 (citing *Taylor v. Phoenixville School District*, 184 F.3d 296, 312 (3rd Cir. 1999)).

The appellant argues without citation to authority that the Duty Status Form issued by Nurse Daniels violated the ADA and agency regulations because it placed "me on Light Duty status without following due process – my

permission or consent." IAF, Tab 21 at 11.[8]   He also complains that the agency should not have initiated a DRAC referral because he did not request an accommodation. The appellant errs on both points.

While the Duty Status Report does reflect a general permanent restriction derived from Dr. Lum's report, it does not make any modification to the appellant's job. Instead, after the Duty Status Report was issued, the agency provided the appellant notice that he could request a permanent light duty position or request a reasonable accommodation through DRAC. The agency's Employee and Labor Relations Manual (ELM) § 864.1 provides that "employees may be required to participate in a focused physical examination addressing particular physical requirements" of their position. The appellant could have availed himself of a remedy by requesting a light duty assignment, but refused. He could have provided management specific information concerning how he was able to perform his work without accommodation, but he did not. The appellant could have contacted the DRAC to identify a reasonable accommodation to enable him to perform the essential duties of his position, but he did not.

In *Simpson*, the Board recognized as appropriate under the ADA, the agency's practice of requiring medical documentation "when it has a reasonable belief that the employee may not be able to perform the essential functions of his position or may pose a direct threat to the health or safety of himself or others." *Id.* at ¶ 17. Here, the agency had, I find, a reasonable belief that the appellant's colorblindness could pose a direct threat to the health or safety of himself or others.  HCD, Norris Testimony. The agency's many letters, and attempts to engage the appellant in conversation concerning his condition were consistent with its belief.   While the appellant may have disagreed with the agency's

---

[8] The appellant also alleged that staffing changes beginning in January 2012 violated the Act, but this claim was considered in his EEOC appeals and does not involve the adverse action at issue in this appeal, and had not been considered. IAF, Tab 21 at 5; *see also* IAF, Tab 10, Exhibits 81, 82.

proactive approach, he did not respond to the agency's request that he to engage in an interactive process to assess an appropriate solution to the problem, whether by a reasonable accommodation, a permanent light duty assignment in his current position or any other of the myriad of options that could have been devised. While the appellant's allegation of a violation of the ADA is unartful, I have considered whether any action taken by the agency violated the ADA and find none. Accordingly, under these circumstances, I find that the appellant's affirmative defense must be DENIED and DISMISSED.

**The agency did not retaliate against the appellant because of his Whistleblower activity**

The appellant raises an affirmative defense of whistleblower retaliation. Because the WPA does not apply, whistleblowing claims by Postal Service employees are subject to a higher standard of proof than employees covered by the WPA. *Mack v. U.S. Postal Service,* 48 M.S.P.R. 617 (1991). To prove an affirmative defense of reprisal for whistleblowing, the appellant must show by a preponderance of the evidence that (1) a protected disclosure was made; (2) the accused official knew of the disclosure; (3) the adverse action under review could have been retaliation under the circumstances; and (4) there was a genuine nexus between the alleged retaliation and the adverse action. *Id.,* citing *Warren v. Department of the Army*, 804 F.2d at 656-58. Under this standard, unlike under the WPA, there is no burden shifting to the agency to show by clear and convincing evidence that it would have taken the same personnel action absent any disclosure. *See e.g., Grubb v. Department of the Interior,* 96 M.S.P.R. 361, ¶ 11 (2004); *Redschlag v. Department of the Army,* 89 M.S.P.R. 589, 70 (2001) *rev. dismissed,* 32 Fed. Appx. 543 (Fed. Cir. 2002).

During the prehearing conference, the appellant clarified that he alleged that disclosures he made to the Judicial Officer of the agency's Office of the Administrative Judge (OAJ) resulted in retaliation against him when the agency effectuated his enforced leave. On April 6, 2013, the appellant submitted a

pleading titled "Application to the Office of the Recorder . . . For the Office of Administrative Law Judge or Judicial Officer's Review. IAF, Tab 2, Addendum, Exhibit 10. The appellant stated that he was requesting review by OAJ of the agency's National Equal Employment Opportunity Investigative Services Office's (NEEISO) Partial Acceptance/Partial Dismissal of his formal EEO complaint dated March 25, 2013. In the context of his Application, the appellant made a variety of complaints about the agency's EEO process questioning their authority, administrative processes and practices, hiring of outside investigators, but essentially complaining that all of the allegations raised in his EEO complaint were not approved as the issues to be investigated.

The appellant also complained that the agency's Workplace Improvement Program (WIP) investigations were not being conducted by OIG investigators, and the hotline was inoperable which posed a problem for him when he had to report his hostile work environment claim directly to Mr. Norris. He alleged that he told Mr. Norris that "Ken Dow was causing a HWE by giving me direct orders, refusing to provide those orders in writing, threatening me with discharge, and telling me that taking wood out of the dumpster was stealing." *Id.* at 13-14.

The appellant also restated many of the allegations which were included in his prior EEO complaints. The pleading stated that he sent a copy of the document to Patrick Donahue, the Postmaster General, and to the NEEOISO. The appellant received no response from the AJO. Rather, on April 25, 2013, the NEEOISO Executive Manager William Caldwell responded. *Id.*, Tab 2, Addendum, Exhibit 12. While the response was pointed and extremely critical of the appellant's tactics during the EEO process, the correspondence contains no indication that it was sent to anyone other than the appellant. *Id.*

Under 5 U.S.C. § 2302(b)8), a disclosure is:

> [A]ny disclosure of information by an employee . . . which the employee reasonably believes evidences —

> (i) a violation of any law, rule or regulation, or (ii) gross
> mismanagement, a gross waste of funds, an abuse of authority, or
> a substantial and specific danger to public health or safety.

*Id.* Although it is questionable whether any of the "statements" made by the appellant actually constitute a "protected disclosure," I find it unnecessary to make a determination since even if the appellant made a protected disclosure to the AJO and to the NEEOISO, there is no evidence that anyone in his management chain was aware of his April 8, 2013 letter or of the NEEOISO's response. Thus, the appellant cannot satisfy the second prong of his burden of proof.

Moreover, even if I assume that management was aware of his April 6, 2013 letter to the AJO, and the disclosures therein, the appellant must show that the agency's placement of him on enforced leave could have been retaliation for the letter. The appellant has pointed to various statements in the letter which show the displeasure of NEEOISO with his letter, as evidence of retaliatory motive. However, there is no evidence that Mr. Dow, writer of the April 8, 2013 letter, Mr. Marzac, who issued the proposal on May 8, 2013, or Mr. Norris who issued the decision on May 30, 2013, considered the alleged disclosures in insisting that the appellant engage in either the DRAC process, request a permanent light duty position or otherwise address their concerns about his colorblindness. Had the appellant participated in the process, the preponderance of the evidence shows that the enforced leave would never have been implemented. Therefore, I find that the appellant has failed to show that his enforced leave was motived by a retaliatory motive due to his whistleblowing activity. Accordingly, the affirmative defense is DENIED and DISMISSED.

Nexus and Penalty

When a charge is sustained by preponderant evidence, the agency must show that there is a nexus between the sustained charge and either the employee's ability to accomplish his duties satisfactorily or some other legitimate

government interest. *Hatfield v. Department of the Interior*, 28 M.S.P.R. 673 (1985). The Board has noted that an agency establishes nexus by showing that an employee's conduct "(1) affected the employee's or his coworkers' job performance, (2) affected management's trust and confidence in the employee's job performance, or (3) interfered or adversely affected the agency's mission." *Adams v. Department of Labor*, 112 M.S.P.R. 288, 292 (2009) citing *Johnson v. Department of Health and Human Services*, 86 M.S.P.R. 501, 509 (2000), *aff'd*, 18 Fed. Appx. 837 (Fed. Cir. 2001) *cert. denied* 534 U.S. 954, 122 S.Ct. 354 (Mem) (2001). A fourth way is that a rebuttable presumption of nexus may arise from certain egregious types of misconduct. *Beasley v. Department of Defense*, 52 M.S.P.R. 272, 274 (1992)

Here, I find that nexus has been established by preponderant evidence. Mr. Norris testified that the agency had a valid and sincere concern about health and safety after they became aware of the appellant's colorblindness. He argued that the agency needed to be assured that the appellant could perform his job with or without reasonable accommodation. He articulated concern that the appellant worked with live electrical circuits and could accidently cause equipment failure, electrocution and even death. In *Simpson*, the Board implicitly approved this as having a nexus to the efficiency of the service when it acknowledged as reasonable the agency's practice of inquiring when there is a reasonable belief that an employee's medical condition may interfere with performance of the essential functions of his position and may pose a threat to the health or safety of himself or others. 113 M.S.P.R. 346 at ¶ 17. Here, I find that the agency was reasonably concerned that the appellant's colorblindness should be examined to ascertain what limitations, if any, were appropriate to assure health and safety. Accordingly, I find that the agency has established a nexus to its action and the efficiency of the service.

The penalty in this enforced leave act was a suspension[9] of indeterminate length. Mr. Norris advised the appellant as follows:

> I want to make clear that your placement on enforced leave is a direct result of your refusal to interact with management on this very important issue. Should you decide that you would like to interact with management, please feel free to contact myself or Dave Marzac. You continue to have the right to request reasonable accommodation and/or light duty. However, as previously mentioned, you must avail yourself of these options which includes a willingness to sit down and discuss your medical limitations, if any, and the impact of your medical limitations on the performance of the essential functions of your job. Absent your participation, management cannot made a proper determination. By and through this letter, I encourage you to avail yourself of your options.

IAF, Tab 21, AgHE 8 at 1. In *Norrington v. Department of the Air Force*, 83 M.S.P.R. 23, ¶ 10 (1999), the Board found that the agency properly notified the appellant of the parameters of the enforced leave penalty when it advised him that leave would continue until he submitted adequate medical documentation reflecting he was capable of performing his duties without injury to h'

Here, the appellant was advised that to end the period of enforced le: needed only to cooperate in the interactive process, request a ligl assignment and/or sit down with management to discuss his lim Accordingly, I find that the penalty was proper and the enforced leave SUSTAINED.

The appellant's statutory right to advance notice was improperly shorten

Neither party raised this issue, however. I raise it *sua sponte*. *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 678 (1991) (the administrative judge did not err by addressing *sua sponte* issues harmful error). As a Federal

---

[9] The record indicates that the appellant used sick and annual leave until mid-September 2013, when he exhausted his leave balances, and thereafter was in leave without pay status (LWOP). At the time of the hearing, he remained in LWOP status. HCD, Dow Testimony.

employee entitled to rights under Chapter 75, the appellant was entitled to 30 days advance notice before he was placed in enforced leave. Here, the agency's proposal was issued on May 8, 2013 and the decision was issued on May 30, 2013, 22 days later. The decision could be issued any time after the response period ended, but the effective date of the enforced leave should not been prior to June 7, 2013, 30 days after the proposal. The failure to provide the appellant the full 30 days' notice violated his statutory right to a full notice period. *Callery v. Department of Justice,* 50 M.S.P.R. 158, 162 (1991); 5 U.S.C. § 7513(b)(1). The notice of proposed enforced leave gave the appellant 10 days to respond to the notice, but the appellant made no effort to file a response either before or after the 10 day period. IAF, Tab 21, AgHE 7.

In order for the statutory notice violation to result in reversal of the agency's action, the appellant must show by preponderant evidence that his defense was prejudiced by the shortened notice period, or that the agency's decision could have been different had he been afforded 30 days' advance notice. *Id., see also Stephen, supra.* Here, I find that the appellant has not alleged that the shortened notice period in any way affected his ability to defend the action. In fact, after review of the record, I conclude that the appellant had no intention of responding to the proposal. I have found no evidence that had the notice period extended for the full 30 days, the appellant would have made an effort to respond orally or in writing to Mr. Norris as directed in the proposal. Absent the appellant cooperation to ascertain the effect of his colorblindness during the notice period, I find the enforced leave would have been imposed. Therefore, I find no evidence that the appellant was harmed by the shortened notice period, and find no basis to reverse the agency's enforced leave based on the shortened notice.

The Board has long held that in the "absence of a showing of harm, where an agency improperly shortens the requisite 30 day period, the Board remedies the error by ordering the agency to compensate the appellant for the full 30 day

period." *Callery*, 50 M.S.P.R. at 162. The record shows that the appellant was placed on annual leave on May 30, 2013 and remained on annual leave through June 7, 2013. IAF, Tab 2, Addendum, Exhibit 31. This was error, and the agency is below ordered to restore the appellant's annual leave for the 8 days, and make appropriate adjustments to compensate the appellant his regular pay for the full notice period.

## DECISION

The agency's action is AFFIRMED AS MODIFIED.

## ORDER

I **ORDER** the agency to commence the enforced leave on June 7, 2013. This action must be accomplished no later than 20 calendar days after the date this initial decision becomes final.

I **ORDER** the agency restore the appellant's annual leave for the period May 30, 2013 – June 7, 2013, and to pay appellant by check or through electronic funds transfer for the appropriate amount of back pay, if any, with interest and to adjust benefits with appropriate credits and deductions in accordance with the Office of Personnel Management's regulations no later than 60 calendar days after the date this initial decision becomes final. I **ORDER** the appellant to cooperate in good faith with the agency's efforts to compute the amount of back pay and benefits due and to provide all necessary information requested by the agency to help it comply.

If there is a dispute about the amount of back pay due, I **ORDER** the agency to pay appellant by check or through electronic funds transfer for the undisputed amount no later than 60 calendar days after the date this initial decision becomes final. Appellant may then file a petition for enforcement with this office to resolve the disputed amount.

I **ORDER** the agency to inform appellant in writing of all actions taken to comply with the Board's Order and the date on which it believes it has fully

complied.   If not notified, appellant must ask the agency about its efforts to comply before filing a petition for enforcement with this office.

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.   I **ORDER** the agency to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

FOR THE BOARD: 

_____
Grace B. Carter
Administrative Judge

## NOTICE TO PARTIES CONCERNING SETTLEMENT

The date that this initial decision becomes final, which is set forth below, is the last day that the parties may file a settlement agreement, but the administrative judge may vacate the initial decision in order to accept such an agreement into the record after that date.  *See* 5 C.F.R. § 1201.112(a)(4).

## NOTICE TO APPELLANT

This initial decision will become final on **June 2, 2015**, unless a petition for review is filed by that date.  This is an important date because it is usually the last day on which you can file a petition for review with the Board.  However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision.  If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your

representative, <u>whichever comes first</u>.  You must establish the date on which you or your representative received it.  The date on which the initial decision becomes final also controls when you can file a petition for review with the Equal Employment Opportunity Commission (EEOC) or with a federal court.   The paragraphs that follow tell you how and when to file with the Board, the EEOC, or the federal district court.  These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review.  Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record.  You must file it with:

> The Clerk of the Board
> Merit Systems Protection Board
> 1615 M Street, NW.
> Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing.  A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

### Criteria for Granting a Petition or Cross Petition for Review

The criteria for review are set out at 5 C.F.R. § 1201.115, as follows:

The Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact; (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case;

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case;

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed;

(e) Notwithstanding the above provisions in this section, the Board reserves the authority to consider any issue in an appeal before it.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of

authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R. § 1201.4(j). If the petition is filed electronically, the online process itself will serve the petition on other e-filers. *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS   ~ *Director of*

You have the right to request further review of this decision only after it becomes final, as set forth above.

*Office of Personne*

*Mangeme*

Discrimination Claims:  Administrative Review

You may request review of this decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You, or your representative if you are represented, should send your request to EEOC no later than 30 calendar days after the date this decision becomes final.  If you choose to file, be very careful to file on time.

## Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You, or your representative if you are represented, must file your civil action with the district court no later than 30 calendar days after the date this decision becomes final. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e5(f) and 29 U.S.C. § 794a.

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

LANCE MCDERMOTT,
            Appellant,

    v.

UNITED STATES POSTAL SERVICE,
            Agency.

DOCKET NUMBER
SF-0752-13-0633-I-1

DATE: October 13, 2015



## THIS ORDER IS NONPRECEDENTIAL[1]

<u>Lance McDermott</u>, Seattle, Washington, pro se.

<u>Steven B. Schwartzman</u>, Esquire, Seattle, Washington, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### REMAND ORDER

¶1    The appellant has filed a petition for review of the initial decision, which affirmed his placement on enforced leave. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* <u>5 C.F.R. § 1201.117</u>(c).

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2     The appellant holds the position of Maintenance Mechanic. Initial Appeal File (IAF), Tab 2 at 1, Tab 21 at 10-13.   Among other things, the physical requirements of the position include the ability to distinguish colors. IAF, Tab 21 at 13. In February 2013, the agency requested that the appellant submit medical documentation relating to his vision after he claimed he was unable to differentiate some colors.   *Id.* at 14.   Subsequently, the appellant provided medical documentation from an optometrist, Dr. A.L., indicating that the appellant "exhibits red green colorblindness." *Id.* at 15.

¶3     In March 2013, the agency asked the appellant if he wanted to request accommodation for his vision, but he informed the agency that he did not want to participate in the reasonable accommodation process. *Id.* at 17.   The agency again attempted to engage the appellant in the reasonable accommodation process in April 2013, expressing concern that his inability to distinguish colors could pose a safety hazard for himself and others, particularly concerning the wiring of equipment. *Id.* at 18. The appellant did not respond. *See id.* at 18, 20.

¶4     In May 2013, the agency's Manager, Maintenance Operations, D.M., proposed placing the appellant on enforced leave because the agency was "unable to determine that [he] can work safely due to [his] color blindness and repeated attempts to engage [him] have been unsuccessful." *Id.* at 20-21.   The proposal again informed the appellant that he could request light duty or reasonable accommodation. *Id.* at 20. After the appellant failed to respond within the time provided for doing so, the agency's Manager, Maintenance Lead, J.N., issued a decision placing the appellant on enforced leave. *Id.* at 22-24.   The decision letter noted that the action was a result of the appellant's refusal to interact with management concerning his vision and that he still could request light duty or reasonable accommodation. *Id.* at 22.

¶5     The appellant filed a Board appeal, challenging his placement on enforced leave. IAF, Tab 2 at 3, 5. After holding the requested hearing, the administrative

judge affirmed the agency's action, as modified. IAF, Tab 52, Initial Decision (ID). She found that the agency met its burden concerning proof of the charge, nexus, and penalty, ID at 9-13, 21-23, and that the appellant failed to prove his affirmative defenses, ID at 13-21. However, the administrative judge modified the start of the enforced leave by 8 days to account for the agency improperly shortening the appellant's statutory right to advance notice by that amount. ID at 23-25; *see* 5 U.S.C. § 7513(b)(1). The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has not filed a response.

**The agency met its burden of proving the charge but remand is required for further adjudication of two of the appellant's affirmative defenses.**

¶6      The appellant presents a number of allegations that implicate the administrative judge's fact findings regarding the agency's charge and his affirmative defenses.[2]  *Id.* at 7-31. Because the appellant is pro se, we have construed his petition liberally. *See Melnick v. Department of Housing & Urban Development*, 42 M.S.P.R. 93, 97 (1989) (discussing that a pro se appellant's pleadings are to be liberally construed), *aff'd*, 899 F.2d 1228 (Fed. Cir. 1990) (Table). We find that the agency proved its charge. However, we also find that the administrative judge failed to address the appellant's affirmative defense of reprisal for engaging in protected union activity. We further find that the appellant's affirmative defense of reprisal for engaging in equal employment opportunity (EEO) activity should be reconsidered in light of our recent decision, *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015).

---

[2] Because the appellant has presented no substantive arguments concerning nexus or penalty, we will not revisit the administrative judge's well-reasoned findings as to the same. ID at 21-23; *see Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (holding that there is no reason to disturb the administrative judge's conclusions when the initial decision reflects that she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *cf. Brown v. Department of the Interior*, 121 M.S.P.R. 205, ¶ 18 (2014) (finding that the traditional mitigating factors applicable to conduct-based adverse actions do not apply to those based on a physical inability to perform).

4

*The agency proved its charge.*

¶7        An agency's placement of an employee on enforced leave for more than 14 days constitutes an appealable suspension within the Board's jurisdiction. *See Abbott v. U.S. Postal Service*, <u>121 M.S.P.R. 294</u>, ¶ 10 (2014); *see also* <u>5 U.S.C. § 7512</u>(2). To sustain such a suspension, the agency must prove by preponderant evidence that the charged conduct occurred, a nexus exists between the conduct and the service efficiency, and the penalty is reasonable. *Abbott*, <u>121 M.S.P.R. 294</u>, ¶ 10.

¶8        The <u>agency did not provide a label for its charge</u>, but described the basis of its action as its inability to determine whether, in light of the appellant's medical condition of colorblindness, he could perform the essential functions of his position in a safe manner, with or without accommodation. IAF, Tab 21 at 22; *see Otero v. U.S. Postal Service*, <u>73 M.S.P.R. 198</u>, 202 (1997) (noting that an agency is not required to affix a label to a charge, but may simply describe actions that constitute <u>misbehavior in narrative form in its charge letter</u>). We thus determine that the agency was required to prove that it was unable to determine whether there was a high probability, given the nature of the work involved, that the appellant's condition might result in injury to himself or others. *Cf. Miller v. Department of the Army*, <u>121 M.S.P.R. 189</u>, ¶ 11 (2014) (providing that if an appellant does not occupy a position subject to medical standards, physical requirements, or medical evaluation programs, one way an agency may prove a charge of physical inability is by proving a <u>high probability</u>, given the nature of the work involved, that the medical condition may result in injury to the appellant or others). Although the Board will consider whether a reasonable accommodation exists that would enable an employee to safely and efficiently perform the core duties of the position, the <u>employee must cooperate in the agency's reasonable accommodation efforts</u>. *See id.* ¶¶ 11-12, 15, 19.

¶9        The appellant alleges that the administrative judge failed to properly consider the fact that his colorblindness existed when he was hired in 1996 and

never caused an accident. PFR File, Tab 1 at 7-8. However, it is undisputed that his position description requires the ability to distinguish colors to perform electrical maintenance work. IAF, Tab 21 at 10-13. It also is undisputed that the appellant has difficulties distinguishing between some colors. The appellant's optometrist diagnosed him with red/green colorblindness, *id.* at 15, while the appellant testified that he mixes up greens, browns, blues, and purples, Hearing Compact Disc (HCD) (testimony of the appellant).

¶10    The agency repeatedly tried to engage the appellant about associated safety concerns, but he refused to respond. *See, e.g.,* IAF, Tab 21 at 17-21. Accordingly, we agree with the administrative judge's conclusion that the agency proved its charge. ID at 11. Although the appellant may have performed in his position for many years without any accidents, the agency's concerns remained legitimate. *See Miller*, 121 M.S.P.R. 189, ¶ 11. The deciding official testified that the appellant's inability to distinguish colors posed a risk that he might connect electrical wires incorrectly, which could result in fatal injuries. HCD. The agency was unable to determine that the appellant could continue performing his duties safely and he refused to cooperate with the agency's inquiries as to the same.

>    *The administrative judge failed to address the appellant's affirmative defense of reprisal for engaging in protected union activity.*

¶11    When an appellant raises an affirmative defense in an appeal either by checking the appropriate box in an appeal form, identifying an affirmative defense by name, such as "race discrimination," "harmful procedural error," etc., or by alleging facts that reasonably raise such an affirmative defense, the administrative judge must address the affirmative defense(s) in any close of record order or prehearing conference summary and order. *Gath v. U.S. Postal Service*, 118 M.S.P.R. 124, ¶ 11 (2012). If an appellant expresses the intention to withdraw such an affirmative defense, the administrative judge must, at a minimum, in the close of record order or prehearing conference summary and

order, identify the affirmative defense, explain that the Board will no longer consider it when deciding the appeal, and give the appellant an opportunity to object to the withdrawal of the affirmative defense. *Id.*

¶12    Here, the appellant presented arguments concerning, inter alia, his acting as a union steward, representing fellow agency employees. *E.g.*, IAF, Tab 8 at 16 of 103, Tab 23 at 4-5, 18; PFR File, Tab 1 at 16-18.   We find that these submissions, when interpreted liberally, constitute an allegation that the appellant's enforced leave was reprisal for his engaging in protected union activity. *See Melnick*, 42 M.S.P.R. at 97.  Further, we found nothing in the record indicating that the appellant intended to withdraw that affirmative defense.

¶13    In notifying the appellant of his burden of proof, the administrative judge included a section titled "Retaliation for Engaging in EEO and other Protected Activity." IAF, Tab 38 at 9. However, the corresponding explanation exclusively referred to EEO activity. *Id.* at 9-11. The initial decision similarly includes a section that refers to the appellant's "prior EEO or other protected activity." ID at 13. But again, the corresponding analysis addresses EEO activity, without mention of union activity. ID at 13-16.

¶14    Because the administrative judge failed to explicitly address the appellant's allegation of reprisal for engaging in protected union activity as a distinct affirmative defense, we must remand for further adjudication. *See Gath*, 118 M.S.P.R. 124, ¶ 12 (finding that retaliation for EEO activity and union activity are separate affirmative defenses, and the failure to address one requires remand). To prove his affirmative defense of retaliation for engaging in union activity, on remand, the appellant must show that: (1) he engaged in protected activity; (2) the accused official knew of the activity; (3) the adverse action under review could have been retaliation under the circumstances; and (4) there was a genuine nexus between the alleged retaliation and the adverse action). *See*

*Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986)[3];
*Campo v. U.S. Postal Service*, 96 M.S.P.R. 418, ¶ 12 (2004).

> *The administrative judge should reconsider the appellant's affirmative defense of EEO reprisal.*

¶15       After the administrative judge issued the initial decision in this appeal, we issued a decision in *Savage*, 122 M.S.P.R. 612, clarifying the proper standard for allegations of retaliation for engaging in protected EEO activity. An appellant may establish this retaliation claim using direct evidence or any of three types of circumstantial evidence:   a convincing mosaic of evidence from which a discriminatory intent may be inferred; evidence of disparate treatment of similarly situated comparators; or evidence that the agency's stated reason is not worthy of credence but rather a pretext for discrimination. *Id.*, ¶¶ 42-43. A convincing mosaic can be inferred from evidence of suspicious timing, ambiguous statements, behavior towards and comments directed at other protected employees, and other relevant "bits and pieces" of evidence. *Id.* ¶ 42 (quoting *Troupe v. May Department Stores Company*, 20 F.3d 734, 736-37 (7th Cir. 1994)). If an appellant shows by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action, violating 42 U.S.C. § 2000e-16, the Board will inquire whether the agency has

---

[3] We recently issued a decision discussing the standards for adjudicating an affirmative defense of retaliation for engaging in union activity. *See Alarid v. Department of the Army*, 122 M.S.P.R. 600 (2015). In doing so, we noted that the statutory changes of the Whistleblower Protection Enhancement Act of 2012 significantly narrowed the scope of cases to which the *Warren* standard applies. *Id.*, ¶ 15 & n.7 (referencing *Warren*, 804 F.2d at 656-58). Because the appellant's employer is the U.S. Postal Service, the *Warren* standard still applies in this case, for purposes of the appellant's allegation of retaliation for engaging in union activity. *See Mack v. U.S. Postal Service*, 48 M.S.P.R. 617, 621-22 (1991) (finding that U.S. Postal Service employees are subject to the *Warren* standard for retaliation affirmative defenses, rather than the contributing factor standard, because the U.S. Postal Service is not an "agency" as defined under 5 U.S.C. § 2302(a)(2)(C) and its employees may not bring an individual right of action under 5 U.S.C. § 1221); *Savage*, 122 M.S.P.R. 612, ¶¶ 42-43, 49-51 (effectively limiting the scope of *Warren* and *Mack* by establishing a distinct standard for an affirmative defense of retaliation for engaging in EEO activity).

shown by preponderant evidence that it still would have taken the contested action in the absence of the discriminatory or retaliatory motive. *Id.*, ¶¶ 49-51. If the agency meets that burden, its violation will not require reversal of the action. *Id.*, ¶ 51.

¶16    The administrative judge found that management was aware of the appellant's protected activity, which took place in 2012 and 2013. ID at 15; *see, e.g.,* IAF, Tab 26 at 40. However, he failed to consider whether this timing was part of a convincing mosaic of discriminatory intent. *See* ID at 15. Further, because *Savage* was issued after the initial decision in this case, the administrative judge's instructions to the appellant regarding proof of his affirmative defense of EEO reprisal did not provide the appellant with notice of the correct standards. IAF, Tab 38 at 9-11; *see Milner v. Department of Justice*, 77 M.S.P.R. 37, 46 (1997) (finding that an appellant did not receive a fair and just adjudication of an affirmative defense where there was no indication the administrative judge apprised him of the applicable burdens of proof or of the types of evidence required to meet his burden). For example, the administrative judge advised the appellant that his proof could consist of elements of his prima facie case of reprisal under the burden-shifting framework applicable to motions for summary judgment; however, the prima facie case has no application to the Board's adjudication of EEO reprisal claims. *See* IAF, Tab 38 at 10; *see Savage*, 122 M.S.P.R. 612, ¶ 46 (reflecting that the summary judgment standards for Title VII cases do not apply to Board appeals).

¶17    On remand, the administrative judge should instruct the parties of the standards of proof applicable to a claim of EEO reprisal pursuant to *Savage*, and provide them with an opportunity to further develop the evidence. The administrative judge's new decision should incorporate the *Savage* standard for analyzing the appellant's allegation of reprisal for EEO activity.

*The appellant failed to prove any other affirmative defense.*

¶18     Concerning his other affirmative defenses, the appellant's petition presents varying allegations of agency impropriety, PFR File, Tab 1 at 8-22, 27-29, but none provide a basis for reversing his enforced leave. For example, the appellant alleges that the agency violated the Family and Medical Leave Act of 1993 (FMLA), Americans with Disabilities Act (ADA), and Privacy Act by requesting and discussing documentation concerning his medical condition. *Id.* at 12-14. In addition, he argues that he was not responsible for responding to the agency's offers regarding reasonable accommodation. *Id.* at 15-16. According to the appellant, he had a constitutional right to remain silent regarding his vision issues and the proposed enforced leave, and the agency's concerns about his condition amounted to harassment. *Id.* at 19-21.

¶19     We agree with the administrative judge's finding that the agency requested medical documentation only after the appellant reported difficulties distinguishing colors, which raised safety concerns and questions about his ability to perform job duties. ID at 16-18; *see, e.g.,* IAF, Tab 21 at 14. The appellant has failed to show how those inquiries and discussions exceeded that which is permissible. *See* 5 U.S.C. § 552a(b)(1) (containing an exception to the general prohibition on disclosure under the Privacy Act for disclosures to agency employees who require the records at issue to perform their duties); *see also* 42 U.S.C. § 12112(d)(4)(A) (a disability-related inquiry is permissible under the ADA if "job-related and consistent with business necessity"); *Archerda v. Department of Defense,* 121 M.S.P.R. 314, ¶¶ 29-30 (2014) (holding that generally, a disability-related inquiry or medical examination may be job-related and consistent with business necessity if an employer has a reasonable belief, based on objective evidence, that  (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a significant risk of substantial harm to self or others that cannot be

eliminated by reasonable accommodation); 29 C.F.R. §§ 825.500(g)(1)[4] (permitting an agency to provide medical restrictions to supervisors and managers without violating the FMLA), 1630.14(c)(1)(i) (permitting an employer to provide medical restriction to supervisors and managers without violating the ADA).

¶20    We also agree with the administrative judge's finding that the appellant's request that the agency cease its use of a newly implemented color coding system due to his colorblindness was a request for accommodation, despite the appellant's assertion on review that he did not request or want accommodation. ID at 17; HCD (testimony of the deciding official); *see Paris v. Department of the Treasury*, 104 M.S.P.R. 331, ¶ 17 (2006) (finding that an employee need only let his employer know in general terms that he needs accommodation for a medical condition). Accordingly, while the appellant generally contends that he had a right to be left alone, he actually was obligated to cooperate in the interactive process for reasonable accommodation. *See Rosario-Fabregas v. Department of the Army*, 122 M.S.P.R. 468, ¶¶ 18-19 (2015); *Brown*, 121 M.S.P.R. 205, ¶ 22; *Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 16 (2010). Finally, we agree with the administrative judge's finding that the appellant failed to prove retaliation for whistleblowing activity. ID at 19-21. The administrative judge found that, even if his disclosures were protected and management knew of them, the appellant failed to present any connection between his protected activity and his placement on enforced leave. ID at 20-21; *see Mack*, 48 M.S.P.R. at 621-22 (holding that U.S. Postal Service employees are subject to a higher standard of proof for whistleblower reprisal affirmative defenses, requiring that they show, inter alia, that there was a genuine nexus between the alleged retaliation and the adverse action). The appellant has presented nothing on review warranting a contrary conclusion.

---

[4] As a U.S. Postal Service employee, the appellant is entitled to FMLA leave under the provisions of 29 U.S.C. § 2601 and 29 C.F.R. part 825. *Young v. U.S. Postal Service*, 79 M.S.P.R. 25, 35 n.4 (1998).

**The administrative judge exercised proper discretion in excluding evidence and witnesses.**

¶21    The appellant asserts that the administrative judge affected his fundamental rights and curtailed his ability to present his case by excluding some of his evidence and witnesses.  PFR File, Tab 1 at 4.  He also asserts that the administrative judge erred by allowing the agency to submit some of the same evidence that he submitted.  *Id.* at 4-5; *compare, e.g.,* IAF, Tab 21 at 10-14, *with* IAF, Tab 2 at 14 of 253, Tab 31 at 14-15.  We find no merit in either assertion.

¶22    An administrative judge has broad discretion to regulate the course of the hearing and to exclude evidence and witnesses that have not been shown to be relevant, material, and nonrepetitious.  *Thomas v. U.S. Postal Service,* 116 M.S.P.R. 453, ¶ 4 (2011); *Franco v. U.S. Postal Service,* 27 M.S.P.R. 322, 325 (1985); 5 C.F.R. § 1201.41(b)(8), (10).  To obtain reversal of an initial decision on these grounds, the petitioning party must show that a relevant witness or evidence, which could have affected the outcome, was disallowed.  *See Thomas,* 116 M.S.P.R. 453, ¶ 4; *Karapinka v. Department of Energy,* 6 M.S.P.R. 124, 127 (1981) (stating that an administrative judge's procedural error is of no legal consequence unless it is shown to have adversely affected a party's substantive rights).

¶23    The administrative judge did exclude a number of documents the appellant filed below as evidence, concluding that they were irrelevant to his appeal.  IAF, Tab 38 at 11-12 (referencing the appellant's exhibits 15, 39-49, 56, 61, 66-70, 72-76, 78, 90); *see* IAF, Tab 2 at 90-91, 202-53 of 253, Tab 8 at 64-71, 87-88, 119-70, 172-89, 193-203, Tab 13 at 27-28.  She also excluded transcripts from conversations the appellant recorded because he admitted lacking permission to record the conversations in potential violation of state law, and because she deemed the transcripts untrustworthy since they were created by the appellant rather than a third party.  IAF, Tab 38 at 12 (referencing the appellant's exhibits 101-02); *see* IAF, Tab 26 at 100-14; Wash. Rev. Code § 9.73.030(1)(b).  Finally,

the administrative judge denied the appellant's request to call two of his proposed witnesses because she found no relevance to their proffered testimony. IAF, Tab 38 at 11; *see* IAF, Tab 23 at 4.

¶24     Although the appellant summarily claims that the aforementioned evidence and witnesses were excluded improperly and that they "would have changed the results of the hearing," he failed to present any substantive argument in support of that assertion. PFR File, Tab 1 at 4; *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision). Without any explanation to the contrary, much of the excluded evidence appears unrelated to the appellant. *See, e.g.*, IAF, Tab 2 at 90-91, 210-13 of 253, Tab 8 at 64-71. Other evidence is more clearly related to the appellant, but nevertheless appears unrelated to the instant appeal. *See, e.g.*, IAF, Tab 2 at 202-09, Tab 8 at 119-30. Similarly, the relevance of the two excluded witnesses to the appellant's appeal is not apparent. IAF, Tab 23 at 4.

¶25     In the absence of any explanation why the excluded evidence and witnesses are relevant and how their exclusion affected the outcome of his appeal, we are unable to find any merit to the appellant's claim. We also find unpersuasive his assertion that the administrative judge erred by allowing the agency to submit evidence that was similar or duplicative of his own. The appellant has not shown any resulting harm.

The administrative judge properly denied the appellant's request to consolidate his Board appeal with his EEO complaints.

¶26     In his petition, the appellant seems to argue that the administrative judge erred by not consolidating his Board appeal with his EEO complaints. PFR File, Tab 1 at 5-6; *see* IAF, Tab 12 at 4-5. We disagree.

¶27     Under 5 U.S.C. § 7702(a)(1), in the case of any employee who has been affected by an action that he may appeal to the Board, and who alleges that "a basis for the [appealable] action" was prohibited discrimination, the Board shall

decide "both the issue of discrimination and the appealable action." Under 5 C.F.R. § 1201.36, an administrative judge may consolidate or join two or more appeals under certain circumstances.

¶28     The appellant appears to confuse the aforementioned legal concepts, which are distinct and unrelated. The administrative judge acknowledged the Board's responsibilities under 5 U.S.C. § 7702(a)(1) and adjudicated the appellant's allegations accordingly, ID at 13-21, but the appellant argues that the administrative judge should have adjudicated his pending EEO complaints at the same time. Citing the Board's regulation for consolidation and joinder, 5 C.F.R. § 1201.36, the appellant requested that the administrative judge consolidate his Board appeal and EEO complaints. IAF, Tab 20; see IAF, Tab 12 at 4-5. According to the appellant, the claims were "inextricably intertwined." PFR File, Tab 1 at 5.   However, nothing in 5 C.F.R. § 1201.36 provides for the consolidation or joinder of a Board appeal with an appeal from another tribunal. See generally Lethridge v. U.S Postal Service, 99 M.S.P.R. 675, ¶ 9 (2005) (finding that nothing in the plain language of sections 7512, 7513(d), and 7702(a)(1) of title 5 suggests that the Board has jurisdiction over otherwise nonappealable actions when those actions are allegedly "inextricably intertwined" with otherwise appealable actions).   Therefore, we discern no error in the administrative judge's conclusion that she could not consolidate the appellant's EEO complaints with his Board appeal.

The administrative judge properly denied the appellant's request to disqualify the agency's representative.

¶29     The appellant argues that the administrative judge erred in failing to grant his request to disqualify the agency's attorney. PFR File, Tab 1 at 6-7; see IAF, Tab 12 at 3-4, Tab 38 at 14. We disagree.

¶30     The Board's regulations allow parties wide discretion in choosing their representatives, subject only to disqualification for conflict of interest or position. Walton v. Tennessee Valley Authority, 48 M.S.P.R. 462, 469 (1991); 5 C.F.R.

14

§ 1201.31(a)-(c).  Apart from these bases for disqualification, a party's choice of representative is personal to him and, similarly, an agency may choose to be represented by an attorney or a nonattorney, at its discretion.  *Walton*, 48 M.S.P.R. at 469.

¶31      The appellant seems to suggest that disqualification was required because the agency's attorney filed evidence relating to the appellant's military record and Board jurisdiction that the appellant was able to rebut with evidence of his own. PFR File, Tab 1 at 6-7.  He also seems to suggest that disqualification was required because the agency was obligated to use a nonattorney representative for his Board appeal.  *Id.* at 6-7.  However, the appellant has not shown or even alleged that the agency's representative had a conflict of interest or position.  Nor has he shown that the agency's representative engaged in contumacious conduct warranting his exclusion from the proceedings.  *See* 5 C.F.R. §§ 1201.31(d), .43(d) (permitting the exclusion of a party's representative for contumacious conduct or conduct prejudicial to the administration of justice); Black's Law Dictionary 337 (9th ed. 2009) (defining "contumacious conduct" as "willful disobedience of a court order").  Therefore, his arguments that the agency's representative should have been disqualified fail.

The appellant's remaining arguments on review also fail.

¶32      The appellant seems to allege that the agency acted improperly when he requested a return to work following a medical certification that he was fit for duty.  PFR File, Tab 1 at 22-26.  However, the propriety of placement on enforced leave and the continuation of enforced leave are distinct matters.  *See Rhodes v. Merit Systems Protection Board*, 487 F.3d 1377, 1380 (Fed. Cir. 2007). For instance, if an employee on enforced leave comes forward with evidence that he has become fit for duty, that employee should be immediately returned to duty; but such evidence does not require reversal of the enforced leave in its entirety when it was initiated properly based on the information available to the agency at the time it made that decision.  *See Norrington v. Department of the*

15

*Air Force*, 83 M.S.P.R. 23, ¶¶ 8-9 (1999). In addition, the certification at issue is signed by a physician's assistant at a family medical practice. IAF, Tab 10 at 38-41, Tab 51 at 2-3. It provides that the appellant has medical conditions, including colorblindness, but he has no medical restrictions. IAF, Tab 10 at 39. However, that same certification alludes to an inability to work on colored wiring. *Id.* Therefore, as the administrative judge properly found, the appellant has identified no basis by which this certification could be used to compel the agency to return him to duty without addressing the underlying concern that remains, the impact of his colorblindness on his ability to perform the essential functions of his position in a safe and compliant manner. ID at 12-13.

¶33      Although we have considered the appellant's remaining arguments, such as his allegation that the agency has no official policy concerning enforced leave and his request for nominal, compensatory, and punitive damages, *e.g.*, PFR File, Tab 1 at 26-27, we are not persuaded.

## ORDER

¶34      For the reasons discussed above, we vacate the initial decision and remand this case to the regional office for further adjudication in accordance with this Remand Order. On remand, the administrative judge should apprise the appellant of the different burdens of proof he must meet to prove his affirmative defenses of retaliation for protected union activity and retaliation for protected EEO activity; afford the appellant an opportunity for discovery on these issues; and hold a supplemental hearing to address these two affirmative defenses, if requested. *See Savage*, 122 M.S.P.R. 612, ¶ 46 (observing that the Board has no authority to grant summary judgment in light of an appellant's right to a hearing); *Alarid*, 122 M.S.P.R. 600, ¶ 18 (2015) (advising an administrative judge to hold a supplemental hearing on union reprisal and other affirmative defenses if requested); *Gath*, 118 M.S.P.R. 124, ¶ 13 (holding the same with regard to a union reprisal affirmative defense). The administrative judge must issue a new

initial decision that addresses those two affirmative defenses and their effect on the outcome of the appeal, if any, giving appropriate consideration to any additional relevant evidence developed on remand.[5]  *See Alarid*, 122 M.S.P.R. 600, ¶ 18; *Gath*, 118 M.S.P.R. 124, ¶ 13.  If the appellant does not prevail on either of those two affirmative defenses on remand, the administrative judge may adopt her prior findings concerning the agency's charge, nexus, and the reasonableness of the penalty, and the appellant's remaining affirmative defenses, in her remand initial decision.  *See Alarid*, 122 M.S.P.R. 600, ¶ 18; *Gath*, 118 M.S.P.R. 124, ¶ 13.

FOR THE BOARD:

                                            _____
                                            William D. Spencer
                                            Clerk of the Board

Washington, D.C.

---

[5] The administrative judge should reconsider the previously excluded evidence, to the extent that it may pertain to the affirmative defenses requiring further adjudication. IAF, Tab 2 at 214-52 of 253, Tab 38 at 11-12.