# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### WESTERN REGIONAL OFFICE

LANCE MCDERMOTT,
                    Appellant,

            v.

UNITED STATES POSTAL SERVICE,
                    Agency.

DOCKET NUMBER
SF-0752-13-0633-B-1

DATE: February 12, 2016

Lance McDermott, Seattle, Washington, pro se.

Steven B. Schwartzman, Seattle, Washington, for the agency.

## BEFORE
Grace B. Carter
Administrative Judge

## INITIAL DECISION

## INTRODUCTION

On June 25, 2013, the appellant timely filed an appeal challenging the agency's action dated May 30, 2013 placing him in an enforced leave status from his position as a Maintenance Mechanic. Initial Appeal File (IAF), Tab 2. A hearing in the initial appeal was held on November 21, 2013, and a transcript of the proceeding was prepared on December 23, 2014. Hearing Transcript (HT). The Board has jurisdiction over this appeal pursuant to 5 U.S.C. §§ 7511, 7512 and 7701 and 39 U.S.C. § 1005(a). On April 28, 2015, I issued an Initial Decision affirming the agency's action and denying the appellant's affirmative defenses. The appellant filed a Petition for Review. Petition for Review File (PFRF), Tab 1. On October 13, 2015, the Board issued a Nonprecedential Final

Order (NPFO) affirming the agency's action, and remanding the case for further proceedings concerning the appellant's affirmative defenses, consistent with the NPFO. A hearing on remand was conducted on January 28, 2016. Hearing Compact Disc (HCD), Board Remand File (BRF), Tab 35. For the following reasons, the appellant's affirmative defenses are DENIED and the appeal is DISMISSED.

## ANALYSIS AND FINDINGS

### The Remand Order

In its NPFO on October 13, 2015, the Board ordered that I address the appellant's claim that the agency's enforced leave action was taken in reprisal for his protected union activity. PFRF, Tab 3 at ¶¶ 11-14. The Board also directed that I reconsider the appellant's claim that the agency's action was taken in reprisal for EEO activity in light of the Board's decision in *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015). *Id.* at ¶¶ 15-17.

The Board did not modify my findings made during the Initial Appeal that the Board has jurisdiction over the appeal because of the appellant's status as a preference eligible employee based on his service in the U.S. Army between December 6, 1990 and July 12, 1991. IAF, Tab 52, note 1 citing IAF, Tab 13. Accordingly, I did not readdress this issue on remand.

The Board affirmed my finding that the agency proved the charge placing the appellant on enforced leave, and rejected the appellant's several challenges to this portion of the Initial Decision. PFRF, Tab 3 at ¶¶ 7-12. In addition, the Board noted that the appellant did not challenge on PFR the findings on nexus or penalty and declined to "revisit the administrative judge's well-reasoned findings as to the same. *Id.*, Tab 3 at ¶ 6 note 2. Accordingly, I did not readdress these issues on remand.

On October 16, 2015, an Acknowledgment Order was issued advising the parties that the matter had been remanded by the Board. BRF, Tab 2. The

appellant submitted a "Motion for Reconsideration" in which he challenged the Board's rulings in the NPFO on the agency's charges and his other affirmative defenses. *Id.*, Tab 3. In a Remand Order on November 5, 2015, the parties were advised of the parameters of the Board's Remand, the burdens of proof and applicable law concerning the two remanded affirmative defenses, and presented an opportunity to submit evidence and argument. *Id.*, Tab 4. The appellant attempted to re-open the record to relitigate his claim of disability discrimination; however, he was advised that I did not have authority under the Remand Order to relitigate issues that were not the subject of the Remand Order. *Id.* By extension, the appellant's request for a "new trial," with the opportunity to raise new issues was denied as beyond the instructions of the Board's Remand Order. *Id.* After a status conference on December 1, 2015, a Hearing Order was issued. *Id.*, Tab 7.

The appellant made prehearing submissions in which he again attempted to raise new issues or relitigate those already adjudicated in the Initial Appeal including past retaliation for filing an Occupational Safety and Health Administration (OSHA) complaint, violation of the Privacy Act, "false statement (18 U.S.C. 1001)," retaliation for reporting "nepotism," "sexual misconduct," "fraud, waste, abuse and criminal activity" in relation to the closure of a postal facility, and "age discrimination," BRF, Tab 16. He also alleged that various illegal hires by management, composition of the District Reasonable Accommodation Committee (DRAC) and Threat Assessment Team (TAT), activities, "FMLA protection for my bad back," "hostile work environment," being required to take unnecessary training, having his duties modified, denial of due process in the processing of an Equal Employment Opportunity (EEO) complaint, failure to process an EEO class action, "stress," "too much work" and denial of scheduled leave, and many others listed in his prehearing submissions were affirmative defenses to the enforced leave action. For the most part, these issues were previously adjudicated and not disturbed by the Board on Review, or were not approved as affirmative defenses in the Initial Appeal. In either event,

they were not approved for hearing in this Remand of the Initial Appeal. The only approved affirmative defenses for hearing were the appellant's claim that his placement in enforced leave was the result of EEO retaliation or that it was in retaliation for his Union activity. *Id.*, Tab 34.

At the time of the remand, the appellant had a pending VEOA/USERRA claim alleging the placement in enforced leave violated these statutes. *See McDermott v. U.S. Postal Service*, SF-3330-15-0432-I-2. The hearing in the two appeals was consolidated. BRF, Tab 34. In accord with the prehearing conference summary issued on January 26, 2016, an in-person hearing was conducted in Seattle, Washington on January 28, 2016. *Id.*, Tabs 34, 35. The record closed after the hearing.

Factual Background

The basic facts in this appeal were set forth in the Initial Decision, and were undisturbed by the Board. For ease of understanding the Remand, they are set forth here, substantially unchanged. There has been development of the factual record concerning the affirmative defenses on remand. These facts are added where appropriate to the prior findings of fact. As previously, the facts described below, where disputed are my findings of fact. In resolving issues of credibility, and the weight to be given declarations, written statements and documentary evidence, I have been guided by *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83-87, and *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). *See* IAF, Tab 52 at 3.

As a Maintenance Mechanic MPE (MPE)(P7-09), Occupational Code 5350-0001, the appellant's position "involved trouble-shooting and complex maintenance work throughout the system of mail processing equipment," and performing "preventative maintenance[1] inspections of mail processing equipment,

---

[1] Preventative maintenance is described as "PM" hereinafter.

building and building equipment." IAF, Tab 21, Agency Hearing Exhibit (AgHE) 1. MPEs are highly trained and must pass examinations and specialized training in order to qualify for the position. *Id.* The position requires knowledge of basic mechanical, electricity and electronic principles, and requires application of these principles in the daily duties a MPE may be tasked to accomplish. The position is physical in nature and may "require arduous exertion involv[ing] prolonged standing walking, bending and reaching and may involve handling heavy objects." *Id.* In addition, the position requires the "ability to distinguish colors." *Id* at 4.

After being hired as a Custodian in 1998, the appellant became a MPE at the Seattle Priority Mail Annex (PMA) and continued to hold this position at all times relevant to this appeal. According to Jim Norris, the Manager of Maintenance for the Seattle District, he instituted a color-coded sticker system to provide a visual check of carrier cells that had been serviced by Maintenance Operations at the PMA. IAF, HT: 17:24 – 18:16. Soon after this system was implemented, he was informed by Dave Marzac, Manager of Maintenance Operations for the PMA and Seattle Processing and Distribution Center that the appellant complained that he could not work with the color-coded sticker system because he was colorblind. *Id.* at 18:18-20.

On February 4, 2013, Mr. Norris requested assistance from Occupational Health Services (OHS) and others in resolving the issues concerning the appellant's colorblindness. IAF, Tab. 26, Appellant's Hearing Exhibit (ApHE) 90. During the hearing in the Initial Appeal, Mr. Norris testified that as of the February 4, 2013 email, he was aware that the appellant had engaged in prior EEO activity. HT: 63:17-21. He also admitted awareness that the appellant was engaged in Union activities, particularly representing employees during the USPS National Reassessment Process (NRP) of compensably injured employees; and that he had filed at least two claims against the agency in Federal District Court. *Id.* at 65:13-23. He denied that he gave any of those activities any consideration

when he requested guidance on the colorblindness issue.  Mr. Norris testified during the remand hearing.  Of the question of whether he gave any consideration to the appellant's prior EEO activity, his activities as a Union Steward representing other employees, he testified that he did not.

On February 6, 2013, OHS for the Seattle District sent the appellant a request for medical documentation for two impairments – "an impairment that has to do with your back, and another concerning your vision."  IAF, Tab 21, AgHE 2.  Within the timeframe required, and relevant to this appeal, the appellant submitted a medical report by Arthur B. Lum, Jr., Doctor of Optometry dated February 13, 2013.  *Id.*, Tab 21, AgHE 3.  Dr. Lum reported that he had performed a routine eye examination of the appellant and concluded that "[h]e exhibits red green colorblindness."  He noted that "color vision testing did show red/green color blindness, which does affects 5% of the male population."  *Id.* (as in original).  Citing Dr. Lum's report, Tanya L. Daniels, Registered Nurse, Occupational Health Services, Seattle District prepared a Duty Status Form concerning the appellant dated February 15, 2013 in which she stated that the appellant "may return to work with the following RESTRICTIONS:  VISION: Has difficulty distinguishing certain colors and shades of color."  *Id.*, Tab 21, AgHE 4.  Dr. Lum provided no specific instruction as to how the "red green color blindness" should be managed in the appellant's MPE position.

According to the appellant's first line supervisor, Kenneth Dow, Supervisor, Maintenance Operations PMA, the appellant's revelation of his colorblindness raised issues beyond whether he could distinguish the colored dots (red, yellow, green and blue).  Because of the appellant's objections, Mr. Dow testified the use of the colored dots ceased in March 2013.  However, he testified that the greater concern was how the appellant's colorblindness affected those aspects of his job which involved electric wiring in the building and in machinery.  HCD, Dow Testimony.  Mr. Dow made several efforts to talk to the appellant about the issue, but the appellant refused to talk about it.  *Id.*  As the

appellant's first line supervisor, he testified that there were concerns about whether the appellant could safely perform his work. *Id.*

On March 19, 2013, Mr. Marzac referred the appellant to the DRAC for assessment on an involuntary basis. IAF, Tab 21, AgHE 5. He advised the DRAC of management's discovery of the appellant's colorblindness, and of their request that he submit a "Request for Permanent Light Duty Assignment" but that the appellant had not returned the form. Additionally, Mr. Marzac related that he had requested that the appellant request a reasonable accommodation and the appellant had "replied that he did not want to participate in the DRAC process . . . [because] you fired Brenda Burke on light duty. I don't want to be on light duty." *Id.* The appellant did not contact the DRAC or Mr. Marzac.

On April 8, 2013, Mr. Dow wrote the appellant a letter concerning his colorblindness. Citing the permanent restrictions due to his colorblindness, the appellant was formally offered the opportunity to request a Permanent Light Duty Assignment and engage in discussions with DRAC "to discuss your permanent restriction as it related to the essential functions of your position, and possible accommodations." *Id.*, Tab 21, AgHE 6. The letter requested that the appellant respond by April 12, 2013 regarding whether he wished to request light duty and/or engage in the reasonable accommodation process. *Id.* The letter warned appellant that while requesting either light duty or a reasonable accommodation was entirely voluntary, "absent participation in [one] or the other process, management is unable to conclude that you can perform the essential functions of your position with or without reasonable accommodation." *Id.* Additionally, the appellant was warned that "your refusal to take advantage of either avenue may result in your placement in an enforced leave status." *Id.* Despite an invitation to

"[hear] from you at your earliest possible convenience," the appellant did not contact Mr. Dow to discuss the matter.[2]

On May 8, 2013, Mr. Marzac sent the appellant correspondence concerning his failure to contact him to either request light duty and/or a reasonable accommodation relative to his colorblindness. *Id.*, Tab 21, AgHE 7. The letter informed the appellant:

> [y]our duties involve attending to equipment and wiring. This function requires the ability to distinguish among various colored wires and if you are not able to distinguish colored wires, your work can result not only in damage to the equipment but also pose a significant safety risk.

*Id.* Mr. Marzac reiterated the history of the appellant's refusal to cooperate, and advised him that he was once again extending him the option of requesting light duty and/or reasonable accommodation, and was also prohibiting him from performing any duties that involve working on wiring and that require the ability to distinguish colors. *Id.* As well, the correspondence advised the appellant that "this letter shall serve as proposed notice to place you on enforced leave effective no sooner than ten (10) days from your receipt of this letter. The appellant was informed that he should respond orally or in writing to Mr. Norris. *Id.*

The appellant did not respond to the letter. On May 30, 2013, Mr. Norris issued a decision sustaining the proposal to place the appellant on enforced leave. The letter considered the above cited reasons for placing the appellant on enforced leave, and noted:

> I want to make clear that your placement on enforced leave is a direct result of your refusal to interact with management on this very important issue. Should you decide that you would like to interact with management, please feel free to contact myself or Dave Marzac. You continue to have the right to request reasonable accommodation

---

[2] The letter was hand-delivered to the appellant on April 8, 2013 at 1:45 p.m., and is annotated that during the meeting the appellant "refused to speak." IAF, Tab 21, AgHE 6.

and/or light duty.  However, as previously mentioned you must avail yourself of these options which includes a willingness to sit down and discuss your medical limitations, if any, and the impact of your medical limitations on the performance of the essential functions of your job.  Absent your participation, management cannot make a proper determination.  By and through this letter, I encourage you to avail yourself of your options.

*Id.*, Tab 21, AgHE 8.  The enforced leave was implemented on May 30, 2013.

Mr. Marzac, the proposing official, testified during the hearing in the Initial Appeal that he was aware that the appellant had engaged in prior EEO activity, and he was aware that the appellant had acted as a Union Steward and represented other employees.  He recalled that he had prepared an EEO Affidavit in at least one of the appellant's EEO complaints.  IAF, HT: 95:21-96:15.  However, he denied that he gave any consideration to the appellant's EEO activities or his Union activities when he issued the letter referring the appellant to DRAC or when he issued the letter proposing placement in enforced leave status. *Id.* at 96:21-97:9.

During the remand, Lester Cornette testified that the appellant was engaged in significant Union activities.  BRF, HCD, Cornette Testimony.  Mr. Cornette affirmed the appellant's involvement as a Union Steward in various representational activities including a class action grievance filed in July 2010 over HVAC in the Priority Mail Annex and representing Brenda Burke in her challenge to the NRP process. *Id.*, citing IAF, Tab 26 ApHE 65.  In addition, Mr. Cornette testified that he acted as Union Steward on the appellant's behalf in a hostile work environment (HWE) complaint about being required to place the "dots" on equipment during the maintenance process on December 3, 2012. *Id.*, citing IAF, Tab 26, ApHE 27[3]  The agency offered a stipulation that it was

---

[3] According to Mr. Norris, it was this HWE complaint that notified him and Mr. Dow of the appellant's colorblindness.  BRF, HCD, Norris Testimony.  In the complaint, the appellant stated, "[w]hy am I being instructed to place color dots on things when he, the supervisor, knows I am colorblind." IAF, Tab 26, ApHE 27 at unnumbered page 4.

undisputed that the appellant engaged in Union activities on behalf of himself and others, which the appellant accepted.[4]

Similarly, the appellant alleged that he has a long history of involvement in EEO activities. He testified that he filed an EEO class action grievance in November 2012 in which he complained that the agency's centralized EEO processing unit was violating his and many other employees due process rights in the EEO process. BRF, Tab 22 at 9-14. This complaint arose out of an informal EEO complaint filed by the appellant on May 2, 2012 concerning a finding that he was ineligible to apply for "position(s) during Open Season." In his "Request for Judicial Notice" filed on January 15, 2016 as part of BRF, Tab 16, the appellant stated that he had also submitted a sworn deposition in EEO-551-2006-0173X on December 4, 2006.

<u>The appellant's affirmative defenses are DENIED</u>

The appellant bears the burden of proof of his affirmative defenses by preponderant evidence. 5 C.F.R. §§ 1201.4(q), 1201.56(b)(2)(i)(C).

<u>The Enforced Leave Action was not in retaliation for the appellant's Union Activities</u>

As noted in the Board's Remand Order, the affirmative defense of "retaliation for engaging in prior Union activity" requires the appellant to show that (1) he engaged in protected activity; (2) the accused official knew of the activity; (3) the adverse action under review could have been retaliation under the circumstances; and (4) there was a genuine nexus between the alleged retaliation and the adverse action. *See Warren v. Department of the Army*, 804 F.2d 654,

---

[4] Under 5 C.F.R. § 1201.63, "[t]he parties may stipulate to any matter of fact. The stipulation will satisfy a party's burden of proving the fact alleged."

654-658 (Fed. Cir. 1986)[5]; *Campo v. U.S. Postal Service*, 96 M.S.P.R. 418, ¶ 12 (2004).

Relative to the first and second prongs of the elements of retaliation, I find that the appellant engaged in protected Union activities and that management was aware of his activities as a Union Steward. Bar innuendo and speculation, I find that the appellant has failed to show that the action under review here – his placement in enforced leave status – could have been in retaliation for his protected Union activities under the circumstances. Nevertheless, in *Warren*, the Federal Circuit cautioned that if under the third prong, the "officials having knowledge of the protected [activities], and even slight involvement in them, are in charge of advising or effectuating the [adverse action], this may justify an inference of retaliatory motive ...." 804 F.2d at 658. Messrs. Dow and Marzac, the first line supervisor, and proposing official, respectively, have long involvement with the appellant's grievances, and were either the target of his complaints, or were charged with responding to his complaints. The record reflects their involvement in such activities as early as 2003 when Mr. Marzac denied a Step II grievance submitted on the appellant's behalf, and continued through the time period at issue in this appeal when the appellant filed a grievance on January 23, 2013 complaining the Mr. Dow had conducted an investigative interview on his taking of unscheduled leave. *See e.g.*, Tab 26, ApHE 18-21. Mr. Norris, the deciding official has been Manager of Maintenance, Lead at the PMA since approximately 2009. IAF, HT: 11:23-25. He professed knowledge of the appellant's prior activity. Accordingly, in this instance, I find that an inference of retaliatory motive is appropriate.

---

[5] In the remand decision, the Board clarified that the *Warren* standard is still applicable to the appellant since he is an employee of the U.S. Postal Service, and not subject to the Whistleblower Protection Enhancement Act of 2012 which significantly narrowed the scope of cases to which the *Warren* standard applied.

Where such an inference is applied, the Federal Circuit reasoned that at the fourth prong:

> careful scrutiny of the intensity of their motive to retaliate is necessary under test (4) to be weighed with the gravity of the misconduct charged, or inadequacy of the performance of duties, so that the trier of fact can make an informed and reasoned determination whether the "nexus" exists.

*Warren*, 804 F.2d at 658. Here, I find little evidence of a motive to retaliate by Messrs. Dow, Marzac or Norris, when weighed against the gravity of the issue they sought to resolve with the appellant. The appellant was offered multiple opportunities to respond either directly to management, to the DRAC, to identify the restrictions, if any, caused by his colorblindness and he categorically refused to participate, or even to discuss the matter with his chain of command. *See* IAF, HT: 69:7-12; 85:7-11; 108:21-109:11.

The gravity of the agency's concern is supported by the record. The issue of the appellant's colorblindness was initiated by the appellant himself who professed to management[6] an inability to distinguish colors to such a degree that he could not identify the difference between a yellow, red, green or blue "dot" that he was asked to place on a machine to indicate that he had performed weekly PM. *See id.*, HT: 109:18-110:10; BRF, Tab 22 at 22. I accept as sincere and reasonable, the concern expressed by Mr. Norris (and indeed, the entire supervisory chain), that the revelation of the appellant's colorblindness to him, if unresolved, could post a potential threat to both the appellant and others. He stated that in dealing with electrical work, the "normal protocol to evaluate the repair [is] by reenergizing it, and whether you are tracking a belt or making the system – making sure the system is working correctly, that he could, in fact, be

---

[6] Mr. Dow, the appellant's supervisor, testified that the reason the appellant told him that he did not want to put the dots on the machine "because it was another management policy" and that he made no mention to him that he was unable to discern the colors. IAF, HT: 109:19-25.

electrocuted, himself." *Id.*, HT: 19: 16 – 20:2. He also testified that "if there was a mis-wiring, . . . an employee coming in contact with any metal in that area could be . . . shocked or electrocuted." *Id.*, HT: 21:9-18. I give Mr. Norris' testimony on the gravity of the agency's concern great weight, as I found him to be unencumbered by any antagonism or personal animus toward the appellant, and I generally found him to be reasonable and perceptive in dealing with the appellant who was noncommunicative, difficult and antagonistic. *Hillen*, 35 M.S.P.R. at 458.

By contrast, at each step of the process toward the implementation of enforced leave, the appellant possessed the ability to provide the necessary information and cooperation which would assist management in addressing its valid concerns about the effect of the appellant's colorblindness on his ability to perform his work, and thereby avoid his placement in enforced leave. The appellant points to correspondence by Mr. Norris as evidence that the actions were taken to create a hostile work environment and retaliate against him for prior Union activity. *See* IAF, Tab 26, Exhibit 96. The appellant annotated the email chain at points suggesting the communication was indicative of a hostile work environment. *Id.* at 1. The documentation actually reflects Mr. Norris' efforts to obtain counsel about how to appropriately deal with the appellant's colorblindness issue from various agency professionals who are charged with providing such advice and counsel to management. Mr. Dan Foster, whose email is annotated, and Alexis Delgado are a Labor Relations Specialist and Human Resources Manager, respectively. Tanya Daniels, RN is the Occupational Health – Nurse Administrator for the Seattle District.

The correspondence reflects that Mr. Norris approached them (and others who are not identified in the record) with his concern about how best to approach the issue of the appellant's colorblindness. The record reflects that he directed Mr. Marzac and Mr. Dow to follow the advice he was given, allowing the appellant multiple opportunities and avenues to address the impact of his

colorblindness on his ability to perform his job. Nothing in the advice given by Human Resources and implemented by Mr. Dow and Mr. Marzac, was improper or unreasonable given the gravity of the issue.

I thoroughly reviewed all the evidence of record, considered the testimony on the issue and conclude that the appellant has failed to show that the inference of retaliatory motive is sufficient to create a genuine nexus between the retaliation and the adverse action. When weighed against the gravity of the agency's concern to monitor and properly accommodate an admitted colorblind electrician, the appellant's suggestions, conclusory statements, innuendo, and theories of retaliation utterly fail. Accordingly, his affirmative defense of retaliation for engaging in Union activities is DENIED and DISMISSED.

The Enforced Leave action was not in retaliation for prior EEO Activities

In the Initial Decision dated April 28, 2015, I considered the appellant's claim of retaliation for engaging in prior EEO activities, and using the *Warren* standard found that the appellant had failed to show that his placement in enforced leave status was the result of EEO retaliation. I made the following findings of fact concerning the appellant's EEO activity prior to the Enforced Leave action at issue in this appeal:

The record indicates that the appellant engaged in prior EEO activity consisting of an EEO case filed on April 1, 2006 (Case No. 1E-981-0018-06), June 21, 2012 (Case No. 1E-985-004012) and a complaint filed on March 2, 2013 (Case No. 1E-985-0006-13). IAF, Tab 10, Exhibit 82 at 5. On August 9, 2013, the Office of Federal Operations (OFO) issued a Final Decision in *McDermott v. Donohoe*, Appeal No. 0120131641 (Agency Case No. 1E-985-004-12. *Id.*, Tab 10, Exhibit 81. Relevant to this appeal, concerning Mr. Dow and Mr. Marzac, the OFO found that "the Agency's record of Complainant's previous complaints indicate that he did not name either Supervisor or Manager as responding management officials." *Id.* at 7. Accordingly, OFO found that the appellant had failed to meet the first prong of a *prima facie* case of retaliation in that he was unable to demonstrate that the supervisor and manager had knowledge of his prior EEO (i.e., 2006) activity. Moreover, the OFO found that the appellant "fails the third prong because he does not provide any

evidence tending to establish that any of the 21 alleged actions occurred as a result of Complainant's prior EEO activity." *Id.* IAF, Tab 52 at 14-15. These findings were not disturbed by the Board and are unchanged by any new evidence or argument on Remand. As well, the findings and conclusions I have made concerning the appellant's retaliation claim for Union activities, to the extent appropriate, are incorporated herein by reference.

While this case was pending review, the Board issued its decision in *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015). Concerning the affirmative defense of retaliation for engaging in prior EEO activity, the Board re-evaluated its standard of proof in the *Savage* case. *Id.* Now, when an appellant asserts an affirmative defense of retaliation under 42 U.S.C. § 2000e-16, the Board first will inquire whether the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. Such a showing is sufficient to establish that the agency violated 42 U.S.C. § 2000e-16, thereby committing a prohibited personnel practice under 5 U.S.C. § 2302(b)(1). In making his initial showing, an appellant may rely on direct evidence (*i.e.*, evidence that can be interpreted as an acknowledgment of discriminatory intent), or any of the three types of circumstantial evidence, either alone or in combination. The first kind consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. The second kind of circumstantial evidence is comparator evidence, consisting of evidence that similarly situated employees were treated more favorably. The third kind consists of evidence that the agency's stated reason for its action is unworthy of belief and a mere pretext for discrimination. *Savage*, 122 M.S.P.R. 612, ¶ 42. If the appellant meets his burden, the Board then will inquire whether the agency has shown by preponderant evidence that the action was not based on the prohibited personnel practice, *i.e.*, that it still would have taken the contested

action in the absence of the discriminatory or retaliatory motive. If the Board finds that the agency has made that showing, its violation of 42 U.S.C. § 2000e-16 will not require reversal of the action. *See id.* at ¶ 51. In the Final Order, the Board noted that the appellant was not notified of the *Savage* standard, and ordered that he be so advised on Remand. In addition to the statement of the standard in the Final Order, I advised the appellant of this standard on two occasions. *See* BRF, Tabs 4, 34.

In its Final Order, the Board noted that while I found that management was aware of the appellant's prior EEO activity in 2012 and 2013, I "failed to consider whether this timing was part of a convincing mosaic of discriminatory intent." PFRF, Tab 3 at ¶16. In his Statement of Facts and Defenses, the appellant recalls a history of conflict with management beginning in 2002 when his idea about how to upgrade the "TMS carrier" system was contracted out to a third party to be completed. BRF, Tab 16 at 5. In virtually every year since 2002, the appellant recounts some kind of conflict between he and agency management which he asserts can be linked together to demonstrate a "convincing mosaic" of retaliation. I have thoroughly reviewed the statement of facts and the various exhibits referenced therein, and find that no convincing mosaic of retaliation emerges. The appellant has set himself as the "watchman" over virtually any and every agency policy, practice, decision that directly or remotely affects his work environment and has sought to elevate them with extensive litigation in an impressive variety of fora including OSHA, EEOC, NLRB, Office of Workers' Compensation Programs, the U.S. District Court, the Mayor of SeaTac, and others. As is his privilege and right, he has complained about and resisted virtually any direction given by management, any decision contrary to his desire, and any action he disagrees with, and alleged that such is evidence of a hostile work environment, in retaliation for prior EEO activities or some other protected activity.

I have reviewed the record, heard the testimony of the appellant and all the managers and supervisors involved in the Enforced Leave, and conclude that there is no evidence that a convincing mosaic of retaliation can be inferred from the timing of the appellant's prior EEO activity relative to the enforced leave issue. As previously stated, this issue became an issue when the appellant stated that his colorblindness prevented him from discerning the colored dots he was asked to apply to equipment during PM work.   Agency management was justifiably concerned about the extent of the appellant's colorblindness to his overall tasking which involves electrical wiring of varying colors. The appellant had an obligation to cooperate with management by addressing the issue he had raised, and he failed to do so. The timing of the agency's action to his prior EEO activity is therefore completely coincidental, and the record is devoid of any evidence of retaliation.   In fact, I find that agency management exhibited a remarkable amount of restraint in the face of the appellant's antics, vitriol and accusations.   I conclude that the appellant has failed to prove this affirmative defense under either the *Warren* standard or the *Savage* standard.   I again conclude "he has presented no evidence that the agency's action causally or even casually" was taken in retaliation for his prior EEO activity.  IAF, Tab 52 at 16. Accordingly, this affirmative defense is DENIED and DISMISSED.

*[handwritten: cruel and bitter criticism]*

## DECISION

The appellant's affirmative defenses of retaliation for prior Union activities and prior EEO activity are DENIED and DISMISSED.   Accordingly, for the reasons set forth in the Initial Decision dated April 28, 2015, the agency's action is AFFIRMED.

FOR THE BOARD:                                       _____
                                                     Grace B. Carter
                                                     Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **March 18, 2016**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, <u>whichever comes first</u>. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Equal Employment Opportunity Commission (EEOC) or a federal court. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by

electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

### Criteria for Granting a Petition or Cross Petition for Review

The criteria for review are set out at 5 C.F.R. § 1201.115, as follows:

The Board normally will consider only issues raised in a timely filed petition or cross petition for review.. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact;  (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case;

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case;

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the

documents themselves, must have been unavailable despite due diligence when the record closed;

(e) Notwithstanding the above provisions in this section, the Board reserves the authority to consider any issue in an appeal before it.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial

decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R. § 1201.4(j). If the petition is filed electronically, the online process itself will serve the petition on other e-filers. *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this decision only after it becomes final, as set forth above.

Discrimination Claims:  Administrative Review

You may request review of this decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You, or your representative if you are represented, should send your request to EEOC no later than 30 calendar days after the date this decision becomes final. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You, or your representative if you are represented, must file your civil action with the district court no later than 30 calendar days after the date this decision becomes final. *18 March 16* If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e5(f) and 29 U.S.C. § 794a.

If you are interested in securing pro bono representation for your court appeal, that is, representation at no cost to you, the Federal Circuit Bar Association may be able to assist you in finding an attorney. To find out more, please click on this link or paste it into the address bar on your browser:

http://www.fedcirbar.org/olc/pub/LVFC/cpages/misc/govt_bono.jsp

The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.



**U.S. MSPB** Merit Systems Protection Board
**e-Appeal Online**

March 1, 2016



| My Account | File a Pleading | Reload Case | Print | **Access Another Case** | ...port | Save & Exit |

**ATTENTION: Please do NOT resubmit if you received a confirmation of submission. Processing time can be minutes or hours depending on system workload.**

## Case View

### LANCE MCDERMOTT v. UNITED STATES POSTAL SERVICE
### SF-3330-16-0432-I-2

Case Status: Regional Pending                      26 documents returned

| Tab | Download/View | Doc Info. | Submitted by | Date Issued/ Received |
|-----|---------------|-----------|--------------|----------------------|
| | | **Initial Appeal** | | |
| 25 | Download/View | Termination Order | MSPB | 2/25/2016 |
| 24 | Download/View | Response to Request for Reopening | Appellant | 2/24/2016 |
| 23 | Download/View | Hearing CD January 28, 2016 (Not available in E-appeal) | MSPB | 2/3/2016 |
| 22 | Download/View | Order and Summary of Telephonic Prehearing Conference | MSPB | 1/26/2016 |
| 21 | Download/View | Motion for Judicial Notice | Appellant | 1/20/2016 |
| 20 | Download/View | Motion for New Trial | Appellant | 1/20/2016 |
| 19 | Download/View | Exhibit Z Jul - Dec 15 | Appellant | 1/19/2016 |
| 18 | Download/View | Exhibit Z Nov 14 - Jun15 | Appellant | 1/19/2016 |
| 17 | Download/View | Exhibit Z Sept - Oct 13 | Appellant | 1/19/2016 |
| 16 | Download/View | Exhibit Z Jul - Aug 13 | Appellant | 1/19/2016 |
| 15 | Download/View | Exhibit Z Jun - Jul 13 | Appellant | 1/19/2016 |
| 14 | Download/View | Exhibit Z May - Jun 13 | Appellant | 1/19/2016 |
| 13 | Download/View | Exhibit Z Apr - May 13 | Appellant | 1/19/2016 |
| 12 | Download/View | Notice of Filing Form 50 | Agency | 1/19/2016 |
| 11 | Download/View | Exhibt Z Feb - Apr 13 | Appellant | 1/19/2016 |
| 10 | Download/View | Exhibt Z Oct 12 - Jan 13 | Appellant | 1/19/2016 |
| 9 | Download/View | Exhibit Z Mar - Sept 12 | Appellant | 1/19/2016 |
| 8 | Download/View | Exhibit Z Sept 10 - Apr 12 | Appellant | 1/19/2016 |
| 7 | Download/View | Exhibit Z,Nov 08 - Jul 10 | Appellant | 1/19/2016 |
| 6 | Download/View | Exhibit Z Mar 03- Nov 08 | Appellant | 1/19/2016 |
| 5 | Download/View | Statement of Facts Exhibit Z | Appellant | 1/19/2016 |
| 4 | Download/View | Statement of Facts and Defenses | Appellant | 1/15/2016 |
| 3 | Download/View | Prehearing Submission | Agency | 1/15/2016 |
| 2 | Download/View | Acknowledgment Order | MSPB | 1/15/2016 |
| 1 | | Refiled Appeal (Initial Decision Dated December 2, 2015) | MSPB | 1/14/2016 |

**Important:** Documents colored in **RED** are referred from your e-Mail link.

### Help Links ⊙
Contract All | ExpandAll

**Repository Navigation**

The following are primary functions of the repository:
**Print** Prints the complete list of documents of which you have participated as a case party.
**Download/View** Allows to Open the specified document to your local computer in PDF format.
**Reload** Case View Retreive original case view.

Use Exit button on menu bar to close the repository listing.

Note:Only documents which have a Download/View link are available for on-line viewing. Those without links
‹          ›

**How to view an e-Appeal generated Pleading?**

Click Here to view tutorial.

‹          ›

United States of America
Merit Systems Protection Board
Western Regional Office

| | |
|---|---|
| Lance P. McDermott,<br>     *Pro Se*, | ) Case# ~~7 70~ (~-04(57-I-)~ |
| vs. | )   Complaint of VEOA and USERRA violations |
| U.S. Postal Service, Agency & *Et Al* | )  20 March 2015 |

I am filing this Veterans Employment Opportunities Act of 1998 (VEOA), 5 U.S.C. § 3330, VEOA, Pub. L. No. 105-339, 1998 U.S.C.C.A.N. (112 Stat.) 3182, as a preference eligible employee alleging that the agency has violated my statutory and constitutional rights relating to veterans' preference and a Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4301-4333, complaint for discrimination and retaliation creating a Hostile Work Environment (HWE), *Lis v. U.S. Postal Service*, 113 M.S.P.R. 415, ¶ 11 (2010), citing Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 2302 - Prohibited Personnel Practices (PPP).

VEOA - As a preference eligible employee in the U.S. Postal Service I have (1) exhausted my remedy with DOL; and (2) make non-frivolous allegations that the agency violated my rights under the statutes and/or regulations relating to veterans' preference under the VEOA, 5 U.S.C. § 3330a; *Haasz v. Department of Veterans Affairs*, 108 M.S.P.R. 349, ¶ 6 *(2008)*; U.S.C. §§ 3309 and 3313 as preference eligible competitive service employees, *Perkins v. U.S. Postal Service*, 100 M.S.P.R. 48, ¶ 8 (2005), *Smyth v. U.S. Postal Service*, 89 M.S.P.R. 219, ¶¶ 3, 7 (2001). And, violation of the agency's obligations under the Civil Service Reform Act (CSRA) 5 C.F.R. § 353.301(c), which pertains to the restoration rights, *Loggins v. U.S. Postal Service* , 112 M.S.P.R. 471, ¶ 14 (2009), See *Burgess v. Merit Systems Protection Board*, 758 F.2d 641, 643-44 (Fed. Cir. 1985); *Mills v. U.S. Postal Service*, 106 M.S.P.R. 441, ¶ 7 (2007). Establishing the Board's jurisdiction, - *Lis v. U.S. Postal Service*, 113 M.S.P.R. 415, ¶ 11 (2010).

1  USERRA - 38 U.S.C. §§ 4312 – 4318; created a cause of action for "discrimination," 38

2  U.S.C. § 4311; and gave the MSPB statutory jurisdiction over "discrimination" cases. 38 U.S.C.

3  § 4324(b), (c), - *Clavin v. U.S. Postal Service*, 99 M.S.P.R. 619, ¶ 6 (2005) (shifting burden).

4  *Welshans v. U.S. Postal Service*, 107 M.S.P.R. 110, ¶ 4 (2007). - "any benefit of employment."

5  USERRA 38 U.S.C. § 4311(a), or "rights and benefits" means any advantage, profit, privilege,

6  gain, status, account, or interest, 38 U.S.C. § 4303(2). Including coverage of a **hostile work**

7  **environment** claim based on uniformed service, - *Petersen v. Department of the Interior*, 71

8  M.S.P.R. 227, 239 (1996).

9  I assert my USERRA discrimination claims for actions under 38 U.S.C. § 4301(a)(3), that an

10  agency has taken an action(s) prohibited by 38 U.S.C. § 4311(a) or (b), - *Clavin v. U.S. Postal*

11  *Service*, 99 M.S.P.R. 619, ¶ 5 (2005). In *Johnson v. United States Postal Service*, 85 M.S.P.R. 1

12  (1999), I have been denied a right or benefit guaranteed by chapter 43 of title 38, and that the

13  right or benefit was denied because of my uniformed service, 5 CFR § 1208.13(a)(3).

14  CSRA - Veterans' Employment Redress Laws in the Federal Civil Service, November 2014,

15  Civil Service Reform Act of 1978 (CSRA), Pub. L. No. 95-454, 92 Stat. 1111. The CSRA

16  requires that the Federal Government give veterans and preference eligible employees certain

17  preferences in hiring as well as other aspects of employment. 5 U.S.C. § 2302 - Prohibited

18  personnel practices (a) (1) For the purpose of this title, "prohibited personnel practice":

19  "... (11)(A) Knowingly take, recommend, or approve any personnel action if the taking of

20  such action would violate a veterans' preference requirement; or (B) knowingly fail to take,

21  recommend, or approve any personnel action if the failure to take such action would violate a

22  veterans' preference requirement;

23  **(12)** take or fail to take any other personnel action if the taking of or failure to take such

24  action violates any law, rule, or regulation implementing, or directly concerning, the merit system

25  principles contained in section 2301 of this title; or…"

1   5 U.S. Code § 2301 - Merit system principles, -"... **(9)** Employees should be protected against

2   reprisal for the lawful disclosure of information which the employees reasonably believe

3   evidences— **(A)** a violation of any law, rule, or regulation, or **(B)** mismanagement, a gross waste

4   of funds, an abuse of authority, or a substantial and specific danger to public health or safety."

5   Hostile Work Environment (HWE) - Whistleblower/Retaliation/Discrimination, - *Fishbein v.*

6   *Department of Health & Human Services*, <u>102 M.S.P.R. 4</u>, ¶ 10 (2006) (did not preclude him

7   from coverage under the Whistleblower Protection Act).  See *Nahoney v. U.S. Postal Service*,

8   112 M.S.P.R. 93, ¶ 16 (2009) and *Aguilar v. U.S. Postal Service*, 102 M.S.P.R. 102, ¶ 8 (2006).

9   An affirmative defense is when an employee claims shows: (1) there was a harmful error in the

10  agency's procedures for taking the action (Enforced Leave); (2) the decision was based on a

11  Prohibited Personal Practice (PPP) (such as **whistleblower** retaliation); or (3) the decision was

12  otherwise not in accordance with the law (removal of veterans' preference). 5 U.S.C. §

13  7701(c)(2).  *Gonzalez v. Department of Transportation*, 109 M.S.P.R. 250, ¶ 16 (2008)

14  (exhaustion of remedies before OSC is not required to raise whistleblower retaliation as an

15  affirmative defense.)

16  MSPB SF-0752-13-0633-I-1, Agency MTD, 6 Aug 13, page 3, - "Constructive suspend claims

17  arise in two situations... the key question is whether the agency or the appellant initiated the

18  absence. ...McDermott refused the work restrictions. ... Thus, it is McDermott who voluntarily

19  absented himself from the Agency..." (Voluntary Enforced Leave?)

20  MM Norris Enforced Leave "decision" 30 May 2013 (VETS Exhibit 6), - "...due to your

21  medical condition (color blindness) ...are wholly voluntary... your placement on enforced leave

22  is warranted." (Just Cause?)

23  A review of the evidence and merits of the claims clearly show that because of my military

24  service I suffered more than one PPP.  At least one material fact showing a motivating factor

25  used in consideration by the Agency Officials to deny me my rights, 38 USC 4311(c)(1). *Lis v.*

Motion for Judgment
3

1     *U.S. Postal Service*, 113 M.S.P.R. 415, ¶ 11 (2010). 5 U.S.C. § 7701(c)(2)(B) (an agency must

2     prove its case by preponderant evidence). *Compare Lis v. U.S. Postal Service*, 113 M.S.P.R.

3     415, ¶ 11 (2010) (the appellant must prove the VEOA case), and *Clavin v. U.S. Postal Service*,

4     99 M.S.P.R. 619, ¶ 6 (2005) (USERRA shifting burden). And, during the time of an EEOC

5     Decision finding a HWE in the Seattle District meeting my burden. (MSPM Exhibit M).

6       VEOA and USERRA rights can also be raised as an affirmative defense in an action that is

7     otherwise appealable to MSPB, *Aguilar v. U.S. Postal Service*, 102 M.S.P.R. 102, ¶ 8 (2006). I

8     claim my right and have met my burden for review under VEOA and USERRA as an affirmative

9     defense in an appeal of the adverse actions that are within the MSPB's jurisdiction.

10    I ask the MSPB consider the allegations that these adverse actions were taken in violation of

11    USERRA or VEOA as separate claims and shifting burdens of proof. *See Nahoney*, 2009 MSPB

12    150, ¶ 16; *Livingston v. Office of Personnel Management*, <u>105 M.S.P.R. 314</u>, ¶ 13, *review*

13    *dismissed*, 226 F. App'x 1001 (Fed. Cir. 2007). *Aguilar v. U.S. Postal Service*, 102 M.S.P.R.

14    102, ¶ 8 (2006), *aff'd*, No. 2006-3327 (Fed. Cir. Mar. 9, 2007) (NP), allegations that an adverse

15    action were taken in violation of USERRA or VEOA as separate claims. *Livingston v. Office of*

16    *Personnel Management*, 105 M.S.P.R. 314, ¶ 13, *review dismissed*, 226 F. App'x 1001 (Fed. Cir.

17    2007); *see Aguilar*, 102 M.S.P.R. 102, ¶ 8. The Board has jurisdiction over the USERRA and

18    VEOA appeals as a complaint under 38 U.S.C. §§ 4324(c)(1)-(2) and 5 U.S.C. § 3330a. *See*

19    *Aguilar*, 102 M.S.P.R. 102, ¶ 10.

20    The VEOA, USERRA and other violations have occurred from 2005 until present. *Williamson*

21    *v. USPS*, 2007 MSPB 198, NY-3443-06-0245-I-1, August 27, (2007). I filed my complaint with

22    the Department of Labor (DOL) Veterans' Employment and Training Service (VETS), 4

23    February 2015 (Attached). I received the VETS' Decision and right to file an MSPB complaint,

24    dated 4 March 2015 (Attached), *Buckheit v. U.S. Postal Service* , 107 M.S.P.R. 52, ¶¶ 5, 10

25    (2007) and *Burger v. U.S. Postal Service*, 88 M.S.P.R. 579, ¶ 12 (2001). <u>5 U.S.C. § 3304</u>(f)(1).

1

2   1. In my Veterans' Employment and Training Service (VETS) Complaint Form 1010

3   Supplemental Information and Supporting Documents, 4 February 2015 (Attached), I asked for

4   "return of my Desert Storm veterans' preference and relief from the adverse actions suffered."

5   Attached with the Complaint were VETS Exhibits:

6

7   **VETS Exhibit 1** - 18 October 1996 my USPS Application for Employment, PS Form 2591, I

8   claimed a (Handbook EL-312 4835-point Veterans' Preference and PS Form 2485 being in

9   "Saudi Arabia Jan 91 – Jul 91. December 2001 I retired from the Washington State Army

10  National guard with 3-years active duty and 20-years of reserve service with active-duty for

11  Desert Storm.

12    USPS Handbook EL-312.414.2 Assessing Military Service History, a. – "Obtain a statement

13  from the applicant..."   481, - "The Postal Service applies veterans' preference as required by

14  Title 5 and 39 U.S.C. and 5 Code of Federal Regulations ..."

15    EL-312.485.1, - "...Applicants claiming veterans' preference who are still on active duty will

16  be granted 5-point preference if their applications who that they have the required military

17  service..." (USERRA 5 CFR Part 353, FLSA 29 CFR 541.118 Military Duty, Army National

18  Guard Title 10 USC and Title 32 USC 502, Authority for Duty.) I was on active duty Army

19  National Guard at the time of my hiring and application (sworn statement) for veterans'

20  preference.

21    38 USC § 4303. Definitions, - "(10) The term "reasonable efforts", in the case of actions

22  required of an employer under this chapter..."  The Agency did not take reasonable steps to find

23  out if I was a Desert Storm veteran (carrying a Desert Strom coffee mug everyday) or even ask

24  me to produce a DD-214.

25

1    **VETS Exhibit 2 -** 6 February 2006, HR Contractor working from South Dakota requested my

2    3-years of active duty record and not my 20-years of reserve service.   Based on this false record

3    the Contractor stripped me of my (Handbook EL-312, Appendix E) Veterans' Preference points.

4    EL-312.484.1 Review of Documents. - "Adjudication of preference requires a review and

5    comparison of the following: a. PS Form 2591, Application for Employment…" (PS From 2591,

6    1996, VETS Exhibit 1) EL-312.513.36. - "… Any personnel action brought about in violation of

7    these regulations is subject to cancellation or other appropriate action."

8        VEOA prohibited personnel practice (PPP), codified at 5 U.S.C. § 2302(b)(11), which

9    prohibits an official involved in a personnel action from knowingly acting or knowingly failing to

10   act if such action or lack of action violates a veterans' preference requirement, 5 U.S.C. §

11   2302(e)(2) and Section 2302(b)(11).

12       USERRA, 38 U.S.C. § 4335(a) Training required. — "(1) The rights, benefits, and obligations

13   of the employer to veterans." § 4335, (d) Human resources personnel defined. — "means any

14   personnel of the agency who are authorized to recommend, take, or approve any personnel action

15   that is subject to the requirements of this chapter with respect to employees of the agency."  The

16   "Contractor" was not authorized by law to access or change my personal information in my OPF

17   using false statements that violate 18 USC 1001 to strip me of my veterans' preference.

18       The "Contractor" working from home did not have the authority and violated my Privacy Act

19   rights by accessing my private personal OPF.  The "Contractor" violated 18 USC 1001 by

20   placing a false statement in my OPF that I was not a 5-point veteran and another crime stripping

21   my OPF of my 5-point preference.

22       The Postmaster General, Judicial Officer and the NEEOISO Manager know that "you question

23   the use of contractors" and "contend that contractors do not have the authority" over federal

24   employees or Agency administrative [judicial] processes.  "You appear to believe that you can

25   mix 'criminal action', 'class action status' … This is also not the case.  EEOC regulations do not

1  provide for the consideration of criminal matters…" (MSPB Exhibit H).

2      The Contractor "fixing" my OPF was just after an Agency Attorney (view to litigation?)

3  investigation a OSHA Retaliation complaint made having my "supervisor file" and OPF

4  "forwarded to me" also violated my Privacy rights and muddied my OSHA retaliation complaint

5  (MSPB Exhibit I).

6      2 October 2006, OHS Medical Record (MSPB Discovery). "USPS Law Department -- Western

7  Area, "This Memorandum is a Confidential Communications from Counsel.  It is subject to

8  Attorney-Client Privilege…" "This action involves complaints regarding various promotions

9  and allegations of nepotism and misconduct during the tie period 2004-2006.  Because the

10  litigation process has many stages…" (MSPB Exhibit L).

11      2 April 2013, MM Norris, Subject: Safety Concern, - "…**I am working with legal** regarding

12  the individual we identified as color blind… No where in his files anywhere has such a

13  disclosure been made before.  I suspect that is why he does not want RAC because he believes all

14  we want to do is fire him." (MSPB Exhibit N).

15      *Loggins v. U.S. Postal Service* , 112 M.S.P.R. 471, ¶ 14 (2009), the agency's actions violated 5

16  C.F.R. § 353.301(c), the federal regulation governing the restoration rights of (veteran)

17  physically disqualified (color blind) employees. See *Fitzsimmons v. U.S. Postal Service*, 99

18  M.S.P.R. 1, ¶ 12 (2005); *Brehmer v. U.S. Postal Service*, 106 M.S.P.R. 463, ¶ 10 (2007); and

19  *Jones v. U.S. Postal Service*, 86 M.S.P.R. 464, ¶¶ 4, 6 (2000).

20      38 USC § 4311, discrimination against persons who serve in the uniformed services and acts

21  of reprisal prohibited - denying employment and/or benefits.

22

23      **VETS Exhibit 3 -** 13 April 2012, I was denied eligibility for the Employee Maintenance

24  Position Selection Sheet during Open Season when I had a (Handbook ELM 354.215) Veterans'

25  Preference Status as a retired O3/CPT, 38 U.S.C. § 4311(a); *Yates v. Merit Systems Protection*

1   *Board*, 145 F.3d 1480, 1483 (Fed. Cir. 1998), 85 M.S.P.R. 1, ¶ 11 (1999), 38 U.S.C. § 4303(3),

2   "benefit of employment" is broadly defined to include "any advantage, profit, privilege, gain,

3   status, account, or interest that accrues by reason of an employment contract or agreement or an

4   employer policy, plan, or practice." "Prohibits an agency from denying a preference eligible or

5   veteran the opportunity to compete [during open season]." - *Ramsey v. Office of Personnel*

6   *Management*, 87 M.S.P.R. 98, ¶ 9 (2000). *Heidel v. U.S. Postal Service*, 69 M.S.P.R. 511, 513,

7   518 (1996), the agency must make "reasonable efforts" to help the person become qualified.

8       USPS Handbook EL-312.627 Objection to or Pass Over of Preference Eligible, 627.13, - "The

9   only acceptable reason for passing over an eligible who has veterans' preference and appointing

10  an eligible without preference who is lower on the Hiring Worksheet is that there is evidence that

11  indicates the preference eligible fails to meet suitability requirements." 743.21 Recruitment –

12  EAS Vacancies (2) Group 2, all other eligible …and 5-point veterans' preference."

13

14      **VETS Exhibit 4** – 4 February 2013, Email Senior Maintenance Manager Jim Norris, - "…had

15  5 point veteran preference… He maintained this veteran's preference until 2007 and then was no

16  longer considered a 5 point veteran. … It may have even affected his hiring standard if he was

17  claiming 5 point wrongly. … Perhaps the root of his discontenting attitude at work is he lost

18  being considered a preference veteran…" Email, Western Area Dan Foster, 3 February 2013, - "I

19  read the IMIP. Does McDermott have a history of such behavior or is this a recent development?

20  He is a troubled employee who feels harassed, but is acting inappropriately. I do not see that

21  management harassed him. Other employees support this and find fault with McDermott (MSPB

22  Exhibit J). MM Norris when that the "There is no Policy for enforced leave." (MSPB exhibit

23  O).

24      Enforced Leave - Constructive Suspension/Discharge, citing *Reed v. U.S. Postal Service*, 99

25  M.S.P.R. 453, ¶ 12 (2005), *aff'd*, 198 F. App'x 966 (Fed. Cir. 2006). If the employee does not

1  initiate the action, it is not presumed to be voluntary. *Id.* The loss of pay may be a constructive

2  suspension appealable to the Board under 5 U.S.C. §§ 7512(2) and 7513(d). Constructive

3  suspension claims may arise in two situations. The first occurs when an agency places an

4  employee on enforced leave pending an inquiry into his ability to perform [color blindness]. In

5  that situation, the key question is whether the agency or the employee initiated the absence. The

6  second situation arises when an employee who was absent from work for medical reasons

7  [FMLA] requests to return to work with altered duties, and the agency denies the request. If the

8  agency is obligated by policy, regulation, or contract to offer available light-duty work to the

9  employee, his continued absence may constitute a suspension appealable to the Board if the

10  agency fails to offer him available light-duty work. *Hardy v. U.S. Postal Service*, 94 M.S.P.R.

11  539, ¶ 12 (2003). The Agency did not offer any light duty or reasonable accommodation for my

12  color blindness before placing me on involuntary Enforced Leave.

13  38 USC § 4311, Discrimination against persons who (b) (4) has exercised a right provided for.

14  I did file a MSPB complaint about the Enforced Leave and have been discriminated against again

15  with a more Hostile Work Environment.

16

17  **VETS Exhibit 5** - 2 April 2013, Manager Norris reviewed my Official Personnel File (OPF)

18  and did not notice my 1996 statement under oath that I served in Desert Storm. My Supervisor

19  of Maintenance Operations (SMO) Ken Dow and Maintenance Manager Dave Marzec "realize"

20  that I lied on my application. Western Area Labor Relations Manager Tim Hanschen, made the

21  decision. - "Interesting issue what do you think?"

22  *Johnson v. U.S. Postal Service* , 85 M.S.P.R. 1, ¶ 11 (1999), the Board found USERRA

23  jurisdiction over a 7-day suspension, *Erickson v. U.S. Postal Service*, 571 F.3d 1364, 1368-69

24  (Fed. Cir. 2009) (holding that the agency could not remove). *Erickson v. U.S. Postal Service*,

25  636 F.3d 1353, 1359 (Fed. Cir. 2011) (finding pertinent the appellant's unrebutted testimony that

1  he believed he was still employed by the agency [on leave]).  No prior discipline or safety

2  infractions used by Management in assessing what action or discipline to impose (VETS Exhibit

3  12, OPF no discipline), *Harellson v. U.S. Postal Service* , 113 M.S.P.R. 534, ¶¶ 2, 9-10 (2010),

4  *Smyth v. U.S. Postal Service* , 89 M.S.P.R. 219, ¶¶ 3, 7 (2001) .   38 USC § 4311©.

5  Discrimination, - An employer shall be considered to have engaged in actions prohibited – when

6  veteran status is a motivating factor.

7

8    **VETS Exhibit 6** - 30 May 2013, I was placed on non-paid Enforced Leave "…due to your

9  medical condition (color blindness)…. If you file an MSPB appeal…" and my supervisor SMO

10  Dow ripped up my PS Form 3971 request for FLMA Leave.  I did file a MSPB Complaint (#SF-

11  0752-13-I-1, Hearing Nov 13 – no decision).  *Nahoney v. U.S. Postal Service*, 112 M.S.P.R. 93

12  (2009), the agency did violate the Family and Medical Leave Act of 1993 (FMLA) and

13  Americans with Disability Act (ABA).  The Agency (Attorneys) specifically guide me to the

14  MSPB just so they could state that I lied on my applicant and turn the Enforced Leave into

15  discharge for lying on my application (theft of my livelihood and earned retirement).

16

17    **VETS Exhibit 7 -** 18 July 2013, the Agency's Attorney in the MTD asserted that "Appellant

18  Is Not Preference Eligible.  … Appellant's **military records**, dates February 2006, show that

19  Appellant's military service was limited to the period 1979 to 1981."

20    VETS Exhibit 1… PS Form 2591, Oct 1996, - D. Veteran Preference 3, - "Do you claim 5-

21  point preference… - YES, 5. US Army Jan 70 – Jan 81, Army National Guard Apr 82 – Nov 95

22  (initialed/certified HR Jay Bonner), - C. Medical History 13. Overseas? - Saudi Arabia Jan 91 –

23  Jul 91."

24    Handbook EL-312 485, Adjudicating Claims for 5-Pont Preference, - "The adjudicator

25  determines whether the veteran meets the criteria in 483.1, and either approves or denies the

1    claim for 5 points." 38 USC § 4311(2)(D), Discrimination - exercise of a right provided.

2

3    **VETS Exhibit 8** - 6 August 2013, after I called the Agency's Attorney Schwartzman and told

4    him that I was retired National Guard and served in Desert Strom. MTD MSPB SH-0752-13-

5    0633-I-1, 6 Aug 13, - "The Agency moved to dismiss McDermott's appeal because the **Agency**

6    **records** revealed that McDermott was neither: (1) veteran preference eligible… the DD-214

7    establishing his eligibility cannot be found. The Agency submitted the only DD-214 in the

8    Agency's record… But the Agency contends that McDermott should have done more in response

9    to the Agency's motion than merely assert that the Agency's records are not complete or the DD-

10   214 submitted by the Agency did not fully reflect the Appellant's military service…" (VETS

11   Exhibit 8).

12   I told the Attorney that I was retired National Guard called up to serve in Desert Storm. Still

13   he stated to the Court that I only had "three years" of active service until I showed the Court my

14   DD-214 giving him a copy. My OPF still has not been corrected. (Noting the ABA rules clearly

15   state that it is considered fraud upon the Court for an Attorney to assert a facts that he knows is

16   not true.) § 4322, Enforcement of employment or reemployment rights, (a) A person who claims

17   they are entitled to rights or benefits with respect to employment by an employer, i.e. veterans

18   preference.

19

20   **VETS Exhibit 9** - A proper investigation of my Military Service Records (and not my

21   adulterated USPS OPF) shows other DD 214s from my 20-years of National Guard and Reserve

22   Service that the Attorney did not "discover" including my DD 214 for Desert Storm. (Noting

23   that it is an ABA rules that an Attorney is guilty of Misconduct for failing to not properly

24   investigate "facts" placed before the Court.) § 4322(2)(A) The employer has failed or refused, or

25   is about to fail or refuse, to comply with the provisions VEOA and USERRA by not investigating

1   my veterans preference claims or granting my veterans preference owed.  § 4324, Enforcement of

2   rights, (1) is entitled to the rights or benefits sought, the Merit Systems Protection Board shall

3   adjudicate any complaint brought before the Board pursuant to subsection (a)(2)(A) or (b).

4

5   **VETS Exhibit 10** - 21 November 2013, the MSPB Hearing was held and a Decision still has

6   not been made about the unlawful Enforced Leave.  § 4327, Noncompliance of Federal officials

7   with deadlines.

8   *Brown v. U.S. Postal Service*, the appellant asserted that his removal was the result of agency

9   actions that were designed to "get rid of him" *See Brown v. U.S. Postal Service* , 106 M.S.P.R.

10  12, ¶ 19 (2007); *Holmes v. Department of Justice* , 92 M.S.P.R. 377, ¶¶ 11-12 (2007).

11  VETS Exhibit 5, email MM Norris to Western Area Henderson, Subject:  Safety Concern, -

12  "That is when the employee created a big stink that we were out to get him ..." - *Buckheit v. U.S.*

13  *Postal Service*,  2007 MSPB 224,  Docket No. PH-3443-07-0050-I-1, September 25, 2007. -

14  Actions appealable under part 351 also include furloughs for more than 30 days. 5 C.F.R. §

15  351.901.  The U.S. Postal Service is required to follow part 351 procedures when it releases a

16  preference-eligible employee from his competitive level in a RIF. *See* 5 U.S.C. §§ 3501(b),

17  3502(a); 39 U.S.C. § 1005(a)(2); 5 C.F.R. §§ 351.201(a)(2), 351.901; *White v. U.S. Postal*

18  *Service*, 63 M.S.P.R. 299, 302 (1994).

19  Actions appealable under 5 CFR part 351 also include furloughs for more than 30 days, 5

20  C.F.R. § 351.901.  The U.S. Postal Service is required to follow part 351 procedures. *See* 5

21  U.S.C. §§ 3501(b), 3502(a); 39 U.S.C. § 1005(a)(2); 5 C.F.R. §§ 351.201(a)(2), 351.901; *White*

22  *v. U.S. Postal Service*, 63 M.S.P.R. 299, 302 (1994). *See* 5 C.F.R. subparts 351E, 351F, 351G.

23  Because an employee's rights under these regulations are based in part on whether the employee

24  is a preference eligible, a violation of those regulations may constitute a violation of a regulatory

25  provision relating to veterans' preference.

1    Under the regulations at 5 C.F.R. § 351.201(a)(2), an agency is required to use procedures

2    when it "releases a competing employee from his or her competitive level by furlough for more

3    than 30 days, separation, demotion, or reassignment requiring displacement," - *See Myers v.*

4    *Department of the Army*, 87 M.S.P.R. 77, ¶ 4 (2000).   Enforced Leave - nonfrivolous allegations

5    of being subjected to adverse actions, - *Burger v. U.S. Postal Service*. 88 M.S.P.R. 579. ¶¶ 9-10

6    (2001). I never had the required pre-hearing or review of the CBA required Installation Head

7    review before receiving the adverse action – Enforced Leave or any other procedural due process.

8

9    **VETS Exhibit 11** -  MSPB SF-0752-13-0633-I-1, Agency MTD. 6 Aug 13 (VETS Exhibit 8),

10   page 4, - "One particular concern was whether McDermott would distinguish between the

11   various colored wires used in wiring of equipment... McDermott could not safely perform all of

12   the essential functions of his position.  Appellant is neither a veteran preference eligible …"

13   6 March 2014, After performing and passing a "colored wire" test given by a Maintenance

14   Manager, I returned to work with involuntary work restrictions for my now disability of color

15   blindness (VETS Exhibit 12). § 4325(1) the reemployment was not in accordance with the

16   Agency's procedures for the Return-to-Work rules.

17

18   **VETS Exhibit 12** – eOPF Details, 2005-Present.

19

20   2. The DOL VETS decision RE: Veterans' Preference Claim WA-2015-VPH. 4 March 2015

21   (attached), states, - "In conversation with an attorney with the Office of General Counsel for the

22   USPS we were provided information and the necessary USPS form to enable you to provide

23   additional DD-214 and get it into your OPF.  It is the reasonable conclusion of this office that

24   your care has been settled and will be closed as of the date of this letter."

25   I have already provided the USPS Law Department (Attorney improperly involved in the

1   MSPB administrative judicial process, Administrative Dispute Resolution Act) a copy of my

2   Desert Strom DD-214 to establish the jurisdiction of the MSPB #SF-0752-13-0633-I-I in

3   November 2013. My OPF still has not been corrected (VETS Exhibit 12) and my preference

4   points returned going on a year-half since I first gave the Agency's Representative Attorney a

5   copy of my Desert Strom DD-214 proving (burden) for the MSPB jurisdiction and my veterans'

6   preference right.  MTD, 6 August 2013 (VETS Exhibit 8), page 3, "The Agency acknowledges

7   that if McDermott was called to active duty service in a combat area during Desert Storm he

8   would be preference eligible."

9

10      3.  The DOL VETS Decision also included a PS 8043 Request to Amend OPF form.

11  However:

12      10 January 2015, I requested the District HR Office to correct my OPF (MSPB Exhibit A).

13      14 March 2014, I requested the USPS Seattle HR to correct my OPF (MSPB Exhibit B).

14      3 March 2014, I request USPS Western Area HRSSC to correct my OPF, (MSPB Exhibit

15  C).

16      3 March 2014, I requested the USPS Manager, Records Office, to correct my OPF (MSPB

17  Exhibit D).

18      3 March 2014, I requested the USPS Seattle District HR to correct my OPF (MSPB Exhibit

19  E).

20      14 February 2014, I requested the USPS Seattle HR Manager Alexis Delgado, to correct my

21  OPF (MSPB Exhibit F).

22      29 November 2013, I requested the USPS Seattle HR Manager, allow me to return to work

23  from FMLA leave and correct my OPF (MSPB Exhibit G). See *Nahoney v. U.S. Postal Service*,

24  112 M.S.P.R. 93 (2009), the agency violated the Family and Medical Leave Act of 1993

25  (FMLA).  And, I have not had my OPF corrected (VETS Exhibit 12).

1    5 CFR § 1201.115 Criteria for granting petition or cross petition for review.  Showing that:

2    "**(a)** The initial decision contains erroneous findings of material fact.  **(1)** Any alleged factual

3    error must be material, meaning of sufficient weight to warrant an outcome different from that of

4    the initial decision. **(2)** A petitioner who alleges that the judge made erroneous findings of

5    material fact must explain why the challenged factual determination is incorrect and identify

6    specific evidence in the record that demonstrates the error." *Smyth* v. *U.S. Postal Service*, 85

7    M.S.P.R. 549, ¶ 5 (2000), 89 M.S.P.R. 219 (2001).

8        The DOL VETS decision contains erroneous findings (I have exhausted my remedies with the

9    Agency) and facts (Agency will not restore my rights or make whole) sufficient to warrant a

10   different outcome of the decision.

11

12       4. 38 U.S.C. § 4311(a); *Yates v. Merit Systems Protection Board*, 145 F.3d 1480, 1483 (Fed.

13   Cir. 1998). 85 M.S.P.R. 1, ¶ 11 (1999), 38 U.S.C. § 4303(2); *Yates*, 145 F.3d at 1483. "A

14   motivating factor in the employer's action, unless the employer can prove that the action would

15   have been taken in the absence of such membership ... or obligation for service." 38 U.S.C. §

16   4311(c)(1); *see Yates*, 145 F.3d at 1483.

17       4 February 2013, Email MM Norris, "… It may have even affected his hiring standard if he

18   was claiming 5 point wrongly… Perhaps the root of his discontenting attitude at work is he lost

19   being considered a preference veteran." - (VETS Exhibit 4).

20       7 February 2013, Email MMO Marzec, - "… He said that his back condition was a

21   documented FMLA condition and that he was color blind from birth. He said that when he was

22   in the army, he was taken out of the infantry and given administrative duty because of it. I told

23   him that we were not aware of this…" (Note: I served with the 18[th] Airborne Corp (infantry)

24   during Desert Storm)

25       19 April 2013, Email SMO Dow, MMO Marzec, - "I did not realize that if an employee lies

1   on his application and that once it was discovered that employee would be removed from the

2   postal service and no benefits would be paid." - (MSPB Exhibit K).   I did not lie on my

3   application about being a Desert Strom veteran or being Color Blind. (VETS Exhibit 1).

4

5     5. 10 March 2014, I have returned to work under a continued Hostile Work Environment.  I

6   have submitted a Back-Pay packet and a request several times to correct my Official Personnel

7   File (OPF) (MSPB Exhibits A-G). I have not received my back-pay or have been asked to

8   submit any other needed forms or information. My OPF has not been corrected to reflect my 9-

9   months of Enforced Leave, FMLA approval, or the return of my veteran's preference points that

10   was falsely removed (VETS Exhibit 12). I have been given an unreasonable work restriction (no

11   working on colored electrical wires alone) when staffing has been cut to the point that I am

12   working by myself on Sundays and Mondays being unable to do any electrical work, i.e. my

13   maintenance job, without fear of being discharged for failure to follow instructions.   My 7am

14   day-shift start time was changed to an unreasonable graveyard start time 5am.  Day-shift (me) is

15   given all the heavy work orders and a heavy load of preventive maintenance routes with night-

16   shift getting nothing.  By my new (SMO Dow retired) Supervisor SMO Cruz whom I complained

17   of in an EEO receiving a non-competitive promotion (no notice to me).  His former Maintenance

18   day-shift position not filled during his 12-months of 204B supervisor training and not filled after

19   his promotion to SMO leaving me doing the extra heavy work without the tools that I did have

20   (HWE).

21     23 February 2015, my new Manager (MMO Marzec retired) MMO Hank Baumgartner asked

22   to "talk" to me about my request for Reasonable Accommodation for my FMLA covered Color

23   Blindness and on-the-job injury OWCP claim for stress from the HWE.  MMO Baumgartner

24   stated that he had "copies" of my documents and wanted to ask me questions about my claims. I

25   told him that he was not on the District Reasonable Accommodation Committee (DRAC)

1  member or qualified to investigate my OWCP (DOL) on-the-job (adding to the HWE stress)

2  injury claims. I told him that he did not have the authority (delegated in writing by the

3  Installation Head) to have access to (or copies of) my medical records and my OPF/Personal

4  Information (Privacy Act).

5    MSPB SF-0752-13-0633-I-1, Agency MTD, 6 Aug 13 (VETS Exhibit 8), page 4, -

6  "...McDermott contends that the restrictions were put in place by 'ignorant and unqualified

7  Agency Officials without authority to do so,' and states..."

8    I told Mr. Baumgartner that if he "really" wanted to help he could give me back the tools and

9  equipment that were taken away making my job harder and replace the staffing back to proper

10  (Western Area Approved Staffing Plan) level so I would not have to work alone (take

11  unscheduled leave) or violate my – Employer unlawfully imposed - work restrictions suffered by

12  me. I still have not had the tools and equipment that were unreasonably (after FMLA

13  unscheduled leave usage) taken away - returned. Making my job more harder or impossible than

14  before the HWE. And, I have not been given a decision on my Reasonable Accommodation

15  request filed 17 November 2014. (OWCP 146093140, pending) In the continuing HWE I am

16  given more work (SMO Cruz) than I can do in 7.5 hours and threatened with discipline if I

17  bypass (MSPB Exhibit P).

18    For my pervious MSPB complaint hearing held November 2013, for SF-0752-13-0622-I-1,

19  MSPB Administrative Judge Grace Carter has not issued a decision (16 months).

20    The Agency's Attorney's (sworn statement) Motions to Dismissed, 18 July, 6 August 2013

21  (VETS Exhibits 7 ,8), were based on the material fact that the Agency (Contractor) unlawful

22  removal of my veterans' preference from my "agency records." I informed the Attorney that I

23  was retired Army National Guard, called up for Desert Strom and I would get him a copy of my

24  DD-214. He still asserted (sworn) that I was not a veterans' preference employee, 6 August 2013

25  (VETS Exhibit 8). I gave a copy of my Desert Storm DD-214 to the Agency's Attorney

1   September 2013 and still my OPF has not be corrected (VETS Exhibit 12). The MSPB Hearing

2   Decision may cover the merits of some of my VEOA, USERRA and Discrimination claims

3   stated hear.

4       23 January 2015, I made a Response to EEOC Administrative Judge Steven Gaffin request for

5   a response to his "jurisdictional" authority for a hearing on my four other "mixed" Individual and

6   Class EEO Complaints, 1E-985-0006-13, 1E-985-0004-12, 1E-985-0001-14 and 4E-980-0032-

7   14.

8       16 July 2013, National EEO Investigation Service Office (NEEOISO) (no authority or

9   jurisdiction Contractor) "decision" - "...an EEOC Administrative Judge will make a decision

10  regarding the requested clarification, or alternatively, all relevant information and evidence..."

11  (MSPB Exhibit Q). I have also filed a Complaint with DOL OWCP over the violations of my

12  Privacy – medical records. I still seek to be made whole and damages for **all of my claims**

13  (outstanding) that have merit that are not addressed by a Court of competent jurisdictional

14  authority.

15

16      The Board does have the authority to decide the merits of VEOA and USERRA appeals

17  without a hearing if there is no genuine dispute of material fact, 5 C.F.R. § 1208.23(b). The

18  Administrative Judge must grant a hearing request in a VEOA case when there is a genuine

19  dispute of material fact. *See Sherwood v. Department of Veterans Affairs*, 88 M.S.P.R. 208, ¶ 11

20  (2001). One party must prevail as a matter of law. *Burroughs v. Department of the Army*, 115

21  M.S.P.R. 656, ¶ 8 (2011). The material facts and preponderance of the evidence is that the

22  agency violated one or more statutory or regulatory rule for my veterans' preference rights. *Dale*

23  *v. Department of Veterans Affairs*, 102 M.S.P.R. 646, ¶ 10, *review dismissed*, 199 F. App'x 948

24  (Fed. Cir. 2006).

25      I do ask for a hearing if the Agency disputes any material fact and for a final decision of the

1    Merit Systems Protection Board for all claims and causes of action that have merit in this appeal.

2    5 C.F.R. § 1201.113(c).

3        For relief I ask to be made whole and punitive damages including an Affirmative Action Plan

4    (fixing the HR problems) and removal (criminal charges) of offending Agency Officials to

5    remedy the Hostile Work Environment that the EEOC (MSPB Exhibit M) has already found that

6    all Employees (Class Complaint) and I have continued to suffer

7        Respectfully submitted on this 20th Day of March 2015,

8

9

10   Lance McDermott
     1819 So 104 ST
     Seattle, WA 98168
11   Cell (206) 331-1990

12

13   Endnote - retirement of officials does not alone establish prejudice (particularly if the
     witness(es) can be located), *Johnson v. U.S. Postal Service*, 121 M.S.P.R. 101, ¶¶ 8-9 (2014).

14

15

16

17

18

19

20

21

22

23

24

25

MSPB, VEOA-USERRA Complaint Exhibits:

A – OPF Amend request, PS 8043, Seattle HR, 10 Jan 15
B – OPF Amend, Seattle HR, 14 Mar 15
C – OPF Amend, Western HR, 3 Mar 15
D – OPF Amend, Records Office D.C., 3 Mar 15
E – OPF Amend, FMLA Return to Work, 3 Mar 15
F – HR Manager Delgado, 14 Feb 14
G – Seattle HR Manager, 29 Nov 13
H – PMG, Judicial Officer, NEEOISO Executive "FRCP do not apply" "do not provide for the consideration of criminal matters," 24 Apr 13
I- Attorney Bonds "investigating" my OPF – OSHA Complaint, 4 Nov 05
J – MM Norris, "I will have Dave Marzec take the steps..." "Perhaps that is when he lost his 5 point status. It may have affected his hiring status," 4 Feb 13; LR Manager Foster, Health Record
K – MMO Marzec, "He said that when he was in the army..." 7 Feb 13 "What are you taking about? What lie? Is there proof?" SMO Dow, 19 Apr 13
L – Attorney Mosher, investigation "This action involves complaints regarding various promotions and allegations of nepotism and misconduct during the time period 2004-2006," 2 Oct 06
M – EEOC Notice, Title VII discrimination and HWE, 12 Dec 14 – 1 Nov 12
N – MM Norris, "...I found the following: ... #1 is the medical questionnaire an individual fill out when hired... I am working with legal regarding the individual..." 2 April 2013
O – MM Norris, RFI Response, "2- There is no policy for enforced leave," 7 June 13
P – Daily Work Sheet, 12-21 hours of work, eCBM routes (supervisor level work), Mar 15
Q – NEEOISO Contractor denial, with no appeal right, of my disagreement of the Issues to be investigated and processed, 16 July 13