Seattle EEO Commission
Acting Director Michael Baldonado
909 First Avenue #400
Seattle, WA  98101-1061

*H.*                                                    29 August 2013

Dear Mr. Baldonado,

I request that you consider combining my EEOC Hearing 1E-985-0006-13 with my MSPB Hearing SF-0752-13-0633-I-1.  The Postal Service's agency representative is Attorney Steve Schwartzman 206 381-6626 and is being heard by Administrative Judge Grace B. Carter 415 904-6772 (Order enclosed).  The MSPB Complaint was filed because I have been on Enforced Leave since 30 May 2013 (burning my own leave time) because my Employer has made a decision I am too Color blind to do my job and I believe that decision was in retaliation for protected activity like filing EEOs.   Both Complaints involve similar issues and the same individual's testimony.  The underlying issues involved are all Department of Labor jurisdiction - Office of Workers' Compensation Program, - Federal Employee Compensation and - Family Medical Leave Act that Seattle DOL Director Donna Hart is aware of (Letter enclosed).  This would serve judicial economy and efficiency saving both parties time and expense.  Timing also would be good because discovery has just started and swift adjudication would save me further injury.

Thank you for the consideration,

Lance McDermott
1819 So 104 ST
Seattle, WA  98168
Cell (206) 331-1990
treke@hotmail.com

*H*

23 Sept 13



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Seattle Field Office**

Federal Office Building
909 First Avenue, Suite 400
Seattle, WA 98104-1061
(206) 220-6887
TTY (206) 220-6882
FAX (206) 220-6911

LANCE McDERMOTT,      )
                      )
        Complainant,  )        EEOC No.  551-2013-00213X
                      )        Agency No. 1E-985-0006-13
    v.                )
                      )        **ORDER DISMISSING "MIXED**
PATRICK DONOHOE,      )        **CASE" FOR MSPB**
Postmaster General,   )        **PROCESSING**
U.S. Postal Service,  )
                      )
        Agency.       )
                      )
                      )

## I.    STATEMENT OF THE CASE

This is an order issued by a U.S. Equal Employment Opportunity Commission Judge pursuant to 29 C.F.R. § 1614.302, to return the above "Mixed Case" to the U.S. Postal Service for further processing with the Merit Systems Protection Board (MSPB).

## II.    ISSUE

Is this a "mixed-case" EEO complaint that should properly be before the MSPB?

## III.    PROCEDURAL BACKGROUND

Complainant first initiated an MSPB appeal and then requested a hearing with the EEOC on or about August 29, 2013.  Based on complainant's attachments, it appears that complainant is alleging a violation of the Family Medical Leave Act and alleging discrimination based on disability and reprisal for prior EEO activity.  It is not clear at what stage the EEO complaint process is in.

*Order Dismissing "Mixed Case"*
*For MSPB Processing*
*September 23, 2013*
*Page 1*

H

Complainant then requested that the EEOC combine the cases with the MSPB. *See Complainant's August 29, 2013 correspondence, attached.*

## IV.   PRINCIPLES OF LAW

Covered individuals may raise claims of discrimination in a mixed case either as a direct appeal to the MSPB or as a mixed-case EEO complaint with the agency (here, the USPS), but not both. 29 C.F.R. § 1614.302(b).

Appealable matters to the MSPB include adverse actions such as denial of restoration claims, including reduction of work hours, and other "whistle blower" activities. 5 C.F.R. § 353.301 *et seq.*

Title 29 C.F.R. § 1614.302, and Chapters Four and Five of the MD-110, require the agency to provide specific notice to the complainant of certain deadlines and rights regarding MSPB and EEOC procedures in mixed case situations. *See* MD-110, pages 4-1 through 4-7, 5-2 through 5-3.

When an employee files a mixed case complaint with the agency, the agency must process the complaint in the same manner as it would any other EEO discrimination complaint, <u>but with specific additional requirements including special notice and the issuance of a final decision within 45 days.</u> *See* 29 C.F.R. § 1614.302(d) and EEO MD-110, Chapter Four, II.B.6. Please note:

> **At the time that the agency issues its final decision on a mixed case complaint, the agency shall advise the complainant of the right to appeal the matter to the MSPB (not EEOC) within 30 days of receipt and of the right file a civil action as provided at § 1614.310(a).**

29 C.F.R. § 1614.302(d)(3) and EEO MD-110, Chapter Four, II.B.6.e.

*Order Dismissing "Mixed Case"*
*For MSPB Processing*
*September 23, 2013*
*Page 2*

23 Sept

## VI.    ANALYSIS

After reviewing the above case file, the finding here is that complainant is either premature in requesting a hearing or the case should have gone to the MSPB or possibly the Department of Labor.

## VII.    ORDER

Therefore, IT IS ORDERED that the complaint be returned to the agency for proper processing with the MSPB pursuant to 29 C.F.R. § 1614.302.  The EEOC case is dismissed without recourse against the complainant since it appears to be a premature request for a hearing or it is a mixed case which should be with the MSPB.

DATED: _____ September 23, 2013 _____

Steven R. Gaffin
Administrative Judge

For timeliness purposes, the Commission will presume that this order was received within five (5) calendar days of mailing. I, ___Sc___, certify that this order was mailed to complainant, complainant's representative (if applicable), and the agency on this same date to:

Lance McDermott
1819 S. 104th Street
Seattle, WA 98168

Michael R. Tita, Attorney
USPS LAW DEPARTMENT - WESTERN AREA
P.O. Box 3686
Seattle, WA 98124

NEEOISO
PO BOX 21979
TAMPA, FL 33622-1979

*Order Dismissing "Mixed Case"*
*For MSPB Processing*
*September 23, 2013*
*Page 3*

4

12 Nov 14

2014 NOV 17 PM 2 25
RECEIVED
SEA EEOC

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Seattle Field Office
909 First Avenue, Suite 400
Seattle, WA 98104-1061

Lance P. McDermott
                    Plaintiff, *Pro Se*,                    )   EEOC No. 551-2013-00213X

vs.                                                          )   Agency No. 4E-980-0032-14

Patrick R. Donahue, Postmaster General, U.S. )   Motion for Hearing
Postal Service, *et al.*

---

The Agency failed to do as the Court's ordered, 23 September 2013, dismissing my "Mixed Case" Age discrimination based EEO Complaints for processing with my MSPB Hearing held, 7 November 2013 (Court Order page 3). The Agency did not issue a Final Decision or process the EEOC issues with the issues reviewed for the MSPB Complaint (Court Order page 2). As directed I did complain to the DOL and received a right to sue letter, 15 April 2013 (exhibit 2), for the FMLA violations. I did complain to the Agency's Judicial Officer (Title 39 § 960.1 Authority: 5 U.S.C. 504(c)(1); 39 U.S.C. 204) and received a "dismissal" of my related due-process, jurisdiction, investigation authority, spin-off, class and criminal complaints (exhibit 2).

I have failed in my attempt to consolidate my mixed MSPB and EEOC complaints into one civil action, C13-2011-MJP (Seattle), and it has been dismissed. Therefore, I plead back to the EEOC and ask Administrative Judge, Steven Gaffin, for a hearing on my unheard complaints pursuant to 28 U.S.C. § 2679(b)(8), - "the claim is presented to the appropriate Federal Agency within 60 days after dismissal of the civil action." See 29 CFR 1614.107(b), - "... is reviewable by an EEOC Administrative Judge if a hearing is requested on the remainder of the complaint..." *Richard Sheehan v. USPS*, EEOC No. 01A03657, Agency No. 4B-028-0048-00, 9 November 2000, appealed under 29 CFR 1614.405.

I have been returned to work from my Enforced Leave for being color blind, but, under a

1   continued Hostile Work Environment, I have submitted a Back-Pay packet and a request to
2   correct my Official Personnel File (OPF). I have not received my back-pay or have been asked to
3   submit any other needed forms or information. My OPF has not been corrected to reflect my 9-
4   months of Enforced Leave, FMLA approval, or the return of my veteran's preference points that
5   were falsely removed. I have been given an unreasonable work restriction (no working on
6   colored electrical wires alone) when staffing has been cut to the point that I am working by
7   myself on Sundays and Mondays under a work restriction by my employer preventing me from
8   doing any electrical work, i.e. my maintenance job, without fear of being discharged for failure to
9   follow instruction. My day-shift start time was changed to an unreasonable graveyard 5am (9am
10  lunch) and I still have not had the tools and equipment taken away, returned, that I need to do my
11  job safely. I had FMLA denied to help a family member (my Dad) because I had not worked
12  "1200 hours" and did not have enough leave time (burned 500 hours on Enforced Leave) to take
13  a two-week vacation this year. I still seek to be made whole.

14

15      29 CFR 1614.110 provides, - "... The final decision shall consist of findings by the agency on
16  the merits of each issue in the complaint, or, as appropriate, the rationale for dismissing any
17  claims in the complaint and, when discrimination is found, appropriate remedies and relief..." I
18  still seek a decision on the merits of each issue in my complaint.

19      Respectfully submitted on this 12th Day of November 2014,
20      Lance McDermott
21      1819 So 104 ST
        Seattle, WA 98168
22      (206) 763-6268
        treke@hotmail.com
23
        I certify that I mailed a copy of this Motion to the Agency's Contractor at:
24      NEEOISO
        PO Box 21979
25      Tampa, Fl 33622-1979

9 Jan 15



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Seattle Field Office

Federal Office Building
909 First Avenue, Suite 400
Seattle, WA 98104-1061
(206) 220-6887
TTY (206) 220-6882
FAX (206) 220-6911

LANCE P. McDERMOTT,                    )    EEOC No.  551-2015-00054X
                                       )       (Former EEOC No. 551-2013-00213X)
    Complainant,                   )    Agency No. 4E-90-0032-14
                                       )
v.                                     )    **ORDER TO RESPOND RE:**
                                       )    **JURISDICTION**
PATRICK DONAHOE,                       )
Postmaster General,                    )
U.S. Postal Service,                   )
                                       )
    Agency.                        )
                                       )

      On November 17, 2014, Lance McDermott ("McDermott" or "complainant") filed a

*Motion for Hearing* (copy attached) pursuant to 29 C.F.R. § 1614.108(g), with the U.S. Equal

Employment Opportunity Commission, Seattle Field Office  ("EEOC"), regarding his

discrimination complaint against the U.S. Postal Service ("Postal Service" or "agency").

      Mr. McDermott alleges, among other things, that the Postal Service discriminated against

him on the basis of disability, reprisal for EEO activity, and the Family Medical Leave Act.

McDermott requested a hearing on the same claims in August 2013 (EEOC No. 551-2013-

0213X).  The EEOC dismissed the complaint without prejudice on the grounds that it was a

"mixed case" complaint and should be before the MSPB.

      McDermott subsequently filed an appeal with the MSPB, filed a claim with the U.S.

Department of Labor, appealed another EEO case to the EEOC's OFO, and filed a lawsuit in

federal district court.

      MSPB apparently denied jurisdiction, but it is not clear whether it also dismissed son

the claims.  It is not clear what claims were before the District Court.

H

*Order to Respond re: Jurisdiction*
*January 9, 2015*

Complainant asserts that the Postal Service failed to issue a *Final Agency Decision* or notice of rights following the MSPB ruling. McDermott maintains there are still EEO claims existing that require a finding on the merits by the EEOC.

At issue is whether the MSPB or the U.S. District Court made any findings of fact or conclusions of law affecting this EEO complaint.

This *Order to Respond* gives the parties 15 days from receipt to file a response and (1) provide copies of any MSPB orders or findings, (2) provide copies of any U.S. District Court orders affecting the claims in this case, and (3) show cause why the complaint should not be dismissed for *res judicata* (claim preclusion).

**THE PARTIES ARE HEREBY GIVEN NOTICE THAT THEY HAVE 15 CALENDAR DAYS AFTER RECEIPT OF THIS ORDER TO RESPOND IN WRITING.**

DATED:      January 9, 2015

Steven R. Gaffin
Administrative Judge

For timeliness purposes, the Commission will presume that this order was received within five (5) calendar days of mailing. I, _____, certify that this order was mailed to complainant, complainant's representative (if applicable), and the agency on this same date to:

Lance McDermott
1819 S. 104th Street
Seattle, WA 98168

Michael R. Tita, Attorney
USPS LAW DEPARTMENT - WESTERN AREA
P.O. Box 3686
Seattle, WA 98124

*12 Feb 13*

# UNITED STATES POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
### IN THE MATTER OF:

*I*

Lance P. McDermott
Complainant,

v.

Patrick R. Donahoe,
Postmaster General,
c/o Western Area Operations
Respondent.

Agency No. 1E-985-0004-12

Filed on: June 21, 2012

## FINAL AGENCY DECISION

Pursuant to Equal Employment Opportunity Commission (EEOC) regulations at 29 C.F.R. §1614.110, this is the final agency decision of the U.S. Postal Service regarding the complaint of discrimination identified above.

### Statement of Claims

The complainant alleged discriminatory harassment based on Retaliation (Prior EEO Activity) when: 1) from January 2012 through June 2012 he was denied the opportunity at higher level; 2) on multiple dates beginning January 2012 and continuing, he has been subjected to harassment from Supervisor Ken Dow, including the toaster, microwave, icebox, table, chairs and stools being removed; eliminated his access to the Internet; ordered not to read or drink on the workroom floor; cancelled request for metal stock, tools and parts; 3) on Tuesdays and Wednesdays he was scheduled to work alone; 4) he was assigned to a temporary leased facility that does not have proper heat and air; he became aware on April 12, 2012 that the request for HVAC systems was reported as " No MNT49 found"; 5) on April 13, 2012 he was advised he had an ineligible rating for the positions he had applied for; 6) on April 25, May 25, and June 15, 2012, he became aware that his supervisor ordered a fellow employee to discard metal and wood from his work area, which resulted in him not having the resources to fix the machines on multiple dates in April and May; 7) on April 30, 2012 he was given an investigative interview and subsequently on May 3, 2012, issued a Letter of Warning for Failure to be Regular in Attendance; 8) on May 23, 2012 he was harassed regarding where he was sitting and when he came back from lunch the chair was in the dumpster; 9) on May 27, 2012 he was harassed, told to get back to work, threatened to be walked out of the building, and told not to drink on the workroom floor; 10) he was not paid for working Memorial Day, May 28, 2012; 11) he was given 3 investigative interviews on

*I*

Final Agency Decision
Lance P. McDermott
Agency Case No. 1E-985-0004-12
Page 2

July 2, 2012 and subsequently issued a Letter of Warning dated July 23, 2012; 12) in January 2012 his supervisor told him to stop reading and no reading material on the work floor; 13) on April 19, 2012, due to a hazardous condition (dust), his allergies flared up; 14) in June 2012 his supervisor told him to stop drinking coffee and that he was going to start giving him direct orders; 15) on July 29, 2012, to the Request for Information (RIF) submitted by the Steward, his supervisor responded. "I'm your Supervisor;" 16) in August 2012 his supervisor told him that no one is allowed to use the lathe/mill without authorization; (17) on August 5, 2012, at 6:00 am, the temperature in his facility was 82 degrees; 18) on August 22, 2012 his supervisor criticized his work and said another employee could do a better job; 19) on unidentified dates, his supervisor told him that he was "unqualified" and had another employee perform his job; 20) on unidentified dates, his supervisor disposed of Postal property and equipment he needed to perform his job; and 21) on unidentified dates, due to a hazardous condition, he suffered three insect bites during the year.

Via the Agency's Acknowledgement and Partial Acceptance of Amendment to Complaint dated August 30, 2012, the complainant alleged another issue which was dismissed for failure to state a claim, as that matter affected an employment condition relating to a third party, not the complainant. A review of the record established that the allegation was properly dismissed in accordance with 29 C.F.R. §1614.107. Consequently, the August 30, 2012 decision explaining the rationale for the dismissal is herein endorsed and incorporated by reference for the purpose of this final agency decision. (Report of Investigation [ROI], Issues to be Investigated, pages [pp.] 1-15).

## CHRONOLOGY

An Equal Employment Opportunity Investigator processed the complaint, and a copy of the investigative report was transmitted to the complainant on November 28, 2012. Following receipt of that report, the complainant had 30 days in which to request a hearing before an Administrative Judge (AJ) of the Equal Employment Opportunity Commission (EEOC) or a final agency decision without a hearing. As the complainant failed to request either a hearing or a final agency decision without a hearing, this decision is being issued in accordance with EEOC Regulation 29 C.F.R. §1614.110(b).

## Applicable Law

### Disparate Treatment

The United States Supreme Court established a burden-shifting framework for analyzing claims of discrimination in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), and subsequently refined that analysis in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). The McDonnell Douglas and Burdine approach involves a three-step process when a complainant alleges intentional discrimination based on a disparate treatment theory. The Equal Employment Opportunity Commission has adopted this approach in its decision making. Downing v.

Final Agency Decision
Lance P. McDermott
Agency Case No. 1E-985-0004-12
Page 3

U.S. Postal Service, EEOC Appeal No. 01822326 (September 19, 1983); Jennings v. U.S. Postal Service, EEOC Appeal No. 01932793 (April 13, 1994); and Saenz v. Department of the Navy, EEOC Request No. 05950927 (January 9, 1998). A complainant alleging discrimination must first demonstrate that there is some substance to his or her claim. To satisfy this burden, the complainant must establish a *prima facie* case of discrimination for each of the bases of discrimination alleged by a preponderance of the evidence. Furnco Construction Company v. Waters, 438 U.S. 576 (1978).

Although a complainant may establish a *prima facie* case by presenting direct evidence of discrimination, the more frequent method of establishing a *prima facie* case is through circumstantial evidence by showing that he or she: (1) belongs to a protected class; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group. Mayberry v. Vought Aircraft Company, 55 F.3d 1086, 1090 (5th Cir. 1995); Mitchell v. Toledo Hospital, 964 F.2d 577, 582-83 (6th Cir. 1992). The failure to establish a specific element of a *prima facie* case may be overcome by presenting evidence of agency actions from which an inference of discrimination could be drawn if they remained unexplained. Day v. U.S. Postal Service, EEOC Appeal No. 01996097 (September 18, 2000).

Once a *prima facie* case has been established, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Furnco, 438 U.S. at 578. See also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). The employer need not persuade the trier of fact that the proffered reason was its actual motivation but merely needs to raise a genuine issue of fact as to whether it discriminated against the complainant. Burdine, 450 U.S. at 254; Keval v. Commodity Futures Trading Commission, EEOC Appeal No. 01832127 (November 2, 1984); Hollis v. Department of Veterans' Affairs, EEOC Appeal No. 01934600 (May 3, 1994). If the agency offers no adequate explanation for the discrepancy in treatment between the complainant and similarly situated employees, the agency does not carry its burden of production and the complainant prevails on the basis of the inference of discrimination created by the *prima facie* case. Frady v. U.S. Postal Service, EEOC Appeal No. 01A05317 (January 10, 2003); Houston v. Department of Veterans' Affairs, EEOC Appeal No. 01976054 (August 27, 1999); and Parker v. U.S. Postal Service, EEOC Request No. 05900110 (April 30, 1990).

If the employer meets this burden, any presumption of discrimination created by the *prima facie* case disappears; it simply "drops from the case." Hicks, 509 U.S. at 507; U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715 (1983). See also Hernandez v. Department of Transportation, EEOC Request No. 05900159 (June 28, 1990) and Peterson v. Department of Health and Human Services, EEOC Request No. 05900467 (June 8, 1990). The complainant can then prevail only if he or she proves that the employer's reasons are not only pretext but are pretext for discrimination. Hicks, 509 U.S. at 507 and 516; Nichols v. Grocer, 138 F.3d 563, 566 (5th Cir. 1998);

Swanson v. General Services Administration, 110 F.3d 1180, 1185 (5th Cir. 1997). See also Papas v. U.S. Postal Service, EEOC Appeal No. 01923753 (March 17, 1994) and Bradford v. Department of Defense, EEOC Appeal No. 01940712 (September 20, 1994). Thus, the complainant cannot create a factual issue of pretext based on personal speculation that there was discriminatory intent. Southard v. Texas Board of Criminal Justice, 114 F.3d 539, 555 (5th Cir. 1997); Lyles v. U.S. Postal Service, EEOC Appeal No. 01A11110 (May 22, 2002); and Nathan v. U.S. Postal Service, EEOC Appeal No. 01995788 (August 29, 2001).

Pretext involves more than a mistake. It means that the reason offered by management is factually baseless, is not the actual motivation for the action, or is insufficient to motivate the action. Tincher v. Wal-Mart Stores, Inc., 118 F.3d 1125, 1130 (7th Cir. 1997) and Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). The complainant always carries the "ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination." Burdine, 450 U.S. at 254 and Hicks, 509 U.S. at 511.

At all times, the ultimate burden of persuasion remains with the complainant. Board of Trustees of Keene College v. Sweeney, 439 U.S. 24, 25 N.2 (1978). This burden was reaffirmed and clarified in St. Mary's Honor Center v. Hicks, supra. where the Court held that in order to impose liability upon an employer for discriminatory employment practices, an ultimate finding of unlawful discrimination is required whether or not the employer's explanation for its action was believable. See also Brewer v. U.S. Postal Service, EEOC Appeal No. 01941786 (June 21, 1994) and Montoya v. Department of Housing and Urban Development, EEOC Appeal No. 01940999 (August 4, 1994).

## Similarly Situated Employees

One of the key elements of a *prima facie* case of disparate treatment based on an adverse employment action is proof that similarly situated comparison employees not in the complainant's protected class were treated more favorably. This is so, in part, because agencies are not monolithic entities. Turner v. Department of the Navy, EEOC Request No. 05900445 (September 25, 1990). In general, in the absence of direct evidence of discrimination, if the complainant cannot identify any similarly situated comparison employees who were treated more favorably, he or she will not prevail. Aguilar v. U.S. Postal Service, EEOC Appeal No. 01944167 (August 8, 1995).

In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment, a complainant must show that all of the relevant aspects of his or her employment situation are virtually identical to those of other employees who he or she alleges were treated more favorably. Smith v. Monsanto Chemical Company, 770 F.2d 719, 723 (8th Cir. 1985); Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 68 (6th Cir. 1985); Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984); Mazzella v. RCA Global Communications, Inc., 642 F.Supp. 1531, 1547 (S.D. N.Y. 1986), aff'd. 814 F.2d 653

(2nd Cir. 1987).  The Equal Employment Opportunity Commission has on numerous occasions ruled in similar fashion.  See, for example, Tolar v. U.S. Postal Service, EEOC Appeal No. 01965083 (December 16, 1998), citing O'Neal v. U.S. Postal Service, EEOC Request No. 05910490 (July 23, 1991); and Knapp-Huffman v. Department of Justice (Bureau of Prisons), EEOC Appeal No. 01991026 (January 16, 2002).

If employees have different supervisors, perform different job functions, were subject to different job standards, engaged in different conduct, or worked during different time periods, they are not similarly situated.  O'Neal, Id.; Allen v. Department of the Navy, EEOC Request No. 05900539 (June 15, 1990); Willis v. Department of the Treasury, EEOC Appeal No. 01A51459 (March 16, 2003); and Stewart v. Department of Defense, EEOC Appeal No. 01A02890 (June 27, 2001).

For employees to be considered similarly situated, their medical and physical restrictions must be the same as the complainant's.  Curtin v. U.S. Postal Service, EEOC Appeal No. 01891910 (March 27, 1990) Briand v. U.S. Postal Service, EEOC Appeal No. 01932677 (February 2, 1994); Woody v. TVA, EEOC Appeal No. 0120063987 (December 17, 2007).

**Retaliation**

To establish a *prima facie* case based on reprisal, a complainant must show that: (1) he or she engaged in prior protected activity; (2) the agency official was aware of the protected activity; (3) he or she was subsequently disadvantaged by an adverse employment action or adverse treatment; and (4) there is a causal link between the protected activity and adverse action/treatment. Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F.Supp. 318, 324 (D. Mass 1976), aff'd 545 F.2d 222 (1st Cir. 1976); Manoharan v. Columbia University College of Physicians and Surgeons, 842 F.2d 590, 593 (2nd Cir. 1988); Coffman v. Department of Veterans' Affairs, EEOC Request No. 05960437 (November 20, 1997); and Whitmire v. Department of the Air Force, EEOC Appeal No. 01A00340 (September 25, 2000).  A complainant may establish prior EEO activity by participating at any stage of the EEO process or opposing unlawful discriminatory conduct.  See, generally, Lewis v. Department of the Navy, EEOC Appeal No. 01810158 (May 22, 1981) (counseling stage); Ballard v. U.S. Postal Service, EEOC Appeal No. 01923276 (August 17, 1992) (witness); and Burrough v. U.S. Postal Service, EEOC Appeal No. 01842417 (June 24, 1986) (representative).

A complainant may also establish a *prima facie* case by presenting evidence which, unexplained, would reasonably give rise to an inference of reprisal. Shapiro v. Social Security Administration, EEOC Request No. 05960403 (December 6, 1996). Obviously, the complainant must offer evidence that the agency officials who took the action were aware of his or her prior participation or opposition activity (Demeier v. Department of the Air Force, EEOC Appeal No. 01A11166 (May 23, 2002)) but establishing that alone will not enable a complainant to establish the causal connection element of a *prima*

Final Agency Decision
Lance P. McDermott
Agency Case No. 1E-985-0004-12
Page 6

*facie* case. Garcia-Gannon v. Department of the Air Force, EEOC Appeal No. 01821195 (June 30, 1983). Adverse actions need not be ultimate employment actions, just adverse treatment based on a retaliatory motive. Burlington Northern Santa Fe Railway Company v. White, 548 U.S. 53 (2006); and Lindsey v. U.S. Postal Service, EEOC Request No. 05980410 (November 4, 1999).

The causal connection may be inferred by evidence that the protected conduct was closely followed by the adverse action. Clark County School District v. Breeden, 532 U.S. 286 (2001). The Court in Breeden noted that where a complainant is relying on temporal proximity to establish a causal connection between prior protected activity and a current adverse employment action, that proximity must be "very close" and cited with approval Circuit Court of Appeals decisions holding that time gaps of three to four months between an individual's prior EEO activity and the current adverse employment action were too attenuated to suggest an inference of retaliation. The Commission has followed suit and rendered decisions establishing much shorter time frames to establish the requisite temporal proximity. See, for example, Heads v. U.S. Postal Service, EEOC Appeal No. 01A51547 (June 2, 2005); Archibald v. Department of Housing and Urban Development, EEOC Appeal No. 01A54280 (September 22, 2005); and Lynch v. U.S. Postal Service, EEOC Appeal No. 01A24705 (August 14, 2003).

To support a finding of unlawful retaliation, there must be proof that the agency official(s) took the action at issue because of the complainant's prior protected activity and sought to deter the complainant or others. *EEOC Compliance Manual on Retaliation*, No. 915.003 (May 20, 1998), pp. 8-16.

## Harassment/Hostile Work Environment

Harassment of an employee that would not occur but for the employee's race, color, sex, national origin, age, disability, or religion is unlawful if it is sufficiently severe or pervasive. Wibstad v. U. S. Postal Service, EEOC Appeal No. 01972699 (August 14, 1998), citing McKinney v. Dole, 765 F.2d 1129, 1138-1139 (D.C. Cir. 1985), and Long v. Attorney General, EEOC Appeal No. 01984213 (July 10, 2001). See also Hubbert v. Department of the Army, EEOC Request No. 05910133 (March 19, 1991); Ortega v. U.S. Postal Service, EEOC Appeal No. 01995243 (May 3, 2001); Humphrey v. U.S. Postal Service, EEOC Appeal No. 01965238 (October 16, 1998). Harassment due to an individual's prior EEO activity is also actionable. Roberts v. Department of Transportation, EEOC Appeal No. 01970729 (September 15, 2000).

To establish a claim of harassment, a complainant must show that: (1) she belongs to a statutorily protected class; (2) she was subjected to unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on the statutorily protected class; (4) the harassment had the purpose or effect of unreasonably interfering with her work performance and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to

the employer. McCleod v. Social Security Administration, EEOC Appeal No. 01963810 (August 5, 1999).

The Supreme Court has held that an employer who creates or tolerates a work environment which is permeated with "discriminatory intimidation, ridicule, and insult" that is sufficiently severe or pervasive to alter the terms and conditions of an individual's employment and which creates an abusive work environment is in violation of Title VII. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), citing Meritor Savings Bank F.S.B. v. Vinson, 477 U.S. 57 (1986). The conduct in question is evaluated from the standpoint of a reasonable person, taking into account the particular context in which it occurred, including the severity and frequency of the conduct and its effect on the employee's work performance. Harris, Id. In order to support a finding of a hostile work environment, more than a few isolated incidents of enmity based on race, gender, national origin, religion, etc. must have occurred. Johnson v. Bunny Bread Co., 646 F.2d 1250, 1257 (8th Cir. 1981) and Cariddi v. Kansas City Chiefs Football Club, Inc., 568 F.2d 87, 88 (8th Cir. 1977. There must have been a steady barrage of opprobrious comments and not a casual comment or accidental or sporadic conversation in order to trigger an entitlement to relief. Snell v. Suffolk County, 782 F.2d 1094 (2nd Cir. 1986).

The Equal Employment Opportunity Commission has repeatedly held that remarks unaccompanied by a concrete agency action are not a direct or personal deprivation sufficient to render an individual aggrieved. Johnson v. Department of Justice, EEOC Appeal No. 01986199 (February 18, 2000); Backo v. U.S. Postal Service, EEOC Request No. 05960227 (June 10, 1986); and Henry v. U.S. Postal Service, EEOC Request No. 05940695 (February 9, 1995). The Commission has also agreed with the courts and held that in order to establish a case of harassment that constitutes a hostile work environment, the harassment must be ongoing and continuous and that a few isolated incidents will not be sufficient to constitute discriminatory harassment. McGivern v. U.S. Postal Service, EEOC Request No. 05930481 (March 17, 1994) and Vargas v. Department of Justice, EEOC Request No. 05931047 (October 7, 1993). The conduct involved must be viewed in the context of the totality of the circumstances including, among other things, the nature and frequency of the offensive encounters and the time span over which the encounters occurred. Rabidue v. Osceola Refining Company, 805 F.2d 611, 620 (6th Cir. 1988) and Gilbert v. City of Little Rock, 722 F.2d 1390, 1394 (8th Cir. 1993).

The decisions make it clear that the anti-discrimination laws are not a "general civility code" and that the conduct complained of must be so objectively offensive as to alter the terms and conditions of one's employment. Routine work assignments, instructions, and admonishments do not rise to the level of discriminatory harassment. DiFruscio v. Social Security Administration, EEOC Appeal No. 01982006 (September 13, 2000).

Final Agency Decision
Lance P. McDermott
Agency Case No. 1E-985-0004-12
Page 8

## Background

At all times relevant to the issue in this complaint, the complainant was employed as a Full Time Maintenance Mechanic, MPE, PS-09, assigned to the Seattle, Washington Priority Mail Annex.   (ROI, Exhibit [EXH] 1).

The complainant alleged discriminatory harassment based on Retaliation (Prior EEO Activity) when: 1) from January 2012 through June 2012 he was denied the opportunity at higher level; 2) on multiple dates beginning January 2012 and continuing, he has been subjected to harassment from Supervisor Ken Dow, including the toaster, microwave, icebox, table, chairs and stools being removed; eliminated his access to the Internet; ordered not to read or drink on the workroom floor; cancelled request for metal stock, tools and parts; 3) on Tuesdays and Wednesdays he was scheduled to work alone; 4) he was assigned to a temporary leased facility that does not have proper heat and air; he became aware on April 12, 2012 that the request for HVAC systems was reported as " No MNT49 found"; 5) on April 13, 2012 he was advised he had an ineligible rating for the positions he had applied for; 6) on April 25, May 25, and June 15, 2012, he became aware that his supervisor ordered a fellow employee to discard metal and wood from his work area, which resulted in him not having the resources to fix the machines on multiple dates in April and May; 7) on April 30, 2012 he was given an investigative interview and subsequently on May 3, 2012, issued a Letter of Warning for Failure to be Regular in Attendance; 8) on May 23, 2012 he was harassed regarding where he was sitting and when he came back from lunch the chair was in the dumpster; 9) on May 27, 2012 he was harassed, told to get back to work, threatened to be walked out of the building, and told not to drink on the workroom floor; 10) he was not paid for working Memorial Day, May 28, 2012; 11) he was given 3 investigative interviews on July 2, 2012 and subsequently issued a Letter of Warning dated July 23, 2012; 12) in January 2012 his supervisor told him to stop reading and no reading material on the work floor; 13) on April 19, 2012, due to a hazardous condition (dust), his allergies flared up; 14) in June 2012 his supervisor told him to stop drinking coffee and that he was going to start giving him direct orders; 15) on July 29, 2012, to the Request for Information (RIF) submitted by the Steward, his supervisor responded. "I'm your Supervisor;" 16) in August 2012 his supervisor told him that no one is allowed to use the lathe/mill without authorization; (17) on August 5, 2012, at 6:00 am, the temperature in his facility was 82 degrees; 18) on August 22, 2012 his supervisor criticized his work and said another employee could do a better job; 19) on unidentified dates, his supervisor told him that he was "unqualified" and had another employee perform his job; 20) on unidentified dates, his supervisor disposed of Postal property and equipment he needed to perform his job; and 21) on unidentified dates, due to a hazardous condition, he suffered three insect bites during the year.  The complainant identified Kenneth Dow, Supervisor, Maintenance Operations, EAS-17, Kent Priority Mail Annex, as the management official principally involved in the claims brought forth.

The record shows that despite a request by the EEO Investigator, the complainant failed to provide an affidavit in support of his claims.  The request posed specific

Final Agency Decision
Lance P. McDermott
Agency Case No. 1E-985-0004-12
Page 9

questions which would have assisted the complainant in providing testimony and evidence to satisfy his burden of proof. Records reflect that the request for the affidavit was delivered on September 14, 2012; however, he failed to respond to the bulk of the questions posed in the affidavit. (ROI, AFF A, pp. 114-115). The Commission has held that where the EEO Investigator has asked the complainant specific questions and the complainant has failed to furnish the requested information; any deficiency in the record preventing the complainant from meeting his or her burden of proof is not attributable to the agency's failure to conduct a proper investigation. <u>Scura v. U.S. Postal Service</u>, EEOC Appeal No. 01965021 (October 8, 1996).

Since the complainant failed to provide an affidavit and to respond fully to the questions posed, information regarding the complainant's claims has been extracted from the Formal Complaint and other relevant documents contained in the file and are not given any weight as they are unsworn statements.

Claim 1-complainant stated that from January-June 2012 he was not given the opportunity to apply for a higher level EAS detail position at the P&DC. (ROI, Counselor's Report, p. 68; Formal Complaint, p. 3)

Claims 2, 6 & 20-complainant said that on April 27, 2012 Maintenance Supervisor Ken Dow ordered Manny Castillo to throw in the dumpster the metal in his welding area and the wood he recycled to repair the equipment in the PMA and to send to the J warehouse any chair that complainant used at the computer console, APBS 1, stools at the work bench and welding areas. He also alleged that Ken Dow removed the toaster, microwave, icebox, table and chairs from the Tools & Parts office used by everyone and moved them into his (Dow) office. He also said that Ken Dow eliminated complainant's access and all maintenance employee's access to the internet except for some favored by him (Ken). (ROI, Counselor's Report, p. 68; Formal Complaint, p.3-4).

Claim 3-complainant stated that on Tuesdays and Wednesdays he has to work unsafely alone because of the loss of 3 employees and that he was instructed not to call in sick or ask for time off. (ROI, Counselor's Report, p. 69).

Claims 4, 13, 17 & 21-Complainant claims that the temporary leasing facility does not meet the standard design requirements like the required HVAC system. He stated that Jim Lin and Lester worked with management and that there was recommended was made for a HVAC system for the PMA. When complainant submitted an information request about the status of the MNT 49-10 the agency responded that 'NO MNT 49-10 found' and the HVAC system request was cancelled on April 9, 2012. he further states that employees work in cold and hot conditions, while supervisors work in air-conditioned offices. The heat hazard and extra dust are compounded by the facility that is located improperly next to a river and swamp causing insect bites. (ROI, Formal Complaint, pp. 6, 13, 14)

Final Agency Decision
Lance P. McDermott
Agency Case No. 1E-985-0004-12
Page 10

Claim 5-Complainant, in an unsworn statement, claimed he applied for positions during the open season and as found to be ineligible to apply on April 13, 2012 by Manager Maintenance Operations David Hoff. He stated that the agency was not posting all vacancy announcements and promotion opportunities on the bulletin board in the PMA facility for 15 days as required by Handbook EL-312. (ROI, Counselor's Report, pp. 68, 71-73; Formal Complaint, p.3). Based on the letter dated April 13, 2012, complainant submitted an Employee Maintenance Position Selection Sheet for the open season and was not qualified for the positions he applied for. He was informed he was eligible to apply using the normal PER update procedures. (ROI, Counselor's Report p. 70).

Claim 7-complainant stated he was issued a Letter of Warning on May 3, 2012 for failure to be regular in attendance and citing to a .09 late lunch on a day that he was the only one working. Complainant said he was given an investigative interview on April 30, 2012 and only asked loaded questions about why he took a FMLA day. Complainant claimed that he was issued the discipline because he was the only one working in the building and took a break-down call when he was out to lunch which caused him to clock in late from break. (ROI, Formal Complaint, p. 3). The Letter of Warning dated May 3, 2012 for attendance. The Letter cited 10 days from October 18, 2011 to April 24, 2012 of unscheduled sick leave, emergency annual leave and late lunch. (ROI, Counselor's Report, p. 79-80).

Claim 8-Complainant stated that on May 27, 2012 he was sitting in the LIPS Operators chair next to the APBS 2 for APBS standby time. Ken Dow made a comment to complainant that he (KEN) was making it too easy for him to discipline complainant. Subsequently, complainant was sitting in a chair under the APBS 2 Feeder system and when complainant returned from lunch the chair was gone and complainant found it in the dumpster. (ROI, Formal Complaint, p. 4)

Claim 10-complainant claimed he worked on Memorial day but was not paid. he believed that the reason was in retaliation for using FMLA leave. (ROI, Formal Complaint, p. 4)

Claim 11-Complainant received a Letter of Warning dated July 23, 2012 for failure to be regular in attendance and failure to follow instructions. This Letter was given after 3 investigative interviews were conducted. (ROI, Counselor's Report, p. 39-40).

Claims 9 & 12-he stated that on an unspecified date Ken Dow instructed the complainant that he could not read on the workroom floor. (ROI, Counselor's Report, p. 68). On January 5, 2012, Ken Dow sent an email to David Marzec in an email that he instructed complainant to put his reading book up and that no reading material was allowed on the workroom floor. That complainant wanted to see the policy in writing. The employees were all instructed in an email dated October 2011 that newspapers and reading material were not allowed on the workroom floor unless it is work related. He (Ken) also threatened to walk complainant out of the building. (ROI, Counselor's Report, p. 45, 46).

Claim 14-complainant did not provide any statement on this claim, however, he included an email dated June 15, 2012 from Ken Dow giving an account of what occurred on that day and that complainant was instructed to stop drinking his coffee, stop standing around talking and do what he was supposed to do doing PM. Ken also informed complainant that he would have to start giving him direct orders n what was needed. (ROI, Counselor's Report, p. 44).

Claim 15-complainant did not provide a statement regarding this claim. However, included in the Counselor's Report was a response to an information request dated July 30, 2012 that does state 'I'm your supervisor' and also that the information was given to complainant in the prior request for information. (ROI, Counselor's Report, p. 42).

Claim 16-complainant claimed that Ken Dow put Lock-outs on the welding and metal lathe equipment to prevent any employee from using them. (ROI, Formal Complaint, p. 4). An email dated August 3, 2012, to all the employees in the department informed them that no one is allowed to use the lathe/mill unless they have authorization from their supervisor and that there would be no modification of the building equipment without a written order from their supervisor. (ROI, Counselor's Report, p. 43)

Claims 18 & 19-complainant claimed that on August 22, 2012, Ken Dow told co-workers Manny Castillo and Thomas Cruz that the complainant's welding was horrible, that it melted together, and Manny could do a better job. Complainant argued with Ken Dow and Ken Dow subsequently instructed complainant to get back to work. (ROI, Counselor's Report, p. 13).

## *Prima Facie* Analysis – Discrete Acts

The Commission has held that allegations of harassing conduct that include discrete acts that would independently state claims outside of a harassment framework, assuming that they are timely, are properly reviewed in the context of disparate treatment. Conlin v. Department of Veterans Affairs, EEOC Appeal No. 0120055310 (December 5, 2006). Based on a review of the record, a determination has been made that the matters brought forth in Claim 1-denial of higher level opportunities; Claim 5-notified of an "Ineligible" rating for positions for which he applied; Claim 7-given an Investigative Interview on April 30, 2012, and subsequently issued a Letter of Warning (LOW) on May 3, 2012 for Failure to be Regular in Attendance; Claim 10-not paid for working the Memorial Day Holiday on May 28, 2012; and Claim 11-given three Investigative Interviews on July 2, 2012 and subsequently issued a LOW dated July 23, 2012; qualify as discrete acts that would independently state claims outside of a harassment framework. As such, those claims are being analyzed under the disparate treatment theory, as well as under the hostile work environment framework.
Retaliation

Final Agency Decision
Lance P. McDermott
Agency Case No. 1E-985-0004-12
Page 12

As previously indicated, to establish a *prima facie* case based on reprisal, a complainant must show that: (1) he or she engaged in prior protected activity; (2) the agency official was aware of the protected activity; (3) he or she was subsequently disadvantaged by an adverse employment action or adverse treatment; and (4) there is a causal link between the protected activity and adverse action/treatment. Hochstadt, *supra*.

Postal Service EEO Tracking records reflect that the complainant had engaged in protected EEO complaint activity on at least four occasions prior to the filing of the present complaint. The more recent complaint, Case Number 1E-981-0044-08, was filed on November 13, 2008. That complaint involved the alleged failure to post for bid a Supervisor, Tool and Parts position at the Seattle P&DC on the bulletin board at the Priority Mail Annex. The complaint named Robert Hoffman and Bob Deboard as involved management officials. The complaint was subsequently filed in District Court on January 8, 2009, and was dismissed on May 29, 2009. (ROI, EXH 2, pp. 15-19).

Thus, based on the above, the complainant has satisfied Prong 1 of his *prima facie* claim of retaliation.

However, none of the management officials involved in the claims brought forth in this complaint expressed awareness of the complainant's prior EEO involvement. (ROI, AFFS, B, C, D, E, F). Moreover, James Norris, Lead Maintenance Manager, Seattle P&DC testified that he was not even involved in any of the issues claimed by the complainant. (ROI, AFF D, p. 4). Further, David M. Hoff, Maintenance Manager, Seattle P&DC avowed that the complainant does not report to him, does not work in his facility, nor does he work for any of his supervisors. (ROI, AFF E, pp. 2-4). Thus, based on the above, the complainant has not satisfied Prong 2 of his *prima facie* retaliation claim.

As previously determined, the matters brought forth in Claims 1, 5, 7, 10, and 11 constitute adverse employment actions. Thus, the complainant has satisfied Prong 3 of his *prima facie* retaliation claim relative to those matters.

Notwithstanding; however, the complainant has not satisfied the fourth and final *prima facie* retaliation prong, that is, to demonstrate a causal connection between his claimed EEO activity and the matters brought forth in this complaint. As indicated, none of the management officials named in this complaint expressed awareness of the complainant's prior involvement in protected EEO activity. (ROI, AFFS B-F)

Furthermore, evidence disclosed that the complainant's most recent EEO complaint prior to the present filing culminated in the dismissal in civil court on May 29, 2009. (ROI, EXH 2). The first alleged harassing actions brought forth in this complaint began in January 2012, more than two years following the dismissal in civil court of the complaint's previous complaint.

Final Agency Decision
Lance P. McDermott
Agency Case No. 1E-985-0004-12
Page 13

In the case of <u>Clark County School District v. Breeden</u>, 532 U.S. 236 (2001), the U.S. Supreme Court held that to establish nexus, the temporal proximity must be "very close," citing <u>O'Neal v. Ferguson Construction Co.</u>, 237 F.3d 1248, 1253 (CA 10 2001); <u>Richmond v. Oneok, Inc.</u>, 120 F.3d 205, 209 (CA 10 1997)(3-month period insufficient); <u>Hughes V. Derwinski</u>, 967 F.2d 1168, 1174-1175 (CA 7 1992)(4-month period insufficient).

Additionally, the EEOC is relying on shorter proximity time periods, i.e. 3-4 months. <u>Brown v. Department of Defense</u>, EEOC Appeal No. 01990413 (February 13, 2002); <u>Lombardo v. U.S. Postal Service</u>, EEOC Appeal No. 01996935 (April 4, 2002); <u>Turner v. U.S. Postal Service</u>, EEOC Appeal No. 01A03220 (February 21, 2003); <u>Turner v. Department of Defense</u>, EEOC Appeal No. 01A21018 (May 29, 2003); <u>Lynch v. U.S. Postal Service</u>, EEOC Appeal No. 01A24705 (August 14, 2003). In <u>Buggs v. Powell</u>, 293 F. Supp. 2d 135 (D.D.C. 2003), the U.S. District Court for the District of Columbia states that while courts have not established the maximum time lapse between protected activity and alleged retaliatory actions for establishing causal connection, courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length. Further, the District Court stated that the cases cited by the <u>Breeden</u> Court seem to suggest that if a plaintiff relies upon temporal proximity alone to establish causation, the time span must be less than three months.

Complainant identified Thomas Ruiz who was treated more favorably when he was allowed an EAS detail assignment beginning in January 2012. (ROI, Formal Complaint, p. 3). David Marzec Manager Maintenance Operations testified that Thomas Ruiz has been detailed on numerous occasions since 2002. he testified that complainant has never been denied an opportunity to apply for a temporary higher EAS level detailed position at the Seattle P&DC or PMA. He further averred that complainant never expressed an interest to act as a Supervisor Maintenance Operations, whereas Ruiz expressed an interest and submitted a 991 after one of the solicitation was posted in 2002. (ROI, AFF C, pp. 3-4, 7; EXH 5 & 6).

Mr. Marzec testified that Mr. Ocampo is a MPE at the Seattle Airmail Center and he began acting as an SMO in 2007 after a special Maintenance Special Posting for the 204B Development Program began. Mr. Ocampo was promoted in 2008 after he applied for the position that was posted on eCareers. (ROI, AFF C, pp. 4-5). Ms. Ruiz and Mr. Ocampo are not similarly situated. First, they applied for acting detail position in 2002 and 2007 respectively; they responded to a posting and submitted their applications for consideration. Complainant did not express an interest in a detail assignment or promotion and has not applied for either. In fact, complainant never alleges he requested a detail assignment. A standup talk was conducted in February 2010 advising the employees that if they were interested in detailing to any supervisory position, they must complete pages 1 and 2 of the PS Form 991 or provide a copy of the Candidate Overview from eCareer along with a narrative outlining their qualification for each of the criteria listed in the standup talk. (ROI, AFF C, p. 7). Furthermore, it is

not within the same time period as this complaint. Complainant failed to identify any comparators for the remaining discrete acts.

Thus, based on the above decisions, we find the more than two year time lapse between the complainant's prior EEO involvement and the matters brought forth in this complaint, occurring between March and August 2012, to have been too long a period for him to establish the required causal nexus. Accordingly, since the complainant has failed to satisfy all required elements of a *prima facie* retaliation claim, his claim of retaliatory animus relative to all employment acts brought forth in this complaint fails.

## Management's Non-Discriminatory Explanation - Discrete Acts

Assuming, for the sake of argument, that the complainant had established a *prima facie* case of reprisal discrimination relative to the above-identified discrete acts (which he has not done), management has articulated legitimate, non-discriminatory explanations for its decisions relative to those acts.

Specifically, relative to the failure to post higher level opportunities at the Annex (Claim 1), Mr. David J. Marzec, Manager, Maintenance Operations, Seattle P&DC, testified that part of his responsibilities include managing the maintenance staff at the Priority Mail Annex, where the complainant works as a Mail Processing Equipment Mechanic. He averred that the complainant was never denied the opportunity to apply for a temporary higher level EAS detail assignment at either the Seattle P&DC or the Kent PMA. He asserts that the complainant has never expressed an interest to act as a Supervisor, Maintenance Operations to his knowledge. Mr. Marzec maintained that over the years, management has solicited employees interested in temporary details to SMO positions; the complainant has never shown an interest or submitted PS Form 991.

Mr. Marzec further asserted that temporary detail positions are not required to be posted, but management has posted letters over the years publicizing opportunities for such temporary 204B assignments. A standup talk was given in February 2010 putting the employees on notice that they could apply for detail supervisory position by submitting pages 1 & 2 of the PS Form 991 or provide a copy of the Candidate Overview from eCareer. Mr. Marzec asserted that, to his knowledge, the complainant's prior EEO involvement has not factored into the non-posting of temporary higher level detail assignments. (ROI, AFF C, pp. 3-7).

In response to the complainant's contention that he was notified on April 13, 2012 of an "Ineligible" rating for positions for which he had applied (Claim 5), David M. Hoff, testified that the complainant applied for positions of ET, MM7, AMT, AMS, Welder, BEM, LMB, Carpenter, Painter, and Plumber. He indicated that he reviewed the complainant's file and, based on his previous information, the complainant was already eligible for positions of AMT, AMS, LBM, MM7, Carpenter, Painter, and Welder, and has been since 1998. He asserted that the complainant has an ineligible rating for the ET and BEM positions. Mr. Hoff maintained that the complainant was eligible to apply

Final Agency Decision
Lance P. McDermott
Agency Case No. 1E-985-0004-12
Page 15

for those positions under the normal Promotion Eligibility Register (PER) update process. Mr. Hoff asserted that he forwarded an e-mail with a document informing the complainant as to why he was not eligible for the positions during Open Season. He expressed no knowledge of the complainant's prior EEO activity, asserting that such was not a factor in his notification of ineligibility to the complainant. (ROI, AFF E, pp. 3-5, 9-10).

Relative to the complainant's claims that he was given an investigative interview on April 30, 2012 and subsequently issued a LOW for attendance irregularities, (Claim 7) Kenneth Dow maintained that as the complainant's supervisor, he has the authority to conduct investigative interviews. He indicated that on April 9, 2012 and May 30, 2012 he conducted such interviews relating to the complainant's attendance. He stated that during the April 9, 2012 meeting, the complainant indicated that he was seeking to have his absences covered under the Family Medical Leave Act (FMLA). Mr. Dow averred that the complainant's request for FMLA protection was not approved; consequently, he held the second investigative interview on April 30, 2012.

Mr. Dow further testified that he issued the complainant the LOW for Failure to be Regular in Attendance. He asserted that the complainant had been given previous discussions relative to his attendance deficiencies. Mr. Dow avowed that he relied upon Parts 511 and 665 of the Employee and Labor Relations Manual (ELM) as the basis for issuing the attendance-related discipline. He indicated that the LOW was subsequently reduced to an official discussion at Step 2 of the grievance process. Mr. Dow denied that the complainant's prior EEO involvement was a factor in the issuance of discipline, as he was not aware of such. (ROI, AFF B, pp. 3, 9, 21-22).

The Employee and Labor Relations Manual, Section 511.4 - *Unscheduled Absence*, reflects the following:

511.41 *Definition*

Unscheduled absences are any absences from work that are not requested and approved in advance.

511.42 *Management Responsibilities*

To control unscheduled absences, postal officials:

a. Inform employees of leave regulations.
b. Discuss attendance records with individual employees when warranted.
c. Maintain and review PS Form 3972, Absence Analysis, and PS Form 3971.

511.43 *Employee Responsibilities*

Final Agency Decision
Lance P. McDermott
Agency Case No. 1E-985-0004-12
Page 16

Employees are expected to maintain their assigned schedule and must make every effort to avoid unscheduled absences. In addition, employees must provide acceptable evidence for absences when required.

Section 665.4 *Attendance*, states the following:

665.41 *Requirement of Attendance*

Employees are required to be regular in attendance. Failure to be regular in attendance may result in disciplinary action, including removal from the Postal Service. (ROI, EXH 7).

For the discrete act brought forth in Claim 10 regarding lack of holiday pay, Mr. Dow testified that the complainant worked the holiday on May 28, 2012 and was paid 8 hours pay for that date. He stated that the complainant then requested leave credit instead of pay, which was granted. Mr. Dow expressed that the complainant never made a complaint to him regarding holiday pay. Again, he asserted no knowledge of the complainant's prior EEO involvement; thus reprisal was not a factor. (ROI, AFF B, p. 12).

Records reflect that the complainant was credited with 8 hours work on May 28, 2011 (Code 05200), which was recorded at the holiday pay rate (Code 028). The complainant also submitted a PS Form 3971 requesting 8 hours holiday leave for May 28, 2012; the request was approved by Mr. Dow on May 25, 2012. (ROI, ATTCH to AFF B, pp. 47-51).

In response to the claim relating to the investigative interviews and subsequent LOW brought forth in Claim 11, Mr. Dow indicated that he held investigative interviews with the complainant on July 2, 2012 related to his attendance deficiencies; for not placing rollers in recycle and not being able to tell him where he had put the rollers; and for disobeying his instructions to work with Employee Dan Hamel. Mr. Dow averred that the LOW was issued based on the charges cited therein-failure to be regular in attendance. Again, he declared that the complainant's prior EEO activity was not a factor. (ROI, AFF B, p. 12, w/ATTCH pp. 78-83; EXH 7).

Management has articulated its nondiscriminatory reasons for its decisions relative to the above-identified discrete acts, and the complainant cannot prove that the articulated reasons were pretextual.

## Pretext – Discrete Acts

Since management has articulated its nondiscriminatory justification for the action taken, the complainant now has the burden of proving that management's averred reason is not only pretext, but is pretext for discrimination. Tincher v. Wal-Mart Stores, *supra*. Pretext could be demonstrated by showing "such weaknesses, impossibilities, inconsistencies, incoherencies, or contradictions in the Agency proffered reasons for its

action that a reasonable fact-finder could rationally find them unworthy of credence and then infer that the employer did not act for the asserted non-discriminatory reason. Morgan v. Hilti, Inc. 108 F.3d 1319, 1323 (10th Cir. 1997). To do this, the complainant must have shown that, in spite of the articulated non-discriminatory explanation, an overall inference of discrimination could be discerned by a preponderance of the evidence. U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 714-17 (1983). In other words, the complainant must have shown that the Agency was "more likely motivated by discriminatory reasons, [Citation omitted]" than not. Hill v. Social Security Administration, EEOC Appeal No. 01970512 (June 8, 2000). Or, the complainant could have shown that the proffered explanation of the Agency was unworthy of credence. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). Essentially, the record must have shown that the Agency articulated a false reason and that its real reason was discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

According to the Court, it was not sufficient "to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." Hicks, 509 U.S. at 519.

There was nothing contained in the file that showed by a preponderance of the evidence that the legitimate explanations given by the agency for its decisions involving the complainant were pretext for discrimination. Hammons v. HUD, EEOC Request No. 05971093 (May 5, 1999). As indicated, the complainant failed to respond to the investigator's request for information regarding his claims. Management has established its nondiscriminatory reasons for its decisions relative to the discrete acts identified above and the complainant cannot prove that the articulated reasons were pretextual. Accordingly, the complainant has failed to satisfy his pretext requirement.

## Hostile Work Environment Harassment – Non-Discrete Acts

To establish a *prima facie* case of hostile work environment harassment, a complainant must establish that: (1) He/she is a member of a protected group; (2) that he/she was subjected to unwelcome verbal or physical conduct; (3) that the conduct was based on the complainant's protected status; and (4) that the conduct was sufficiently severe or pervasive that it created a hostile, abusive, or offensive work environment or unreasonably interfered with the complainant's work performance; and (5) that there is a basis for imputing liability to the employer. McCleod v. Social Security Administration, EEOC Appeal No. 019962810 (August 5, 1999).

(1) *Does the complainant belong to a statutorily protected class(es)*

The complainant engaged in protected EEO complaint activity, therefore, he has established Prong 1 of his *prima facie* of retaliation.

(2) Was the complainant subjected to unwelcome verbal or physical conduct involving the protected class and

(3) Was the harassment complained of based on the protected class

The complainant maintained that the following non-discrete incidents of alleged harassment occurred, which he based on the basis of management retaliation:

**2. On multiple dates beginning January 2012 and continuing, he has been subjected to harassment from Supervisor Ken Dow, including the toaster, microwave, icebox, table, chairs and stools being removed; eliminated his access to the Internet; ordered not to read or drink on the workroom floor; cancelled request for metal stock, tools and parts;**

In Complainant's unsworn statement he claimed that on April 27, 2012 Maintenance Supervisor Ken Dow ordered Manny Castillo to throw in the dumpster the metal in his welding area and the wood he recycled to repair the equipment in the PMA and to send to the J warehouse any chair that complainant used at the computer console, APBS 1, stools at the work bench and welding areas. He also alleged that Ken Dow removed the toaster, microwave, icebox, table and chairs from the Tools & Parts office used by everyone and moved them into his (Dow) office. He also said that Ken Dow eliminated complainant's access and all maintenance employee's access to the internet except for some favored by him (Ken). (ROI, Counselor's Report, p. 68; Formal Complaint, p.3-4).

Mr. Dow responded that he was instructed by his manager to remove all non-tools and parts-related items from the work area. He indicated that all employees were informed to take their breaks and lunch in the break room. He denied the complainant's claim that his access to the Internet was eliminated. Moreover, Mr. Dow testified that he does not know what the complainant is referring to relative to his claim that his requests for metal stock, tools and parts were cancelled. (ROI, AFF B, pp. 5-6). Mr. Dow attached to his affidavit, a Memorandum on Personal Items-Food/Drink on the Workroom Floor, dated January 21, 2002. The memo essentially banned eating or drinking on the workroom floor, unless the drink was in a spill proof container. (AFF B, p. 88). Moreover, a more recent e-mail dated October 18, 2011 from Lead Maintenance Manager, Jim Norris, reiterated to all Maintenance Managers that the food and drink policy, as well as the no reading policy was to be fully enforced. (ROI, AFF B, pp. 31-32).

**3. On Tuesdays and Wednesdays he was scheduled to work alone;**

Complainant stated that on Tuesdays and Wednesdays he has to work unsafely alone because of the loss of 3 employees and that he was instructed not to call in sick or ask for time off. (ROI, Counselor's Report, p. 69).

Mr. Dow responded that he does all scheduling for the unit and that the complainant has never complained to him about working alone, as he works alone for portions of

each day. He maintained that the complainant often takes days off when he knows that doing so would leave only one employee having to work alone; such scheduling has not been an issue. Mr. Dow averred that employees George Jeffers, Scott Myhrwell. John Frijas, Sarab Singh, Dennis Livingston, Mike Hooper, Nolan Parrish, and Thomas Ruiz have all been required to work alone. He asserted that none of those employees have filed EEO complaints. (ROI, AFF B, p. 6).

**4. He was assigned to a temporary leased facility that does not have proper heat and air; he became aware on April 12, 2012 that the request for HVAC systems was reported as " No MNT 49 found";**
**13. On April 19, 2012, due to a hazardous condition (dust), his allergies flared up;**
**17. On August 5, 2012, at 6:00 am, the temperature in his facility was 82 degrees;**
**21. On unidentified dates, due to a hazardous condition, he suffered three insect bites during the year.**

Complainant claims that the temporary leasing facility does not meet the standard design requirements like the required HVAC system. He stated that Jim Lin and Lester worked with management and that there was recommended was made for a HVAC system for the PMA. When complainant submitted an information request about the status of the MNT 49-10 the agency responded that 'NO MNT 49-10 found' and the HVAC system request was cancelled on April 9, 2012. he further states that employees work in cold and hot conditions, while supervisors work in air-conditioned offices. The heat hazard and extra dust are compounded by the facility that is located improperly next to a river and swamp causing insect bites. (ROI, Formal Complaint, pp. 6, 13, 14)

Mr. Dow responded that the complainant was not arbitrarily assigned to the leased facility; rather, he placed a bid to work in the facility and that he has worked there for years without, to his knowledge, placing a bid desiring to work anywhere else. Mr. Dow indicated that the facility is an open bay warehouse with 22 dock doors. Relative to the claim regarding HVAC, Mr. Dow responded that the complainant put in an information request wanting MNT 10-49, which doesn't exist. (ROI, AFF B, p. 7). Mr. Dow asserted that he was unaware of the situation, as the complainant has never told him about any allergies. (ROI, AFF B, p. 14). Mr. Dow expressed no knowledge of the temperature having been 82 degrees on the date in question. Moreover, he asserted that the complainant did not notify him of such. (ROI, AFF B, p. 16). In response to that claim, Mr. Dow asserted that neither the complainant nor any other employee has ever come to him regarding an insect bite. He expressed that he had a contractor come out to the facility and spray for mosquitoes so that such would not be a problem. (ROI, AFF B, p. 18).

**6. On April 25, May 25, and June 15, 2012, he became aware that his supervisor ordered a fellow employee to discard metal and wood from his work area, which resulted in him not having the resources to fix the machines on multiple dates in April and May;**

**20. On unidentified dates, his supervisor disposed of Postal property and equipment he needed to perform his job;[1] and**

In Complainant's unsworn statement he claimed that on April 27, 2012 Maintenance Supervisor Ken Dow ordered Manny Castillo to throw in the dumpster the metal in his welding area and the wood he recycled to repair the equipment in the PMA and to send to the J warehouse any chair that complainant used at the computer console, APBS 1, stools at the work bench and welding areas. He also alleged that Ken Dow removed the toaster, microwave, icebox, table and chairs from the Tools & Parts office used by everyone and moved them into his (Dow) office. He also said that Ken Dow eliminated complainant's access and all maintenance employee's access to the internet except for some favored by him (Ken). (ROI, Counselor's Report, p. 68; Formal Complaint, p.3-4).

Again, Mr. Dow asserted that he does not know what the complainant is referring to. (ROI, AFF B, p. 18). In Claim 6, the complainant made a similar claim that another employee had been instructed to dispose of property that he needed to complete his job. Mr. Dow asserted that all employees are instructed to put recycled material in the recycle bins. Mr. Dow testified that when the complainant asked him why he threw away his metal, he responded that he did not throw away his metal. Moreover, he asserted that disposal of the recycled material did not affect the complainant's ability to fix machines, as alleged. (ROI, AFF B, pp. 8-9).

**8. On May 23, 2012 he was harassed regarding where he was sitting and when he came back from lunch the chair was in the dumpster;**

Complainant stated that on May 27, 2012 he was sitting in the LIPS Operators chair next to the APBS 2 for APBS standby time. Ken Dow made a comment to complainant that he (KEN) was making it too easy for him to discipline complainant. Subsequently, complainant was sitting in a chair under the APBS 2 Feeder system and when complainant returned from lunch the chair was gone and complainant found it in the dumpster. (ROI, Formal Complaint, p. 4)

Mr. Dow testified that he put the chair in question in the dumpster because it was broken and presented a safety hazard. He maintained that there are 2 chairs and a desk at the stand-by area that the complainant uses daily. (ROI, AFF B, p. 10).

---

[1] Although the complainant was advised in the agency's Amended Acceptance Letter of the need to provide specific dates relative to the charges, since he did not provide an affidavit response, no specific incident dates were provided.

9. On May 27, 2012 he was harassed, told to get back to work, threatened to be walked out of the building, and told not to drink on the workroom floor;

12. In January 2012 his supervisor told him to stop reading and no reading material on the work floor;

Complainant stated that on an unspecified date Ken Dow instructed the complainant that he could not read on the workroom floor. (ROI, Counselor's Report, p. 68). On January 5, 2012, Ken Dow sent an email to David Marzec in an email that he instructed complainant to put his reading book up and that no reading material was allowed on the workroom floor. That complainant wanted to see the policy in writing. The employees were all instructed in an email dated October 2011 that newspapers and reading material were not allowed on the workroom floor unless it is work related. He (Ken) also threatened to walk complainant out of the building. (ROI, Counselor's Report, p. 45, 46).

Mr. Dow denied that he harassed the complainant in any way. He testified that the complainant and another employee (Nolan Parrish) were engaged in a conversation and that he told them to get back to work. He indicated that Employee Parrish acknowledged him and went back to work; however, the complainant did not. Rather, the complainant stood and stared at him in defiance and continued to drink what was in a cup he picked up. Mr. Dow asserted that as he started to leave, the complainant muttered something; thus, he turned around and told the complainant to quit drinking and start working. (ROI, AFF B, pp. 10-11).

In reply to the complainant's claims relating to reading material on the workroom floor, Mr. Dow simply responded, "see attached." The same reply was given to the Investigator's question referencing whether or not there were written rules relating to reading materials on the workroom floor at the Kent PMA. (ROI, AFF B, p. 13).

Mr. Dow attached to his affidavit, a Memorandum on Personal Items-Food/Drink on the Workroom Floor, dated January 21, 2002. The memo essentially banned eating or drinking on the workroom floor, unless the drink was in a spill proof container. (AFF B, p. 88). Moreover, a more recent e-mail dated October 18, 2011 from Lead Maintenance Manager, Jim Norris, reiterated to all Maintenance Managers that the food and drink policy, as well as the no reading policy was to be fully enforced. (ROI, AFF B, pp. 31-32).

14. In June 2012 his supervisor told him to stop drinking coffee and that he was going to start giving him direct orders;

Complainant did not provide any statement on this claim, however, he included an email dated June 15, 2012 from Ken Dow giving an account of what occurred on that day and that complainant was instructed to stop drinking his coffee, stop standing around talking and do what he was supposed to do doing PM. Ken also informed

complainant that he would have to start giving him direct orders n what was needed. (ROI, Counselor's Report, p. 44).

Mr. Dow responded that the complainant was drinking coffee at the APBS machine when he instructed him to stop drinking and get back to work. He averred that he had to give the complainant a direct order because he refuses to work when he is asked to do so. (ROI, AFF B, p. 15).

### 15. On July 29, 2012, to the Request for Information (RIF) submitted by the Steward, his supervisor responded. "I'm your Supervisor;"

Complainant did not provide a statement regarding this claim. However, included in the Counselor's Report was a response to an information request dated July 30, 2012 that does state 'I'm your supervisor' and also that the information was given to complainant in the prior request for information. (ROI, Counselor's Report, p. 42).

Mr. Dow asserted that he is the complainant's supervisor and that he has the authority to have talks or investigative interviews with his employees. He maintained that if the employee desires a steward, one is provided. (ROI, AFF B, p. 15).

### 16. In August 2012 his supervisor told him that no one is allowed to use the lathe/mill without authorization;

Complainant claimed that Ken Dow put Lock-outs on the welding and metal lathe equipment to prevent any employee from using them. (ROI, Formal Complaint, p. 4). An email dated August 3, 2012, to all the employees in the department informed them that no one is allowed to use the lathe/mill unless they have authorization from their supervisor and that there would be no modification of the building equipment without a written order from their supervisor. (ROI, Counselor's Report, p. 43)

Mr. Dow responded that authorization to use the lathe/mill is a requirement for all employees. He maintained that a work order is required for justification to use the mill or lathe. (ROI, AFF B, p. 16).

### 18. On August 22, 2012 his supervisor criticized his work and said another employee could do a better job;
### 19. On unidentified dates, his supervisor told him that he was "unqualified" and had another employee perform his job;

Complainant claimed that on August 22, 2012, Ken Dow told co-workers Manny Castillo and Thomas Cruz that the complainant's welding was horrible, that it melted together, and Manny could do a better job. Complainant argued with Ken Dow and Ken Dow subsequently instructed complainant to get back to work. (ROI, Counselor's Report, p. 13).

Mr. Dow averred that he does not recall such a conversation with the complainant and does not know what he is referring to.  (ROI, AFF B, p. 17).

For all the complainant's claims brought forth, Mr. Dow asserted that the complainant's prior EEO involvement was not a factor, as he was not even aware of prior EEO activity on the part of the complainant.  (ROI, AFF B, pp. 4-18).

In viewing the complainant's claim as a whole and in the light most favorable to the complaining party, the evidence does not reveal that the actions complained of involved unwelcome personal slurs or other denigrating or insulting verbal or physical conduct sufficient to satisfy the criteria for the creation of a hostile work environment.  It is noted that the file does not contain affidavits or other statements from witnesses in support of the complainant's claims of harassing behavior on the part of management officials.
Many of the actions complained of involved normal day to day managerial responsibilities, *i.e.*, making work assignments, taking steps to correct employee deficiencies, including attendance, determining the type of equipment to be utilized to perform certain job functions, *etc.*  Moreover, there is no evidence, let alone a preponderance of the evidence, to indicate that the allegedly harassing actions were based on the complainant's involvement in prior protected activity, as alleged.

Therefore, the complainant has failed to establish the second and third prongs of a *prima facie* case of harassment regarding the claims brought forth.

Mere speculation and/or conjecture that the Agency had a discriminatory motive for its actions without proof are insufficient for proving pretext.  See Autry v. North Carolina Department of Human Resources, 820 F.2d 1384, 1386 (4th Cir. 1987); ("the fact-finder must not be permitted to engage in surmise and conjecture but rather causation must be shown by probability rather than mere possibility"); Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241-46 (4th Cir. 1982).

A complainant always bears the ultimate burden of persuasion in proving that the agency intentionally discriminated against him or her.  U.S. Postal Service Board of Governors v. Aikens, *supra*.  In the instant matter, the complainant has failed to meet her burden.  In Love v. U.S. Postal Service, EEOC Request No. 05890328 (May 26, 1989), the Commission held:

> We agree with the court in Watson v. Megee Women's Hospital, 472 F. Supp. 325 at 330 (D.C. PA 1979):  "That an employment decision is unfortunate for the employee, unwarranted, unkind, or even unprincipled is not enough--at least, not enough to support a Title VII action.  To permit such an action to succeed, without clear proof of a link between the plaintiff's protected status and the adverse employment decision, would cause Title VII to become a vehicle for providing compensation following an adverse employment decision to every person in a protected class — that is, to every citizen of either sex, any race, origin or nationality.

Although **all** citizens are protected under Title VII, they are protected only against the specific harm of invidiously discriminatory preference by employers."

Since management has articulated legitimate, non-discriminatory reasons for its actions, the complainant must now show by a preponderance of the evidence that management's stated reasons were not only pretext, but pretext for discrimination. Tincher v. Wal-Mart Stores, Inc., *supra*. That is, he must show that management was "more likely motivated by discriminatory reasons than not." Hill v. Social Security Administration, EEOC Appeal No. 01970512 (June 8, 2000).

The complainant has not met that burden. Moreover, the complainant's stated claims of harassment did not rise to the level of a hostile work environment, as alleged. As previously indicated, a complainant's subjective beliefs of discriminatory motivation cannot be probative evidence of pretext, and therefore, cannot be the basis of judicial relief. Elliot v. Group Medical & Surgical Service, *supra*.

> (4) *Did the alleged harassment have the purpose or effect of unreasonably interfering with the complainant's work performance and/or creating an intimidating, hostile or offensive work environment?*

One of the principal tenets of a claim of harassment that created a hostile work environment is a showing that the claimed harassment was sufficiently severe or pervasive enough as to affect a term or condition of the complainant's employment, and/or that the harassment had the purpose or effect of unreasonably interfering with the complainant's work performance, and/or that the harassment had the purpose or effect of creating an intimidating, hostile, or offensive work environment. See McGinnis v. Secretary of Defense, EEOC Appeal No. 01902760 (November 15, 1990). The EEOC has held that in order to establish a case of harassment that creates a hostile work environment, the harassment of which the complainant complains must be ongoing and continuous in order to constitute unlawful discrimination. The complainant has not satisfied that burden. As earlier indicated, a few isolated incidents are usually not sufficient to show harassment. Banks, *supra*.

Even assuming, for the sake of argument only, that the complainant has made a showing that he was subjected to unwelcome physical or verbal conduct based on his protected EEO activity, he has not demonstrated that the alleged harassment was continuous and ongoing. It should be noted that based on the evidence contained in the file, the claimed incidents of harassment accepted for investigation, even if they occurred in the manner alleged by the complainant, took place over a period of approximately eight months, beginning with the claim of alleged denial of higher level beginning in January 2012, and culminating with the alleged August 22, 2012 criticizing of his work performance. Thus, based on the above, the claimed incidents of harassment were neither sufficiently severe nor pervasive as to affect a term or condition of the complainant's employment.

In a hostile work environment claim, there must have been a steady barrage of opprobrious comments and not a casual comment or accidental or sporadic conversation in order to trigger an entitlement to relief. Snell v. Suffolk County, supra. In sum, the investigation did not reveal evidence that management engaged in the kind of "steady barrage" of "discriminatory intimidation, ridicule, and insult" that would create a hostile work environment under the applicable case law.

Directing employees in the performance of their duties and ensuring the efficiency of the operation entrusted to them is a matter which is clearly within the realm of managerial prerogative and authority. However, the complainant in this case is asking the Commission to intervene and impose its authority on such matters. In matters involving common workplace occurrences, unless it is reasonably established that the actions were somehow abusive and offensive, and were taken in order to harass the complainant on the basis of a protected class, in this case, to deter future EEO activity, the claimed events are not sufficiently severe or pervasive so as to offend the general sensibility of an individual experiencing such occurrences in the workplace. See Goines v. Department of Veterans Affairs, EEOC Appeal No. 01A54108 (July 20, 2006); Wolf v. U.S. Postal Service, EEOC Appeal No. 01961559 (July 23, 1998). See also Long v. Veterans Administration, EEOC Appeal No. 01950169 (August 14, 1997); Bennett v. Department of the Navy, EEOC Request No. 05980746 (September 19, 2000).

The record shows that the incidents of which the complainant complained were neither severe nor pervasive, either individually or collectively, when judged by a reasonable person's standards.

### (5) Is there a basis for imputing liability to the employer?

The complainant asserted that the claims brought forth collectively served to create a hostile work environment for him. Even considering both the discrete acts and the non-discrete acts brought forth in this complaint, the evidence does not suggest that the incidents of alleged harassment were pervasive, as pointed out above. Even in viewing the claims in the light most favorable to the complaining party, the evidence does not suggest that the complainant has satisfied the required "severe and pervasive" criteria for the matters brought forth. In order for an employee to have an actionable harassment claim, the employee must demonstrate that the alleged conduct is severe, pervasive and objectively harassing. The complainant has not satisfied that burden. Moreover, even if such an environment existed, there is no evidence that the complainant took advantage of agency resources designed to halt such actions.

Mr. Dow testified that the only reference to a hostile environment made by the complainant occurred on September 5, 2012 when the complainant put in a request for leave, asserting that his doctor had moved to San Francisco and he needed to find another doctor to treat his high blood pressure because he was in a hostile environment. Mr. Dow averred that he asked the complainant if he wanted to talk; he

was told that he couldn't do anything about it. He testified that he then asked the complainant whether or not he desired to talk to someone else, and that the complainant responded in the negative. Mr. Dow averred that the complainant refused to provide any information to him regarding his contention. (ROI, AFF B, p. 3).

David Marzec testified only to the complainant's contention that he was denied higher level opportunities at the Seattle P&DC and the Kent PMA. He simply maintained that the complainant had never expressed a desire for higher level detail assignments to management positions. (ROI, AFF C, pp. 2-3). No mention of the creation of a hostile work environment was made.

David M. Hoff and Donald R. Hamel testified that the complainant did not make claims of a hostile work environment to them. Mr. Hamel expressed that he only recalled the complainant asserting his disagreement that a retired federal employee was being allowed to work as a contractor for the Postal Service. He stated that the complainant maintained that such a practice was illegal. (ROI, AFFS E, F). Moreover, as earlier indicated, James Norris expressed that he was not involved in any way with the issues claimed by the complainant. (ROI, AFF D).

The file contains a copy of Poster 159, Workplace Harassment, which details the types of prohibited actions that make up the harassment framework, and further outlines the responsibility of the offended party to promptly report violations of the Agency's Anti-Harassment Policy. (ROI, EXH 7).

Accordingly, since the Agency has a prominently posted anti-harassment policy, of which the complainant should have been aware, which outlines the appropriate steps to take in the event of workplace harassment, and the complainant failed to avail himself of the options available to him, there is no basis for imputing liability upon the agency for the creation of, or toleration of, a hostile wok environment.

Based on the above information, the complainant has not satisfied all required elements of a *prima facie* harassment claim that led to the creation of a hostile work environment based on retaliation. As earlier indicated, the management officials involved in the current complaint testified that they were not even aware of the complainant's prior EEO activity. (ROI, AFFS B-F). Accordingly, the complainant's claim of a hostile work environment based on the alleged harassment fails.

Moreover, as earlier indicated, the complainant failed to provide an affidavit in support of his claims despite a request by the EEO Investigator. The request posed specific questions which would have assisted the complainant in providing testimony and evidence to satisfy his burden of proof regarding his harassment claim. However, the complainant failed to submit the requested affidavit and/or documentation. The Commission has held that where the EEO Investigator has asked the complainant specific questions and the complainant has failed to furnish the requested information, any deficiency in the record preventing the complainant from meeting his or her burden

of proof is not attributable to the agency's failure to conduct a proper investigation. <u>Scura</u>, *supra*.

## Conclusion

Thus, after carefully considering the entire record, and applying the legal standards outlined in <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S. 792 (1973); <u>Hochstadt v. Worcester Foundation for Experimental Biology, Inc.</u>, 425 F.Supp. 318 (D. Mass 1976), *aff'd* 545 F.2d 222 (1st Cir. 1976) (applying to reprisal cases); and <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17 (1993), citing <u>Meritor Savings Bank F.S.B. v. Vinson</u>, 477 U.S. 57 (1986) and <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998) (applying to harassment cases); the evidence does not support a finding that the complainant was subjected to illegal discrimination as alleged. Consequently, this complaint is now closed with a finding of no discrimination.

## Statement of Relief

Because the complainant did not prevail on his claims of discrimination, no relief is awarded.

## APPEAL RIGHTS

## APPEAL TO EEOC

The complainant has the right to appeal the Postal Service's final decision to the:

**Director,
Office of Federal Operations
Equal Employment Opportunity Commission (EEOC)
P.O. Box 77960
Washington, DC 20013-8960**

**within 30 calendar days of receipt of this decision.** The complainant must use EEOC Appeal Form 573, a copy of which is enclosed, in connection with the appeal. The complainant may also deliver the appeal in person or by facsimile provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. Along with the appeal, the complainant must submit proof to the EEOC that a copy of the appeal and any supporting documentation and/or brief was also submitted to the:

**NEEOISO – FAD
National EEO Investigative Services Office
USPS
P. O. Box 21979
Tampa, FL 33622-1979**

Final Agency Decision
Lance P. McDermott
Agency Case No. 1E-985-0004-12
Page 28

The complainant is advised that if he files an appeal beyond the 30-day period set forth in the Commission's regulations, he should provide an explanation as to why the appeal should be accepted despite its untimeliness.  If the complainant cannot explain why the untimeliness should be excused in accordance with EEOC Regulation 29 C.F.R. §1614.604, the Commission may dismiss the appeal as untimely.

## RIGHT TO FILE A CIVIL ACTION

Alternatively, if the complainant is dissatisfied with the Postal Service's decision in this case, he may file a civil action in an appropriate U.S. District Court within 90 calendar days of receipt of the Postal Service's final decision, within 90 calendar days of the EEOC's final decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been rendered.  If the complainant chooses to file a civil action, that action should be styled **Lance P. McDermott v. Patrick R. Donahoe, Postmaster General.**   The complainant may also request the court to appoint an attorney for the complainant and to authorize the commencement of that action without the payment of fees, costs, or security.  Whether these requests are granted or denied is within the sole discretion of the District Judge.  The application must be filed within the same 90-day time period for filing the civil action.

*Karla M. Malone*

Karla M. Malone
EEO Services Analyst
NEEOISO
P. O. Box 21979
Tampa, FL 33622-1979

Date: February 12, 2013

**Enclosure:** EEOC Appeal Form 573

26 Sept 12

**UNITED STATES POSTAL SERVICE** ®

EEO Investigative Affidavit (Continuation Sheet)

| Page No. | No. Pages | Case No. |
|----------|-----------|----------|
| 2 | 3 | 1E- 985-0004-12 |

The accepted issues under investigation are:

Specific Issue(s): You alleged discriminatory harassment based on Retaliation (Prior EEO Activity) when beginning in January 2012 and continuing:

1. January 2012 through June 2012 you were denied the opportunity at higher level;
2. On multiple dates beginning January 2012 and continuing you have been subjected to harassment from Supervisor Ken Dow including the toaster, microwave, icebox, table, chairs and stools being removed; eliminated your access to the internet; ordered not to read or drink on the workroom floor; cancelled requests for metal stock, tools and parts;
3. On Tuesdays and Wednesdays, you are scheduled to work alone;
4. You are assigned to a temporary leased facility that does not have proper heat/air and became aware April 12, 2012, the request for a HVAC systems was reported as "NO MNT 49-10 FOUND";
5. On April 13, 2012, you were advised you had an ineligible rating for the positions you had applied for;
6. On April 25, May 25, June 15, 2012, you became aware your supervisor ordered a fellow employee to discard metal and wood from your work area which resulted in you not having the resources to fix the machines on multiple dates in April and May;
7. On April 30, 2012, you were given an Investigative Interview and subsequently on May 3, 2012, issued a Letter of Warning for Failure to be Regular in Attendance;
8. On May 23, 2012, you were harassed regarding where you were sitting and when you came back from lunch the chair was in the dumpster;
9. On May 27, 2012, you were harassed, told to get back to work, threatened to be walked out of the building and told not to drink on the workroom floor;
10. You were not paid for working May 28, 2012, Memorial Day;

Specific Amended Issues: You alleged discriminatory harassment based on Retaliation (Prior EEO Activity) when:

11. You were given 3 investigative interviews on July 2, 2012 and subsequently issued a Letter of Warning dated July 23, 2012.
12. In January, 2012, your Supervisor told to stop reading and no reading material on the work floor.
13. On April 19, 2012, due to a hazardous condition (dust), your allergies (asthma) flared-up,
14. In June, 2012, your Supervisor told you to stop drinking coffee and that he was going to start giving you direct orders;
15. On July 29, 2012, to the Request for Information (RFI) submitted by the Steward your Supervisor responded, "I'm your Supervisor,"

---

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

PS Form 2569, March 2001

| Date Signed |
|-------------|
| 9-26-12 |

Affidavit D

Page 3 of 4

26 Sept

**UNITED STATES**
**POSTAL SERVICE** ®

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 3 | 3 | 1E- 985-0004-12 |

## EEO Investigative Affidavit (Continuation Sheet)

16. In August 2012, your Supervisor told you that no one is allowed to use the lathe/mill without authorization,
17. On August 5, 2012, at 6:00 am, the temperature in your facility was 82 degrees,
18. On August 22, 2012, your Supervisor criticized your work and said another employee could do a better job,
19. On (unidentified date(s) your Supervisor told you that you're, "unqualified" and had another employee perform your work,
20. On (unidentified date(s) your Supervisor disposed of Postal property and equipment you needed to perform your job,
21. On (unidentified date), due to a hazardous condition, you suffered three insect bites this year,

I have no knowledge of this complaint and was not involved in any way with the issues claimed by the Complainant.

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

PS Form 2569, March 2001

Date Signed
9-26-12

Affidavit D
Page 4 of 4

Pleading Number : 2013050932      Submission date : 2013-10-19 20:16:39