

*4 Nov 13*

# UNITED STATES POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
### IN THE MATTER OF:

Lance P. McDermott
Complainant

v.

Patrick R. Donahoe,
Postmaster General,
c/o Western Area Operations
Respondent.

Agency Case No. 1E-985-0006-13
EEOC Case No. 551-2013-00213X

Formal Filed: March 2, 2013

## FINAL AGENCY DECISION – MIXED CASE

### Introduction

Pursuant to Equal Employment Opportunity Commission (EEOC) regulations at 29 C.F.R. §1614.302(d), this is the final agency decision of the U.S. Postal Service regarding the complaint of discrimination identified above.

### Statement of Claim

The complainant alleged discrimination based on Retaliation (Prior EEO Activity) when:

2. On December 4, 2012, he reported a hostile work environment and requested and was denied leave for the rest of the week; subsequently on January 28, 2013, he was verbally advised of the outcome of his harassment allegations and was not satisfied with managements actions; he also requested but has not been provided a copy of the report;

3. On December 5, 2012, he was given instructions from Ken Dow although previously advised due to the reported hostile work environment Tony Kirk would be the buffer between him and Ken Dow;

4. On December 6, 2012, when attempting to access the Master Check list in eMars, the password did not work; subsequently on December 9, 2012, the password still did not work and a supervisor-level password was created;

5. On December 15, 2012, he was assigned to replace a heavy conveyor motor and spent the day removing heavy metal side places by himself;

6. On December 28, 2012, he was included in an e-mail from Ken Dow in regard to too many missent;

*Agency*

7. On January 13, 2013, he became aware Ken Dow had disposed of more of his equipment and he had saved another heavy motor for him to install by himself;

8. On January 14, 2013, his request for annual leave was denied;

9. On January 20, 2013, he was the only MPE scheduled for Lock-Out-Tag-Out training;

10. On January 22, 2013, his computer use was restricted;

11. On January 24, 2013, he was called into the office for an investigative interview; and subsequently requested two weeks stress leave but was only given three days, and

The complainant alleged discrimination based on Retaliation (Current and Prior EEO Activity) when:

12. On February 6, 2013:

   a. His Manager demanded that he, at his expense and within nine days, provide more medical documentation regarding his FMLA approved medical condition (back pains) and color blindness (nondisability);

   b. His Manager unlawfully gave him a, "Request for Permanent Light Duty Assignment" form even though he didn't want Light Duty;

13. On February 19, 2013, his Manager informed him that the, "Occupational Health Services Office" had given him a permanent restriction - VISION;

14. On April 8, 2013:

   a. Inspectors asked whether he had a machete in his car; indicated they had a right to take it; and demanded it out of his car;

   b. His Manager gave him a letter dated April 8, 2013, that although it indicated, "wholly voluntary" and warned that he could be placed in an, "enforced leave status" his Manager demanded that he participate in the, "District Reasonable Accommodation Committee (DRAC);"

15. On May 8, 2013, his Manager gave him a letter indicating that he, "pose a significant safety risk," restricted him from performing duties involving colored wiring and advised that it served as a proposal to place him on enforced leave;

16. On (Unspecified date(s) he was not offered suitable work;

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 3

17. On (Unspecified date(s)[1] his medical information was released by Postal Officials;

18. On (unspecified date(s) he has been forced to work alone;

19. On (unspecified date)[2] the ACE computer in the standby area was removed and he was restricted to using the computer in sight of his Manager's desk and next to his door;

20. On February 13, 2013, he was improperly placed on Light Duty;

21. He has not received information pursuant to his May 29, 2013, "Request for Information;"

22. He was not permitted to get out of the forced change-of-schedule for the period of May 21-22, 2013;

23. His Supervisor demanded documentation for his May 25, 2013, FMLA absence;

24. On May 30, 2013, his Supervisor:

    a. Gave him a letter which placed him on, "Enforced Leave;"

    b. Tore-up his FMLA leave request;

    c. Stated that he wouldn't pay him unless he completed another form without FMLA on it;

    d. Gave him a direct order to leave the building and yelled that he was refusing that direct order;

    e. Grabbed his work sheet;

25. He has been denied FMLA leave during the, "Enforced Leave" period;

26. On June 7, 2013, his Manager gave him a direct order to leave the, "PMA;"

27. He has not been provided with Department of Labor Forms (e.g., WH-380E); and

28. Another employee has been given his MPE work to perform.

---

[1] February 6, 2013.
[2] On or about November 2012

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 4

Initially, the complaint included one additional allegation(s). However, on March 25, 2013, this allegation was dismissed for failure to state a claim. A review of the record established that this allegation was properly dismissed in accordance with 29 C.F.R. §1614.107. Consequently, the March 25, 2013 decision explaining the rationale for the dismissal is herein endorsed and incorporated by reference for the purpose of this final agency decision. (Investigative File (IF), Issues to be investigated, pp. 138-139).

**Procedural Dismissal**

Pursuant to 29 C.F.R. §1614.107(a)(1), the agency has the right to dismiss a complaint if a complainant fails to state a claim under Sections §§1614.103 or 1614.106(a). Specifically, those sections of the Equal Employment Opportunity Commission (EEOC) Regulations provide for the processing of complaints of discrimination filed with the agency that allegedly discriminated against the complainant when the aggrieved individual alleges discrimination based on factors prohibited by Title VII. Inherent in these regulations is the requirement that the complaining party alleges that he is an aggrieved person who was injured because of an agency action or lack of action.

The Commission has previously held that an employee cannot use the EEO complaint process to lodge a collateral attack on another forum's proceeding. Kleinman v. U.S. Postal Service, EEOC Request No. 05940585 (September 22, 1994); Lingad v. U.S. Postal Service, EEOC Request No. 05930106 (June 24, 1993).

In Claim 21 the complainant alleged he has not received information pursuant to his May 29, 2013, "Request for Information." More specifically, the complainant asserted on May 19, 2013, he submitted a Request for Information (RFI) regarding the unlawful closure and destruction of a Postal facility which he has not received. The complainant's claim is a collateral attack on the National Labor Relations Board and outside the purview of the EEO Commission's regulations. (IF, Aff. A, pp. 21, 67).

In Claim 25, the complainant alleged he has been denied FMLA leave during the, "Enforced Leave" period. This claim is a collateral attack on the Department of Labor. The Office of Federal Operations has held that, "The Commission does not adjudicate the fairness of Family and Medical Leave Act requirements where, as here, there is no indication of employment discrimination." Rodriguez v. U.S. Postal Service, EEOC Appeal No. 01A15330 (December 16, 2002). See also Ewing v. U.S. Postal Service, EEOC Appeal No. 01A54240 (September 20, 2005). Claims involving being subjected to an official investigation fail to state claims. Jones v. Department of the Army, EEOC Request No. 05A00428 (March 1, 2002) (CID investigation), accord Wills v. Department of Defense, EEOC Request No. 05970596 (July 30, 1998), and Mattocks v. Department of the Navy, EEOC Appeal No. 01950418 (March 31, 1995), request for reconsideration denied EEOC Request No. 05950549.

Therefore, Claims 21 & 25 alleging discrimination as cited above are now dismissed as failing to state a claim in accordance with 29 C.F.R. §1614.107(a)(1) and will no longer

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 5

be discussed for the remainder of this Final Agency Decision because the EEOC does not have jurisdiction over the claims.

## Chronology

The complaint was processed in accordance with applicable Equal Employment Opportunity Commission (EEOC) Regulations, 29 C.F.R. §1614.103 *et. seq.* Following a Postal Service investigation, the complainant was provided a copy of the investigative file and notified of the forthcoming final agency decision on the merits. Thus, in accordance with EEOC Regulation 29 C.F.R. §1614.302(d) *et seq.*, this decision is being issued on the merits of the complaint.

## Applicable Law

### Disparate Treatment

The United States Supreme Court established a burden-shifting framework for analyzing claims of discrimination in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), and subsequently refined that analysis in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). The McDonnell Douglas and Burdine approach involves a three-step process when a complainant alleges intentional discrimination based on a disparate treatment theory. The Equal Employment Opportunity Commission has adopted this approach in its decision making. Downing v. U.S. Postal Service, EEOC Appeal No. 01822326 (September 19, 1983); Jennings v. U.S. Postal Service, EEOC Appeal No. 01932793 (April 13, 1994); and Saenz v. Department of the Navy, EEOC Request No. 05950927 (January 9, 1998). A complainant alleging discrimination must first demonstrate that there is some substance to his or her claim. To satisfy this burden, the complainant must establish a *prima facie* case of discrimination for each of the bases of discrimination alleged by a preponderance of the evidence. Furnco Construction Company v. Waters, 438 U.S. 576 (1978).

Although a complainant may establish a *prima facie* case by presenting direct evidence of discrimination, the more frequent method of establishing a *prima facie* case is through circumstantial evidence by showing that he or she: (1) belongs to a protected class; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group. Mayberry v. Vought Aircraft Company, 55 F.3d 1086, 1090 (5th Cir. 1995); Mitchell v. Toledo Hospital, 964 F.2d 577, 582-83 (6th Cir. 1992). The failure to establish a specific element of a *prima facie* case may be overcome by presenting evidence of agency actions from which an inference of discrimination could be drawn if they remained unexplained. Day v. U.S. Postal Service, EEOC Appeal No. 01996097 (September 18, 2000).

Once a *prima facie* case has been established, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Furnco, 438 U.S. at 578. See also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). The employer need not persuade the trier of fact that the proffered reason was its actual motivation but merely needs to raise a genuine issue of fact as to whether it discriminated against the complainant. Burdine, 450 U.S. at 254; Keval v. Commodity Futures Trading Commission, EEOC Appeal No. 01832127 (November 2, 1984); Hollis v. Department of Veterans' Affairs, EEOC Appeal No. 01934600 (May 3, 1994). If the agency offers no adequate explanation for the discrepancy in treatment between the complainant and similarly situated employees, the agency does not carry its burden of production and the complainant prevails on the basis of the inference of discrimination created by the *prima facie* case. Frady v. U.S. Postal Service, EEOC Appeal No. 01A05317 (January 10, 2003); Houston v. Department of Veterans' Affairs, EEOC Appeal No. 01976054 (August 27, 1999); and Parker v. U.S. Postal Service, EEOC Request No. 05900110 (April 30, 1990).

If the employer meets this burden, any presumption of discrimination created by the *prima facie* case disappears; it simply "drops from the case." Hicks, 509 U.S. at 507; U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715 (1983). See also Hernandez v. Department of Transportation, EEOC Request No. 05900159 (June 28, 1990) and Peterson v. Department of Health and Human Services, EEOC Request No. 05900467 (June 8, 1990). The complainant can then prevail only if he or she proves that the employer's reasons are not only pretext but are pretext for discrimination. Hicks, 509 U.S. at 507 and 516; Nichols v. Grocer, 138 F.3d 563, 566 (5th Cir. 1998); Swanson v. General Services Administration, 110 F.3d 1180, 1185 (5th Cir. 1997). See also Papas v. U.S. Postal Service, EEOC Appeal No. 01923753 (March 17, 1994) and Bradford v. Department of Defense, EEOC Appeal No. 01940712 (September 20, 1994). Thus, the complainant cannot create a factual issue of pretext based merely on personal speculation that there was discriminatory intent. Southard v. Texas Board of Criminal Justice, 114 F.3d 539, 555 (5th Cir. 1997); Lyles v. U.S. Postal Service, EEOC Appeal No. 01A11110 (May 22, 2002); and Nathan v. U.S. Postal Service, EEOC Appeal No. 01995788 (August 29, 2001).

Pretext involves more than a mistake. It means that the reason offered by management is factually baseless, is not the actual motivation for the action, or is insufficient to motivate the action. Tincher v. Wal-Mart Stores, Inc., 118 F.3d 1125, 1130 (7th Cir. 1997) and Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). The complainant always carries the "ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination." Burdine, 450 U.S. at 254 and Hicks, 509 U.S. at 511.

At all times, the ultimate burden of persuasion remains with the complainant. Board of Trustees of Keene College v. Sweeney, 439 U.S. 24, 25 N.2 (1978). This burden was reaffirmed and clarified in St. Mary's Honor Center v. Hicks, *Id.*, where the Court held that in order to impose liability upon an employer for discriminatory employment

practices, an ultimate finding of unlawful discrimination is required whether or not the employer's explanation for its action was believable. <u>Brewer v. U.S. Postal Service</u>, EEOC Appeal No. 01941786 (June 21, 1994) and <u>Montoya v. Department of Housing and Urban Development</u>, EEOC Appeal No. 01940999 (August 4, 1994).

## Similarly Situated Employees

One of the key elements of a *prima facie* case of disparate treatment based on an adverse employment action is proof that similarly situated comparison employees not in the complainant's protected class were treated more favorably.  This is so, in part, because agencies are not monolithic entities. <u>Turner v. Department of the Navy</u>, EEOC Request No. 05900445 (September 25, 1990).  In general, in the absence of direct evidence of discrimination, if the complainant cannot identify any similarly situated comparison employees who were treated more favorably, he or she will not prevail. <u>Aguilar v. U.S. Postal Service</u>, EEOC Appeal No. 01944167 (August 8, 1995).

In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment, a complainant must show that all of the relevant aspects of his or her employment situation are virtually identical to those of the other employees who he or she alleges were treated more favorably.  <u>Smith v. Monsanto Chemical Company</u>, 770 F.2d 719, 723 (8th Cir. 1985); <u>Murray v. Thistledown Racing Club, Inc.</u>, 770 F.2d 63, 68 (6th Cir. 1985); <u>Nix v. WLCY Radio/Rahall Communications</u>, 738 F.2d 1181, 1185 (11th Cir. 1984); <u>Mazzella v. RCA Global Communications, Inc.</u>, 642 F.Supp. 1531, 1547 (S.D. N.Y. 1986), *aff'd* 814 F.2d 653 (2nd Cir. 1987).  The Equal Employment Opportunity Commission has on numerous occasions ruled in similar fashion. <u>Tolar v. U.S. Postal Service</u>, EEOC Appeal No. 01965083 (December 16, 1998), *citing* <u>O'Neal v. U.S. Postal Service</u>, EEOC Request No. 05910490 (July 23, 1991); and <u>Knapp-Huffman v. Department of Justice (Bureau of Prisons)</u>, EEOC Appeal No. 01991026 (January 16, 2002).

If employees have different supervisors, perform different job functions, were subject to different job standards, engaged in different conduct, or worked during different time periods, they are not similarly situated.  <u>O'Neal</u>, *Id.*; <u>Allen v. Department of the Navy</u>, EEOC Request No. 05900539 (June 15, 1990); <u>Willis v. Department of the Treasury</u>, EEOC Appeal No. 01A51459 (March 16, 2003); and <u>Stewart v. Department of Defense</u>, EEOC Appeal No. 01A02890 (June 27, 2001).

## Retaliation

To establish a *prima facie* case based on reprisal, a complainant must show that: (1) he or she engaged in prior protected activity; (2) the agency official was aware of the protected activity; (3) he or she was subsequently disadvantaged by an adverse employment action or adverse treatment; and (4) there is a causal link between the protected activity and adverse action/treatment. <u>Hochstadt v. Worcester Foundation for Experimental Biology, Inc.</u>, 425 F.Supp. 318, 324 (D. Mass 1976), *aff'd* 545 F.2d 222

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 8

(1st Cir. 1976); Manoharan v. Columbia University College of Physicians and Surgeons, 842 F.2d 590, 593 (2nd Cir. 1988); Coffman v. Department of Veterans' Affairs, EEOC Request No. 05960437 (November 20, 1997); and Whitmire v. Department of the Air Force, EEOC Appeal No. 01A00340 (September 25, 2000). A complainant may establish prior EEO activity by participating at any stage of the EEO process or opposing unlawful discriminatory conduct. Lewis v. Department of the Navy, EEOC Appeal No. 01810158 (May 22, 1981) (counseling stage); Ballard v. U.S. Postal Service, EEOC Appeal No. 01923276 (August 17, 1992) (witness); and Burrough v. U.S. Postal Service, EEOC Appeal No. 01842417 (June 24, 1986) (representative).

A complainant may also establish a *prima facie* case by presenting evidence which, if it was not explained, would reasonably give rise to an inference of reprisal. Shapiro v. Social Security Administration, EEOC Request No. 05960403 (December 6, 1996). Obviously, the complainant must offer evidence that the agency officials who took the action were aware of his or her prior participation or opposition activity (Demeier v. Department of the Air Force, EEOC Appeal No. 01A11166 (May 23, 2002)) but establishing that alone will not enable a complainant to establish the causal connection element of a *prima facie* case. Garcia-Gannon v. Department of the Air Force, EEOC Appeal No. 01821195 (June 30, 1983). Adverse actions need not be ultimate employment actions, just adverse treatment based on a retaliatory motive, which could deter a reasonable person from engaging in protected activity. Burlington Northern Santa Fe Railway Company v. White, 548 U.S. 53 (2006); Lindsey v. U.S. Postal Service, EEOC Request No. 05980410 (November 4, 1999) and *EEOC Compliance Manual*, Section 8.D.3, Notice No. 915.003 (May 20, 1998).

The causal connection may be inferred by evidence that the protected conduct was closely followed by the adverse action. Clark County School District v. Breeden, 532 U.S. 286 (2001). The Court in Breeden noted that where a complainant is relying on temporal proximity to establish a causal connection between prior protected activity and a current adverse employment action, that proximity must be "very close" and cited with approval Circuit Court of Appeals decisions holding that time gaps of three to four months between an individual's prior EEO activity and the current adverse employment action were too attenuated to suggest an inference of retaliation. The Commission has followed suit and rendered decisions establishing much shorter time frames to establish the requisite temporal proximity. Heads v. U.S. Postal Service, EEOC Appeal No. 01A51547 (June 2, 2005); Archibald v. Department of Housing and Urban Development, EEOC Appeal No. 01A54280 (September 22, 2005); and Lynch v. U.S. Postal Service, EEOC Appeal No. 01A24705 (August 14, 2003).

To support a finding of unlawful retaliation, there must be proof that the agency official(s) took the action at issue because of the complainant's prior protected activity and sought to deter the complainant or others. *EEOC Compliance Manual, Id.*, pp. 8-16.

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 9

## Harassment/Hostile Work Environment

Harassment of an employee that would not occur but for the employee's race, color, sex, national origin, age, disability, or religion is unlawful if it is sufficiently severe or pervasive. Wibstad v. U. S. Postal Service, EEOC Appeal No. 01972699 (August 14, 1998), citing McKinney v. Dole, 765 F.2d 1129, 1138-1139 (D.C. Cir. 1985), and Long v. Attorney General, EEOC Appeal No. 01984213 (July 10, 2001). Hubbert v. Department of the Army, EEOC Request No. 05910133 (March 19, 1991); Ortega v. U.S. Postal Service, EEOC Appeal No. 01995243 (May 3, 2001); Humphrey v. U.S. Postal Service, EEOC Appeal No. 01965238 (October 16, 1998). Harassment due to an individual's prior EEO activity is also actionable. Roberts v. Department of Transportation, EEOC Appeal No. 01970729 (September 15, 2000).

To establish a claim of harassment, a complainant must show that: (1) she belongs to a statutorily protected class; (2) she was subjected to unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on the statutorily protected class; (4) the harassment had the purpose or effect of unreasonably interfering with her work performance and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the employer. McCleod v. Social Security Administration, EEOC Appeal No. 01963810 (August 5, 1999).

The Supreme Court has held that an employer who creates or tolerates a work environment which is permeated with "discriminatory intimidation, ridicule, and insult" that is sufficiently severe or pervasive to alter the terms and conditions of an individual's employment and which creates an abusive work environment is in violation of Title VII. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), citing Meritor Savings Bank F.S.B. v. Vinson, 477 U.S. 57 (1986). The conduct in question is evaluated from the standpoint of a reasonable person, taking into account the particular context in which it occurred, including the severity and frequency of the conduct and its effect on the employee's work performance. Harris, Id. In order to support a finding of a hostile work environment, more than a few isolated incidents of enmity based on race, gender, national origin, religion, etc. must have occurred. Johnson v. Bunny Bread Co., 646 F.2d 1250, 1257 (8th Cir. 1981) and Cariddi v. Kansas City Chiefs Football Club, Inc., 568 F.2d 87, 88 (8th Cir. 1977. There must have been a steady barrage of opprobrious comments and not a casual comment or accidental or sporadic conversation in order to trigger an entitlement to relief. Snell v. Suffolk County, 782 F.2d 1094 (2nd Cir. 1986).

The Equal Employment Opportunity Commission has repeatedly held that remarks unaccompanied by a concrete agency action are not a direct or personal deprivation sufficient to render an individual aggrieved. Johnson v. Department of Justice, EEOC Appeal No. 01986199 (February 18, 2000); Backo v. U.S. Postal Service, EEOC Request No. 05960227 (June 10, 1986); and Henry v. U.S. Postal Service, EEOC Request No. 05940695 (February 9, 1995). The Commission has also agreed with the courts and held that in order to establish a case of harassment that constitutes a hostile

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 10

work environment, the harassment must be ongoing and continuous and that a few isolated incidents will not be sufficient to constitute discriminatory harassment. McGivern v. U.S. Postal Service, EEOC Request No. 05930481 (March 17, 1994) and Vargas v. Department of Justice, EEOC Request No. 05931047 (October 7, 1993). The conduct involved must be viewed in the context of the totality of the circumstances including, among other things, the nature and frequency of the offensive encounters and the time span over which the encounters occurred.   Rabidue v. Osceola Refining Company, 805 F.2d 611, 620 (6th Cir. 1988) and Gilbert v. City of Little Rock, 722 F.2d 1390, 1394 (8th Cir. 1993).

The decisions make it clear that the anti-discrimination laws are not a "general civility code" and that the conduct complained of must be so objectively offensive as to alter the terms and conditions of one's employment.  Routine work assignments, instructions, and admonishments do not rise to the level of discriminatory harassment. DiFruscio v. Social Security Administration, EEOC Appeal No. 01982006 (September 13, 2000).

## Background

At all times relevant to the issue(s) in this complaint, the complainant was employed as a Maintenance Mechanic at the Seattle Priority Mail ANX.  (IF, Exh. 1).  The complainant has alleged that Kenneth David Dow, Maintenance Supervisor, Kent PMA, Norman Lee Allen, Jr., Manager, Maintenance Operation Support, Seattle P&DC, David J. Marzec, Manager, Maintenance Operations, Seattle P&DC, and James John Norris, Manager Maintenance Lead, Seattle P&DC, intentionally discriminated against the complainant because of his Prior EEO Activity when:

2. **On December 4, 2012, he reported a hostile work environment and requested and was denied leave for the rest of the week; subsequently on January 28, 2013, he was verbally advised of the outcome of his harassment allegations and was not satisfied with managements actions; he also requested but has not been provided a copy of the report;**

The complainant testified he reported a hostile work environment to Mr. Norris on December 4, 2012.  When asked to describe what he reported, the complainant references PS Form 2564-A dated February 19, 2013, and attachments thereto. (IF, Counselor's Report, pp. 204-207, 210; Aff. A, pp. 5, 73).

PS Form 2564-A dated February 19, 2013 indicates the complainant called Mr. Norris on December 4, 2012 and informed him that he could no longer work with Mr. Dow due to the hostile work environment he has created.  (IF, Counselor's Report, pp. 204-207, 210).

The Workplace Incident Report indicates the complainant reported on December 3, 2012 that Mr. Dow tells him that he is failing to follow instructions, causing the complainant to fear termination of his employment.  The Report indicates no witnesses

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 11

were identified, but that investigative interviews would be conducted. The Report further indicates that both the complainant and Mr. Dow were advised to minimize their contact with each other during the course of the investigation. (IF, Exh. 5, p. 3).

The complainant asserted that Mr. Dow denied him leave for the rest of the week due to staffing. The complainant also referenced PS Form 2564-A dated February 19, 2013. (IF, Counselor's Report, pp. 204-207, 210; Aff. A, pp. 5, 74).

The PS Form 2564-A dated February 19, 2013 indicates the complainant asked for, but was denied, leave for the rest of the week. (IF, Counselor's Report, pp. 204-207, 210).

The record included PS Form 3971 dated December 3, 3012 which indicates the complainant requested annual leave from December 4, 2012 through December 13, 2012 due to "hostile environment/harassment" which was disapproved by Mr. Dow because he needed the complainant at work and lack of documentation. (IF, Exh. 4).

The complainant averred Mr. Marzec verbally advised him of the outcome of his harassment allegations on February 5, 2013. When asked what action management took as a result of his harassment allegations, and why he was not satisfied with such actions, the complainant noted "4 December 12 to present". The complainant also references PS Form 2564-A dated February 19, 2013, and attachments thereto. (IF, Counselor's Report, pp. 204-207, 210; Aff. A, pp. 5, 75).

The PS Form 2564-A dated February 19, 2013 indicates Mr. Norris assigned Mr. Allen to conduct a hostile work environment Initial Management Inquiry Process (IMIP). The Form indicates Mr. Allen: interviewed the complainant twice; required Mr. Dow to stay away from the complainant during the IMIP, and; asked Mr. Kirk to serve as the buffer between them. The Form further indicates on January 27, 2013, Mr. Allen told the complainant that three of the four issues in the investigation had been concluded, and that Mr. Dow could give the complainant instructions and directions. The Form indicates the complainant objected, to which Mr. Allen responded that everything was still open, and that he would look into allegations of continued harassment of the complainant by Mr. Dow. The Form also indicates Mr. Allen mentioned Mr. Dow's start time was being moved, and on February 5, 2013, Mr. Marzec told the complainant that the Hostile Work Environment investigation was completed, concluding that Mr. Dow was not to blame. (IF, Counselor's Report, pp. 204-207, 210-211).

The complainant testified he asked Mr. Allen for a copy of the report on December 16, 2012 and January 27, 2012. The complainant also referenced PS Form 2564-A dated February 19, 2013 and attachments thereto, regarding the report. (IF, Counselor's Report, pp. 204-207, 210-211; Aff. A, pp. 5-6, 76).

The PS Form 2564-A dated February 19, 2013 indicates on December 16, 2012, the complainant asked Mr. Allen for a copy of the final IMIP report, to which Mr. Allen replied that he would provide a copy to Human Resources and would ascertain if the

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 12

complainant could have a copy. The Form also indicates the complainant again asked Mr. Allen for a copy on January 27, 2012 and asked Mr. Marzec for a copy of the investigation on February 5, 2013. (IF, Counselor's Report, pp. 204-207, 210-211).

The Attached Request for Information Response dated January 24, 2013 from Mr. Allen to the APWU Maintenance Craft Director indicates the 161-page Hostile Work Environment Investigation regarding the complainant is available for review prior to duplication. The Attached Workplace Harassment Investigation contains December 2012 interviews by Mr. Allen of the complainant, Mr. Dow, and several co-workers/witnesses. An Undated Summary of Findings signed by Mr. Allen, indicates insufficient evidence to support the complainant's claim of a hostile work environment. The Summary indicates the complainant's actions contribute to his perception of a hostile work environment. The complainant was asked but failed to answer, if and when he received a copy of the report. (IF, Counselor's Report, pp. 217, 244, 247-261).

3. **On December 5, 2012, he was given instructions from Ken Dow although previously advised due to the reported hostile work environment Tony Kirk would be the buffer between him and Ken Dow;**

The complainant testified Mr. Allen told him on December 4, 2013 that Mr. Kirk would serve as the buffer between him and Mr. Dow. The complainant also references PS Form 2564-A dated February 19, 2013 regarding the issue. (IF, Counselor's Report, pp. 204-207, 210; Aff. A, pp. 6, 76).

PS Form 2564-A dated February 19, 2013 indicates Mr. Allen required Mr. Dow to stay away from the complainant during the IMIP, and asked Mr. Kirk to serve as the buffer between them. (IF, Counselor's Report, pp. 204-207, 210).

When asked what instructions Mr. Dow gave him and how he was given such instructions, the complainant referenced PS Form 2564-A dated February 19, 2013. (IF, Counselor's Report, pp. 204-207, 210; Aff. A, pp. 6, 77).

PS Form 2564-A dated February 19, 2013 indicates Mr. Dow told the complainant that new APBS routes MMO 107-12 were starting that day, December 5, 2012. The Form also indicates the complainant called Mr. Allen to complain that Mr. Dow was still instructing him. (IF, Counselor's Report, pp. 204-207, 210).

4. **On December 6, 2012, when attempting to access the Master Check list in eMars, the password did not work; subsequently on December 9, 2012, the password still did not work and a supervisor-level password was created;**

The complainant testified his password did not work when he attempted to access the Master Checklist in eMars on December 6 and 9, 2012, and that Mr. Allen fixed it by creating a supervisor-level password which allowed the complainant access. When asked about his password not working, the complainant also references PS Form 2564-

A dated February 19, 2013. The complainant was asked, but failed to answer, who was responsible for his password not working. (IF, Counselor's Report, pp. 204-207, 210; Aff. A, pp. 6, 77-78).

## 5. On December 15, 2012, he was assigned to replace a heavy conveyor motor and spent the day removing heavy metal side places by himself;

The complainant asserted Mr. Dow assigned him to replace a heavy conveyor motor on December 15, 2012. The complainant averred that no reason was given for this assignment and he should not have been required to do this task by himself because of his FMLA condition. When asked about this assignment, the complainant also references PS Forms 2564-A dated February 19, 2013 and February 2, 2013 and attachment "5g" thereto. (IF, Counselor's Report, pp. 14-16, 19, 33, 204-207, 210; Aff. A, pp. 6, 79).

The PS Forms 2564-A dated February 2, 2013 and February 19, 2013 indicated on December 15, 2012, Mr. Dow assigned the complainant to replace a heavy conveyor motor on APBS 2. The Forms indicate the APBS 1 conveyor belt split and jammed, causing the complainant to spend the remainder of the day removing the heavy metal side plates by himself. (IF, Counselor's Report, pp. 14-16, 19; 204-207, 210).

Attachment "5g" to PS Form 2564-A dated February 2, 2013 contains an e-mail from Mr. Dow to the complainant, undated, forwarding an e-mail from Dennis J. Livingston, Position Unknown, to Michael J. Hopper, Position Unknown, dated January 12, 2013. The forwarded e-mail indicates Mr. Livingston reports he had difficulty working on APBS 2, and that it would be easier if two people worked on it. The forwarding e-mail to the complainant contains a handwritten note from "KD" stating "If you need help holding the motor, I'll have Manny help you." (IF, Counselor's Report, p. 33).

The record included a Designation Notice (Family and Medical Leave Act) which indicates the complainant was approved for FMLA leave on June 13, 2012. (IF, Counselor's Report, pp. 269-270).

## 6. On December 28, 2012, he was included in an e-mail from Ken Dow in regard to too many missent;

When asked to describe the e-mail and to state how many other recipients were on the e-mail, the complainant referenced PS Forms 2564-A dated February 19, 2013 and February 2, 2013 and attachment "4g" thereto. When asked why he believes he should not have been included on the e-mail, the complainant answered "?". (IF, Counselor's Report, pp. 14-16, 19, 32, 204-207, 210; Aff. A, pp. 6, 81-82).

PS Forms 2564-A dated February 19, 2013 and February 2, 2013 indicated the complainant received a December 28, 2012 e-mail from Mr. Dow regarding the need to check carrier cells. (IF, Counselor's Report, pp. 14-16, 19, 204-207, 210).

Attachment "4g" to PS Form 2564-A dated February 2, 2013 is an e-mail from Mr. Dow to the complainant and four other recipients. The e-mail indicates the recipients need to check out the carrier cells, as there are too many "missents." (IF, Counselor's Report, p. 32).

7. **On January 13, 2013, he became aware Ken Dow had disposed of more of his equipment and he had saved another heavy motor for him to install by himself;**

When asked what type of equipment Mr. Dow had disposed of, the complainant referenced PS Forms 2564-A dated February 19, 2013 and February 2, 2013 and attachments including "9g" thereto. When asked what reason management provided for disposing of such equipment, the complainant referenced *Handbook AS-701 Material Management, Subsection 611.2 Redistribution, Recycling, and Disposal.* When asked why he believes a heavy motor was saved for him to install by himself, the complainant again referenced PS Forms 2564-A dated February 19, 2013 and February 2, 2013 and attachments thereto. (IF, Counselor's Report, pp. 14-16, 19, 43-45, 204-207, 210-211; Aff. A, pp. 7, 82-84; Exh. 27, p. 2).

PS Forms 2564-A dated February 19, 2013 and February 2, 2013 indicate the complainant had been on leave and then returned to find that Mr. Dow had disposed of more of his equipment such as a metal lathe, mill, micro meter, and true table. The Forms further indicate Mr. Dow also saved another heavy motor for the complainant to install by himself. (IF, Counselor's Report, pp. 14-16, 19, 204-207, 210-211).

Attachment "9g" to Form 2564-A dated February 2, 2013 contains Postal Service policy regarding recycling and disposal of property. (IF, Counselor's Report, pp. 43-45).

Attachment "5g" to PS Form 2564-A dated February 2, 2013 contains an undated email from Mr. Dow to the complainant regarding the wiring on APBS 2. A Handwritten note on the e-mail states "If you need help holding the motor, I'll have Manny help you. KD." (IF, Counselor's Report, p. 33).

8. **On January 14, 2013, his request for annual leave was denied;**

The complainant was asked but failed to answer who denied his leave request and what reason was given for the denial. (IF, Aff. A, pp. 84-85).

The record included a PS Form 3971 which indicates the complainant requested annual leave on January 14, 2013 but was disapproved by Mr. Dow because of coverage. (IF, Aff. B, p. 26; Exh. 6).

9. **On January 20, 2013, he was the only MPE scheduled for Lock-Out-Tag-Out training;**

The complainant was asked, but failed to answer: why he was scheduled for training; who scheduled him for training; whether he was the only MPE scheduled for training, and; why he does not believe he should have been the only MPE scheduled for training. (IF, Aff. A, pp. 85-86).

10. **On January 22, 2013, his computer use was restricted;**

The complainant was asked, but failed to answer: how his computer use was restricted; who restricted his computer use; what reason was given for restricting his computer use, and; why he does not believe his computer use should have been restricted. (IF, Aff. A, pp. 86-88).

The record included a USPS eAccess indicates the complainant has access to ACE, eMARS, eTRAVEL, Outlook, and Restricted Internet Access (Postal Intranet only). A USPS Information Technology notice, (no date or recipient stated), indicates "Access to Internet Denied." (IF, Exh. 7, pp. 2-3).

11. **On January 24, 2013, he was called into the office for an investigative interview; and subsequently requested two weeks stress leave but was only given three days, and**

The complainant was asked, but failed to answer: who gave him an Investigative Interview; what reason was given for the Investigative Interview; why he does not believe he should have been given an Investigative Interview, and; whether he received any resulting discipline. The complainant was also asked, but failed to answer: who gave him only three days leave; the reason given for denying him two weeks requested leave, and; why he believes such leave should have been granted. (IF, Aff. A, pp. 88, 90-91).

The complainant testified Mr. Dow gave him a bogus Letter of Warning for Attendance dated February 7, 2013 based in part on his FMLA leave usage. (IF, Aff. A, p. 17).

The record included an Investigative Interview dated January 24, 2013 which indicates Mr. Dow interviewed the complainant in the presence of Union Steward Lester K. Cornette, Laborer Custodial, Seattle Priority Mail ANX, Retaliation (Prior EEO Activity) and Mr. Marzec. The Interview indicates the complainant had nine unscheduled absences since July 2, 2012, and cites his PS Form 3972. The Interview indicates the complainant acknowledged his signature on nine PS Forms 3971, but he does not recall if the absences were FMLA related. The Interview further indicates the complainant cites hostile work environment as a cause of his irregular attendance. The PS Form 3972 for Leave Year 2012 indicates circled dates of unscheduled leave for the

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 16

complainant on: July 22; August 22-23; October 11; November 28-29, and; January 8-10. (IF, Exh. 8).

The record included a PS Form 3971, submitted on January 24, 2013 which indicates the complainant requested annual leave from January 27, 2013 through February 9, 2013 due to "hostile work environment-stress."  The PS Form 3971 indicates it was approved by Mr. Dow on January 24, 2013. The record also included a PS Form 3971, submitted on January 25, 2013, which indicates the complainant requested non-FMLA annual leave from January 29, 2013 through January 31, 2013 which was approved by Mr. Dow. (IF, Exh. 9).

The record included a Letter of Warning to the complainant dated February 7, 2013 which indicates he was given a Letter of Warning by Mr. Dow for failure to be regular in attendance.  The letter indicates the complainant failed to provide acceptable reasons during his Investigative Interview regarding his unscheduled leave. A Step 2 Grievance Decision dated March 7, 2013 indicates the complainant's Letter of Warning for failure to be regular in attendance will be removed from his record if he has no non-FMLA unscheduled absences until September 1, 2013. (IF, Exh. 10).

**The complainant alleged discrimination based on Retaliation (Current and Prior EEO Activity) when:**

12. **On February 6, 2013:**

   a. **His Manager demanded that he, at his expense and within nine days, provide more medical documentation regarding his FMLA approved medical condition (back pains) and color blindness (nondisability);**

   b. **His Manager unlawfully gave him a, "Request for Permanent Light Duty Assignment" form even though he didn't want Light Duty;**

The complainant testified he was given a letter from Mr. Marzec on February 6, 2013 requiring him to provide medical documentation regarding his two physical impairments. The complainant asserted he used his own leave time and paid for the appointments for his back and eye doctors.  The complainant referenced medical documentation of such office visits which includes a December 12, 2011 doctor visit regarding back pain.  The complainant asserted he submitted the medical documentation to the Occupational Health Services Office, as directed. (IF, Aff. A, pp. 17-18, 28-29, 116-119).

The record included a letter to the complainant from Mr. Marzec dated February 6, 2013 which indicates the complainant has brought to management's attention that he has back and vision impairments. The letter indicates the complainant must provide medical documentation to substantiate these claims.  The letter further indicates such information is necessary to determine if the complainant's impairments pose a threat to

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 17

the health and safety of the complainant or other employees.  (IF, Aff. D, p. 24; Exh. 11).

The record included a PS Form 3971 which indicates the complainant requested leave on February 13, 2013 for an eye examination and a USPS noted which indicates authorization to purchase safety glasses.  The record also included a letter from Arthur Lum, O.D., to USPS Occupational Health Services which indicates the complainant was examined that day and was found to have red/green color blindness.  A Statement of Charges and Payments indicates a $100 charge for a February 13, 2013 eye examination at the office of Dr. Lum.  The record also included a Neurosurgery Clinic Note indicates on December 12, 2011, the complainant visited Michael Schlitt, MD, regarding back pain. (IF, Aff. A, pp. 41-44).

The record included a Referral for Reasonable Accommodation Consideration dated March 19, 2013, signed by Mr. Marzec, which indicates the complainant informed management that he was color blind.  The Referral also indicates management was unaware of his condition, and asked the complainant for medical documentation for verification.   The Referral further indicates the complainant provided medical documentation to Occupational Health Services whereupon a February 15, 2013 Duty Status Report was generated indicating a permanent restriction regarding the complainant's ability to distinguish colors.  The Referral indicates the complainant was given a Request for Permanent Light Duty Assignment form, but he never returned it to management.  The Referral further indicates the complainant was asked on March 19, 2013 if he wanted to request accommodation and participate in the DRAC process, but the complainant declined, reasoning "You fired Brenda Burke on light duty.  I don't want to be on light duty."   The Referral also contains an attached blank Request for Permanent Light Duty Assignment. (IF, Aff. A, pp. 46-47; Aff. D, pp. 20-22).

### 13. On February 19, 2013, his Manager informed him that the, "Occupational Health Services Office" had given him a permanent restriction - VISION;

The complainant testified Tanya L. Daniels, RN, Occupational Health Nurse Administrator, Seattle NDC, discriminated against him when he was informed of his permanent vision restriction.  The complainant asserted he was informed on March 19, 2013 that his vision restriction pertained to his difficulty distinguishing certain colors and shades of color and the Maintenance Mechanic MPE Qualifications require the ability to distinguish colors. (IF, Aff. A, pp. 29, 120).

The record included a Duty Status Form dated February 15, 2013 signed by Ms. Daniels which indicates the complainant was seen by Dr. Lum on February 13, 2013, and was found to have difficulty distinguishing color and shades of color.  The Form indicates a permanent vision restriction, and notes that employees must request accommodation through their supervisors.  The Form further indicates the date of Initial Light Duty is February 13, 2013.  (IF, Aff. A, p. 45; Aff. D, p. 23).

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 18

14. On April 8, 2013:

    a. Inspectors asked whether he had a machete in his car; indicated they had a right to take it; and demanded it out of his car;

    b. His Manager gave him a letter dated April 8, 2013, that although it indicated, "wholly voluntary" and warned that he could be placed in an, "enforced leave status" his Manager demanded that he participate in the, "District Reasonable Accommodation Committee (DRAC);"

The complainant testified on April 8, 2013, Mr. Dow called him into his office for a meeting with Michelle C. Brooks, US Postal Inspector, USPIS-Seattle Division Headquarters and Casey James Snyder, Criminal Investigator, USPS OIG, and they asked if he had a machete at work. The complainant asserted he had kept the machete in his car for five years to cut a path to pick blueberries by the Green River on his lunch break. The complainant asserted he asked the inspectors for their written delegation of authority, to which they responded that they had nothing in writing. The complainant averred the Inspectors related that someone saw him with a machete on March 27, 2013, and that they had a right to take his machete due to a perceived threat. The complainant noted the Inspectors demanded he give them his machete or be charged with Failure to Follow Instructions. The complainant further noted he gave the Inspectors the machete which Ms. Brooks returned to him after work hours, conditioned upon his agreement not to bring it back to work. The complainant testified that the Postal Inspector and the OIG Inspector had no jurisdiction, cause or delegation of authority to conduct an administrative threat investigation, and that such investigation should have been conducted by a Postal Service Threat Assessment Team. (IF, Aff. A, pp. 18-20, 121).

The complainant testified later on April 8, 2013, Mr. Dow gave him a letter indicating he has a permanent vision restriction. The complainant asserted the letter notes that any request for light duty or reasonable accommodation would be voluntary but refusal to pursue either avenue may result in the complainant's placement in an enforced leave status. The complainant averred management has used light duty and the reasonable accommodation process to harass and discipline him. The complainant noted the letter references the confidential treatment of medical records. (IF, Aff. A, pp. 20, 122-123).

The record included a letter from Mr. Dow to the complainant dated April 8, 2013 which indicates the complainant recently informed management of his color blindness after implementation of a color coding system regarding APBS machines. The letter indicates the complainant submitted medical documentation to Occupational Health Services which, in turn, generated a Duty Status Form. The letter also indicates the Duty Status Form reveals the complainant has a permanent vision restriction due to his difficulty distinguishing colors and shades of color. The letter further indicates the ability to distinguish colors is a physical requirement of the complainant's position, and

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 19

distinguishing between various colored equipment wires impacts the safety of the
complainant and others.   The letter also indicates the complainant was offered but
refused to participate in the DRAC process and he was offered the opportunity to
request a Permanent Light Duty Assignment, but he did not want to discuss the matter.
The letter indicates light duty cannot be provided without a written request and the letter
requested the complainant's response by April 12, 2013 if he would like to engage in the
reasonable accommodation process and/or request light duty.  The letter indicates that
the complainant's failure to pursue either avenue may result in his placement in an
enforced leave status.   The letter contains an attached blank Request for Permanent
Light Duty Assignment.  (IF, Exh. 14, pp. 1-3).

**15. On May 8, 2013, his Manager gave him a letter indicating that he, "pose a
significant safety risk," restricted him from performing duties involving
colored wiring and advised that it served as a proposal to place him on
enforced leave;**

The complainant testified on May 8, 2013, Mr. Marzec gave him a letter again offering
him to request light duty and/or reasonable accommodation.  The complainant asserted
the letter also prohibited him from working on any wiring or performing duties requiring
the ability to distinguish colored wiring.  The complainant averred the letter announced it
served as a proposed notice to place the complainant on enforced leave.    The
complainant noted no reason was given for concluding he poses a significant safety
risk.   When asked why he believes he does not pose a significant safety risk, the
complainant testified he does not have to provide a reason why he is not unsafe after 16
years of performing his job safely.  The complainant asserted he has been on enforced
leave since May 30, 2013.  (IF, Aff. A, pp. 21, 31, 124-125).

The record included a Letter to the complainant from Mr. Marzec, dated May 8, 2013,
which indicates the complainant has not responded to offers to request light duty and/or
reasonable accommodation.   The letter included another offer to request light duty
and/or reasonable accommodation.   The letter further indicates the complainant is
prohibited from working on wiring and performing any duties that require the ability to
distinguish colored wiring.  The letter also indicates a 10-day proposed notice to place
the complainant on enforced leave since he has not interacted regarding this issue.
The letter indicates this failure to interact prevents Mr. Marzec from determining whether
the complainant can safely perform his duties.  (IF, Exh. 15).

**16. On (Unspecified date(s) he was not offered suitable work;**

The complainant referred to attached documents when asked: who did not offer him
suitable work; the dates upon which he was not offered suitable work; whether he was
offered any work on such dates; whether he missed any work hours, and; why the work
offered was not suitable.  (IF, Aff. A, pp. 31, 125-126).

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 20

**17. On February 6, 2013[3] his medical information was released by Postal Officials;**

The complainant asserted Mr. Marzec released his medical information. The complainant referenced Mr. Marzec's February 6, 2013 letter to him stating the complainant had recently brought to management's attention that he had two medical conditions. The complainant asserted he had previously informed management of his back condition and color-blindness. When asked what medical information was released, to whom, and when, the complainant noted that documents containing medical information are confidential pursuant to the FMLA. The complainant further noted that the FMLA only permits supervisors and managers to be informed of an employee's restrictions, and that the release of his information violates the Privacy Act. (IF, Aff. A, pp. 31-32, 127).

**18. On (unspecified date(s) he has been forced to work alone;**

When asked who has forced him work alone, the complainant testified that it was a conspiracy by management to not safely staff the PMA. The complainant asserted he has been forced to work alone for two years, since Brenda A. Burke, Maintenance Mechanic MPE, Seattle Priority Mail ANX, Retaliation (Prior EEO Activity), was fired. The complainant averred he was forced to work alone by management not filling positions after employees were fired, retired, or permitted to work out of the PMA on detail. The complainant noted the day after his placement on enforced leave; management filled two previously vacant MPE positions. (IF, Aff. A, pp. 32, 128-129).

**19. On January 22, 2013, the ACE computer in the standby area was removed and he was restricted to using the computer in sight of his Manager's desk and next to his door;**

The complainant testified on or about November 2012, he was using the ACE computer on the APBS 2 Feed Platform when Mr. Dow unplugged the computer, and informed him that he could no longer use that computer. The complainant asserted Mr. Dow removed the ACE computer on the APBS 1 Feed Platform. The complainant averred that Mr. Dow set up an ACE computer outside his office door and told everyone in maintenance they could only use that computer. The complainant noted Mr. Dow gave no reason for his actions. (IF, Aff. A, pp. 33, 129-130).

The record included an E-mail from Mr. Dow dated January 22, 2013, to the complainant and six others, which indicates recipients should not use the SDO computers on the workroom floor. The E-mail indicates recipients should use the computer located outside of Tools and Parts. (IF, Exh. 7, p. 1).

---

[3] February 6, 2013 (IF, Aff. A, pp. 31-32, 116, 127).

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 21

## 20. On February 13, 2013, he was improperly placed on Light Duty;

The complainant testified that the Duty Status Form, dated February 15, 2013 and signed by Ms. Daniels, placed him unknowingly on light duty with no restrictions. (IF, Aff. A, pp. 25, 29).

The record included a letter to the FMLA Office from the complainant dated June 12, 2013 which included the complainant's contention that Ms. Daniels placed him on light duty in February 2013. (IF, Aff. A, pp. 65-70).

## 22. He was not permitted to get out of the forced change-of-schedule for the period of May 21-22, 2013;

The complainant testified he tried to get out of a forced change of schedule for May 21-22, 2013, but Mr. Dow informed him that failure to report for work at such time would constitute a failure to follow instructions and could lead to discipline. (IF, Aff. A, pp. 21, 67).

The record included a note from Mr. Dow to the complainant dated May 16, 2013 which indicates the complainant has been scheduled to work on May 21-22 from 10:30 a.m. to 7:00 p.m. due to the needs of the service, and will be paid out of schedule, as appropriate. The note added that failure to report at that time would constitute a failure to follow instructions, and could lead to discipline. (IF, Aff. A, p. 56).

## 23. His Supervisor demanded documentation for his May 25, 2013, FMLA absence;

The complainant testified he took an FMLA leave day on May 25, 2013 and Mr. Dow demanded medical documentation or he would not be paid. The complainant asserted he tried to take time off to get the required medical documentation on June 3, 2013, but he could not comply since he was placed on enforced leave on May 30, 2013. (IF, Aff. A, pp. 21, 67).

The record included the PS Form 3972 for Leave Year 2013 which indicates the complainant had a scheduled day off on May 25, 2013. The form indicates the complainant had 8 hours unscheduled family leave without pay on May 23, 2013. The form further indicates the complainant had 5.5 hours of annual leave on May 30, 2013. The form also indicates the complainant was on annual leave from May 30, 2013 through June 27, 2013, and then on sick leave thereafter. (IF, Aff D, p. 29; Exh. 16).

The record included a PS Form 3971 which indicates the complainant requested 8 hours of family sick leave May 23-25, 2013. TACS AdjustPay Certification regarding the complainant, signed by Mr. Dow June 5, 2013, indicates 8 hours of full day LWOP-FMLA, noting "employee refused to provide documentation he was marked deems desirable for this day." An Earnings Statement indicates pay for 8 work hours ($224.11)

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 22

was subtracted from the complainant's earnings for pay period 13 13.  (IF, Aff. A, pp. 57-59).

**24. On May 30, 2013, his Supervisor:**

    a.  **Gave him a letter which placed him on, "Enforced Leave;"**
    b.  **Tore-up his FMLA leave request;**
    c.  **Stated that he wouldn't pay him unless he completed another form without FMLA on it;**
    d.  **Gave him a direct order to leave the building and yelled that he was refusing that direct order;**
    e.  **Grabbed his work sheet;**

The complainant testified Mr. Dow gave him a letter from Mr. Norris at 8:20 a.m. on May 30, 2013 placing him on enforced leave for his refusal to interact with management. The complainant asserted Mr. Dow then gave him a PS Form 3971, instructing him he could use either sick or annual leave for his enforced leave.  The complainant averred he wrote FMLA on the form, pursuant to FMLA office instructions, when Mr. Dow tore it up and said he would not approve FMLA leave.  The complainant noted Mr. Dow claimed he would not pay him unless he completed another leave form without FMLA on it.  The complainant further noted Mr. Dow then directly ordered him to immediately leave the building, and began yelling that the complainant was refusing a direct order while he was finishing his tea, cleaning his mug, completing his worksheet, putting his tools away and going to his locker.  The complainant testified Mr. Dow grabbed his worksheet, stating there was no need to complete it, and he should just complete a blank PS Form 3971 for annual or sick leave.  The complainant noted he was not offered a union steward during this time, and he clocked out at 8:30 a.m.  (IF, Aff. A, pp. 22, 67; Aff. E, pp. 21-23).

The record included a letter to the complainant from Mr. Norris dated May 30, 2013 which indicates the complainant is being placed on enforced leave effective May 30, 2013. The letter further indicates the complainant previously advised management that his inability to distinguish colors prevented him from performing job functions necessitated by an operational change.  The letter also indicates the complainant refused to interact as requested by management regarding whether his color-blindness permitted him to safely perform the functions of his position, with or without accommodation.  The letter indicates the complainant continues to have the right to request reasonable accommodation and/or light duty. (IF, Aff. A, pp. 60-62).

The record included an undated PS Form 3971 signed by the complainant which indicates annual leave, "FMLA" and appears to be torn into four pieces. (IF, Aff. A, p. 63).

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 23

### 26. On June 7, 2013, his Manager gave him a direct order to leave the, "PMA;"

The complainant testified he was picking up a RFI and speaking with the Mr. Cornette steward on June 7, 2013 when Teresa M. Johnson, Supervisor of Distribution Operations, Seattle PMPA, demanded he leave the PMA immediately. The complainant asserted he explained that he had business to discuss with the steward and paperwork to complete for his supervisor. The complainant averred Ms. Johnson replied he was not permitted in the building, to which he responded he would leave when he was finished. The complainant noted Ms. Johnson gave him a direct order to leave, which he asked her to put in writing, but she declined and then said she would call the police. (IF, Aff. A, pp. 25-26, 68).

The record included a letter from Mr. Norris to Mr. Cornett, dated June 7, 2013, which indicates it is a response to a Request for Information (RFI) dated June 6, 2013. The Letter indicates the union asked for the enforced leave policy, to which Mr. Norris responded that there is not an enforced leave policy. (IF, Aff. A, p. 48).

### 27. He has not been provided with Department of Labor Forms (e.g., WH-380E); and

The complainant testified he received PS Forms 3971 in the mail on June 11, 2013 from Mr. Dow, but no forms for his on-the-job injury of stress. The complainant asserted he mentioned his on-the-job injury of stress during his June 2, 2013 call to the Unscheduled Leave Request phone line. The complainant averred that in accordance with the *Employee and Labor Relations Manual*, the Postal Service should have provided him Department of Labor Form WH- 380E regarding his own serious health condition. (IF, Aff. A, p. 69).

### 28. Another employee has been given his MPE work to perform.

The complainant testified Mr. Dow has been giving his MPE work to Emmanuel Castillo, Building Equipment Mechanic, Seattle Priority Mail Annex, Retaliation (No Prior EEO Activity) as a result of unsafe short-staffing of MPEs which caused Mr. Castillo to cross crafts. (IF, Aff. A, p. 37).

#### *Prima Facie* Analysis – Retaliation

#### Retaliation (Prior and Current EEO Activity)

As discussed previously, the complainant may establish a *prima facie* case of retaliation by showing that: (1) he engaged in prior protected activity; (2) the agency official was aware of the protected activity; (3) he was subsequently disadvantaged by an adverse employment action or adverse treatment; and (4) there is a causal link between the protected activity and adverse action/treatment.

The first, second and third elements of the complainant's *prima facie* case for retaliation have been met.   First, the complainant's *iComplaints* Report included the current complaint, three prior formal complaints and two prior informal complaints initiated since 2006.  Second, although Mr. Dow testified he was unaware of the complainant's prior EEO activity, case details for Case No. 1E-985-0004-12 indicates the complainant filed a harassment complaint involving him.  In addition, Mr. Marzec and Mr. Norris asserted that they were also aware of the complainant's prior EEO activity, and they were named management officials is Case No. 1E-985-0004-12.  (IF, Aff. B, pp. 4-5; Aff. D, pp. 2-3; Aff. E, p. 2; Exh. 2).

Third, the record shows the complainant was subjected to adverse actions regarding Claims 2, 3, 6, 8, 9, 10, 11, 12, 14, 15, 19, 24, 27 & 28.  However, the investigation did not reveal the complainant was subjected to adverse actions as he alleged regarding Claims 4, 5, 7, 13, 16, 17, 18, 20, 22, 23, & 26; there is no evidence included in the record that shows these allegations occurred.  (IF, Aff. A, pp. 41-44, 46-47, 53-55, 60-64; Aff. B, pp. 5-6, 11, 13-14, 26, 48-51; Aff. C, p. 5; Aff. D, pp. 14-15, 20-22, 24; Aff. E, pp. 3, 10, 28-29; Exh. 4, 6-11, 15; Exh. 14, pp. 1-3).

Turning to the fourth element of the complainant's *prima facie* case, it must be determined whether there is a causal link between the complainant's prior EEO activity and the adverse employment actions.

The Supreme Court has ruled that an inference of retaliation can be drawn from the temporal proximity between the protected activity and the adverse treatment, provided the temporal proximity is "very close."  Breeden, *supra* (indicating that an inference of retaliation based on temporal proximity is not warranted if there is a three-month gap between the protected activity and the adverse treatment); Hendrix v. Department of the Navy, EEOC Appeal No. 01A10340 (August 8, 2001)(three month temporal relationship is insufficient to establish a causal connection).

**Claims 2-11 (Prior EEO Activity)**

The record shows the investigation for the most recent prior EEO activity (Case No. 1E-985-0004-12) ended on November 28, 2012 which was less than three months prior to December 4, 2012 through January 24, 2013, which were the dates when the adverse actions occurred for Claims 2, 3, 6, 8, 9, 10, 11.  Therefore, the complainant has shown causal connection for 2, 3, 6, 8, 9, 10 & 11.  (IF, Exh. 2).

**Claims 12-28 (Prior and Current EEO Activity)**

Claims 12-28 occurred between February 6, 2013 through June 2013, which all occurred during the investigation for the instant complaint which was initiated on January 24, 2013, and Claim 12 occurred within less than three months of prior Case No. 1E-985-0004-12.  Therefore, the complainant has shown causal connection for Claims 12, 14, 15, 19, 24, 27 & 28.  (IF, Exh. 2).

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 25

Based on the information above, the complainant has shown causal connection for the adverse actions in Claims 2, 3, 6, 8, 9, 10, 11, 12, 14, 15, 19, 24, 27 & 28. Therefore, he has met his fourth element and established a *prima facie* case for retaliation.

Even though the determination was made that the complainant has satisfied the essential requirements of a *prima facie* claim of retaliatory animus, it is important to point out that such a finding is not the equivalent of a finding of discrimination. It is simply proof that, without more, the circumstances involving management actions may give rise to an inference that discrimination did occur. Thus, the burden shifts to management to produce admissible evidence that its actions were taken for legitimate, non-discriminatory reasons.

### *Prima Facie* Analysis – Disparate Treatment—Discrete Act(s)

The Commission has held that allegations of harassing conduct that include discrete acts that would independently state claims outside of a harassment framework, assuming that they are timely, are properly reviewed in the context of disparate treatment. Conlin v. Department of Veterans Affairs, EEOC Appeal No. 0120055310 (December 5, 2006).

In a disparate treatment claim, the complainant must establish a *prima facie* case by showing that: 1) he is a member of a protected class; 2) he was subjected to an adverse employment action; and 3) similarly situated employees outside his protected class were treated more favorably.

As an individual who engaged in Prior EEO activity, the complainant met the first element for establishing a *prima facie* case in that he is a member of the protected group claimed.

The complainant also met the second element of his *prima facie* case of disparate treatment because he was subjected to adverse actions which are considered discrete acts, as described in Claims 8-11, 19, 24, 27-28.

However, as seen below, the record does not show similarly situated employees were treated more favorably.

### Claim 8

Mr. Dow testified all employees are treated the same when they request leave. No other comparative data was provided for these claims. (IF, Aff. B, p. 18).

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 26

## Claim 9

Mr. Dow testified all employees must have Lock-Out Tag-Out Training.   No other comparative data was provided for this claim.  (IF, Aff. B, p. 14).

## Claim 10

No comparative data was provided for this claim.

## Claim 11

Mr. Dow asserted he treats all employees similar regarding Investigative Interviews, Leave and Discipline.  (IF, Aff. B, pp. 16-18).

The complainant alleged Jeffery L. Mansfield, Data Collection Technician, Seattle Post Office, Retaliation (No Prior EEO Activity), was treated similarly to him in that he was issued "bogus" discipline, which discounts any inference of discrimination based on retaliation because he did not engage in EEO activity.   The record shows Mr. Mansfield's last day in pay status was June 2, 2013.  The record included a Step 1 Grievance Worksheet dated June 10, 2013 which indicates a grievance was filed regarding discipline issued to Mr. Mansfield, and abuse of management authority when finding Mr. Mansfield's medical documentation to be unacceptable.  (IF, Aff. A, pp. 37, 52, 137; Exh. 22).

## Claim 19

The record shows six other people were sent the same email as the complainant, dated January 22, 2013, which included instructions not to use the SDO computers on the workroom floor.   The e-mail indicates recipients should use the computer located outside of Tools and Parts.  No other comparative data was provided for this claim.  (IF, Exh. 7, p. 1).

## Claims 24 & 27

No comparative data was provided for these claims.

## Claim 28

The complainant alleged Mr. Castillo was given his work which discounts any inference of discrimination based on retaliation because Mr. Castillo did not engage in prior EEO activity.

Based on the information above, the complainant has failed to meet his third element and failed to establish a *prima facie* case for disparate treatment based on retaliation.

While the complainant is not limited to presenting comparative evidence to establish a *prima facie* case of disparate treatment discrimination, <u>Lipcsey v. U.S. Postal Service</u>, EEOC Appeal No. 01981884 (January 6, 2000), he has not presented any other evidence that affords a sufficient basis from which to draw an inference of discrimination.

## Management's Non-Discriminatory Reason – Discrete Act(s)

Assuming, for the sake of argument only, that the complainant has established a *prima facie* case of discrimination, management has articulated legitimate, non-discriminatory explanations for their actions.

### Claim 8

Mr. Dow testified he denied the complainant's request for annual leave on January 14, 2013 because he was the only employee working that day, on that tour with the hours that were needed.  (IF, Aff. B, p. 13).

### Claim 9

Mr. Dow testified he scheduled the complainant for such training because the complainant told him that he could not perform his job on the LMS system.  Mr. Dow asserted all employees must have Lock-Out Tag-Out Training.  (IF, Aff. B, pp. 13-14).

### Claim 10

Mr. Dow noted he did not restrict the complainant's computer use on January 22, 2013.  (IF, Aff. B, p. 14).

### Claim 11

Mr. Dow averred he gave the complainant an Investigative Interview on January 24, 2013 to address his attendance issues.  Mr. Dow noted the complainant received a Letter of Warning as a result.  When asked if and why he only gave the complainant three days of leave when he requested two weeks, Mr. Dow noted that the PS Form 3971 was attached.  (IF, Aff. B, pp. 15-17).

Mr. Marzec testified he was the note taker for Mr. Dow while he conducted the January 24, 2013 Investigative Interview of the complainant.  Mr. Marzec asserted the interview pertained to the complainant's unscheduled absences, and he was issued a Letter of Warning as a result of the interview.  Mr. Marzec noted he relied on the *Employee and Labor Relations Manual, Subsection 665.41 Requirement of Regular Attendance*, in his conduct toward the complainant.  (IF, Aff. D, p. 5; Exh. 24, p. 11).

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 28

## Claim 19

Mr. Dow testified he did not unplug the computer while the complainant was using it. Mr. Dow asserted that "mail operations" reported that the complainant was using their computers, against their wishes.  Mr. Dow averred all employees use the computer outside his office. (IF, Aff. B, p. 46).

## Claim 24

Mr. Dow testified he gave the complainant a May 30, 2013 letter from Mr. Norris which placed him on enforced leave and he tore up the complainant's FMLA leave request. Mr. Dow averred he informed the complainant he must request annual or sick leave and he was being sent home on enforced leave, not FMLA.   When asked if he told complainant that he would not be paid unless he completed another form without FMLA on it, Mr. Dow noted "I told him he was being put on enforced leave which was not FMLA."  Mr. Dow testified the complainant was refusing to leave the building after he was put on enforced leave, so he gave the complainant a direct order to leave the building and the complainant complied.  When asked if he grabbed the complainant's worksheet, Mr. Dow noted "he was leaving the building and was turning it in so I accepted it from him."  (IF, Aff. B, pp. 48-50).

Mr. Norris testified the complainant's position requires the ability to distinguish colors and the complainant refused management's attempts to discuss his colorblindness.  Mr. Norris asserted the complainant was placed on enforced leave effective May 30, 2013 because management had no way of fully understanding the medical limitations of the complainant's vision condition.   Mr. Norris noted the complainant has refused to: participate in the reasonable accommodation process; request light duty, or; discuss his colorblindness.  Mr. Norris testified the complainant is still in an enforced leave status as of July 9, 2013.  (IF, Aff. E, p. 10).

## Claim 27

Mr. Dow testified he did not send the complainant Department of Labor forms.  (IF, Aff. B, p. 51).

## Claim 28

Mr. Dow was asked, but failed to answer, if and why he gave the complainant's MPE work to Mr. Castillo.  (IF, Aff. B, p. 52).

Mr. Marzec testified Mr. Castillo assists Tomas Ruiz, MPE, when he needs physical assistance in the performance of his duties.  Mr. Marzec asserted the maintenance staff is very small at the Seattle PMA, and Mr. Castillo will help Mr. Ruiz if the complainant will not assist him.  (IF, Aff. D, p. 15).

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 29

The record included the Maintenance Mechanic Position Description which indicates the ability to distinguish colors is a physical requirement of the position. (IF, Aff. D, p. 28; Aff. E, p. 20; Exh. 3, p. 6).

The record included an IMIP conducted by Mr. Allen which contains: interviews with the complainant, Mr. Dow, and other maintenance employees; assignment worksheets and, findings. The IMIP findings indicate insufficient evidence of a hostile work environment, and the complainant's actions directly contribute to the perception of a hostile work environment. (IF, Exh. 5).

The record included a note to Mr. Marzec from Mr. Dow dated April 3, 2013 which indicates Mr. Dow and Mr. Castillo observed the complainant retrieve a machete from his car on March 25, 2013. A Statement from Mr. Castillo dated April 3, 2013 indicates he and Mr. Dow observed the complainant retrieve a machete from his car on March 25, 2013. An e-mail from Mr. Marzec to Mr. Dow dated April 3, 2013 indicates Mr. Marzec instructed Mr. Dow to complete an incident report regarding the complainant's machete. An Alleged Threat/Assault Workplace Incident Report indicates Mr. Dow reported seeing the complainant retrieve a machete from his car on March 25, 2013. Ms. Snyder's notes regarding the April 3, 3013 phone call with Mr. Dow indicates Ms. Brooks interviewed the complainant on April 8, 2013 and the complainant stated he had a machete in his car which he uses to cut blackberries while he is on break. The notes further indicate the complainant's initial refusal to turn over his private property, and his assertion that the parking lot is public property. The notes also indicate the complainant's offer to retrieve the machete if he is given a receipt for his property. (IF, Aff. G, p. 9; Exh. 12).

The record included an e-mail from Mr. Marzec to himself dated March 20, 2013 which indicates Mr. Marzec met with the complainant to ask him if he wanted to participate in the DRAC process due to his color blindness. The e-mail further indicates Mr. Marzec also mentioned to the complainant that he never returned the Request for Light Duty form which was needed to determine any safety risk, and that the ability to distinguish colors is required by his job description. The e-mail also indicates the complainant stared at him angrily, and told Mr. Marzec that he cannot talk to him about his vision as it is part of his protected EEO complaint. The e-mail indicates Mr. Marzec explained he just wanted to know if the complainant wanted to participate in the DRAC process, to which the complainant responded, "You fired Brenda Burke on light duty. I don't want to be on light duty." (IF, Exh. 13).

The record included an e-mail to Mr. Marzec from Mr. Dow dated April 8, 2013 which indicates Mr. Dow provided the complainant an April 8, 2013 letter regarding a light duty request and DRAC participation, and asked if he understood or had any questions, but the complainant responded by staring at him, and said nothing. (IF, Exh. 14, p. 4).

The record included the *Employee and Labor Relations Manual, Subsection 512.422 Approval or Disapproval,* which indicates the supervisor is responsible for approving or

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 30

disapproving the request for annual leave by signing PS Form 3971, a copy of which is given to the employee. If a supervisor does not approve a request for leave, the Disapproved block on PS Form 3971 is checked and the reasons given in writing in the space provided. When a request is disapproved, the granting of any alternate type of leave, if any, must be noted along with the reasons for disapproval. AWOL determinations must be similarly noted. (IF, Exh. 24, p. 5).

The record included the *Employee and Labor Relations Manual, Subsection 515.42 Leave Type,* which indicates absences that qualify as FMLA leave may be charged as annual leave, sick leave, continuation of pay, or leave without pay, or a combination of these. Leave is charged consistent with current leave policies and applicable collective bargaining agreements. (IF, Exh. 24, p. 9).

The record included the *Employee and Labor Relations Manual, Subsection 665.15 Obedience to Orders,* which indicates employees must obey the instructions of their supervisors. If an employee has reason to question the propriety of a supervisor's order, the individual must nevertheless carry out the order and may immediately file a protest in writing to the official in charge of the installation or may appeal through official channels. (IF, Exh. 24, p. 10).

The record included the *Employee and Labor Relations Manual, Subsection 665.16 Behavior and Personal Habits,* which indicates in relevant part that employees are expected to conduct themselves during and outside of working hours in a manner that reflects favorably upon the Postal Service. (IF, Exh. 24, p. 10).

The record included the *Employee and Labor Relations Manual, Subsection 665.3 Cooperation in Investigations,* which indicates employees must cooperate in any postal investigation, including Office of Inspector General investigations. (IF, Exh. 24, p. 11).

The record included the *Employee and Labor Relations Manual, Subsection 665.41 Requirement of Regular Attendance,* which indicates employees are required to be regular in attendance. Failure to be regular in attendance may result in disciplinary action, including removal from the Postal Service. (IF, Exh. 24, p. 11).

The record included the *Employee and Labor Relations Manual, Subsection 665.6 Disciplinary Action,* which indicates Postal officials may take appropriate disciplinary measures to correct violations of the regulations referred to in 665. (IF, Aff. E, p. 31; Exh. 24, p. 11).

The record included the *Employee and Labor Relations Manual, Subsection 811.24 Safety Philosophy,* which indicates in relevant part that management, which includes all levels including the first-line supervisor, is responsible and accountable for the prevention of accidents. (IF, Exh. 24, p. 12).

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 31

The record included the *National Agreement between the United States Postal Service and the American Postal Workers Union, Article 3 Management Rights,* which indicates the Employer shall have the exclusive right, subject to the provisions of this Agreement and consistent with applicable laws and regulations to maintain the efficiency of the operations entrusted to it and to determine the methods, means, and personnel by which such operations are to be conducted. (IF, Exh. 25, p. 3).

The record included the *National Agreement between the United States Postal Service and the American Postal Workers Union, Article 13 Assignment of Ill or Injured Regular Workforce Employees,* which indicates in relevant part that the U.S. Postal Service and the Union recognizing their responsibility to aid and assist deserving full-time regular or part-time flexible employees who through illness or injury are unable to perform their regularly assigned duties, agree to the following provisions and conditions for reassignment to temporary or permanent light duty or other assignments. (IF, Exh. 25, p. 4).

The record included the *National Agreement between the United States Postal Service and the American Postal Workers Union, Article 14,* which indicates in relevant part that It is the responsibility of management to provide safe working conditions in all present and future installations and to develop a safe working force. (IF, Exh. 25, p. 6).

The record included the *National Agreement between the United States Postal Service and the American Postal Workers Union, Article 14 Discipline, Section 3 Letter of Warning,* which indicates a letter of warning is a disciplinary notice in writing, identified as an official disciplinary letter of warning, which shall include an explanation of a deficiency or misconduct to be corrected. (IF, Exh. 25, p. 11).

The record included *Handbook EL-307, Reasonable Accommodation, An Interactive Process,* which indicated in relevant part that qualified individuals with disabilities may require reasonable accommodation during the application process and/or during the course of their employment with the Postal Service. (IF, Exh. 26).

The record included *Handbook AS-701 Material Management, Subsection 611.1 Asset Recovery,* which indicates through asset recovery, items no longer required or no longer retaining a specific functionality with regards to their original purpose are reclaimed or restored to some degree of usefulness. Asset recovery benefits the Postal Service by incorporating supply chain management practices described in this chapter to costs avoidance and revenue generating methodologies while stipulating environmental protection policies. *Subsection 611.2 Redistribution, Recycling, and Disposal,* indicates the Postal Service is concerned with the effective, efficient, and profitable disposal of surplus, obsolete, scrap and other types of material within our organization. Redistribution, recycling, and disposal actions must serve the overall interest of the Postal Service. (IF, Exh. 27, p. 2)

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 32

The record included *Rules and Regulations Governing Conduct on Postal Property* which indicates in relevant part that vehicles and their contents brought into, while on, or being removed from restricted nonpublic areas are subject to inspection. In addition, no person while on postal property may carry firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, or store the same on postal property, except for official purposes. (IF, Exh. 34).

Management has established their non-discriminatory reason for their actions and the complainant cannot prove that the reasons were pretextual.

## Pretext-Discrete Act(s)

At this point, the complainant has the burden of proving that management's stated reason is not only pretext, but is pretext for discrimination. <u>Tincher v. Wal-Mart Stores, Inc.</u>, 118 F.3d 1125, 1129 (7th Cir. 1997).

There was nothing that showed by a preponderance of the evidence that the legitimate explanations given by the agency were pretext for discrimination. <u>Hammons v. HUD</u>, EEOC Request No. 05971093 (May 5, 1999). Hence, the complainant did not show that the explanation of the agency for its action was simply a pretext for discrimination.

## *Prima Facie* Analysis – Harassment/Hostile Work Environment

To establish a *prima facie* case of hostile work environment harassment, a complainant must establish that: (1) He/she is a member of a protected group; (2) that he/she was subjected to unwelcome verbal or physical conduct; (3) that the conduct was based on the complainant's protected status; and (4) that the conduct was sufficiently severe or pervasive that it created a hostile, abusive, or offensive work environment or unreasonably interfered with the complainant's work performance; and (5) that there is a basis for imputing liability to the employer. <u>McCleod v. Social Security Administration</u>, EEOC Appeal No. 019962810 (August 5, 1999).

As an individual who engaged in prior EEO activity, the complainant has met the first element of his *prima facie* case of harassment/hostile work environment based on the fact that he is a member of the protected group claimed. (IF, Exh. 2).

Regarding the second element, the complainant must establish that he was subjected to unwelcome verbal or physical conduct. The conduct in question is evaluated from the standpoint of a reasonable person, taking into account the particular context in which it occurred, including the severity and frequency of the conduct and its effect on the employee's work performance. <u>Harris</u>, *Id.* In other words, was the conduct unreasonable or unwarranted under the surrounding circumstances?

In addition to the discrete acts discussed above, the complainant also alleged harassment regarding Claims 2, 3, 4, 6, 7, & 21.

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 33

## Claim 2

Mr. Allen testified he has no working relationship with the complainant.  Mr. Allen asserted that his manager, Mr. Norris, assigned him to conduct an IMIP into the complainant's December 3, 2012 hostile work environment allegations.  Mr. Allen asserted that he was assigned this task because he had no prior history with the complainant.  Mr. Allen averred there was no evidence supporting the complainant's hostile work environment claim; activities that were claimed to be harassing were normal workplace situations.  Mr. Allen noted there was no corrective action taken other than redirecting communications between the parties during the investigation.  (IF, Aff. C, pp. 2-4).

Mr. Allen testified the complainant asked him for a copy of the report.  Mr. Allen asserted that since the complainant insisted on union involvement during the IMIP, it was his understanding that the union was representing him.  Mr. Allen averred the union already requested the report in a Request for Information (RFI) and, therefore, he would give the union a copy of his report.  Mr. Allen noted he told the complainant that he could obtain a copy from the union.  (IF, Aff. C, p. 4).

Mr. Allen testified the complainant indicated he was not satisfied with management's actions regarding the IMIP.  Mr. Allen further testified that the complainant asserted the only satisfactory outcome would be to remove the supervisor from the building.  Mr. Allen averred that he reiterated his findings, and advised the complainant he could pursue alternatives such as filing a grievance or appealing to the Seattle District Manager of Human Resources.  (IF, Aff. C, p. 4).

Mr. Allen noted he relied upon *Publication 552, Manager's Guide to Understanding, Preventing, and Reporting Harassment* and *EL 912* in his conduct toward the complainant.  Mr. Allen further noted that he does not know if the complainant filed a grievance regarding the issues accepted for investigation.  (IF, Aff. C, pp. 6, 10; Exh. 33).

Mr. Norris testified his staff, not the complainant, informed him of the complainant's harassment claims in early December 2012.  Mr. Norris asserted he assigned Mr. Allen to conduct an investigation since he is outside the complainant's direct chain of command.  Mr. Norris averred Mr. Allen completed the investigation and then provided it to Human Resources Manager, Mr. Foster, for review.  Mr. Norris noted on or about February 3, 2013, Mr. Foster informed him there was insufficient evidence to support the complainant's harassment claims.  (IF, Aff. E, p. 4).

Mr. Marzec testified he did not advise the complainant of the outcome of the IMIP.  Mr. Marzec asserted that Mr. Allen conducted the IMIP, and would have advised the complainant of the findings.  Mr. Marzec averred he has not seen the report, nor did Mr. Allen share the findings with him.  Mr. Marzec noted the complainant asked him for a

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 34

copy of the report, to which he replied he did not have one, but would ask Mr. Allen to provide the complainant a copy upon its completion. (IF, Aff. D, pp. 3-4).

## Claim 3

When asked if he gave the complainant instructions regarding APBS routes on December 5, 2012, Mr. Dow testified he does not recall speaking to the complainant until the investigation was finished. Mr. Dow asserted that Mr. Allen instructed him to use other means to communicate with the complainant, so he generally used Mr. Kirk and Mr. Donnell for such purposes. (IF, Aff. B, pp. 5-6).

Mr. Allen averred he restricted direct interaction between Mr. Dow and the complainant during the course of his investigation to avoid potential workplace disruption and additional tension between the parties. Mr. Allen noted he instructed Mr. Kirk to serve as the buffer between the parties. (IF, Aff. C, p. 5).

Mr. Allen noted the complainant informed him that Mr. Dow had given him instructions so he contacted Mr. Dow who explained that the complainant was needed to repair a machine when Mr. Kirk was not yet at work. Mr. Allen further noted that waiting for Mr. Kirk to relay the information would have negatively impacted mail operations. Mr. Allen testified that he then arranged for an alternative messenger between the parties. Mr. Allen asserted he told the complainant that he had spoken to Mr. Dow about the matter, and instructed him to report any future violations to him. Mr. Allen averred that no further incidents were reported. (IF, Aff. C, p. 5).

Mr. Norris noted he is not aware of any restrictions on interactions between Mr. Dow and the complainant while the IMIP was pending. (IF, Aff. E, p. 3).

In regards to Claims 2 and 3, the complainant has not shown how management's actions were unwarranted or unreasonable.

## Claim 4

Mr. Dow testified he did not render the complainant's password ineffective. Mr. Allen asserted he instructed the complainant how to reset his password, but he did not create another password for the complainant, nor did he grant him supervisor-level access to the eMars system. (IF, Aff. B, p. 7; Aff. C, p. 6).

Regarding Claim 4, the complainant has not shown how management's actions were unreasonable or unwarranted when Mr. Allen assisted the complainant with his password, and no evidence was included that shows Mr. Allen created a supervisor-level access as alleged by the complainant.

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 35

## Claim 5

Mr. Dow testified he did not assign the complainant to replace a heavy conveyor motor by himself on December 15, 2012. Mr. Dow asserted the complainant has refused any help and has refused to work with anyone even though other employees have tried to help. When asked if the complainant has a medical condition which would prohibit such heavy work, Mr. Dow noted that supervisors are not informed of employees' FMLA conditions, and he has no Form CA-17 or other documentation regarding the complainant's medical condition. Therefore, the complainant has not proven his allegations occurred. (IF, Aff. B, pp. 7-9).

## Claim 6

The investigation did not reveal management's actions were unreasonable or unwarranted. When asked if and why he sent the complainant this e-mail, Mr. Dow testified he emails employees all the time. Mr. Dow further testified that the complainant told him he does not read emails, so he gives the complainant a copy of any e-mail pertaining to him. Mr. Dow asserted that other employees were included on the December 28, 2012 e-mail. (IF, Aff. B, p. 11).

## Claim 7

The complainant has not shown how management's actions were unreasonable or unwarranted. In addition, the record does not show Mr. Dow disposed of said equipment as alleged by the complainant.

Mr. Dow testified he did not dispose of the equipment; it is located at the main plant and he did not assign the complainant another heavy motor to install by himself on January 13, 2013. (IF, Aff. B, p. 12).

Mr. Marzec testified the complainant asserted that Mr. Dow lacked authority to dispose of the shop equipment, such as the lathe, welder and table saw. Mr. Marzec asserted he informed the complainant that Mr. Dow did not dispose of such equipment, but had sent it to the Seattle P&DC which is part of the same installation. Mr. Marzec averred he told the complainant that such actions did not violate *Handbook AS-701 Material Management* or any other regulation. Mr. Marzec noted Mr. Dow was cleaning up the area and was within his maintenance supervisor rights as described in the *National Agreement between the United States Postal Service and the American Postal Workers Union, Article 3 Management Rights*. Mr. Marzec further noted that such equipment is Postal Service property, and is intended for use by the Building Equipment Mechanic (BEM) occupational group more so than the Mail Processing Mechanic (MPE) occupational group. Mr. Marzec testified the union could argue the complainant is crossing crafts by using such equipment, and the BEM is the only certified welder at the PMA, and accordingly, is the only employee authorized to use the welder. (IF, Aff. D, pp. 3-4).

Mr. Allen testified he has no direct knowledge of specific equipment being removed from the PMA. (IF, Aff. C, p. 6).

**Claim 12**

Mr. Marzec testified he gave the complainant a February 6, 2013 letter requiring him to provide medical documentation after the complainant had mentioned to him that he was colorblind, and could not track the inspection of carrier cells on the APBS machine using colored dots. Mr. Marzec asserted the ability to distinguish colors is a physical requirement of the Mail Processing Equipment Mechanic (MPE) position and the inability to distinguish between colored wiring could result in personal injury and equipment damage. Mr. Marzec averred that he asked for no further documentation regarding the complainant's back condition upon learning that the condition was FMLA-approved. Mr. Marzec noted he did not demand the complainant attend a doctor's appointment at his own expense and no one raised any issue of reimbursement. Mr. Marzec further noted that healthcare provider visits would not be compensated as the complainant's condition was not related to an on-the-job injury. Mr. Marzec testified the complainant was compensated via sick leave for his visit with the doctor. (IF, Aff. D, pp. 11-12).

Mr. Marzec asserted the complainant provided documentation of his colorblindness to the Occupational Health Services Office, as requested. Mr. Marzec averred that management needed to determine whether the complainant could perform his duties safely, in light of his vision impairment. Mr. Marzec noted that if the complainant could not perform such duties safely, then management needed to determine what, if any, accommodations would be needed for the complainant to perform his duties. Mr. Marzec further noted he gave the complainant a Request for Permanent Light Duty Assignment to address such issues and one of the questions on the form requires the complainant to explain how the illness and/or injury affects regular duties. Mr. Marzec asserted the complainant did not return the form, and has refused to discuss the matter. Mr. Marzec averred that management continues to be willing to work with the complainant on the matter. (IF, Aff. D, pp. 11-12).

Regarding Claim 12, the complainant has not shown how management's actions were unreasonable or unwarranted.

**Claim 13**

Tanya L. Daniels, RN, Occupational Health Nurse Administrator, testified she has no work relationship with the complainant. Ms. Daniels asserted that the complainant's eye specialist, not her, determined the status of the complainant's vision. Ms. Daniels averred that a fax was received on February 14, 2013 from an ophthalmologist. Ms. Daniels noted this paperwork was faxed to the Senior Area Medical Director requesting assistance in determining what information is reported to management. Ms. Daniels

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 37

testified she completed the Duty Status Report based on the recommendations of the Senior Area Medical Director. (IF, Aff. F, pp. 2-3).

Mr. Marzec testified he does not recall speaking to the complainant about this matter, and his assumption is that the complainant was informed of the restriction either by Mr. Dow or the Occupational Health Services Office. Mr. Marzec asserted he offered the complainant a Referral for Reasonable Accommodation Consideration on March 20, 2013. Mr. Marzec averred this was another attempt to determine if the complainant's colorblindness affected his ability to perform his regular duties safely, and if so, what accommodations would be needed. Mr. Marzec noted management was concerned about liability if no action was taken, since the complainant had informed management of his colorblindness. Mr. Marzec testified the complainant stated "you fired Brenda Burke on light duty. I don't want to be on light duty." (IF, Aff. D, pp. 12-13).

Based on the information above, the record shows the complainant's eye specialist determined the complainant's restriction, not Ms. Daniels, as alleged by the complainant.

## Claim 14

Mr. Dow testified inspectors asked the complainant about a machete because the complainant had been seen walking in the parking lot with a machete. Mr. Dow asserted that he gave the complainant the April 8, 2013 letter because he is colorblind and for his safety and the post office. (IF, Aff. B, pp. 42-43).

Michelle C. Brooks, US Postal Inspector, testified Kent PMA management notified her that employees were uncomfortable because the complainant had a machete in his car. Ms. Brooks averred that while the complainant did not threaten anyone, his supervisor was uncomfortable approaching the complainant about the matter. (IF, Aff. G, pp. 3-4).

Ms. Brooks asserted she and Mr. Snyder asked the complainant about the machete, and he responded it was a tool. Ms. Brooks noted she told the complainant that some employees were uncomfortable since the machete could be used as a weapon, and weapons are prohibited on Postal property. Ms. Brooks testified the complainant indicated she needed a search warrant to search his car, but he then consented to the search of his car. Ms. Brooks asserted that she seized the machete, and returned it to the complainant off premises later the same day. Ms. Brooks averred no report was made regarding the machete since the machete was not associated with a threat. Ms. Brooks noted that in her actions, she relied upon *Code of Federal Regulations, Title 39, Section 232.1, Conduct on Postal Property.* (IF, Aff. G, pp. 3-5; Exh. 34).

Casey James Snyder, Criminal Investigator, USPS OIG, testified on April 3, 2013, Mr. Dow informed him that he and other employees saw the complainant retrieve a machete from his car and walk behind the building. Mr. Snyder asserted that Mr. Dow thought the complainant was taking the machete to a camp behind the Postal facility. Mr.

Snyder averred Ms. Brooks received this information as well, and asked him to accompany her on April 8, 2013. Mr. Snyder noted Ms. Brooks retrieved the machete with the complainant's permission. (IF, Aff. H, p. 3).

Regarding Claim 14, the complainant has not shown how management's actions were unreasonable or unwarranted.

## Claim 15

Mr. Marzec testified he gave the complainant a May 8, 2013 letter indicating the potential risks involved in the complainant's work with colored wires. Mr. Marzec asserted the letter noted the complainant could not be assigned any work involving wiring or troubleshooting of electric circuits until it was determined what, if any, effect his colorblindness would have on his ability to perform such duties safely. Mr. Marzec averred such a determination still has not been made due to the complainant's refusal to discuss the matter. Mr. Marzec noted the letter served as a proposal to place the complainant on enforced leave since management could not determine if the complainant could work safely, despite repeated attempts to interact with the complainant. (IF, Aff. D, p. 13).

Regarding Claim 15, the complainant has not shown how management's actions were unreasonable or unwarranted.

## Claim 16

Mr. Marzec testified the complainant has been offered his normal duties such as preventative maintenance routes, and corrective maintenance, and the only exception is the complainant's prohibition from working on any wiring, or performing any duties that require the ability to distinguish colored wiring. (IF, Aff. D, p. 13).

Mr. Norris testified a color coding system was implemented for maintenance, at which time the complainant informed management he was colorblind and could not distinguish between colors. Mr. Norris asserted the complainant works on machinery with colored wires and must distinguish between them. Mr. Norris averred the complainant refused management's attempts to discuss the matter with him. Mr. Norris noted the complainant was placed on enforced leave because management does not know, and the complainant refuses to inform management, the extent to which his colorblindness impairs his ability to work safely. Mr. Norris further noted the complainant has refused to participate in the reasonable accommodation process, request light duty, or to discuss his colorblindness. (IF, Aff. E, p. 9).

When asked about the complainant not being offered suitable work, Mr. Dow testified the complainant has been on enforced leave since May 30th; he refuses to provide a light duty, and prior to this he was working but could not do electrical work. (IF, Aff. B, p. 44).

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 39

Regarding Claim 16, the complainant has not shown how management's actions were unreasonable or unwarranted.

## Claim 17

Mr. Marzec testified he informed Mr. Dow of the complainant's difficulty distinguishing certain colors and shades of color, as set forth in the Duty Status Form prepared by the Occupational Health Nurse Administrator.   Mr. Marzec asserted safety concerns dictated Mr. Dow's need to know such information; therefor, he informed Mr. Dows to stop using the colored dot method of tracking carrier cells because the complainant stated he could not use that method.   Mr. Marzec averred he did not release this information to anyone else.  (IF, Aff. D, pp. 13-14).

Regarding Claim 17, the complainant has not shown how management's actions were unreasonable or unwarranted.

## Claim 18

Mr. Marzec testified the complainant has not been forced to work alone, except on Sundays when he is the only Mail Processing Mechanic on duty.  (IF, Aff. D, p. 14).

When asked if and why the complainant has been required to work alone, Mr. Dow asserted the complainant refuses to work with other employees.  (IF, Aff. B, pp. 44).

Mr. Norris averred he does not assign work to the employees but since there are "only eight positions authorized for" the PMA, it would be expected there would be times when a PMA mechanic may be the only mechanic on duty.  Mr. Norris noted there are other non-mechanics and operation employees available when a mechanic is scheduled to work alone.  Mr. Norris further noted that to his knowledge, there is no requirement to have more than one mechanic on duty.  (IF, Aff. E, p. 9).

Regarding Claim 18, the complainant has not provided, and the investigation did not uncover, any evidence that proves his allegation that he has been forced to work alone, and the complainant has not shown how management's actions were unreasonable or unwarranted when there may be only one PMA mechanic on duty.

## Claim 20

Ms. Daniels noted she did not place the complainant on light duty, and she does not know if he was placed on light duty.  (IF, Aff. F, p. 3).

Mr. Dow asserted the complainant is not on light duty, and never requested light duty. (IF, Aff. B, p. 46).

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 40

Mr. Marzec asserted the complainant has not been placed on light duty and management has not been able to grant a request for light duty since no request has been made. (IF, Aff. D, p. 14).

Mr. Norris averred he is not aware of the complainant being on light duty. Mr. Norris further noted the complainant refused to request light duty. (IF, Aff. E, p. 10).

The complainant has not provided, and the investigation did not uncover, any evidence that proves his allegation that he has been placed on light duty.

**Claim 22**

Mr. Dow asserted the complainant did not request a change of schedule. (IF, Aff. B, p. 47).

The complainant has not provided, and the investigation did not uncover, any evidence that proves his allegation.

**Claim 23**

Mr. Dow averred he did not demand documentation for the complainant's May 25, 2013 absence. (IF, Aff. B, p. 48).

The complainant has not provided, and the investigation did not uncover, any evidence that proves his allegation.

**Claim 26**

Ms. Johnson testified she is not the complainant's supervisor but she was present, at Mr. Dow's request, when Mr. Dow gave the complainant an enforced leave letter on June 7, 2013. Ms. Johnson noted she did not order the complainant to leave; Mr. Dow instructed the complainant to leave upon completion of his PS Form 3971 with the leave of his choice. (IF, Aff. I, p. 3).

The complainant has not shown how management's actions were unreasonable or unwarranted.

Therefore, the complainant has failed to establish the second element of his *prima facie* case for harassment/hostile work environment. The complainant also failed to establish the third element of his *prima facie* case for harassment/hostile work environment because nothing in the record suggested management's actions were based on the complainant's prior EEO activity.

Assuming, for the sake of argument, that the complainant had fulfilled the third element, he must next show that the conduct he identified as harassment was sufficiently severe

or pervasive that it created a hostile, abusive, or offensive work environment or unreasonably interfered with his work performance.

For harassment to be considered discriminatory, it must be severe or pervasive. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993). Actual psychological or emotional injury is not required. However, unless the conduct is very severe or persistent, a single incident or group of isolated incidents will not be regarded as discriminatory harassment. Scott v. Sears Roebuck and Co., 798 F.2d 210 (7th Cir. 1986); Hansen v. Rice, EEOC Appeal No. 01920621 (September 10, 1992). "Harassment, as the term is used in Title VII cases, refers to more than being subjected to stress." Lin v. U.S. Postal Service, EEOC Appeal No. 01932880 (December 23, 1993).

The conduct in question should be evaluated from the standpoint of a reasonable person, taking into account the particular context in which it occurred. Highlander v. K.F.C. National Management Co., 805 F.2d 804 (6th Cir. 1986). Conduct that is not severe or pervasive enough to create an objectively hostile or abusive environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview. Harris, 510 U.S. at 22-22. A showing of discriminatory harassment "must include discrete comments directed against the complainant or disparate treatment which supports an inference of discriminatory harassment." Lin v. U.S. Postal Service, EEOC Appeal No. 01932880 (December 23, 1993).

As was set out above, the complainant has not shown that management treated him disparately based on his membership in any protected group regarding Claims 2, 8, 9, 10, 11, 12, 14, 15, 19, 24, 26, 27 & 28. Having already shown that management acted in a non-discriminatory manner with regard to those issues, they cannot be viewed as forming the basis for a harassment claim.

Each of the acts to which the complainant objects are matters which occupy the normal scope and course of industrial relations and partake of daily interactions between a supervisor and his or her employees. Despite his attempt to inflate these daily activities into a hostile, abusive, or offensive work environment or one which unreasonably interfered with his work performance, the fact remains that the incidents were minor, transitory and ephemeral in nature, and do not come anywhere near the level of seriousness and severity necessary to meet this requirement.

Even if all of the actions were found to have taken place as alleged and were based on the complainant's protected class, they were neither sufficiently severe or pervasive to rise to the level of a hostile work environment.

The complainant has, therefore, failed to establish the fourth element of his hostile work environment claim.

Finally, the complainant must show that there is a basis for imputing liability to the Agency. Assuming the complainant established that the alleged harassment was based

on his prior EEO activity, and was sufficiently severe or pervasive to rise to the level of a hostile work environment, the Agency is not liable for the harassing conduct.

The complainant testified his supervisor's constant harassment affects his job performance, and he can no longer do his job since he no longer has the requisite tools, supplies and equipment.   When asked if there are eyewitnesses to the incidents accepted for this investigation, the complainant references Investigative Reports for Case Numbers 1E-985-0004-12 and 1E-981-0018-06.   When asked if he told any management officials who created the hostile work environment that their actions must cease, the complainant references Investigative Reports for Case Numbers 1E-985-0004-12 and 1E-981-0018-06.    When asked if he reported to Postal Service management his concern about being harassed with regard to the incidents accepted for this investigation, he references his December 2012 hostile work environment complaint, as well as Investigative Reports for Case Numbers 1E-985-0004-12 and 1E-981-0018-06. The complainant noted that he was harassed more after reporting the harassment. (IF, Aff. A, pp. 36, 133-135)

Mr. Dow testified Mr. Allen and Mr. Marzec spoke to him about the complainant's harassment allegations.  Mr. Dow asserted Mr. Allen conducted an investigation into the complainant's allegations of harassment, and no harassment was found.   Mr. Dow averred Mr. Allen informed the complainant of the outcome of the investigation.   Mr. Dow noted he did not notice any changes in the complainant's work habits or attendance after the alleged harassment occurred. (IF, Aff. B, pp. 20-22, 57-59).

Mr. Dow asserted he has received Postal Service training in harassment/hostile work environment and the Postal Service anti-harassment/hostile work environment policy is posted where the complainant works.   (IF, Aff. B, pp. 22-23).

Training Records for Mr. Dow indicate he received the following training: Respect in the Workplace (2008); DIV: Harassment: IMIP (2007); Working Together with Dignity and Respect (2007); EEO Rights and Remedies (No Fear Act) (2006); It's Not Just About Sex Anymore: Harassment (2005) and; Respect vs. Harassment (2001). (IF, Exh. 17, pp. 3-12).

Mr. Allen testified on December 3, 2012, the complainant demanded that he grant him leave, stating that it was harassment not to grant him leave following a report of a hostile work environment.   Mr. Allen asserted he told the complainant that only his supervisor or manager could grant him leave.   Mr. Allen averred the complainant informed him that Mr. Dow again harassed him by giving him instructions, so Mr. Allen addressed the issue with Mr. Dow.  Mr. Allen noted that the complainant told him that his password was not working was harassment and he informed the complainant that it was not and that his password just needed to be reset, so he assisted him in doing so. Mr. Allen testified the complainant told him it was harassment when he was required to work on heavy equipment by himself.   Mr. Allen asserted he then spoke to the complainant's supervisor, who responded that another employee could have assisted

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 43

the complainant but he did not recall the complainant requesting assistance. Mr. Allen testified the complainant mentioned harassment when he said his January 14 and 28, 2013 leave requests were denied. Mr. Allen further testified that he in turn mentioned the leave issue to the complainant's manager. Mr. Allen asserted he was informed by Mr. Marzec that the complainant claimed harassment when he was subjected to the Investigative Interview. Mr. Allen averred he did not take any action because he was not aware of the Investigative Interview until after the fact. (IF, Aff. C, pp. 7-9).

Mr. Allen testified he has attended numerous Postal Service training courses on anti-harassment/hostile work environment since 2000 and the Postal Service anti-harassment/hostile work environment policy is posted on the employee bulletin board and kiosk where the complainant works. (IF, Aff. C, pp. 9-10).

Training Records for Mr. Allen indicate he received the following training: DIV: Harassment: IMIP (2007); EEO Rights and Remedies (No Fear Act) (2006, 2007) and; Working Together with Dignity and Respect (2007). (IF, Exh. 17, pp. 13-20).

Mr. Marzec testified no one, including the complainant, spoke to him about alleged harassing conduct toward the complainant. Mr. Marzec asserted he is not aware of the complainant, or anyone acting on his behalf, notifying other management officials about harassing conduct toward the complainant. Mr. Marzec averred that, to his knowledge, no investigation was conducted into the issues accepted for the current investigation, nor was any corrective action taken. Mr. Marzec noted he did not notice any changes in the complainant's work habits or attendance after the alleged harassment occurred. Mr. Marzec testified he has attended numerous Postal Service training courses on anti-harassment/hostile work environment since 1996 and the Postal Service anti-harassment/hostile work environment policy is posted on the employee bulletin board where the complainant works. (IF, Aff. D, pp. 5-6).

Training Records for Mr. Marzec indicate he received the following training: Rapid Response to Harassment Complaints (2011); Working Together with Dignity and Respect (2007); EEO Rights and Remedies (No Fear Act) (2006); It's Not Just About Sex Anymore: Harassment (2005) and; Driving Conflicts Out of the Workplace (2000). (IF, Exh. 17, pp. 21-28).

Mr. Norris testified no one, including the complainant, spoke to him about alleged harassing conduct by him toward the complainant. Mr. Norris asserted that no one has spoken to him about any alleged harassment of the complainant, other than the report which resulted in the investigation set forth at Claim 2. Mr. Norris averred that he assigned Mr. Allen to conduct that investigation. Mr. Norris noted Mr. Allen advised him that he informed the complainant of the investigation results and no corrective or preventative action was taken; and Dan Foster, Human Resources Manager, concluded there was insufficient evidence to support the complainant's claims. (IF, Aff. E, p. 4).

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 44

Mr. Norris testified he received Postal Service anti-harassment/hostile work environment training in 2007 and 2008. Mr. Norris asserted he is not aware if the Postal Service anti-harassment/hostile work environment policy is posted where the complainant works. Mr. Norris noted he is not in a position to notice any changes in complainant's work habits or attendance after the alleged harassment occurred; he does not directly supervise the complainant. (IF, Aff. E, p. 5).

Training Records for Mr. Norris indicate he received the following training: Rapid Response to Harassment Complaints (2011) and; DIV: Harassment: IMIP (2007, 2008). (IF, Exh. 17, pp. 29-34).

Ms. Daniels testified she is unaware of any reports of harassing conduct regarding the complainant, or any investigation thereof. Ms. Daniels asserted that she received Postal Service anti-harassment/hostile work environment training in 2004, 2005 and 2007. (IF, Aff. F, pp. 4-5).

Training Records for Ms. Daniels indicate she received the following training: DIV: Harassment: IMIP (2007); Working Together with Dignity and Respect (2006, 2007) and; Respect in the Workplace (2012). (IF, Exh. 17, pp. 40-43).

Ms. Brooks testified the complainant told her on April 8, 2013 that he felt management was targeting and harassing him. Ms. Brooks asserted she responded that the proper channels for harassment were the EEO and grievance procedures. Ms. Brooks averred she is unaware of any reports to management regarding the complainants allegations of harassment, or any investigation into such allegations. Ms. Brooks noted she received Postal Service anti-harassment/hostile work environment training. (IF, Aff. G, pp. 5-6).

Mr. Snyder testified the complainant alleged during their April 8, 2013 conversation that management harassed him. Mr. Snyder asserted he is unaware of the complainant reporting the alleged harassment, or any investigation into such allegations. Mr. Snyder averred he has taken the required No Fear Act training on an annual basis. (IF, Aff. H, pp. 4-5).

Ms. Johnson testified no one spoke to her about harassing conduct toward the complainant and she is not aware of any alleged harassing conduct toward him. Ms. Johnson noted she has taken several Postal Service courses in anti-harassment/hostile work environment and the Postal Service anti-harassment/hostile work environment policy posters/flyers are displayed where the complainant works. (IF, Aff. I, pp. 4-5).

Training Records for Ms. Johnson indicate she received the following training: DIV: Harassment: IMIP (2007); Working Together with Dignity and Respect (2007); EEO Rights and Remedies (No Fear Act) (2006) and; It's Not Just About Sex Anymore: Harassment (2005). (IF, Exh. 17, pp. 35-39).

The record included the *Joint Statement on Violence and Behavior in the Workplace* which indicates there is no excuse for and will be no tolerance of violence or any threats of violence by anyone at any level of the Postal Service; and that there is no excuse for and will be no tolerance of harassment, intimidation, threats, or bullying by anyone.  (IF, Exh. 28).

The record included the *Postal Service Policy on Workplace Harassment* which indicates the United States Postal Service is committed to providing a work environment free of harassment based upon race, color, religion, sex, national origin, age, mental or physical disability, or reprisal for an employee or applicant's complaint about or opposition to discrimination or participation in any process or proceeding designed to remedy discrimination.  (IF, Exh. 29).

The record included *Poster 159, Workplace Harassment, Know Your Rights!  Take Responsibility!*  The policy states in relevant part that the United States Postal Service is committed to providing a work environment free of harassment based on age (40+) and retaliation.  (IF, Exh. 30).

The record included the *Manager's Guide to Understanding, Investigating, and Preventing Harassment* which includes six steps Managers must take to address workplace harassment that include responding promptly, obtaining information, beginning IMIP, evaluating information, creating a plan of action, and following up.  (IF, Exh. 31).

The record included the *Employee's Guide to Understanding, Preventing, and Reporting Harassment,* which instructs employees to report harassment to their supervisor, immediate manager, or the manager of Human resources.  (IF, Exh. 32).

The record included the *Postal Service Workplace Harassment Fact-Finding Policy and Procedures* which indicates in relevant part any supervisor or manager who receives an allegation of any type of workplace harassment should conduct an inquiry pursuant to *Publication 552.*  (IF, Exh. 33).

Accordingly, the complainant has failed to establish a *prima facie* case of discriminatory harassment.

## Conclusion

After carefully considering the entire record, and applying the legal standards outlined in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973); Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F.Supp. 318 (D.Mass 1976), *aff'd* 545 F.2d 222 (1st Cir. 1976); and Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), citing Meritor Savings Bank F.S.B. v. Vinson, 477 U.S. 57 (1986) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998); the evidence does not support a finding that the

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 46

complainant was subjected to discrimination as alleged.  Consequently, this complaint is now closed with a finding of no discrimination.

### Statement of Relief

Because the Complainant did not prevail on his claim of discrimination, no relief is awarded.

### Appeal Rights

### MIXED CASE APPEAL RIGHTS

If the complainant is dissatisfied with this final agency decision, as an individual arguably entitled to appeal the issue raised in this complaint to the Merit Systems Protection Board, the complainant may appeal this decision to the Merit Systems Protection Board, **not the Equal Employment Opportunity Commission**, no later than thirty (30) calendar days from the date on which the complainant receives this final agency decision.  Enclosed is a copy of the MSPB appeal form.  The appeal should indicate whether the complainant is requesting a hearing and should be addressed to:

Western Regional Office
Merit Systems Protection Board
201 Mission Street, Suite 2310
San Francisco, CA 94105-1831

The complainant may also file an appeal electronically by accessing www.mspb.gov. The MSPB's regulations governing appeals may also be reviewed at that WEB site.  If the complainant decides to appeal directly to MSPB, the name and contact information for the Postal Service's representative to whom the MSPB should send the Acknowledgment Order and a copy of the complainant's appeal is:

Michael R. Tita
Western Area Law Office
P.O. Box 3686
Seattle, WA  98124-3686
Tel:  (206) 381-6620
Fax: (206) 381-6621
Email: EEOCWESTERNLAW@usps.gov

In lieu of an appeal to the Merit Systems Protection Board, the complainant may file a civil action in an appropriate United States District Court within thirty (30) calendar days from the date on which this decision is received.  If the complainant chooses to file a civil action, it should be styled **Lance P. McDermott v. Patrick R. Donahoe, Postmaster General.**  The complainant may also request the court to appoint an attorney for the complainant or to authorize the commencement of that action without

Final Agency Decision
Lance P. McDermott
Agency Case Number 1E-985-0006-13
Page 47

the payment of fees, costs, or other security in such circumstances as the court deems just. The application must be filed within the same thirty-day time period for filing the civil action.

*Karla M. Malone*

Karla M. Malone
EEO Services Analyst                                    Date: November 4, 2013
NEEOISO
P. O. Box 21979
Tampa, FL 33622-1979

**Enclosure:** MSPB Appeal Form 185

cc:
Complainant
Lance P. McDermott
1819 South 104th Street
Seattle, WA 98168-1647
**Delivery Confirmation No. 0311 0820 0000 6809 2848**

Regional Manager, EEO Compliance and Appeals
Western Area
5750 Holly Street
Denver, CO 80226-9411

USPS Law Department Attorney
Western Area
Steve Schwartzman
P.O. Box 3686
Seattle, WA 98124-3686

EEO ADR SPECIALIST

**UNITED STATES**
**POSTAL SERVICE**

February 21, 2013

Signature Confirmation: 2308 0440 0000 2862 8207

Lance P. McDermott
1819 S 104th ST
Seattle WA 98168-1647

Subject :      Notice of Right to File
               EEO Case No.: 1E-985-0006-13

Dear Mr. McDermott;

This letter is to notify you that I have concluded the processing of your claim of discrimination initiated on January 24, 2013.

In this matter you claim that you were discriminated against and subjected to an ongoing hostile work environment based on Retaliation for prior EEO's when the following occurred:

1. On 12/04/12 after informing your Maintenance Manager that you could no longer work with SMO Ken Dow because of the hostile work environment he was creating for you, you requested leave for the rest of the week off, but it was denied;

2. On 12/05/12, SMO Dow was required to stay away from you during the IMIP investigation, and SDO Kirk was to be the buffer between you, however, SMO Dow disregarded the separation, and confronted you to tell you that new APBS routes were starting;

3. On 12/06/12, SMO Dow and a Tool and Parts Clerk gave you copies of the APBS ECBM routes that SMO Dow created, however, they did not provide you with a password that would work in the system;

4. On 12/09/12, MMO Norm Allen came to the PMA to train you on the ECBM program; however your password still did not work so MMO Allen had to create a Supervisor level password for you to use;

5. On 12/09/12, MMO Allen trained you on how to create APBS routes each morning which is a Supervisors job, yet he did not provide you with any documentation explaining this was now your job and not your Supervisors;

6. On 12/15/12, SMO Dow assigned you to replace a heavy conveyor motor on APBS 2, after the conveyor belt split on APBS 1, SMO Dow had you move to APBS 1, to remove the heavy metal side plates off of that conveyor by yourself; *that aggravated my FMLA Back problem*

7. On 12/16/12, MMO Allen conducted another IMIP interview with you and asked you more questions; and when you asked for a copy of the completed report and the ECBM requirement, you were not provided them;

8. On 12/28/ 12, you received a copy of an email from SMO Dow in your in-box which said, "we need to check out the carrier cells...I need you to...I also want...This is just the start of things to come..."

9. On 01/13/13, after returning to work from being off sick you noticed that SMO Dow had disposed of more of your equipment including the metal lathe mill, micro meter, true table and other tools you use;

10. On 01/13/13, SMO Dow saved another heavy motor for you to install by yourself;

11. On 01/14/13, you were denied a leave request to have your wedding anniversary off;

12. On 01/20/13, you were the only one scheduled for, "lock-out tag-out" training given by Mr. Ruiz;

13. On 01/22/13, SMO Dow restricted your computer use;

14. On 01/24/13, SMO Dow told you that you needed to take your lunch before noon;

15. On 01/24/13, SMO Dow called you into the main office and charged you with "failure to be regular in attendance" and  he conducted an investigative interview with MMO Marzec present; you also requested a copy of the written Delegation of Authority (Due Process) for SMO Dow to conduct the investigation, which they did not provide stating they did not need too;

16. On 01/24/13, you requested two weeks of stress leave but you were only provided with three days;

- 2 -

17. On 01/27/13, MMO Allen informed you that 3 out of the 4 issues of your hostile work environment complaint have been concluded; and that SMO Dow can give you instructions and directions; and that the complaint is still open and they are looking at the loss of supplies, tools, and equipment from the PMA.

18. I was not give a copy of the HWE investigation

In that you elected to remain anonymous during the pre-complaint process I was not able to contact management to obtain a response to your allegations, nor attempt resolution of the matter.

It is important to note that while one can remain anonymous during the pre-complaint stage of the EEO process, when a formal complaint is filed, the complaint file, or part of it may be shared with those who are involved and need access to it. This includes the EEO Officer, agency EEO officials, and possibly persons whom you have identified as being responsible for the actions that gave rise to the complaint. Please understand your identity may not remain confidential in the formal complaint process.

At this time there is no resolution to your counseling request. You have two options available to you. You can do nothing at which point your inquiry will expire and no further action will be taken on your counseling request or you can elect to file a formal complaint.

If you opt to file a formal complaint, you have 15 days from the date of receipt of this letter to file a timely formal complaint. Your complaint could be subject to dismissal in accordance with 29 CFR Part 1614.107 if not filed within the 15 day time limit. Your complaint will be deemed timely if it is postmarked before the expiration of the 15 day time limit. The Complaint must be specific and contain only those issues either specifically discussed with me or issues that are like or related to the issues that you discussed with me.

Enclosed are the required forms if you wish to pursue your complaint further through the EEO process. If you choose to file a formal complaint, you must complete, sign, and date PS Form 2579 and PS Form 2565 and return them to the following address:

NEEOISO-Formal Complaint
U.S. Postal Service
P.O. Box 21979
Tampa, FL 33622-5438

You are not permitted to use a penalty envelope to submit your formal complaint. You will receive written acknowledgment of your formal complaint.

As a reminder, it is your responsibility to immediately notify NEEOISO, U. S. Postal Service, PO Box 21979, Tampa, FL 33622-1979, of any changes to your mailing address. If you designate or change your EEO representative, it is your responsibility to advise NEEOISO, in writing, of that person's name, title, mailing address, and phone number.

If you have any questions, please do not hesitate to give me a call.

Sincerely,

J. E. Wisecarver
ADR Specialist
206-381-6692

Enclosures:

PS Form: 2565
PS Form: 2579

McDermott 1E-985-0006-13                    Page 4 of 5

If you do not agree with the defined accepted issue(s), you must provide a written response specifying the nature of the disagreement within seven (7) calendar days of receipt of this letter to the EEO Services Analyst identified below at the National EEO Investigative Services Office (NEEOISO), P.O. Box 21979, Tampa, FL 33622-1979. You are reminded that any notification of disagreement with the defined accepted issues is not an opportunity or forum to raise additional unrelated allegations of discrimination. Additional unrelated issues must be pursued through established procedures with the local EEO Office.

The amended, accepted issues will be assigned for investigation. The investigation must now be completed within the earlier of 180 days of this amendment or 360 days from the date the original complaint was filed, except that you may request a hearing on the original complaint and amendments to it at any time after 180 days from the date the original complaint was filed. If you have a grievance pending on the same issues as those addressed in the instant complaint of discrimination, the agency may, at its discretion, defer the processing of this complaint until the grievance procedure has run its course and there has been a final resolution of the grievance. When an investigation is deferred pending the outcome of the grievance process, the 180-day time period for processing the complaint is stopped temporarily, and does not restart until the grievance is resolved. If your complaint is deferred, you will be notified, in writing, of the options that may be available as a result of the deferral.

When the investigation is completed, you will receive a copy of the investigative report, and you will be notified of your right to request a hearing before an Equal Employment Opportunity Commission (EEOC) Administrative Judge, or of your right to a final decision by the agency head or designee without a hearing. You may request a hearing by an EEOC Administrative Judge by notifying, in writing, the Supervisory Administrative Judge of the appropriate EEOC at the following address:

> Chief Administrative Judge
> EEOC Seattle District Office
> 900 First Avenue #400
> Seattle, WA 98104-1061

You must make the hearing request within 30 calendar days of receipt of the investigative report and you must provide a copy of that hearing request to: NEEOISO-Hearings, P.O. Box 21979, Tampa, FL 33622-1979. Or, you may request a final agency decision without a hearing within 30 calendar days of receipt of the investigative report by writing to: NEEOISO-FADS, P.O. Box 21979, Tampa, FL 33622-1979. If you do not receive the investigative report and notification concerning your appeal rights within 180 calendar days from the date on which your formal complaint was filed, you may request a hearing by writing directly to the EEOC District Office shown above, with a copy to:



McDermott 1E-985-0006-13          Page 5 of 5

NEEOISO-Hearings, P.O. Box 21979, Tampa, FL  33622-1979.  If you are dissatisfied with the Postal Service's final agency decision where there has been no hearing, or with the Postal Service's final action on the decision of an Administrative Judge following a hearing, there are certain appeals rights.  You may appeal to the Office of Federal Operations (OFO), Equal Employment Opportunity Commission (EEOC), at the address shown below, within 30 calendar days of the date of receipt of the final agency decision or may file a civil action in the appropriate U. S. District Court within 90 calendar days of receipt of the decision.

You may also appeal a final action by the Postal Service implementing a decision of an Administrative Judge following a hearing within 30 calendar days of the date of receipt of that final action, or you may file a civil action in an appropriate U. S. District Court within 90 calendar days of the date of receipt of the final action. Finally, you may respond to an appeal by the Postal Service in connection with its final action not to implement a decision of an Administrative Judge following a hearing or may file a civil action in an appropriate U. S. District Court within 90 calendar days of the date of receipt of the final action and appeal. Any appeal to the EEOC should be addressed to the Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, D.C. 20013-8960, or by personal delivery to One NOMA Station, 131 M Street, N.E., Suite 5SW12G, Washington, D.C. 20507-0004, or facsimile to (202) 663-7022.

Along with the appeal, you must submit proof to the EEOC that a copy of the appeal and any supporting documentation were also submitted to: NEEOISO-FADS, P.O. Box 21979, Tampa, FL  33622-1979. After 180 calendar days from the date of filing your formal complaint, you may file a civil action in an appropriate U. S. District Court if the Postal Service has not issued a final decision on the complaint or if no final action has been taken on a decision by an Administrative Judge.

If you decide to appeal to the Office of Federal Operations, EEOC, you may file a civil action in an appropriate U. S. District Court within 90 calendar days after receipt of the Office of Federal Operation's decision.  If you do not receive a decision on the appeal within 180 calendar days from the date of the appeal, you may file a civil action.

*Eric Wilson*
Eric Wilson
EEO Services Analyst

June 7, 2013
Date



NATIONAL EEO INVESTIGATIVE SERVICES OFFICE


**UNITED STATES**
**POSTAL SERVICE**

July 16, 2013

Delivery Confirmation No.: Complainant: 0312 2120 0002 1232 4481

Lance P. McDermott
1819 S 104th Street
Seattle WA 98168-1647

Re: *Response to Objection to Accepted Issues*
    Complainant: Lance P. McDermott
    Agency Case Number: 1E-985-0006-13
    Date Formal Filed: March 2, 2013

Mr. McDermott:

This is in response to your recent letter received in this office on July 8, 2013, regarding your disagreement with the identification of the accepted issues. Your requested expanded explanation of the issues as you perceive them would not alter the agency's investigation of the allegations of discrimination. Therefore, the accepted issues will remain the same as stated in the Acceptance Letter dated June 28, 2013.

A copy of your objection to the accepted issues will be added to the investigative file. When the investigator contacts you, you may include the additional information in the affidavit that will be requested. At the conclusion of the investigation and dependent upon your election of appeal, an EEOC Administrative Judge will make a decision regarding the requested clarification, or, alternatively, all relevant information and evidence will be addressed in the agency's final decision. There is no right to appeal this decision at this time.

Sincerely,

*Eric Wilson*

Eric Wilson
EEO Services Analyst

P.O. Box 21979
TAMPA FL 33622-1979