Department of Labor
Office of Labor-Management Standards
300 5th Ave, Suite 1290
Seattle, WA 98104-3308

10 November 2014

To Whom it may concern,

   I filed an NLRB complaint that the U.S. Postal Service violated Section 8(a)(2) and Section 7 rights of Employees by unlawfully dominating the Union by paying the salaries of Union Officers (for not working) for Union activities.  This I believe violates the NLRA § 8(a)(2), LMRA § 302, and LMRDA §§ 101, 102, 202, 203, 501 and 609.  The dominating Management and the overpaid Union Officials have failed to bargain over working conditions within the meaning of Section 2(5) and making bad faith "sweetheart" deals (contracting, facility closers, loss of jobs) with the Union violating Sections 8(a)(3) and 8(b)(3) showing an anti-union motivate inherently destructive of the Labor/Management relationships.  *International Paper Co. v. NLRB*, 115 F.3d 1045 (D.C. Cir. 1997).  The NLRB Field Examiner, Frank Cifuentes, stated that your office has jurisdiction under the LMRA and LMRDA for the extra pay that the Union Officers were receiving from the Postal Service and the Union Trust funds.

   AFL-CIO Ethical Practices Code (exhibit 1), Health and Welfare Funds, - "1 - No union official … shall receive fees or salaries of any kind … should be regarded as one of the functions expected to be performed by him in the normal course of his duties and not as an extra function requiring further compensation …"  Minimum Accounting & Financial Controls, - "D.  Salaries of elected officials should be established only by constitutional provisions…"  Constitution of the American Postal Workers Union (APWU), Article 7, only authorizes National Officers to be paid salaries from Union Trust Funds, not Local Officers.  The Washington APWU pays its Officers $21,850 a year and the Greater Seattle Area Local (GSAL) APWU paid its Officers $145,000 a year from the Union Trust Funds and are planning to change the Constitution so that they can still collect the extra money when they retire (exhibit 2).  Even if they did the required Constitutional Amendment voted on by all the union members it would not be legal.  However, Union Officials pack meeting with their friends using the meetings' simple majority to vote Trust Funds payments to Union Officers and now Retirees.  I wrote the AFL-CIO Ethical Practices Committee, about the theft of the Union Trust funds and it was returned un-opened (exhibit 3)

   In *Highway Truck Drivers and Helpers Local 107 v. Cohen*, 182 F.Supp. 608 (E.D.Pa. 1960), affirmed, 284 F.2d 162 (3d Cir. 1960), denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961), a suit was brought under the recently enacted Labor Management Reporting and Disclosure Act (LMRDA) of 1959, Public Law 860257, 29 U.S.C.A. 401 et seq.  The Court found that the LMRDA established a fiduciary responsibility on the part of officers of a labor organization, 501(a) and further provided for a right to sue, 501(b).  The Plaintiff, *Cohen*, charged the Union Officials with a continuing mass conspiracy to cheat and defraud the Union of large sums of money.  The Court found that the expenditures by the Defendants violated the provision in 501(a) which imposes upon them a strict duty to - "expand [union funds] in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder ***. - since we read this sentence to authorize only those expenditures made pursuant to a lawful bylaw or resolution.  [The Court here concluded that the Resolution was beyond the powers of the Union as set forth in its Constitution and that the Local could not authorize the expenditures in question by a mere majority vote taken at a regular union meeting.  Hence, the Resolution was not valid …] There is a further reason why the present Resolution is no defense here. Aside from its validity under Pennsylvania law, it is inconsistent with the aims and purposes of the



LMRDA and violates the spirit of that Act. A stated purpose of the Act is 'to eliminate *** improper practices on the part of labor organizations *** and their officers.' (Emphasis added.)." See *Holdeman v. Sheldon*, 204 F.Supp. 890 (S.D.N.Y. 1962), Affirmed 311 F.2d 2 (2d Cir. 1962), - salary payments. (Labor Law, The Foundation Press, Inc., 1996, pages 1196-1201.)

The Collective Bargaining Agreement (CBA), Article 17.4, Payment of Stewards, shows that the Union Stewards are already paid by the Employer for working on grievances. The Contract Interpretation Manual states that if union time is "unreasonably denied" the Steward should be paid for their "off-the-clock" union work (exhibit 4). USPS Finance Handbook F-21.252, Steward's Duty Time, is for investigating, presenting and adjusting grievances using Form 7020 to track the authorized union time of Stewards (exhibit 5). The Employer pays for the union time and keeps track of the "off-the-clock" union work. Therefore, there is no valid reason for the Union Officers to be for working on grievances after duty hours to be compensated from the Union Trust Funds.

NLRA §8(a)(3) indicates two elements to a violation: (1) discrimination in regard to some term or condition of employment; and (2) a resulting effect on union membership. (1) The Employees do see (a) union officers being paid by the Employer not to do their postal jobs and (b) taking Union Trust Fund money for not doing their union job (c) to protect employees from discipline or loss of jobs from unreasonable (d) contracting/closing/consolidating decisions (e) that the union failed to bargain for and (f) did not protest to a higher authority. (2) Remaining disillusioned Employees have quit the union(s) in droves. *Republic Aviation Corp. v. NLRB*, 324 U.S. 793 (1945), - "...a discharge because of violation of that rule discriminates within the meaning of §8(3) in that it discourages membership in a labor organization." After protesting I spent 9-months on non-paid "Enforced Leave" for being color blind, no pre/post hearing and no CBA review by the installation head. The Union did nothing to help a Steward, me, retain or get back my government job. Why should employees pay the dues to a union that does not help protect their jobs or represent their interest and spends their dues money - Union Trust Funds - on self-enrichment?

LMRDA §101(a)(5)(C), 29 U.S.C. § 411, *Breininger v. Sheet Metal Workers' Local Union No. 6*, 493 U.S. 67 (1989), - "ad hoc retaliation by individual union officers." The Union has retaliated against me by holding-up grievances, denying me my Steward position that I held for over 15-years and told me to "turn in my Union Hall Key" telling me I cannot use the copier for my numerous Hostile Work Environment, EEO, MSPB and NLRB complaints. In a deliberate attempt to suppress dissent, *Schonfeld v. Penza*, 477 F.2d 899 (2d Cir. 1973) and deny me the same rights given to other members, *APWU Headquarters Local 6885 v. APWU*, 665 F.2d 1096 (D.C. Cir. 1981) - *Stelling v. IBEW*, Local 1547, 587 F.2d 1379, 1385 (9th Cir. 1978), - rights given to some members be available to all & *Sim v. New York Mailers' Union No. 6*, 166 F.3d 465 (2d Cir.1999), - "the duty of fair representation." See e.g., *Branch 6000, NALC v. NLRB*, 595 F.2d 808, 812-813 (D.C. Cir.1979).

In *Salzandler v. Caputo*, 316 F.2d 445 (2d Cir. 1963) *Salzhandler*, a member of Local 442, Brotherhood of Painters, brought suit in district court after accusing the Local President of a crime of larceny and that union officials used their, - "disciplinary powers to silence criticism and punish those who dare to question and complain." The Court quoting §§ 101(a)(2) and (2), 102 and 609 of the LMRDA as designed to, - "protect the rights of union members to discuss freely and criticize the management of their union and the conduct of their officers, ...and towards that end the discussion should be free and untrammeled and the reprisals within the room for the expression of views should be prohibited." I have suffered retaliation by My Union and My Employer for my protected activities reporting their unlawful and criminal behavior as required by Law for a Public Employee to report fraud, waste and abuse of government officials.

Public Servants - Union Officers and Stewards are being paid by the Government Employer (with Public Funds) to work on union stuff. Some Union Officers are being paid 40 hours a week to work on grievances, with public retirement, healthcare, leave benefits, when in fact they are not doing the grievance work or any Public Service that they are being paid for. In doing so Local Union Officers are stealing from the Public and the Union Members solely for their own self-enrichment. This violates both their fiduciary responsibility of the Trust Funds and their Public Service obligation. This has been going on for over ten years at $140,000 a year is over $1.4 million in Trust/Public Funds stolen. A more effective Labor Attorney could have been hired for $140k and could have helped all Union Members who lost their jobs because of the odious corrupt and incompetent actions of greedy Union Officials.

Is the Employer requiring and are the Union Officers filling out the PS Form 7020, Authorized Absence From Workroom Floor, to track the Public Funds being paid to and the time spent by Public Employees/Union Officials? Is the Employer doing the required LMRDA reporting of salaries paid to Union Officers? Is the Union doing the required LMRDA reporting of the salaries being paid by the Employer and salaries being paid from the Local Union Trust Funds? Are the Union Officials reporting the extra pay on their IRS Tax Forms? Are there other AFL-CIO Locals reporting under the LMRDA that they are paying their Local Union Officers out of the Union Trust Funds? Have Local Union Officers also violated criminal and/or Racketeering statutes?   Please investigate.

Respectfully submitted, 12 November 2014,

Lance McDermott
1819 So 104 ST
Seattle, WA  98168
Cell 206 331-1990
treke@hotmail.com

3

Print

Close

**From:** Markham, Chad - OLMS (Markham.Chad@dol.gov)
**Sent:** Mon 1/05/15 12:30 PM
**To:** treke@hotmail.com (treke@hotmail.com)
**Cc:** Dachenhausen, Donald E - OLMS (Dachenhausen.Donald@dol.gov)

Good afternoon Mr. McDermott,

I appreciated the opportunity to communicate with your this morning regarding your letter dated January 2, 2015 which was addressed to the SEADO of OLMS. It is possible that certain aspects of your complaint may fall under the investigative jurisdiction of OLMS.

However, following our conversation I believe it is necessary for you to review certain aspects of the LMRDA in the interest of determining whether you feel your complaint items are applicable to TITLE V of the act.

Below is a link to the LMRDA (the law enforced by OLMS)

http://www.dol.gov/olms/regs/statutes/lmrda-act.htm

Specifically, I believe that you should focus on the following:

## TITLE V-SAFEGUARDS FOR LABOR ORGANIZATIONS

### Fiduciary Responsibility of Officers of Labor Organizations

(29 U.S.C. 501)

SEC. 501. (a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him whatever capacity in connection with transactions conducted by him or under his direction on b of the organization. A general exculpatory provision in the constitution and bylaws of such a lat

organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

(b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

**(c) Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.**

In order to establish a violation of 29 U.S.C. § 501(c), the government must allege and prove the following essential elements:

**First**, that the entity embezzled from was a labor organization within the meaning of 29 U.S.C. §§ 402(i) and (j); (met in this instance)

**Second**, that the defendant was either an officer of the labor organization within the meaning of 29 U.S.C. § 402(n) or was directly or indirectly employed by the labor organization during the period when the offense occurred; (presumed to be met in this instance)

**Third**, that the actions of the defendant constituted embezzlement, stealing, or unlawful and willful abstraction or conversion to his own use or the use of another; and (NOT MET based on the information provided at this point)

**Fourth**, that the assets taken were moneys, funds, securities, properties, or other assets of the labor organization. (presumed to be met in this instance)

Your 1st allegation seems to deal with current union officers collecting a "salary, stipend, loss time payment, or other disbursement" which you believe to be unlawful based on USPS regulations (within the CBA) and/or the Constitution & Bylaws of the APWU. I need further clarification from you regarding the totality of the process by which these officers are receiving funds; to be accompanied by an explanation from you as to why you believe that the monetary disbursements equate to the conversion of APWU member assets to the "personal" use of the officer as opposed to disbursements related to compensation for performing APWU related services.

3

7 Jan 15

Secondly, it appears from your complaint that you believe some of your "union rights" have been violated by the APWU. With that in mind please review the following excerpt from the LMRDA (paying special attention to the civil enforcement section):

# TITLE I -- BILL OF RIGHTS OF MEMBERS OF LABOR ORGANIZATIONS

## Bill of Rights

(29 U.S.C. 411)

SEC. 101. (a)(1) EQUAL RIGHTS.-- Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(2) FREEDOM OF SPEECH AND ASSEMBLY.-- Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

(3) DUES, INITIATION FEES, AND ASSESSMENTS.-- Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on the date of enactment of this Act shall not be increased, and no general or special assessment shall be levied upon such members, except-

(A) in the case of a local organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot; or

(B) in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: *Provided,* That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization.

(4) PROTECTION OF THE RIGHT TO SUE.-- No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative

3

agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: *And provided further,* That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

(5) SAFEGUARDS AGAINST IMPROPER DISCIPLINARY ACTION.-- No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

(b) Any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect.

**Civil Enforcement**

**(29 U.S.C. 412)**

**SEC. 102. Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.**

Following your review please feel free to give me a call to discuss your complaint in greater detail if you feel that it is necessary or to further clarify your position.

I certainly appreciate both your time and effort in communicating with me.

Thanks again

Chad

https://bay176.mail.live.com/ol/mail.mvc/Print

15 Oct 14

• Sender: Please print your name, address, and ZIP+4 in this box •

L. McDermott
1819 S. 104th St.
Seattle, WA 98168

MD
10/30

AFL-CIO Ethical Practices Committee
ATTN: Mark Davidstein, ???
815 16th St. NW
Washington D.C. 2000?

RETURN
REQUESTED

Refused

U.S. POSTAGE
SEATTLE WA
98188
OCT 15 14
AMOUNT
$7.40
0003240-11

1000

10-2780 0001 3520 1586

3

15 Oct

Laborers for JUSTICE
www.thelaborers.net

## FOREWORD

The American Federation of Labor and Congress of Industrial Organizations is committed, by word and deed, to the concept that free, democratic trade unionism must be clean, honest trade unionism.

This handbook contains the sections of the AFL-CIO Constitution relating to corrupt or Communist efforts to infiltrate the labor movement; pertinent resolutions adopted by the AFL-CIO Convention in 1957; and six Codes of Ethical Practices prepared by the AFL-CIO Ethical Practices Committee, adopted by the AFL-CIO Executive Council and affirmed by the 1957 convention.

The AFL-CIO Executive Council, at its February 1958 meeting, directed and required that all affiliates of the AFL-CIO comply with the provisions of these codes promptly with the only permissible delay being in cases where compliance required alteration of a union's constitution by convention action.

The actions of the convention and the Executive Council point up the fact that the AFL-CIO is diligently and effectively engaging in self-regulation to insure the continued healthy development of our American labor movement.

*George Meany*

GEORGE MEANY
*President*

## 1. AFL-CIO CONSTITUTION
### . . . On Ethical Practices

### Article II, Section 10:

The objects and principles of this Federation are:

. . . To protect the labor movement from any and all corrupt influences and from the undermining efforts of communist agencies and all others who are opposed to the basic principles of our democracy and free and democratic unionism.

. . .

### Article VIII, Section 7:

It is a basic principle of this Federation that it must be and remain free from any and all corrupt influences and from the undermining efforts of communist, fascist or other totalitarian agencies who are opposed to the basic principles of our democracy and of free and democratic trade unionism. The Executive Council, when requested to do so by the President or by any other member of the Executive Council, shall have the power to conduct an investigation, directly or through an appropriate standing or special committee appointed by the President, of any situation in which there is reason to believe that any affiliate is dominated, controlled or substantially influenced in the conduct of its affairs by any corrupt influence, or that the policies or activities of any affiliate are consistently directed toward the advocacy, support, advancement or achievement of the program or of the purposes of the Communist Party, any fascist organization or other totalitarian movement. Upon the completion of such an investigation, including a hearing if requested, the Executive Council shall have the authority to make recommendations or give directions to the affiliate involved and shall have the further authority, upon a two-thirds vote, to suspend any affiliate found guilty of a violation of this section. Any action of the

5

3.1

15 Oct

Laborers for JUSTICE
www.thelaborers.net

officials, who accept their responsibilities and trust, are "imperiled by the dishonest, corrupt, unethical practices of the few who betray their trust and who look upon the trade union movement not as a brotherhood to serve the general welfare, but as a means to advance their own selfish purposes. . . ."

Both the American Federation of Labor and the Congress of Industrial Organizations prior to the merger of these two organizations into the AFL-CIO gave thorough consideration to the subject of Health and Welfare Funds. This subject was also considered by and dealt with by the First Constitutional Convention of the AFL-CIO and a resolution dealing with this subject matter was adopted by that convention.

As stated in the resolution adopted by the First Constitutional Convention of the AFL-CIO, the task of administering and operating health and welfare programs which have been developed through collective bargaining has placed heavy new responsibilities upon the shoulders of trade union officials. The funds involved are paid for through the labor of the workers covered by the plans. They must be administered, therefore, as a high trust for the benefit only of those workers.

Most trade union officials have been faithful to the high trust which has been imposed upon them because of the development of health and welfare funds. The malfeasances of a few, however, have served to bring into disrepute not only the officials of the particular unions involved, but also the good name of the entire American labor movement. For this reason, it is imperative that the AFL-CIO and each of the national and international unions affiliated with it rigorously adhere to the highest ethical standards in dealing with the subject of health and welfare funds.

For these reasons, the Ethical Practices Committee, under the authority vested in it by the Constitution of the AFL-CIO and pursuant to the mandate of the First Constitutional Convention of the AFL-CIO, recommends that the

22

Executive Council of the AFL-CIO adopt the following policies to safeguard the good name of the AFL-CIO and its affiliated unions:

1. No union official who already receives full-time pay from his union shall receive fees or salaries of any kind from a fund established for the provision of a health, welfare or retirement program. Where a salaried union official serves as employee representative or trustee in the administration of such programs, such service should be regarded as one of the functions expected to be performed by him in the normal course of his duties and not as an extra function requiring further compensation from the welfare fund.

2. No union official, employee or other person acting as agent or representative of a union, who exercises responsibilities or influence in the administration of welfare programs or the placement of insurance contracts, should have any compromising personal ties, direct or indirect, with outside agencies such as insurance carriers, brokers, or consultants doing business with the welfare plan. Such ties cannot be reconciled with the duty of a union official to be guided solely by the best interests of the membership in any transactions with such agencies. Any union official found to have such ties to his own personal advantage or to have accepted fees, inducements, benefits or favors of any kind from any such outside agency, should be removed. This principle, of course, does not prevent the existence of a relationship between a union officer or employee and an outside agency where

   (a) no substantial personal advantage is derived from the relationship, and

   (b) the outside agency is one in the management of which the union participates, as a union, for the benefit of its members.

3. Complete records of the financial operations of all welfare funds and programs should be maintained in accordance with the best accounting practice. Each such fund should be audited regularly by internal auditors. In addi-

23

3.1

Laborers for JUSTICE
www.thelaborers.net

150ct

for the benefit of its members. The provisions of such paragraphs, however, shall apply wherever third persons are used as blinds or covers to conceal the personal profit or advantage of union officials.

7. Neither the AFL-CIO nor any national or international union affiliated with the AFL-CIO should make personal loans to its officers, representatives, employees, or members, or members of their families, for the purpose of financing the private business or investment of such persons.

8. Each national or international union affiliated with the AFL-CIO should promptly take whatever internal steps are needed to ensure that the standards set forth in this Code are made applicable to itself and each of its locals and other subordinate or affiliated bodies. Wherever constitutional amendments or changes in internal administrative procedures are necessary to fully comply with those standards, such amendments and changes should be undertaken by the affiliates at the earliest practicable opportunity.

*Supplemental Code* - -

## MINIMUM ACCOUNTING & FINANCIAL CONTROLS

*(Drafted by Special Committee of Union Secretary-Treasurers; Approved by Executive Council, May 22, 1957)*

A. Detailed and accurate records of accounts, in conformity with generally recognized and accepted principles of accounting, should be currently maintained by all affiliates of the AFL-CIO. These records should include, as a minimum need, a cash receipt record, a cash disbursements record, a general ledger, a dues or per capita tax record, an investment record, and a payroll record.

B. All receipts should be duly recorded and currently deposited. No disbursements of any

nature should be made from undeposited cash receipts.

C. All expenditures should be approved by proper authority under constitutional provision and be recorded and supported by vouchers, providing an adequate description of the nature and purpose of the expenditure sufficient for a reasonable audit by internal and independent auditors. Disbursements should be made only by check, with the exception of disbursements from petty cash, in which situation, an imprest petty cash fund should be established.

D. Salaries of elected officials should be established only by constitutional provision. Compensation to non-salaried elected officials, and to other officials, representatives and employees, if not fixed by constitutional provision, should be established and paid in strict conformity with such authority as is provided by the constitution and in accordance with its applicable provisions.

E. Reimbursement of expenses, including per diem expenses, should be made only where such expenses have been duly authorised and are supported in a manner that will permit a reasonable audit.

F. Every precaution should be taken to ensure the soundness and safety of investments and that investments are made only by persons duly authorized to act for and on behalf of the affiliate. Investments in securities should either be restricted to the type of securities which legally qualify for trust fund investments in the domicile state or a person or persons authorized to invest funds of an affiliate should, in making such investment, be required to exercise the judgment and care under the circumstances then prevailing which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering probable safety of their capital as well as probable income. No investment should be made by an affiliate in a busi-

40

41

The Laborers Network



15 Oct

Greater
**SEATTLE**
APWU News

Volume 47
Number 8

Proudly published and printed by the Greater Seattle APWU

August 2014

# CONSTITUTIONAL AMENDMENT

The 2014 Constitution Committee have proposed the following amendment to the Constitutions and By Laws of the Great Seattle Area Local, APWU, whereas 50 member signatures have been obtained.

The reason for the change is to prevent costly rates of amending the by-laws, with when National rates increase. In addition, this change will require that retired members, to pay full dues, if seeking election to office, in order to be fully funded, while on official union business.

paid

ARTICLE 4.   DUES

SECTION 1. AMOUNT OF DUES

A. Dues for full membership, as defined in Article 3, shall be the total of the following:

Currently reads:        1. Local dues of $14.41 per pay period

**AMENDED change:   1. Local dues at the current rate per National per pay period**

                       AND

C. Retirees dues for full membership as defined in Article 3, shall be the total of the following:

Currently reads:        1. Local dues of $3.00 per pay period

**AMENDED change:   1. Change to Local dues at the current rate per pay period.**

**NOTE: THE ABOVE CONSTITUTIONAL AMENDMENT WILL BE VOTED AT THE NEXT GMM ON AUGUST 14, 2014 AT 12 NOON.**

3.2



15 Oct

# Greater Seattle Area Local
# AMERICAN POSTAL WORKERS UNION, AFL/CIO

# CONSTITUTION
# AND BY-LAWS

*As Amended by the General Membership as of*
*October, 2011*



*Evergreen State Postal Worker*

June–August, 2014

# Puget Sound Area Local Elections announcement

Attention all PSAL Members: Second notice.

PSAL Elections. Nominations Start August 17, 2014 at 2pm at the GMM. The following offices are up for election: President, Executive Vice President, Secretary, Treasurer, 1 Director from each office;
Maintenance & Motor Vehicle MMF - 1 Associate office Director from each Associate office.
General Membership Meetings schedule:
July 17; Nomination to National. August 17; the nominations of PSAL Elections. September 21st;
October 19th; Nomination closed of PSAL Elections. November 16th Elections of PSAL Officers. December 16th; Seating

## The annual salary of the elected WAPWU Officers are as follows:

(in comparison to the Greater Seattle Area Local APWU Officers)

| | President | Vice President | Secretary | Treasure | Editor |
|---|---|---|---|---|---|
| Washington | 5,000 | 2,000 | 3,500 | 3,500 | 2,500 |
| Seattle | 20,825 | 10,413 | 8,330 | 10,413 | 10,413 |

Total 2014 budgeted:
WAPWU total = 21,850 - [Pres.; VP; Sec.; Treas.; Editor; 4 District Reps.]
Seattle total = 145,000 - [Pres.; VP; Sec.; Treas.; Editor; 4 Craft Directors; 3 Trustees; Ass. Office Rep.]

Bob Dyer continued from page 1

## State of the WAPWU

One of the most important items that must be taken care of at the WAPWU Convention is always the budget. I am very proud to say—as a tenured Officer of the WAPWU Executive Board— that the Washington State APWU is doing incredibly well financially speaking. At a time when virtually all locals are running deficit budgets, the Washington State APWU has continued to come in under budget and actually increase our savings account balance, year after year, and did so again this last year as well.

In fact, the WAPWU banked another ten thousand dollars this last year, and bad some one hundred and seventy thousand dollars in savings at the beginning of the convention— ~~a result of the careful handling of the union~~ members' money—mostly due to good planning; money saving efforts related to convention expenses; organizing the Washington State MALs; and very frugal salaries for the Washington State Officers. There have been some totally false accusations and rumors floating around of late—concerning ~~Washington State APWU—some of which I even~~ recently heard at the Seattle local's general

I can assure the membership that the Washington State APWU Officers are committed to providing the very best representation possible for the dues paying members, and I am honored to be on the Executive Board for WAPWU.

The District Representatives for WAPWU are: District 1–Maria Risener; District 2–Don Cain; District 3–Wanda Emmert; District 4–Lynn Jones.

These committed union officers are on the front lines representing the members-at-large [MALs] all over the State of Washington, and they are well deserving of your support, and thanks. The District Representatives have periodic district meetings, and are largely responsible for having recruited many nonmembers in Washington State at a time when most locals are losing members. Thank you all for your hard ~~work. District Representatives. Without you there~~

I do not condone publicly singling out, naming, and ridiculing fellow union members for having a different opinion. We need to work on our bedside manner in Seattle. Just because we are the largest local in the state doesn't mean we can run the show, or that Seattle has some corner on the market for what is best for the Washington State members. We need to project unity in times like these, not read other members' names and blame them for not agreeing on everything you want. Unity has to be our commitment or we will fail in troubled times like these. All in all, it was a pretty good Washington and multistate convention. It remains to be seen what will happen in Chicago at the National APWU Convention. I will look forward to representing Seattle when I get there, and will report the goings-on when I return.

**Training for delegates**



150¢

## PARAGRAPH G.   ADDITIONAL REQUIREMENTS FOR ALL OFFICIALS

### SECTION 1. NOTIFICATION

Any union official not able to perform any of his/her duties shall notify the President, Secretary, or office clerk as soon as practical to arrange for a substitute to get the job done on time.

### SECTION 2. PASSING ON PROPERTY

Every union official must pass on all union keys to his/her successor as soon as the successor needs them to perform his/her job.

## ARTICLE 8        PAYMENT OF OFFICIALS

### SECTION 1. PAYMENT OF OFFICERS       ✳ Level 5 step 0 $26.78

Salaries of officers shall be paid at Level 5, top step, and shall be paid bi-weekly.

| OFFICE | NUMBER OF PAID HOURS |
|---|---|
| President | |
| Vice-President | 32 |
| Secretary | 16 |
| Treasurer | 12.8 |
| Editor | 16 |
| Trustees (each) | 16 |
| Sergeant-At-Arms | 6.4 |
| Mail Processing Clerk Craft Director | 3.2 |
| Customer Services Clerk Craft Director | 32 |
| Maintenance Craft Director | 25.6 |
| MVS Craft Director | 16 |
| Associate Office Representative | 11.2 |
| | 16 |

2022

The salaries established above (*as amended August 2011*) do not include LWOP for time spent performing duties outside of their elected positions. The General Membership Meeting may authorize LWOP for (1) conventions, (2) local negotiations, (3) required meetings outside normal schedule of meetings, and (4) unforeseen required duties. Such LWOP will be preauthorized whenever possible.

## SECTION 2.  MILEAGE

Mileage reimbursement shall be limited to: (1) the Craft Directors, (2) the Associate Office Representatives, and (3) the President or their designee(s). They shall be reimbursed for documented mileage expenses in the performance of their representational duties for travel between stations, branches and associate offices. Such reimbursement shall be paid at the rate established by the I.R.S.

15 Oct

CBA

# MEMBERS' BILL OF RIGHTS

1. Every member has the right to be respected as a human being.

2. Every member has the right to be respected as a brother or sister of this Union.

3. Every member has the right to freedom of speech and the right to be heard.

4. Every member has the right to the freedom to listen.

5. Every member has the right to the freedom of the press.

6. Every member has the right to participate in the activities of this Union.

7. Members shall not be denied the right to seek any office or the right to vote in this Union because of race, color, creed, sex, sexual orientation, nationality, handicap, political affiliation, age or religion.

8. Every member has the right to support the candidate of his/her choice and to participate in that right with others.

9. Every member has the right to a fair trial, to be represented by an individual of his or her choice and to proper appeal procedures.

10. Every member has the right to be secure in his or her basic rights without fear of political, economic, physical or psychological intimidation.

v

3

150ct
C&A

on the local executive board from each division reflecting the local union's membership.

The Secretary-Treasurer shall notify in writing each local that does not have a Constitution and Bylaws, has not filed reports and returns required by federal law, or has not conducted elections in accordance with the Department of Labor Regulations, that its charter will be revoked. Any such local notified may appeal to the National Executive Board within ninety (90) days of receipt of such notification. The National Executive Board shall grant the local's appeal if the local has a Constitution and Bylaws, files reports and returns required by federal law and conducts regular elections in accordance with their Constitution and Department of Labor Regulations.

Prior to revoking the charter of any local, the Secretary-Treasurer shall strongly urge the local to merge with a functioning contingent local, area local or state of their choice in accordance with the merger guidelines. The National Executive Board shall expedite and approve said merger with dispatch and without impediment.

SEC. 5.   LOCALS, AREA LOCALS, DISTRICT COUNCILS, STATE & REGIONAL ORGANIZATIONS. (a) LOCALS – Ten (10) or more members in the same postal installation may be chartered as a local.

(b) AREA LOCALS. The membership of a number of installations in a geographical area or within a sectional center or a combination of sectional centers may join together in a single local upon thirty (30) days notice by secret vote of the majority of the members voting from their respective locals and be issued a charter by the APWU. No member may become affiliated with any other local when there is a local union in the installation where he or she is employed.

3

29 Nov 13

USPS Seattle HR Manager
415 1ST AVE N                                                          29 November 2013
Seattle, WA 98109

Dear HR Manager,

1. I, Lance McDermott (EID 0372132), am ready, able and willing to return to work without accommodation or restrictions after my FMLA approved leave. I was placed on Enforced Leave for my serious medical condition, 30 May 2013, by MM Jim Norris.

I received FMLA approval for the serious medical condition and tried to return to work, 1 July 2013. My Supervisor SMO Ken Dow called the Kent Police telling them I was an "ex-employee" and a threat. After I explained I had FMLA approval the Kent Police left after searching my stuff for weapons. SMO Dow demand I provide a Light duty request. When I refused citing FMLA, SMO Dow called in a false threat report. A Postal and OIG Inspector carrying firearms and wearing bullet proof vests, removed me from the PMA facility (enclosure 1).

I contacted HR and was referred to Occupational Health and received Return-to-Work Documents. 1 September, I went to work with the documents filled out by my medical provider. Management refused to accept my Return-to-Work documents. Postal Inspectors were called and I was removed (enclosure 2).

I filed a MSPB Complaint and the Administrative Judge, Grace Carter, said that I did not do enough to turn-in the paperwork. My Steward, Lester Cornette, gave copies of my Return-to-Work Documents to Management (SMO Ken Dow), 22 November, and I have not yet heard anything in response. I now give notice to you (District HR) that I want to return to work after my FMLA Leave and provide you a copy of my Return-to-Work documents (enclosure 3).

2. As noted in MM Jim Norris' email, 4 Feb 13, I was stripped of my Desert Storm Veterans preference in 2007. I again provide my Army DD214 and National Guard NGB 22 Forms for my 23 years of military service. Could you please add these to my eOPF noting that I retired in 2001 and return my lost veterans points (enclosure 4).

3. My eOPF contains Disciplinary Notices and Decision Letters for personal actions (suspensions) that I never served and are over 3 years old. Could you please remove them from my record (enclosure 5).

4. Could you please added the follow Notices and Decision Letters:

Decision of the EEOC on Appeal, 10 November 2008 (enclose 6).
Hostile Work Environment finding/report, (undated) Dec-Jan 2013 (enclose 7)
Demand for Medical Documentation, MMO Dave Marzec 6 February 2013 (enclose 8).
Duty Status Form SPO-51, 15 February 2013 (enclose 9).
Referral for Reasonable Accommodation Consideration, 19 March 2013 (enclose 10).
Decision, MM Jim Norris, 2 April 2013 (enclose 11).
Notice of Enforced Leave, SMO Ken Dow, 8 April 2013 (enclose 12).
Decision of the DOL-FMLA, 15 April 2013 (enclose 13).
Decision of the USPS NEEOISO, 25 April 2013 (enclose 14).
Notice of Enforced Leave, MMO Marzec, 8 May 3013 (enclose 15).
Decision – Enforced Leave, 30 May 2013 (enclose 16).





RFI – "no policy for enforced leave," MM Norris, 6 June 2013 (enclose 17).
RFI – "probable cause" is not required, SMO Dow, 12 July 2013 (enclose 18).
Letter, MM Jim Norris, 22 August 2013 (enclose 19).

5. Noting that the Duty Status Form and referral For Reasonable Accommodation forms are not proper approved USPS Forms could you please added to my confidential medical record PS Form 2489, Self-Identification of a Physical or Mental Disability.  Noting a Disability Status Code of "none" (enclose 20).

Please let me know if I need to provide any more documents to return to work.

Thank You,

Lance McDermott
1819 So 104th ST
Seattle, WA 98168
206 331-1990
treke@hotmail.com

cc: Certified First Class – C McDermott  2 Dec 13

Postal Reasonable Accommodation Assistance Center
475 L'Enfant Plaza, SW, Room 9601
Washington, DC 20260-9601

Western Area HRSSC FMLA - Western
PO Box 970910
Greensboro NC 27497-0910



11 Feb 14

 **UNITED STATES**
**POSTAL SERVICE**

February 11, 2014

Lance McDermott
1819 S 104th Street
Seattle, WA  98168

Mr. McDermott:

Your placement on enforced leave was the direct result of your refusal to interact with management on the issue of your medical limitations (*i.e.* color blindness). Should you decide that you would like to interact with management, please feel free to contact Jim Norris or Dave Marzec. You continue to have the right to request reasonable accommodation and/or light duty. However, as previously explained, you must avail yourself of one of these options, including a willingness to sit down and discuss your medical limitations, if any, and the impact of your medical limitations on the performance of the essential functions of your job. Absent your participation, management cannot make a proper determination and cannot return you to work.  I encourage you to avail yourself of your options.

Sincerely,

Alexis Delgado
Manager, Human Resources – Seattle District

CC:
Maintenance Manager Lead – Seattle P&DC
Occupational Health Nurse Administrator (OHNA) – Seattle District
Manager, Labor Relations – Seattle District



*14 Feb 14*

USPS Seattle HR Manager Alexis Delgado
34301 9th Ave S, Suite 215
Seattle, WA 98003

14 February 2014

Dear HR Manager Delgado,

   As a former Personnel Officer I appeal to you, a higher level HR Officer with authority to help me. In doing so you would be help yourself out of a HR mess created by your predecessor Dan Foster.
   I was placed on enforced leave as a direct result of protected activity – Hostile Work Environment (HWE) investigation when I told MMO Norman Allen that I was color blind. Mr. Foster, Norris, Marzec, and Dow supported by Medical Staff, Attorneys and Inspectors falsely investigated and determine (judged) that I lied on my Postal Application (18 USC 1001) about being color blind and being a Desert Storm veteran (retired National Guard).

   My Application (eOPF) PS Form 2485, 24 October 1996, is clearly marked (page 4 of 6) - 5. Eyes, e. Is color vision normal … –NO.   (page 6 of 6) - E. Medical Assessment, 4. "No Medical Risk/Restriction: Examinee is **medically qualified to perform essential functions** of the position without accommodation."  A qualified Postal Service Medical Official determined that I was "medically qualified to perform essential functions of the position without accommodation."
   USPS Employee Labor Manual (ELM) 666.12c, - "No person may be discriminated for or against on the basis of conduct that does not adversely impact that person's performance or the performance of others."  I was placed on enforced leave for a genetic birth defect that did not affect my performance for 17 years and is not an essential function of my job.
   The U.S. Postal Service does not have a rule, regulation or process for placing an employee on Enforced Leave.  Therefore, Enforced Leave is de facto – unlawful.  Which came after the protected activity that I also reported criminal activity and suffered discipline (LOW) from SMO Dow for reporting violations of 18 USC 207.  (See enclosed letter from NEEOISO Executive Manager William Caldwell, 25 April 2013, speaking for the Postmaster General and Judicial Officer.)
   If I must participate in any process to return me to work I ask for an ELM 650 Hearing (PS Form 2564-A) before a higher level authority not involved in the criminal activity (18 USC 207) or has wrongly accused me of False Statements (18 USC 1001).


   1. I again request that you fix my eOPF and replace my Army DD214 and National Guard NGB 22 Forms (copies sent last letter) for my 23 years of military service and return my lost veterans preference points. (39 CFR 266.6 – Amendment of Records)

   2. Remove from my eOPF the Disciplinary Notices and Decision Letters for personal actions (suspensions) that I never served and are over 3 years old.

   3. Added to my eOPF the follow Notices and Decision Letters I have given you copies of:

Decision of the EEOC on Appeal, 10 November 2008.
Hostile Work Environment finding/report, (undated) Dec-Jan 2013
Demand for Medical Documentation, MMO Dave Marzec 6 February 2013.
Duty Status Form SPO-51, 15 February 2013.
Referral for Reasonable Accommodation Consideration, 19 March 2013.



14 Feb

Decision, MM Jim Norris, 2 April 2013.
Notice of Enforced Leave, SMO Ken Dow, 8 April 2013.
Decision of the DOL-FMLA, 15 April 2013.
Decision of the USPS NEEOISO, 25 April 2013.
Notice of Enforced Leave, MMO Marzec, 8 May 2013.
Decision – Enforced Leave, 30 May 2013.
RFI – "no policy for enforced leave," MM Norris, 6 June 2013.
RFI – "probable cause" is not required, SMO Dow, 12 July 2013.
Letter, MM Jim Norris, 22 August 2013.
Decision Postmaster/NEEOISO Manager Caldwell, 25 April 2013

I, Lance McDermott (EID 0372132), am ready, able and willing to return to work without accommodation or restrictions after my HRSSC/DOL FMLA approved leave.

Thank You,

Lance McDermott
1819 So 104th ST
Seattle, WA 98168
206 331-1990
treke@hotmail.com

73 ℗

USPS Seattle District HR                                          3 March 2014
34301 9th Ave So, Suite 215
Federal Way, WA  98003


Subject:  FMLA Return to work - Request to Amend eOPF


Dear Seattle HR,

   I, Lance McDermott (EID 0372132), am ready, able and willing to return to work without accommodation or restrictions after my FMLA approved leave.
   I was placed on Enforced Leave for my serious medical condition (color blindness), 30 May 2013, by MM Jim Norris.  However, a recent PS Form 50, 10 February 2014, sent to me incorrectly states in 84 REMARKS, - "EMPLOYEE PLACED ON REGULAR LWOP, PER TACS, EMPLOYEE NON-PAY STATUS BEGINS EFFECTIVE 09 15 2013.  REMEDY INC. 7810837.  HRSSC, KMCKANEE, PPS, 02 10 2014."
   In June 2013 I received FMLA approval for the serious medical condition (FMLA #110000501305).  1 July 2013, I tried to return to work after my FMLA leave (30 days enforced leave).  Management demanded that I volunteer for light duty.  I refused.  Postal Inspectors were called and I was removed (enclosure 2).
   I contacted Seattle HR and was referred to Occupational Health Office (OHO) and received Return-to-Work Documents from Nurse Daniels, - SP0-69A/B, Return to Work Clearance.  OWCP-5a, DOL CA-1 and CA-20 were sent to me from HRSSC FMLA Office.
   1 September, I went to work with the documents filled out by my medical provider.  My Supervisor SMO Ken Dow called the Kent Police telling them I was an "ex-employee" and a threat (enclosure 1).  After I explained I had FMLA approval the Kent Police left after searching my stuff for weapons.  Again, SMO Dow demand I provide a Light duty request.  When I refused citing FMLA, SMO Dow called in a false threat report.  A Postal and OIG Inspector carrying firearms and wearing bullet proof vests, removed me from the PMA facility.  The same Inspectors that conducted an unlawful search of my private car and took my property with reasonable or probable cause in April 2013 (threat).
   The Seattle HR Manager Alexis Delgado has denied me my right FMLA return.  I want to return to work without accommodation or restrictions after my DOL FMLA Approved Leave and provide you a copy of my Return-to-Work documents (enclosure 3).

Records Change Requested:

   1.  Please issue a proper SF 50 that states in 84 REMARKS, - "- PLACED ON ENFORCED LEAVE 30 May 2013 – FMLA Approved 15 June 2013 – DENIED FMLA RETURN TO WORK 1 July 2013 & 1 September 2013 – PLACED ON ENFORCED LWOP 15 September 2013."  Also note in the remarks that I dispute the Enforced Leave as an illegal employment practice.  (Note: U.S. OPM – Instructions for Federal Agencies' human resources offices on preparing personnel actions, 1-4 Nature of Action (NOA), Legal Authority and Remarks (1-4c), -- www.opm.gov/policy-data...)

   2.  As noted in MM Jim Norris' email, 4 Feb 13, I was stripped of my Desert Storm Veterans preference in 2006.  I again provide my Army DD214 and National Guard NGB 22 Forms for my 23 years of military service.  Could you please add that I retired in 2001 and return my lost veterans points (enclosure 4).



3. My eOPF contains Disciplinary Notices and Decision Letters for personal actions (suspensions) that I never served and are over 3 years old.  Could you please remove them from my record (enclosure 5)?

4. Could you please added the follow Official Notices and Decision Letters:

Decision of the EEOC on Appeal, 10 November 2008 (enclose 6).
Hostile Work Environment finding/report, (undated) Dec-Jan 2013 (enclose 7)
Demand for Medical Documentation, MMO Dave Marzec 6 February 2013 (enclose 8).
Duty Status Form SPO-51, 15 February 2013 (enclose 9).
Referral for Reasonable Accommodation Consideration, 19 March 2013 (enclose 10).
Decision, MM Jim Norris, 2 April 2013 (enclose 11).
Notice of Enforced Leave, SMO Ken Dow, 8 April 2013 (enclose 12).
Decision of the DOL-FMLA, 15 April 2013 (enclose 13).
Decision of the USPS NEEOISO, 25 April 2013 (enclose 14).
Notice of Enforced Leave, MMO Marzec, 8 May 3013 (enclose 15).
Decision – Enforced Leave, MM Norris, 30 May 2013 (enclose 16).
RFI – "no policy for enforced leave," MM Norris, 6 June 2013 (enclose 17).
RFI – "probable cause" is not required for Inspectors SMO Dow, 12 July 2013 (enclose 18).
Letter, "ask me for your job back," MM Jim Norris, 22 August 2013 (enclose 19).
PS Form 2489, Self-Identification of a Physical Disability (enclose 20).

As a former Army Personnel Officer I would like to add that I find that the Enforced Leave for 8 months for my genetic birth defect - partial color blindness was totally unlawful (5 USC 2302) if not inhuman.  The Postal Service does not have a policy or even a personnel action code for Enforced Leave. Nor is there a disability code for color blindness.  Please let me know if I need to provide any more documents to return to work.

Thank You,

Lance McDermott
1819 So 104th ST
Seattle, WA 98168
Cell 206 331-1990
treke@hotmail.com



USPS Western Area HRSSC
PO Box 970910
Greensboro, NC  27497-0910

3 March 2014

Subject:  FMLA Return to work - Request to Amend eOPF

Dear Western Area HR,

I, Lance McDermott (EID 0372132), am ready, able and willing to return to work without accommodation or restrictions after my FMLA approved leave.

I was placed on Enforced Leave for my serious medical condition (color blindness), 30 May 2013, by MM Jim Norris. However, a recent PS Form 50, 10 February 2014, sent to me incorrectly states in 84 REMARKS, - "EMPLOYEE PLACED ON REGULAR LWOP, PER TACS, EMPLOYEE NON-PAY STATUS BEGINS EFFECTIVE 09 15 2013.  REMEDY INC. 7810837.  HRSSC, KMCKANEE, PPS, 02 10 2014."

In June 2013 I received FMLA approval for the serious medical condition (FMLA #110000501305).  1 July 2013, I tried to return to work after my FMLA leave (30 days enforced leave).  Management demanded that I volunteer for light duty.  I refused.  Postal Inspectors were called and I was removed (enclosure 2).

I contacted Seattle HR and was referred to Occupational Health Office (OHO) and received Return-to-Work Documents from Nurse Daniels, - SP0-69A/B, Return to Work Clearance.  OWCP-5a, DOL CA-1 and CA-20 were sent to me from HRSSC FMLA Office.

1 September, I went to work with the documents filled out by my medical provider.  My Supervisor SMO Ken Dow called the Kent Police telling them I was an "ex-employee" and a threat (enclosure 1).  After I explained I had FMLA approval the Kent Police left after searching my stuff for weapons.  Again, SMO Dow demand I provide a Light duty request.  When I refused citing FMLA, SMO Dow called in a false threat report.  A Postal and OIG Inspector carrying firearms and wearing bullet proof vests, removed me from the PMA facility.  The same Inspectors that conducted an unlawful search of my private car and took my property with reasonable or probable cause in April 2013 (threat).

I now give notice to you (Western Area HR) because the Seattle HR Manager Alexis Delgado has denied me my right FMLA return.  I want to return to work without accommodation or restrictions after my DOL FMLA Approved Leave and provide you a copy of my Return-to-Work documents (enclosure 3).

Records Change Requested:

1.  Please issue a proper SF 50 that states in 84 REMARKS, - "- PLACED ON ENFORCED LEAVE 30 May 2013 – FMLA Approved 15 June 2013 – DENIED FMLA RETURN TO WORK 1 July 2013 & 1 September 2013 – PLACED ON ENFORCED LWOP 15 September 2013."  Also note in the remarks that I dispute the Enforced Leave as an illegal employment practice.  (Note: U.S. OPM – Instructions for Federal Agencies' human resources offices on preparing personnel actions, 1-4 Nature of Action (NOA), Legal Authority and Remarks (1-4c), www.opm.gov/policy-data...)

2.  As noted in MM Jim Norris' email, 4 Feb 13, I was stripped of my Desert Storm Veterans preference in 2007.  I again provide my Army DD214 and National Guard NGB 22 Forms for my 23 years of military service.  Could you please add that I retired in 2001 and return my lost veterans points (enclosure 4).



3. My eOPF contains Disciplinary Notices and Decision Letters for personal actions (suspensions) that I never served and are over 3 years old.  Could you please remove them from my record (enclosure 5)?

4. Could you please added the follow Notices and Decision Letters:

Decision of the EEOC on Appeal, 10 November 2008 (enclose 6).
Hostile Work Environment finding/report, (undated) Dec-Jan 2013 (enclose 7)
Demand for Medical Documentation, MMO Dave Marzec 6 February 2013 (enclose 8).
Duty Status Form SPO-51, 15 February 2013 (enclose 9).
Referral for Reasonable Accommodation Consideration, 19 March 2013 (enclose 10).
Decision, MM Jim Norris, 2 April 2013 (enclose 11).
Notice of Enforced Leave, SMO Ken Dow, 8 April 2013 (enclose 12).
Decision of the DOL-FMLA, 15 April 2013 (enclose 13).
Decision of the USPS NEEOISO, 25 April 2013 (enclose 14).
Notice of Enforced Leave, MMO Marzec, 8 May 3013 (enclose 15).
Decision – Enforced Leave, MM Norris, 30 May 2013 (enclose 16).
RFI – "no policy for enforced leave," MM Norris, 6 June 2013 (enclose 17).
RFI – "probable cause" is not required for Inspectors SMO Dow, 12 July 2013 (enclose 18).
Letter, "ask me for your job back," MM Jim Norris, 22 August 2013 (enclose 19).
PS Form 2489, Self-Identification of a Physical Disability (enclose 20).

As a former Army Personnel Officer I would like to add that I find that the Enforced Leave for 8 months for my genetic birth defect - partial color blindness was totally unlawful (5 USC 2302) if not inhuman.  The Postal Service does not have a policy or even a personnel action code for Enforced Leave. Nor is there a disability code for color blindness.  Please let me know if I need to provide any more documents to return to work.

Thank You,

Lance McDermott
1819 So 104th ST
Seattle, WA 98168
Cell 206 331-1990
treke@hotmail.com



USPS Manager, Records Office
475 L'Enfant Plaza SW,                                                    3 March 2014
Washington, DC 20260

Subject: 39 CFR 266.6 - Request to Amend Records - OPF

Dear Manager of Records,

I, Lance McDermott (EID 0372132), am ready, able and willing to return to work without accommodation or restrictions after my FMLA approved leave.

I was placed on Enforced Leave for my serious medical condition (color blindness), 30 May 2013, by MM Jim Norris. However, a recent PS Form 50, 10 February 2014, sent to me incorrectly states in 84 REMARKS, - "EMPLOYEE PLACED ON REGULAR LWOP, PER TACS, EMPLOYEE NON-PAY STATUS BEGINS EFFECTIVE 09 15 2013. REMEDY INC. 7810837. HRSSC, KMCKANEE, PPS, 02 10 2014."

In June 2013 I received FMLA approval for the serious medical condition (FMLA #110000501305). 1 July 2013, I tried to return to work after my FMLA leave (30 days enforced leave). Management demanded that I volunteer for light duty. I refused. Postal Inspectors were called and I was removed (enclosure 2).

I contacted Seattle HR and was referred to Occupational Health Office (OHO) and received Return-to-Work Documents from Nurse Daniels, - SP0-69A/B, Return to Work Clearance. OWCP-5a, DOL CA-1 and CA-20 were sent to me from HRSSC FMLA Office.

1 September, I went to work with the documents filled out by my medical provider. My Supervisor SMO Ken Dow called the Kent Police telling them I was an "ex-employee" and a threat (enclosure 1). After I explained I had FMLA approval the Kent Police left after searching my stuff for weapons. Again, SMO Dow demand I provide a Light duty request. When I refused citing FMLA, SMO Dow called in a false threat report. A Postal and OIG Inspector carrying firearms and wearing bullet proof vests, removed me from the PMA facility. The same Inspectors that conducted an unlawful search of my private car and took my property with reasonable or probable cause in April 2013 (threat).

I now give notice to you (National HR) because the Seattle HR Manager Alexis Delgado has denied me my right FMLA return. I want to return to work without accommodation or restrictions after my DOL FMLA Approved Leave and provide you a copy of my Return-to-Work documents (enclosure 3).

Records Change Requested:

1. Please issue a proper SF 50 that states in 84 REMARKS, - "- PLACED ON ENFORCED LEAVE 30 May 2013 – FMLA Approved 15 June 2013 – DENIED FMLA RETURN TO WORK 1 July 2013 & 1 September 2013 – PLACED ON ENFORCED LWOP 15 September 2013." Also note in the remarks that I dispute the Enforced Leave as an illegal employment practice. (Note: U.S. OPM – Instructions for Federal Agencies' human resources offices on preparing personnel actions, 1-4 Nature of Action (NOA), Legal Authority and Remarks (1-4c), www.opm.gov/policy-data...)

2. As noted in MM Jim Norris' email, 4 Feb 13, I was stripped of my Desert Storm Veterans preference in 2007. I again provide my Army DD214 and National Guard NGB 22 Forms for my 23 years of military service. Could you please add that I retired in 2001 and return my lost veterans points (enclosure 4).



3. My eOPF contains Disciplinary Notices and Decision Letters for personal actions (suspensions) that I never served and are over 3 years old. Could you please remove them from my record (enclosure 5)?

4. Could you please added the follow Notices and Decision Letters:

Decision of the EEOC on Appeal, 10 November 2008 (enclose 6).
Hostile Work Environment finding/report, (undated) Dec-Jan 2013 (enclose 7)
Demand for Medical Documentation, MMO Dave Marzec 6 February 2013 (enclose 8).
Duty Status Form SPO-51, 15 February 2013 (enclose 9).
Referral for Reasonable Accommodation Consideration, 19 March 2013 (enclose 10).
Decision, MM Jim Norris, 2 April 2013 (enclose 11).
Notice of Enforced Leave, SMO Ken Dow, 8 April 2013 (enclose 12).
Decision of the DOL-FMLA, 15 April 2013 (enclose 13).
Decision of the USPS NEEOISO, 25 April 2013 (enclose 14).
Notice of Enforced Leave, MMO Marzec, 8 May 3013 (enclose 15).
Decision – Enforced Leave, MM Norris, 30 May 2013 (enclose 16).
RFI – "no policy for enforced leave," MM Norris, 6 June 2013 (enclose 17).
RFI – "probable cause" is not required for Inspectors SMO Dow, 12 July 2013 (enclose 18).
Letter, "ask me for your job back," MM Jim Norris, 22 August 2013 (enclose 19).
PS Form 2489, Self-Identification of a Physical Disability (enclose 20).

As a former Army Personnel Officer I would like to add that I find that the Enforced Leave for 8 months for my genetic birth defect - partial color blindness was totally unlawful (5 USC 2302) if not inhuman. The Postal Service does not have a policy or even a personnel action code for Enforced Leave. Nor is there a disability code for color blindness. Please let me know if I need to provide any more documents to return to work.

Thank You,

Lance McDermott
1819 So 104th ST
Seattle, WA 98168
Cell 206 331-1990
treke@hotmail.com



*1 Nov 14*

**UNITED STATES**
**POSTAL SERVICE** ®

Request to Amend Electron
**Official Personnel Folder (eOP**

Employee Name (Last, First, MI)

*McDermott, Lance P*

EIN (Employee Identification Number)

*0372132*

**Instructions:** You must provide this amendment request to your District or Area Human Resources office for fulfillment. For your request to be processed, you must clearly identify the record in question, the change desired, and the reason(s) for the change *(relevance, accuracy, timeliness, or completeness)*. **Headquarters employees** should direct requests to:

CORPORATE PERSONNEL MANAGEMENT
475 L'ENFANT PLAZA SW, RM 1831
WASHINGTON DC 20260-4261

a) Identify the record you wish changed *(attach the document(s) you wish to add or specify the document(s))*

*Please see attached Doc's*

b) Describe the change desired:

c) Indicate the reasons for the change:   ☒ Relevancy   ☒ Accuracy   ☐ Timeliness   ☒ Completeness

In accordance with Handbook AS-353, *Guide to Privacy, the Freedom of Information Act and Records Management,* Section 3-4, your eOPF custodian will either: (1) inquire to obtain more information needed to determine whether amendment is appropriate, amend the information as necessary, and notify you about the revised record; or (2) deny your request for changes in whole or in part, provide the reasons for denial, and notify you of your opportunity to appeal the decision.

**Privacy Act Statement:** Your information will be used to process your request. Collection is authorized by 39 U.S.C. 401, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the U.S. Postal Service (USPS) or requesting agency become aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with USPS; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission, and to the Merit Systems Protection Board or Office of Special Counsel.

Signature

Date (MM/DD/YYYY)   *03/04/2014*

Instructions to Human Resources: Retain or destroy this form as described in the table below.

| | Approved | Denied |
|---|---|---|
| Add | Send document to be scanned into eOPF. Hold request in pending file. Destroy request after verifying that document was added. | Notify employee including appeal rights per Handbook AS-353 Section 3-4. Retain request form and notification for 2 years |
| Amend | Print document, amend, and send amended document to be scanned into eOPF. Hold request in pending file. After verifying that document was added, delete original document and destroy request. | Notify employee including appeal rights per Handbook AS-353 Section 3-4. Retain request form and notification for 2 years |
| Delete | Delete document and destroy request. | Notify employee including appeal rights per Handbook AS-353 Section 3-4. Retain request |



**SENDER: COMPLETE THIS SECTION**

1. Article Addressed to:

USPS Manager
Records Office
475 L'Enfant Plaza SW
Washington, DC 20260

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X

3. Service Type
☐ Certified Mail
☐ Registered
☐ Insured Mail

2. Article Number: 7012 3050 0000 1274 3049

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

USPS Western Area HRSSC
P.O. Box 970910
Greensboro, NC
27497-0910

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

RECEIVED
MAR 17 2014

3. Service Type
☐ Certified Mail     ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number: 7012 3050 0000 1274 3032

PS Form 3811, February 2004     Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

USPS Seattle District HR
34301 - 9th Ave. S. Sta 4E
Federal Way, WA
98003

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent

B. Received by (Printed Name)

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail     ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)

2. Article Number: 7012 3050 0000 1274 3025

PS Form 3811, February 2004



*11 Dec 15*


**UNITED STATES**
**POSTAL SERVICE** ®

**Request to Amend Electronic**
**Official Personnel Folder (eOPF)**

| Employee Name *(Last, First, MI)* | EIN *(Employee Identification Number)* |
|---|---|
| McDermott, Lance P. | 03272132 |

**Instructions:** You must provide this amendment request to your District or Area Human Resources office for fulfillment. For your request to be processed, you must clearly identify the record in question, the change desired, and the reason(s) for the change *(relevance, accuracy, timeliness, or completeness)*. **Headquarters employees** should direct requests to:

> CORPORATE PERSONNEL MANAGEMENT
> 475 L'ENFANT PLAZA SW, RM 1831
> WASHINGTON DC 20260-4261

a) Identify the record you wish changed *(attach the document(s) you wish to add or specify the document(s)):*

*Please see attached documents*

b) Describe the change desired:

*Please see attached documents*

c) Indicate the reasons for the change:  ☒ Relevancy   ☒ Accuracy   ☐ Timeliness   ☒ Completeness

In accordance with Handbook AS-353, *Guide to Privacy, the Freedom of Information Act and Records Management*, Section 3-4, your eOPF custodian will either: (1) inquire to obtain more information needed to determine whether amendment is appropriate, amend the information as necessary, and notify you about the revised record; or (2) deny your request for changes in whole or in part, provide the reasons for denial, and notify you of your opportunity to appeal the decision.

**Privacy Act Statement:** Your information will be used to process your request. Collection is authorized by 39 U.S.C. 401, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the U.S. Postal Service (USPS) or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with USPS; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel.

_____
Signature

_12-11-2015_
Date *(MM/DD/YYYY)*

**Instructions to Human Resources:** Retain or destroy this form as described in the table below.

| | Approved | Denied |
|---|---|---|
| **Add** | Send document to be scanned into eOPF. Hold request in pending file. Destroy request after verifying that document was added. | Notify employee including appeal rights per Handbook AS-353 Section 3-4. Retain request form and notification for 2 years. |
| **Amend** | Print document, amend, and send amended document to be scanned into eOPF. Hold request in pending file. After verifying that document was added, delete original document and destroy request. | Notify employee including appeal rights per Handbook AS-353 Section 3-4. Retain request form and notification for 2 years. |
| **Delete** | Delete document and destroy request. | Notify employee including appeal rights per Handbook AS-353 Section 3-4. Retain request form and notification for 2 years. |

PS Form 8043 May 2008

Request to Amend and correct my eOPF,                                    10 January 2015

    1. I request that you fix my eOPF and replace National Guard NGB 22 Form (exhibit 1) taken out by the HR Contractor in 2006.  Please issue a PS Form 50 giving me back my 2 point veteran's preference. And, I ask that you remove the PS Form 50 issued 03/04/2006 that incorrectly removed my veterans preference.

    2. Remove from my eOPF the Disciplinary Notices and Decision Letters for personal actions (suspensions) that I never served and are over 3 years old.

    3. Added to my eOPF the follow Notices and Decision Letters:

  Hostile Work Environment investigation decision, undated (exhibit 2).
  Medical Documentation demand, 6 February 2013 (exhibit 3).
  Duty Status Form, 13 February 2013 (exhibit 4).
  Notice of Discipline – Enforced Leave, 8 April 2013 (exhibit 5).
  Decision from the Judicial Officer, 18 April 2013 (exhibit 6).
  Decision form the NEEOCISO Executive Manager, 25 April 2013 (exhibit 7).
  Notice of Discipline – Enforced Leave, 8 May 2013 (exhibit 8).
  Placement on Enforced Leave, 30 May 2013 (exhibit 9).  Also a PS Form 50 needs to be created placing me on Enforced Leave that is missing from my OPF.
  Decision of the HRSSC FMLA Office, 24 December 2013 (exhibit 10).
  Decision of the HR Manager, 11 February 2014 (exhibit 11).
  Decision RTW, 6 March 2014 (exhibit 12).  Also correct the PS Form 50 issued to change the authority from Manager Sudduth to Manager Norris.

Thank You,

Lance McDermott
1819 So 104th ST
Seattle, WA 98168
206 331-1990
treke@hotmail.com

