United States District Court,
Western District of Washington
At Seattle

|  |  |
|---|---|
| Lance P. McDermott | ) Case No.: |
| Plaintiff, Pro Se, | ) **16 CV-00377** JCC |
| vs. | ) |
|  | ) Statement of Facts |
| U.S. Postal Service (USPS), | ) |
| Postmaster General, Megan Brennan, *Et Al*; | |

1
2
3
4
5
6
7
8
9
10
11
12

U.S. Postal Service (USPS),
Postmaster General, Megan Brennan, *Et Al*;
        and
    Greater Seattle Area Local (GSAL),
American Postal Workers Union
(APWU), AFL-CIO, *Et Al*, Salaried
Union Officials.
                Defendants.

_____ FILED       _____ ENTERED
_____ LODGED      _____ RECEIVED

MAR 1 4 2016      BJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                        DEPUTY

### Statement of Facts and Defenses

I was hired as a temporary Christmas Mailhandler for the SeaTac Air Mail Center (AMC) in 1996. My Application for Employment, 18 October 1996 (MSPB SF-0752-13-0633-I-1exhibit Z, (Zs) listed by date), Section D. Veteran Preference, I claimed a 5-point preference for Desert Storm with the National Guard. This was certified by HR Jay Bonner who saw me in uniform after coming directly from a National Guard weekend drill. My 24 October 1996 (exhibit Z, dtd), Medical Examination, Section 5 Eyes, (e), - "Is color vision normal - No." The Medical Assessment by Postal Medical Officer, PS Form 2485, 24 October 1996 (exhibit Z), Section 4, - "No Medical Risk/Restriction:  Examinee is medically qualified to perform essential functions of the position without accommodation."  "A tortfeasor takes its victims as it finds them." *Wallis v. United States Postal Service*, EEOC Appeal No. 01950510 (November 13, 1995) (quoting *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1295 (7th Cir. 1987)).

Handbook EL-312 Employment and Placement, 57 Medical Suitability, 572 Purpose, - "The purpose of the medical suitability process is to ensure that selected applicants are able to perform the duties of their position without posing a direct threat or harm to themselves or others.  This requirement contributes to the protection and preservation of human resources and the overall safety of the

13
14
15
16
17
18
19
20
21
22
23
24
25

workforce…" 574.2, - "When the appointing official determines that the applicant is medically suitable, with or without reasonable accommodation, the applicant is notified…"
(Statement of Facts)

42 U.S.C. § 12112(a) & 29 C.F.R. 1630.2(m), - "Therefore, an individual is considered qualified as long as he or she is able to perform the essential functions of his or her job with or without reasonable accommodation…"

"…There is no rule that requires an employee to tell local management of a condition that he has reported to Postal medical personnel and subsequently cleared for work…" - Maintenance Arbitration Summary, 12/24/2008, C00T-1C-D-06153491.

Affirmative Defense - My Application for Employment, 18 October 1996, Section D. Veteran Preference, I claimed and was certified a 5-point veteran's preference for Desert Storm service.

Affirmative Defense - My OPF shows that I informed the Agency when I was hired that I had a handicap - partial color blindness. (PO-209 2-7 Standards of Ethical Conduct, Title 5 Section 2635.101b(13), - "handicap.")

Affirmative Defense - An Agency Doctor found me to be "medically qualified to perform essential functions of the position without accommodation."

Affirmative Defense - An Agency HR Official certified that I was a Desert Storm Veteran.

Affirmative Defense - I was active duty National Guard when I was hired and received Military Leave pay from the Agency until retirement in 2002.

I started full-time in March 1997 in Maintenance as a custodian for 3 months and detailed as building maintenance until being promoted to Mail Processing Equipment (MPE) Mechanic that I currently serve as.

In 2002 I was working with SMO Hoff about upgrading the Tray Management System (TMS) in the Seattle P&DC. I showed SMO Hoff that I could use new parts to upgrade the TMS carrier cells (33 trains with 30 carrier cells each) and improve the system. SMO Hoff said that parts would be purchased and I would be allowed to do the work. Weeks later I asked SMO Hoff when I would be getting the parts so I can upgrade the system. SMO Hoff responded that "they" decided to contract out the work (my idea). I filed RFIs for the contract and other information. Only receiving a copy of the 8 January 2003 Decision Analysis Report (DAR). I a class grievance MNT 110-03, 24 June 2003.

27 September 2002 (exhibit Z), I suffered a loss of tools, denied use of Pneumatic (air) tools, after filing an OSHA retaliation complaint.

Memorandum to:  All Employees Seattle AMC/PMA, 17 September 2008 (exhibit Z, 27 September 2002), - "It is the goal of the Seattle Airport Mail Center and Seattle Priority Mail Annex that all employees will be provided with the proper information and tools to do their jobs effectively…"

Affirmative Defense - Past similar retaliation for filing an OSHA Complaint.


15 January 2003 (exhibit Z, dtd), Step 1 Grievance Summary, SMO Union's Position, - "… shows a predilection of management to harass this steward. It is the union's belief that the Letter of Suspension is another attempt to harass and to silence a critic of poor management practices…"

14 February 2003 (exhibit Z), Step 2 Decision, MMO Marzec, - "… The issue in this grievance concerns the Union contention that Management singled out Lance McDermott a union steward, in order to harass him…"

31 March 2003 (exhibit Z), Grievance Decision, MMO Marzec, - "…Management contends that no harassment of Mr. McDermott or any other maintenance employee at the Seattle P&DC has taken place… Mr. Poulin was only performing his duties as a supervisor, in his effort to correct Mr. McDermott's behavior…"

24 June 2003,

7 August 2003 (exhibit Z, dtd), Notice of Seven Day Suspension (I never served but in OPF), SMO Poulin, - "… When asked what you were doing you replied that you were reading the ELM (Employee and labor Relations Manual)… During this Investigative Interview you explained that you were 'taught in the military as an officer to do one hour of technical reading per day." - reading a handbook in the standby area.

Affirmative Defense - Similar past retaliation for protected Union activity.


Email Attorney Leigh Bonds, 4 November 2005 (exhibit Z, dtd), - "I'm responding to OSHA's 11© retaliation complaint filed by Lance McDermott. I need his OPF as quickly as possible. I thought it was forwarded to me, but I believe what was forwarded to me is the supervisor's file and not the OPF…"

Affirmative Defense - An Agency Federal Attorney accessing and investigating for a non-litigation purpose is a violation of the Privacy Act.?

Affirmative Defense - in retaliation for filing an OSHA complaint.

HR Contractor Carol Kreager from Sioux Falls, S.D. 6 February 2006 (exhibit Z, dtd) without any authority or regulation for it accessed my OPF, filed a false Request Pertaining to Military Records form asking for my active duty record and not my National Guard (Desert Storm) military record and unlawfully removed my veterans' preference.

Handbook EL-312.48 Veteran's Preference, .482 Authority to Adjudicate Veterans' Preference, - "…therefore, verifying entitlement to claimed preference is essential to providing fair and equitable treatment…" .484 Proof of Preference Claimed (1)(a), - "Is adjudicated at the very beginning of the screening process when possible; and b. Is reviewed and adjudicated by the time of selection." 487.1, - "…human resources adjusts the score based on the proof presented by the eligible." 512.271 Policy of Early Verification, - "To promote efficient processing of employment applications, veterans' preference is adjudicated at the very beginning of the screening process." 514.2 Assessing Military Service History a. - "Obtain a statement from the applicant as to why…"

Affirmative Defense - A Contractor is not listed by the Agency in Handbook AS-353 Guide to Privacy as an "employee" authorized to access my OPF. (HRSS User Guide, - "access to the eOPF is restricted to a limited number of Postal professional who have a business need…" (exhibit Z, 2  April 2013).

Affirmative Defense - A Contractor is not a HR Official authorized to "verify the veteran's honorable conditions discharge"

Affirmative Defense - The veteran (me) is responsible for "providing the necessary proof (AS-312.484).

Affirmative Defense - Violation of the Privacy Act and the VEOA.

Affirmative Defense - False Statement (18 U.S.C. 1001).

5 USC § 2302(b)(11), - "knowingly take, recommend, or approve any personnel action if the taking of such action would violate a veterans' preference requirement."

2 October 2006 (exhibit Z, dtd), Agency Attorney Richard Mosher, Re:  Lance McDermott v. USPS, District Court Case No. CV06-1335, - "I am the attorney assigned to the above-referenced District Court Case… This action involves complaints regarding various promotions and allegations of nepotism and misconduct during the period 2004-2006…"  (copy in my Health Unit medical file)

Handbook EL-312 Employment and Placement, 513.3 Relatives, - "… To protect public and employee confidence in the integrity of postal selection procedures, appointing and approving officials must contemplate whether the

appointment or promotion of a relative is likely to create the appearance of impropriety in the eyes of the public and other postal employees…"

5 USC 2305(b)(7), - "appoint, employ, promote, advance, or advocate for appointment, employment, promotion, or advancement, in or to a civilian position any individual who is a relative…"

Affirmative Defense - DOJ Attorneys, not the Agency, are response for civil litigation, (2) promotions (EEOC) and nepotism (Misconduct) complaints are not "litigation, (3) Misconduct investigations, violation of law, by statute 39 CFR 233 are required to be conducted by OIG Inspectors - scope of employment.

Affirmative Defense - Protected activity reporting - Nepotism - promotion of (former) District Manager's sons Carlos Salazar and Dale Zinser.

Affirmative Defense - Reporting Misconduct - inappropriate sexual behavior of MDO Don Jacobus and (married) SMO Tiffany Yoon. I also spoke to APWU President William Burris and Western Area VP Omar Gonzales during a Union meeting at the Red Lion. The Union said - 'This is beyond normal labor/management relationship. What do you want us to do about it?' Afterwards Maintenance Manager Wayne Watzel gave a "tour" to MDO Jacobus, SMO Yoon, and SMO Salazar pointing me out. Despite the sexual misconduct (after Manager Ray Ubis' sexual misconduct that led to his murder) MDO Jacobus was promoted to Plant Manager and then District Manager. Along the way Mr. Jacobus promoted Ms. Yoon and Mr. Salazar. And, I was denied promotion, harassed, work rebuilding TMS carrier cells contracted-out ($1.6 million) and suffered numerous other changes in working conditions.

Since the 1883 Pendleton Act, Congress has attempted to assure good government by enacting laws that require or prohibit certain actions by Government agencies and employees. These reforms began with laws to establish rules for what must or must not be done in many areas of Government employment. It was not until the Civil Service Reform Act of 1978 (CSRA), Pub. L. No. 95 454, 92 Stat. 1111, however, that a comprehensive list of 12 Prohibited Personnel Practices (PPPs), was enacted into law. 5 U.S.C. § 2302(b)(1)-(12). Unlike the merit system principles, Congress made the prohibition of these personnel practices enforceable, so that employees would know of them and could be disciplined for committing a PPP. H. Rep. No. 95-1403, 95th Cong, 2d Sess. at 4 (1978). (http://www.mspb.gov/ppp/ppp.htm)

Nepotism is codified at 5 U.S.C. § 2302(b). Nepotism is addressed at prohibited personnel practice number 7. Specific restrictions on the employment of relatives are also set forth at 5 U.S.C. § 3110, which pre-dates the codification of prohibited personnel practices. Since the passage of the Pendleton Act of 1883, to which the Merit Systems Protection Board (MSPB) traces its own roots, favoritism based on

family relationship has been frowned upon; with the Civil Service Reform Act of 1978, it was specifically proscribed.

Reporting Nepotism is an affirmative defense that an action taken was taken in reprisal for the appellant having blown the whistle on someone for a nepotism violation. See *Hudson v. Department of Veterans Affairs*, 104 M.S.P.R. 283 (2006), a non-frivolous allegation of violating 5 U.S.C. §§ 2302(b)(7) and 3110. Allegations of reprisal "based upon exercising one's right to complain" are protected under 5 U.S.C. § 2302(b)(9).

Affirmative Defense - Mr. Jacobus as the District Manager promoted his close friend Tiffany Yoon and former District Manger's son Carlos Salazar. Mr. Jacobus was the Installation Head and failed to perform the CBA Article 16.8 Installation Head review of the odious enforced leave given to me because of my handicap.

4 December 2006 (exhibit Z), EEO 551-2006-00173X, Deposition of Lance McDermott by USPS Attorney Richard Mosher:

Page 10, - "Q. Were you called back into the National Guard? A. I was activated for Desert Storm. Q. How long did you serve in Desert Storm? ... [page 11] A. I was a nuclear chemical target analysis officer..." (See Agency Attorney Reply, MSPB SF-0752-13-0633, 6 August 2013 (exhibit Z, dtd), - "The Agency moved to dismiss McDermott's appeal because the Agency record revealed that McDermott was neither" (1) veteran preference eligible...")

Page 49, - "THE COURT: Well, it's an administrative process, the EEOC rules are first, but then a lot of times our rules refer to the Federal Rules of Civil Procedures." (See Agency Decision, 25 April 2013 (exhibit Z), - "... The Federal Rules of Civil Procedure concerning the limits on discovery do not apply in the federal-sector EEO complaint process...")

Page 56, - "...I've got the right to ask him questions on things that were in his affidavit. I don't have to show him the affidavit..."

Page 57, - "THE COURT: What do you mean that the Postal Service did not conduct the affidavit? MOSHER: That's not discovery by the Postal Service, in other words, the EEOC-- THE COURT: Not the EEOC -- MOSHER: The investigator. It's not the Postal Service now. It's -- and in this case I'm not sure, but it's a contracted agency that conducts the official report of investigation, but it's not the Postal Service conducting its discovery in this case..." (Noting that EEOC Judge Gaffin listened to the Deposition from Page 49 to Page 95 (over an hour). Than dismissed my complaint without a hearing.)

Page 95 - "...A. All I know is you're supposed to go to your supervisor, especially the one making the job announcement. If one supervisor is going to

treat me wrong-- Q. Judge? Judge Giffin?  THE COURT: I'm here.  I didn't hear the answer that was given.  MOSHER:  I asked about six times, six different ways why he couldn't have gone to another supervisor or to an IT person or someone who had more knowledge of computers in order to find the job application he was looking for.  THE COURT:  And I didn't hear any of his responses.  The speaker phone didn't pick up what he did say…"

Affirmative Defense - In an EEOC Deposition I clearly stated that I was a Desert Strom Veteran to an Agency Law Department Attorney.

24 April 2007 (exhibit Z), letter from APWU Regional Director Omar Gonzalez, - "At the April 10, 2007 CBA Round Robin Session in Seattle an issue was presented to President Burrus regarding managers involved in sexual misbehavior.  The issue was raised by Lance McDermott, Maintenance of the Seattle Area Local.  In an effort to address the issue raised…"  The Union did nothing to "address the issued raised."  Mr. Jacobus was promoted (I was not) and was Installation Head when I was placed on enforced leave without the CBA Article 16 right of Installation Head review.

Affirmative Defense – Retaliation for Union activity.

EEOC Appeal Decision, #1E-981-0044-08, 10 November 2008 (exhibit Z, dtd), - "… The Commission finds that the agency has mischaracterized complainant's claim.  A fair reading of the complaint, in conjunction with the related EEO counseling materials, reveals that complainant is, in fact, alleging that he was not selected, because of discrimination/retaliation… As complainant is alleging a discriminatory nonselection (by being excluded from consideration), he is aggrieved and the agency's dismissal was improper…"

Affirmative Defense - In the past the EEOC found that an Agency's Law Department Attorney "mischaracterized" my claims.  Webster's Dictionary defines "mischaracterization" as lying (18 USC 1001).

The Port of Seattle Commission, 26 August 2008 (exhibit Z, dtd), voted to terminate the land lease for the U.S. Postal Service's SeaTac Air Mail Center (AMC) and Post Office.  This was done with out any Public notice, opportunity to be heard, or comments taken into account.  Changing a public paid for federal facility serving the public's needs into a "cell phone parking lot."

I wrote the Mayor of SeaTac, 4 May 2009 (exhibit Z, dtd).  I met with the City Manager Craig Ward and Mayor Ralph Shape showing them that the Port and the

Postal Service had not had the required public meeting or produced the required Feasibility Study and Area Mail Processing Plan.

The Mayor wrote Seattle District Manager, Katherine Nash, and she lied to the Mayor, 9 May 2009 (exhibit Z, dtd), - "…As I suspected notice to city officials is mandatory only when the USPS discontinues a post office station or branch… The Postal Service has lost the lease of the AMC…"

Mayor Shape's letter to me, 18 May 2009 (exhibit Z, dtd), - "… We cannot find anything to dispute her statements… The Port replied that the leases expires on December 31, 2030, but included a clause that allowed the Port to terminate the lease with one year notice if the site was needed for a capital project which was approved by the Commission. According to the Port, the site is needed for hardstand for parking aircraft…" According to the Port's Commission Agenda, 26 August 2008 (exhibit Z, dtd), the property was needed for a "cell phone lot" which is not a capital project.

The Postal Accountability Act requires an Area Mail Processing Plan Notification Process (with exhibit Z, 18 May 2009), that includes notification to state and local community leaders of the start of the "process." The Agency is also required to having a Public Meeting (asking the full rate paying Public's input) before any decision is made to close a Public Serving Post Office or Mail Processing Facility.

I filed a civil action, 4 June 2009 (exhibit Z, dtd), wrote the Comptroller General, and filed a complaint with the Postal Regulatory Commission to stop the destruction (exhibit Z, dtd).     6 April 2010 (exhibit Z, dtd), - "This is to respond to your contact with the Postal Regulatory Commission, who shared it with our Consumer Advocate… effort to appeal closure of the Queen Anne Post Office [and SeaTac Post office/AMC] is premature as the office is not closed at this time…"

In the summer of 2009 I was ordered via Seattle Processing & Distribution Manager Don Jacobus (the Manager responsible for the closure of the SeaTac AMC without the required PO-408 AMP Plan) to trash two million dollar Flat Sorter Machine (FSM) 1000s in a dumpster for recycling as part of the closure of the SeaTac Air Mail Center (AMC) and outsourcing of the work to Mathison Inc. When I ask why he said that "no one wanted them". When I refused and told him it was criminal to trash over a million dollars of Capital Equipment he found someone else to do it. I called the OIG hotline and they said they would look into it and then did nothing.

The SeaTac AMC land (USPS owned the 400,00sqft building with a HVAC system) was leased by USPS in 1975 for 55 years from SeaTac Port Authority for $1.02sqft (that was to have expired in 2030). The building the Terminal Handling

Services (THS) contractor is in is owned by the SeaTac Port Authority who has a tenant contract with Transiplex International who subleased to Air Cargo International who subleased to USPS who subleased to contractor Matheson for $15.56sqft. All the USPS material handling Capital Equipment (public property) was moved from the AMC to the contractor's AMF for their use. Two million dollar Flat Sorter Machines FSM1000 were thrown in the dumpster for scrap metal and millions of dollars more in Capital Equipment was taken off the USPS books.

The two Postal Contractor facilities are leased from the Port Transiplex AMF contractor facilities in SeaTac ($1.2 million per year), the Mail Equipment Service Center (Contractor) facility in Auburn ($750,000 per year) and the Priority Mail Center in Kent where I work ($750.000 per year, with a HVAC system) could have fit into the 400,000 owed building. Millions of dollars lost in public property and million of dollars each year being spent on leasing public property once owned by the public who had no say in how they money is being spent.

The Postal Service in closing the Seattle SeaTac Airport 24/7 Post Office (PO) and the Air Mail Center (AMC) did not follow any of the rules in Handbook PO-101, Retail Optimization Plan or the PO-408, Area Mail Processing Plan. (GAO report 07-717, Mail Processing Realignment Efforts Under Way Need Better Integration and Explanation, June 2007.)

The USPS FOIA facility database shows 2 P&DCs when one is a warehouse used for storing equipment. The most expensive leased property in Washington State is a parking spot in Olympia that leases for $348.03sqft ($8,004.74 a year) and the second most expensive property is a parking in Bellevue for $225.12sqft ($6,753 a year). I can get downtown Bellevue 24hour valet parking for $300 month ($3,600 a year). The listed as "temporary" Kent, Priority Mail Annex (PMA) (without HVAC) where I work does not reflect the Common Area Maintenance charge by the leaser of $149,663 per year nor the $5,000 appraisal that was done for the last lease extension. $5,000 times 27,298 leases is $13,649,000 in unneeded appraisal fees for leases being paid for by the Public. And, millions of dollars in lease commissions to double dipping public funds entities like Commercial Broker CB Richard Ellis also receiving public funds for selling public property.

Affirmative Defense - Reporting fraud, waste, abuse and criminal activity.

5 U.S. Code § 2301(9) Employees should be protected against reprisal for the lawful disclosure of information which the employees reasonably believe evidences— (B), - "mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety."

The large SeaTac AMC facility had a Heating Ventilation Air Condition (HVAC) as required by the Public Buildings Act, title 4, and Agency Standard Design Criteria for the health and safety of all employees. The Kent PMA where I work does not have a HVAC system and employees work in 85+ degree heat and are constantly bite by insects in the summer since the Agency saw fit to lease a "temporary" facility between the Green River and a wetlands wildlife habitat. The BOG approved a Logistics and Distribution Center to be built in 2008 to replace the "temporary" PMA. Then the Agency said that it did not have the money. The Union tried to get the Agency to move the PMA into the empty AMC facility to save money and improve the working condition of employees. I attended the first Union/Management meeting concerning the AMC. The Union asked for a copy of the Area Mail Processing Plan or the written decision that the AMC needed to be destroyed.

Safety Information, 29 May 2014 (exhibit Z), Safety Talk Information is given to employees for "Heat Stress" - "It is critical that our employees understand the effects of heat on the body..." and "Bee/Insect Sting Policy" - "...the commonly accepted methods to avoid bee/insect stings and actions to follow if an employee is stung..."

21 July 2010, Class Grievance MNT 49-10 was filed by Steward Benda Burke and Maintenance Craft Director Lester Cornette. 10 September 2010 new Maintenance Craft Director Jimlim Scott assigned Steward Lois Sud-Martinez to MNT 49-10.

Affirmative Defense - Retaliation for Union activity to protect the health and safety of all employees.

At the AMC Labor-Management meeting was newly promoted Plant Manager Don Jacobus with a former Employee Assistance Program (EAP) contractor Dr. Picard sitting beside Mr. Norris I asked Mr. Norris why Dr. Picard had been unlawfully hired. Mr. Norris responded that he "did not have to answer my questions." When Dr. Picard was unlawfully hired and given a management job as the District Complement Coordinator in violation of the Civil Service Reform Act. I.E. Dr. Picard went for helping stressed out employees as a contractor into a hit-man for management getting rid of employees via the unlawful Treat Assessment Team (TAT) and the District Reasonable Accommodation Committee (DRAC) tribunals.

Handbook EL-312 Employment and Placement, 58 Post Hire Suitability, 581.1, - "... Applicants who indicate that they have been awarded a contract by the Postal Service are prohibited from being appointed as employees..."

Affirmative Defense - Both the TAT and the DRAC are unlawful tribunals with no legal jurisdiction created by the Agency to by-pass the employee's CBA, Civil Service and Constitutional Rights.  The Employee subjected to these "processes" and the Union did not approve (voted for) their creation.

The Seattle District TAT tribunal is "run" by former EAP contractor Dr. Picard hired in violation for the Civil Service Reform Act.  Dr. Pichard is also the District Complement Coordinator responsible for the maintenance staffing being reduced from 5 employees to 2 forcing me to work alone and not able to use my unscheduled leave.  DOL OWCP Decision, 10 December 2015 (exhibit Z), Incident(s) Alleged, - "6.  You alleged the manager was saving heavy work for you to do by yourself.  Your agency responded stating that you were assigned work according to the staffing levels…"

While I was on doctor approved stress leave 1-6 April 2013 TAT "Leader" Dr. Picard told SMO Dow, email 3 April 2013 (exhibit Z) - "Also, go ahead and fill out an incident report."  MMO Marzec email to SMO Dow 3 April 2013 (exhibit Z), - "McDermott is getting to be a concern.  I told Dow to call 911 the next time he sees him with a machete on the property."  The next day 4 April 2013 (exhibit Z) SMO Dow files a false "Threat Report" based on him seeing me with a machete in the public parking lot 25 March 2013.  SMO Dow in conspiracy with Dr. Picard and MMO Marzec filed the false Threat Report (18 USC 1001) 10 days late.  According to the TAT published rules Threat Report must be made within 24 hours of the event.  So the TAT did not have statute of limitations jurisdiction.  Federal Law Enforcement Officers, email Inspector Brooks, 4 April 2013, - "There was no threat communicated by McDermott with the machete, he was only seen carrying it from his car to the green belt along the property" did not have any administrative or criminal jurisdiction.  Yet I was subjected to Federal Law Enforcement detention, interrogation, search and seizure of my personnel property.  I was not allowed a Union Steward to be present violating my CBA and *Wiengarten* Rights.  I was not given my *Miranda* Rights violating my Civil and Constitutional Rights.  (Noting that Brenda Burke suffered from the same DRAC and TAT "processes".)  I was falsely convicted without a hearing of having a weapon on "federal property" and now have a federal criminal record.  Inspector Dahlin, case number 1898225-WPV (exhibit Z, 1 Jul 13), 9:00 AM start, - "McDermott was interviewed regarding his illegal entry … and suspicious behavior… was informed he was trespassing on federal property…"  SMO Dow's false "Alleged Threat" (exhibit Z, 1 Jul 13) was filed 12:21PM after the harassing Federal Law Enforcement detention, interrogation, search and taking of my personal property - employee Identification Badge and keys like I was fired.  See

SMO Dow's false 911 call to Kent Police (exhibit Z, 1 Jul 13), - 'Now ex-employee is at location.' And, that false conviction was used to deny me FECA OWCP injury-on-the-job benefits. DOL OWCP Decision, 10 December 2015 (exhibit Z), Incident(s) Alleged #3, - "You alleged a conspiracy to investigate you use of a machete. You initiated the events by bringing a machete which is considered a weapon onto Federal Property. There is no evidence to support your allegation…"

Affirmative Defense - Conspiracy to injury by filing false (18 USC 1001, Injury) Threat and Police Reports.

5 U.S. Code § 2302(b)(9)(B), - "testifying for or otherwise lawfully assisting any individual in the exercise of any right…"

The DRAC tribunal with no "Leader" allows an institutional process for age and disability discrimination.

Handbook EL-505 11-1 (exhibit Z, 28 Dec 15) Identifying Potential Rehabilitation Program Participants (page 227), - "… - Identify possible participants by doing the following: - Review periodic roll reports and prioritize these employees according to their potential for termination and reduction of compensation in the following target groups:
- 40 years old and under - injured less than 5 years.
- 49 years old and under - injured more than 5 years.
- 50-60 years old - regardless of injury date.
- 61 years old and over - regardless of injury date…"

DOL OWCP Decision, 10 December 2015 (Handbook EL-505, page 1), "was updated too … comply with Section V of the [EEOC] approved Settlement Agreement in *Glover v. Potter,* EEOC No. 320-A-8011X… Postal Service will not deny promotional or advancement opportunities to persons in permanent rehabilitation positions based upon their disability…"

Affirmative Defense - Disparate impact Age Discrimination.
Affirmative Defense - Disparate impact Disability Discrimination.

21 July 2010, Union Steward Brenda Burke (disabled veteran and injured on-the-job) filed a class grievance, MNT 49-10, about the "unbearable working conditions in the Kent WA Priority Mail Annex (PMA) leased "temporary" facility because it does not have the required HVAC system for the safety and health of employees (Handbook RE-4, Standard Design). MNT 49-10 - "…Management's office spaces are airconditioned, but the work room floor is not and the

temperature is unbearable.  The temperature has on more than one occasion reached the 90's…"  "…This creates problems with mosquitoes (bites) and machinery downtime due to the unsteady temperature for machines to operate…"

Employees are suffering (passing-out) in 85+ degree temperatures and being bitten by insects (number one reportable injury).  Management agreed to install a HVAC system and then cancelled it because of the $100,000 cost in a leased building ($850,000 per year).  When I as the new Union Steward inquired into the HVAC system (RFI 6 Mar 12, reply 14 May 12, "No MNT 49-10 found").  I was told it was cancelled because the PMA was going to be moved into the larger SeaTac AMC facility, owned building (lower cost), that had a new HVAV system. The Agency tore down the AMC building knowing leaving PMA employees suffering in an unsafe and unhealthy conditions (and increased public costs).

The "top" reportable OSHA injury accident in the PMA FY2009/2010 was - "Insect Bites/Sting" (exhibit Z, 22 July 2010).

Handbook ASM 273.132 Reporting Conditions or Conduct, - "To assure postal safety, employees report all unsafe building or working conditions…"

Safety Information, 29 May 2014 (exhibit Z),  Safety Talk Information is given to employees for "Heat Stress" - "It is critical that our employees understand the effects of heat on the body…" and "Bee/Insect Sting Policy" - "…the commonly accepted methods to avoid bee/insect stings and actions to follow if an employee is stung…"

A HVAC system was ordered for the PMA facility. "The facility does not have any airconditioning in the work room.  This puts computers and equipment [not the employees] at risk for failure or an accelerated shelf life." However, the request was declined 04/09/2012 (RFI Response, exhibit Z, 6 March 2012).

Affirmative Defense - Union Activity to protect the safety and health of all employees.

Affirmative Defense - Injury to myself and other employees because the Agency has not provided the Title 41 Public Buildings Act and Agency Standard Design Regulation HVAC system for the safety and health of all employees.

8 February 2011, SMO Dow told me that Brenda Burke needed a Steward.  I went into SMO Dow's (airconditioned) office and SMO Dow proceeded to read a "letter" from the District Reasonable Accommodation Committee (DRAC) with HR Christine Batara listening on the speaker phone.  SMO Dow read that the DRAC could not find Brenda any work and she was being discharged with 30-days of administrative leave.  Brenda very upset and crying asked who made the "decision" and was told "the DRAC" and that she had no right to be part of that process or appeal.  I told Brenda that there was little the Union (I) could do for her

(since Management violated due process) and to get an attorney.  Immediately after the meeting SMO Dow walked Brenda out the door.

10 February 2011 (exhibit Z, dtd), SMO Ken Dow filed a false Threat Report (see same Dow false Threat Reports, 19 Nov 07, 11 Nov 08 and against me 1 July 2013) against Brenda Burke after he "read" the District Reasonable Accommodation Committee (DRAC) (on notice/no opportunity to appear) "decision" that there was no work for Brenda Burke and she was being given 30-days of paid Administrative Leave (I did not get AL Leave) and discharge.  Postal Inspectors conducted a without-reasonable or probable cause investigation based on SMO Dow's lie (exhibit Z, 14 Feb 11).  The Inspectors lied in their report (Criminal Jacketed) Case #1848555-WPV, 16 February 2011 (exhibit Z), - "McDermott said that Brenda said that she was going to get a gun."  Note that my IS/OIG investigation/integration/search/property taken by Inspectors wearing guns a flank jackets was not "jacketed" criminal or threat investigation (exhibit Z, 12 July 2013)).

Discovery and RFI have shown that between 2003 and 2008 (exhibit Z, 2003) that employees have repeatedly filed incident reports against SMO Ken Dow:

(a) 7 June 2003, - "… He state Ken Dow … started giving him a hard time … told him to move the fucking drums…"

(b) 10 January 2005, "Conrado states that Ken Dow is creating a hostile work environment … Mr. Dow has been … overly zealous in his supervisor approach…"

(c) 10 February 2005, "Ken Dow grabbed papers out of Steve Jackyl's hand … treated inappropriately."

(d) 19 January 2007, - "… being placed on emergency suspension when informed of this he said 'you'll have to call 911' … and Ken Dow called 911…"

10 October 2008 (exhibit Z), SMO Dow to Lonnie Davidson, - "… you are being placed in an emergency off duty status.  The reason(s) for this action is: You shoved a trash can into me and used vulgar language…" ((1) Noting that the supporting statement of SMO Gillett, does not show that a trash can was used.  (2) Employee who do not use "vulgar language" (or remain silent like me) are still "escorted from the building by SMO Dow, 19 Nov 07 (Suzanne Shlicta).  (3) Also see, 10 Mar 11 (exhibit Z) SMO Dow to Brenda Burke, 14-Day Suspension,  - "…According to Mr. Dow, when you got there, you slammed your walker into your car…")

EEO Affidavit, Inspector Brooks, 8 April 2013 (exhibit Z), - "Q7.  Mr McDermott alleges that on April 8, 2013… (including notes taken and any report made)…"  A7 …No report was made, due to this issue not being associated to a threat.  Attached, Seattle District Threat Assessment Report - Filed by Ken Dow

on April 4, 2013 [while I was on stress leave]…" (If I was not a "Threat" why did the Inspector present a "Threat" (false) report as evidence/reason/probable cause for the Inspector's law enforcement actions against me?) Also see OIG "Referral," 18 November 2011 (exhibit Z), "falsification of time clock records [criminal] and non-threat incident report" made by an employee against management, - "… The complainant further alleges management has falsified information on non-threat incident reports…"

10 March 2011 (exhibit Z), SMO Dow gave Brenda (SMO Dow discharge Brenda 8 February) a 14-day suspension based on his lies. (USPS SEC 2013 Report on Form 10-K, page 14, Note 6 – Contingent Liabilities, - "… [EEOC OFO] certified a class action, McConnell v. Donahoe (2006). The class currently consists of all permanent rehabilitation employees … who were subjected to the [NRP]… The long term portion of this liability was $923 million at June 30, 2013…")

SMO Dow's email to Inspector Vanicek, 14 February 2011 (exhibit Z, dtd), show that MM Norris told SMO Dow to file a (false) threat report to the TAT, - Brenda said, - "I'm going to go home and get my…" "…I need to make a report so the threat assessment team would be aware of what Brenda said, I told him that I would do it…" (Noting that threat reports are to be made within 24-hours.)

Inspector Vanicek, Threat Summary Report, 1848555-WPV, 16 February 2011 (exhibit Z, dtd), - "…BURKE asked why she wasn't allowed to participate in this reassessment and the resulting decision. BURKE was told that she didn't have the right to participate. BURKE then stated 'I understand why people go postal.' McDermott added that BURKE may have said 'get a gun and go postal,' but he wasn't certain…" (I did not say that and my written statement does not say that.)

Notice of 14-Day Suspension (Burke), 10 March 2011 (exhibit Z, dtd), (also after Brenda was discharged because of her disability/on-the-job injury), - "…You … exclaimed 'No wonder people do what they do!' and 'I understand why people go postal!' This was followed by 'I'm going to go home and get my…"

Noting that when non-management employees made reports to Inspectors that "management has falsified information on non-threat incident reports the Inspector simply pass the report to management, - "… In the event additional information and/or evidence is developed [by management investigating their own misconduct] that would require investigation by our office…" (exhibit Z, 18 November 2011).

"Response to OIG Referral; Records Falsification," by MCS Huffman, 30 November 2011 (exhibit Z, dtd), - "Based on the results of my investigation I have determined that Eddie Smith Manager … did not falsify Time and Attendances…

A check of the records and reports was made with the Seattle [DRAC], no record of any such report was found by Dr. Picard. Inquires made in the accusations…" (Noting that the follow-up EEO (that should have been a criminal) investigation was done by a NEEOISO Contractor, (exhibit Z, 29 December 2011). Also note that the Contractor collecting confidential governmental information and personnel (Privacy Act) working from home on her unsecure (Hillary Clinton) computer, over the internet, through her AOL email account with access to usps.gov (supposedly secure) intranet.)

Brenda Burke was injured on the job when climbing on a LIPS machine. After she was discharge because of that injury I did not want to work on the LIPS. When I showed MMO Marzec that I could modify a ladder to made access easier MMO Marzec told me to write it up for Western Area approval. I submitted a packet 8 January 2012 (exhibit Z, dtd) and was approved to buy two ladders and modify (welding) them. I made one ladder and SMO Dow created an On-The-Job Safety Review "Using the new LIPS ladder," dated 3 April 2012 (exhibit Z, 8 Jan 12). SMO Dow, after I used FMLA Leave and after I did an RFI (exhibit Z, 6 Mar 12) no HVAC in PMA grievance (MNT 49-10), said that he did not approve the LIS ladder use, changing the ladder to a post so no one could use it. Then he told me that I could not weld the other one. When I can back to work after my "serious medical condition" enforced leave I was told I could weld the other ladder and start using them. Then the next day I was told that I could not weld any more because I was not "qualified" (Adverse Action, exhibit Z, 20 May 2015) to weld (I pass the KAS skills test and was on the register for welder (that I could have done color blind) and I had two years of VoTec welding). Change of Working Conditions - Placing the safety employees working on the LIPS ten feet in the air in jeopardy.

17 June 2011 (exhibit Z, dtd), MM Norris to Jimlim Scott, Maintenance Craft Director, - "I was notified that you lodged a complaint of harassment against your supervisor… I have found some procedures are not being properly followed… the most significant violation is that you are not … If we can learn what the problems are before the issues become a grievance, we can discuss and resolve them…" (How about resolving the harassment first?)

18 November 2011 (exhibit Z, dtd), OIG "Referral," Ref: 12HHQ2030, Re: Records Falsification, - "…received complaint on November 14, 2011, from postal employee, Myran Parayno [Clerk Craft Director], regarding management's falsification of time clock records and non-threat reports… further alleges management has falsified information on non-threat incidents reports… This information is being forwarded for your review and action…" (Note criminal

complaints made by labor employees to OIG Inspectors are "referred" back to the Management Officials who have committed the crimes for "self" investigation. While false statements (18 USC 1001) of made by Management Officials against labor employees are investigation by Federal Law Enforcement Officials with viger.)

30 November 2011 (exhibit Z), "Response to OIG Referral," - "Based on the results of my investigation... did not falsify Time and Attendances... accusations that falsification of Non-threat incident report that occurred ... no record of any such report was found by Dr. Picard [former EAP Contractor]..."

29 December 2011 (exhibit Z, dtd), EEOC Contract Investigator (for Myrna Parayno), Kandace Kelly, using unsecure (Privacy Act) PC at her home and sending unsecure email through "kandacekelly@aol.com" to conduct EEO investigation and discovery. See USPS EEO Attorney's (exhibit Z, 19 Dec) use of unsecure "@concast.net" for EEO "litigation." Also see *Parayno v. Potter* [USPS], F.Supp.2d, 2010 WL 4923100 (W.D.Wash.). 23 A.D. Cases 1757, 29 November 2010.

19 March 2013, MMO Marzec, "Referral for Reasonable Accommodation Consideration," Answer, - "Management asked Mr. McDermott if he wanted to request accommodation for this permanent restriction, and participate in the DRAC process. Mr. McDermott replied that he did not want to participate in the DRAC process. When asked the reason why he did not want to participate in the DRAC process, Mr. McDermott stated, 'You fired Brenda Burke on light duty. I don't want to be on light duty."

MSPB Hearing Verbatim Record, SF-0752-13-0633-I-1, 21 November 3013, page 64, Judge Carter, - "...Okay, And were you aware of some involvement he had with employees, representing them during the national reassessment process, sending employees home who had -- didn't have work within their capacities because of their compensable injuries? Were you aware that he represented individuals during that process?" Witness MM Norris, - "Yes, I am."

Union Steward Brenda Burke and other Union Employees like me have suffered similar harassment and retaliation for their Union activities.

8 January 2012 (exhibit Z), Because Brenda Burke had injured herself on-the job climbing on the LIPS machine. I thought of an idea to modify a ladder for safer access on top of the LIPS. MMO Marzec told me to write it up and submit it for Western Area approval. I did (exhibit Z, 8 Jan 12) and it was approved. The ladders were purchased and I modified the first one to fit over the LIPS discharge chutes (where Brenda Burke fell and hurt herself). SMO Dow declared that I had not received his permission for the ladders and put a chain around the one ladder I

had modified (so on one could use it) and told me that I could not finish (weld) the other LIPS ladder.

When I return from enforced leave March 2014 I tried to finish the other LIPS ladder and was told again by SMO Tomas Ruiz that I could not finish the Western Area approved LIPS ladder. And, the pieces I save (SMO Dow tried to dispose of it) are still in a cart sitting by the welder.

Affirmative Defense - Retaliation for safety improvement.

Affirmative Defense - Work Restriction - no welding.

6 March 2012 (exhibit Z), RFI, - "1. A copy of all contracts for Charles Neuimeister... (3) What is the status of MNT 49-10, July 2010 for the hazardous temperature in the PMA..." (Response - HVAC ordered for the PMA 11 November 2011 was "Declined" 9 April 2012.)

Affirmative Defense - Protected Union activity investigating criminal acts and safety/health issues.

9 April 2012, SMO conduct an Investigative Interview about five absences since October 2011. I was then given a Letter of Warning. And, the LOW was cancelled (see Step 1 grievance 18 May 2012 and settlement letter 2 June 2012. However, 23 July 2012, I was given a LOW "mailed to the employee's home" while on vacation for my FMLA leave usage.)

Affirmative Defense - Disciplined for using FMLA Leave.

13 April 2012 (exhibit Z), I was denied eligibility "to apply during Open Season" by MMO Hoff. - "... I have researched your eligibility. You currently have an ineligible rating for the position(s) you have applied for. APWU "Open Season" Notice (exhibit Z, 13 Apr), - "... Open Season takes place just once every three years, so it is important to take advantage of the opportunity..."

The civil service system is based on the idea that employees should be selected through fair and open competition. 5 U.S.C. § 2301(b)(1). There are two elements that both must be present for a person to violate this provision. First, the individual must have influenced or attempted to influence a person to withdraw from competition. Second, the person must have done so with the intent to improve or injure someone's employment prospects. *Special Counsel v. Brown*, 61 M.S.P.R. 559, 565 (1994). Individuals may try to convince the applicants who have priority to withdraw their applications. This is a prohibited personnel practice. *See, e.g.*, *Filiberti v. Merit Systems Protection Board*, 804 F.2d 1504 (9th Cir. 1986). *Walker v. Department of the Army*, 104 M.S.P.R. 96 (2006) (failure to allow competition of veterans' preference candidate under 5 U.S.C.

§ 3304(f) violated VEOA.)  The penalties the Court may impose include reprimanding, suspending, demoting, or removing the offender from Federal employment; prohibiting the offender from working for the Federal Government for up to 5 years; and imposing a fine of up to $1000.  5 U.S.C. § 1215(a)(3).

Affirmative Defense - Denial of promotion opportunities.

Starting 29 April 2012, I was routinely given more than 8 hours of preventive maintenance work, a long with responding to break down call, working alone, and told not to "bypass" any routes.

Affirmative Defense - Adverse action.

15 May 2012, I again put in an RFI about Neumeister, the PMA HVAC grievance MNT 49-10 and the closure of the AMC.  I received a copy of Nuemeister "Notification of Separation" dated 6/30/2011, his one page "Proposal" dated 9/16/2011 and a copy of the Facilities Management System report showing that a HVAC was order for the PMA 11/11/2011 and cancelled 04/09/2012.

24 April 2012, I applied for FMLA protection for my bad back

10 June 2012, I was granted FMLA #110000387180, for a bad back condition. Submitting a WH-381 from my doctor and clinic notes from my neurosurgeon.  I had to get that protection because I was the only MPE on day-shift (out of five positions) since MPE Nolan Parrish's retirement in November 2011.  SMO Ken Dow was saving the heavy work for me to do aggravating my bad back and then denying me leave because of "staffing."  When I did use my FMLA leave SMO Dow would dispose of one or more of the maintenance shop tools or equipment I used to do my job and causing me more stress.  Agency exhibit 9, FAD -Mixed Case, 4 December 2013, EEOC Case No. 1E-985-0006-13, page 13, - "... The record included a Designation Notice (FMLA) which the complainant was approved for FMLA leave on June 13, 2012..."

17 September 2008 (exhibit Z) Memorandum to:  All Employees Seattle AMC/PMA, - "It is the goal of the Seattle Airport Mail Center and Seattle Priority Mail Annex that all employees will be provided with the proper information and tools to do their jobs effectively..."

Affirmative Defense - FMLA Protection for my bad back.

15 May 2012 (exhibit Z), I put in an RFI when I saw a retired postal employee, Charles Neumeister, in the facility working on (I was told) a contract.  I found out he was retired in May 2011 and "proposed" a contract September 2011, that violated 18 U.S.C. 207.

27 June 2012 (exhibit Z), SMO Dow asked me to work with a retired postal employee, Charles Neumeister.  I refused because giving a contract to a retired federal employee violates 18 USC 207.  I told SMO Dow that.  SMO Dow returning with "Engineer" Don Hamel for a witness again threatened me with discharge.  I complied and did the work.   Witness Statement, Engr. Hamel, 27 June 2012 (exhibit Z), - "… Mr. McDermott then said that he would not because he would not be party to an unlawful act, explaining that having a retired federal employee performing contract work for the Postal Service was illegal…"

Investigative Interview, conducted by SMO Dow, 2 July 2012 (exhibit Z), - "…I said Charles Nemiester was a federal employee it was illegal to have a contract, 'USC 18-207.'…"

Letter of Warning (LOW), SMO Dow, 23 July 2012, - "…I also interviewed you for failing to follow my instructions and disobeying a direct order to work with Don Hamel and Charley Numiester on June,27, 2012. …during the investigative interview you gave no valid reason…"  Also see Postmaster General/Judicial Officer "decision," 25 April 2013, - "….EEOC regulations do not provide for the consideration of criminal matters…"  (USPS Handbook ELM 660, Conduct, 661.2, Application to Postal Employees, Title 5 Part 2635.901-902(e), - "The post-employment restrictions – 18 U.S.C. 207" and EL-860-2009-3, Scope of the Obligation to Report Allegations of Employee Misconduct.)

5 U.S. Code § 2301(9) Employees should be protected against reprisal for the lawful disclosure of information which the employees reasonably believe evidences— (A), - "a violation of any law, rule, or regulation, or ,,,"

5 USC § 2302(b)(8)(A), - "any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences— violation of any law, rule, or regulation, or…"

30 July 2012, Step 1 Grievance, Steward Cornette, - "… Management is going to the extreme in this … issued 3 Investigative Interviews back to back on July 2, 2012… was charged unscheduled sick leave even after issued FMLA … Disobeying an order about working with Don Hamel and Charlie Neumister… Lance stated it was a felony violation during the interview under Title 18 section 207 … An individual has a right to the 1st Amendment to the Constitution of free speech… creating a hostile work environment…"

Affirmative Defense - Falsely investigated and disciplined for reporting criminal activity by the Management (SMO Dow, Engineer Hamel, MM Norris) taking part in and including me in the crime.

30 July 2012, I reported a cracked motor mount (exhibit Z, 9 August 2012) that I could weld.  SMO Dow told me that I was not "qualified" to weld (I passed the KAS for welder).  SMO Dow had someone put a clamp on the cracked overhead (employees walking under) heavy (100 pounds) motor and cracked mount.  When it was not fixed I called OSHA, 3 August 2012.  6 August 2012, in response to the OSHA investigation SMO Dow blamed me, - "The employee did not tell the Ken Dow about the cracked motor mount..."
Affirmative Defense - Retaliation for OSHA complaint.

30 July 2012 (exhibit Z), Union Step 1 Grievance, - "... McDermott was charged unscheduled sick leave even after being issued FMLA... Due to procedurally defective issues, and management intentionally going after Lance McDermott for using FMLA ... creating a hostile work environment... is obvious Ken Dow reacts before thinking putting undue stress and hardship on employees..."
Affirmative Defense - FMLA violation.
Affirmative Defense - Hostile Work Environment (HWE).

4 September 2012, Tomas Ruiz had been gone 6-months on a special" 204B (supervisor) assignment and was back for two-weeks to maintain his bid position.  Mr. Ruiz is less qualified and a non-veteran's preference employee.  Mr. Ruiz had been non-competitively selected and I had filed An EEO Complainant (and an EEO Complaint that he was non-competitively given a SMO job).  SMO Dow assigned temp-supervisor Tomas Ruiz (EEO Complaint) to "train" me on the LMS system that I have been working on for years.
5 September 2012, Email SMO Dow to SMO Dow, - "...McDermott came into my office and gave me a 3971 requesting annual leave for 48 hours on it in the remarks area he wrote (hostile work environment...)...."
Affirmative Defense - Adverse Action/harassment - unneeded training.
Affirmative Defense - HWE.

16 October 2012 (exhibit Z), NEEOISO, Re:  Response to Objection to Accepted Issues, - "...regarding your disagreement with the identification of the accepted issues... Your requested expanded explanation of the issues as you perceive them would not alter the agency's investigation of the allegations of discrimination.  Therefore, the accepted issues will remain the same... There is no right to appeal this decision at this time." (Noting that at the same time the

NEEOISO assigned a contract investigator to investigate the "issues" that I did not agree with (due process).)

Affirmative Defense - Denied the right to agree with the "accepted" issues.

18 October 2012, I requested RFI for a class action requesting a copy of the Western Area approved maintenance staffing packages for the Seattle District. (Denied)

Email, Ken Dow, 24 October 2012 (exhibit Z), - "... Lance had a stack of wood outside of door 19 ... I told him to put it in the dumpster... He started to yell at me saying I have gotten rid of 50,000 dollars' worth of stuff... he glared at me and started to give me a very threatening look and I left." (I was accused of theft of broken wood from the dumpster after I made fraud, waste, abuse, and criminal allegations.)

7 November 2012, email SMO Dow, - "... I received a test picture from Mr. Castillo [SMO Dow's boy] that shows Lance McDermott retrieving postal property out of the dumpster..." (SMO Dow had other employees "trained" to watch me.)

Affirmative Defense - Retaliation for Union activity for requesting the Staffing Package authorizing 1-person (me) doing the work that 5 employees use to do on day-shift.

Affirmative Defense - Accused of theft by the same Supervisor responsible for the loss and theft of thousands of dollars in postal property. PO-209 2-7 Standards of Ethical Conduct, Title 5 Section 2635.101b(9), - "Employees shall protect and conserve federal property..." (11), - "Employees shall disclose waste, fraud, abuse, and corruption..."

10 November 2012, I filed a PS Form 2579-B, Notice of Right to File Class Complaint (EEO) about the NEEOISO Contractor's jurisdiction and authority to process Federal Employees' EEO Complaints.

16 November 2012, SMO Dow in writing told me to take my lunch and breaks the "same time that operations goes to break." Email SMO Dow, 7 Feb 13, - "... He had plenty of time today but instead he was at lunch when operations was at lunch so the work didn't get done during down time."

Affirmative Defense - Conflicting instructions that are impossible to follow under the penalty of being "walked out the door" for failure to follow - HWE.

25 November 2012 (exhibit Z), I filed an NLRB complaint of HWE and unlawful contracting, 18 USC 207.

28 November 2012 (exhibit Z), I filed more OFO EEOC complaints about the NEEOISO violating due process.

4 December 2012 (exhibit Z), the NEEOISO Contractor responding to my Class Action filing in 1E-985-0004-12, - "The attached information was submitted after the completion of the investigative file…"

Affirmative Defense - Agency failure to process my EEO Class Action.

2 December 2012, I was talking to Steward Lester Cornette about the Hostile Work Environment (HWE) in the Kent PMA. Mr. Cornette suggested that I called MM Norris and made a HWE complaint to him. I called MM Jim Norris reported a HWE and the fear of being terminated by SMO Dow. MM Norris sent MMO Norman Allen to conduct an Initial Management Investigation Process (IMIP).

Affirmative Defense - Protected activity complaining of a HWE.

IMIP Investigative Interview, McDermott, - "…I requested written copy of the work order, spot log, or written directive instructing me to place dots on the carrier buckets. Why am I being instructed to place color dots on things when he, the supervisor, knows I am color blind…" Page 2, - "I am scared. My blood pressure is up. I cannot sleep at night due to the potential firing and the constant threat of failure to follow instruction."

MMO Allan's undated HWE Summary of findings (exhibit Z, 3 December 2012), - "… The act of challenging the majority of the verbal instructions of the supervisor in the form of requesting written instructions in some form is more disruptive than the actual assignments… The employee's actions are a direct contribution to the perception of a hostile work environment." (I was blamed for the HWE because I was asking for written instructions to clarify the extra work that was being heaped upon me.)

Memorandum to: All Employees Seattle AMC/PMA, 17 September 2008 (exhibit Z, 27 September 2002), - "It is the goal of the Seattle Airport Mail Center and Seattle Priority Mail Annex that all employees will be provided with the proper information and tools to do their jobs effectively…"

Affirmative Defense - Reporting my handicap to the Agency during a HWE IMIP investigation.

Affirmative Defense - Denial of written instruction and tools I needed to do my job.

Affirmative Defense - Stress from the HWE.

2 January 2013 (exhibit Z), Email SMO Dow to me, - "Lance, today you have over 15 hours of pm [preventive maintenance routes] on the APBS… make sure you don't bypass any of the task…" (7.5 hours in a day)

Affirmative Defense - Being given more work than I can do and threaten with discharge if I do not complete the work.

6-7 December 2013 (exhibit Z), MMO Norman Allen gave my "mandatory" training on the Electronic Condition Based Maintenance (eCBM) creating maintenance routes (Supervisor work). I was the first employee in the District to be eCBM trained. I asked MMO Allen why I was being required to perform a Supervisor Task (exhibit Z, 3 Jan 13, - eCBM User Guide, 2.0 Overview, - "At eMARS Supervisor-level login...").

The Postal Service used the eCBM Program to justify eliminating 12,750,257 Work Hours (6,375 maintenance positions). When in fact it increased the work that maintenance employees had to do, work that was formerly done by Supervisors creating and scheduling maintenance routes. (Why was I trained for extra work when I was already being given more work than I could do?)

Affirmative Defense - Extra supervisor-level training and work assignment in retaliation for complaining about an HWE.

3 January 2013 (exhibit Z), response from EEOC OFO, - "... The EEOC cannot intercede in the processing of a complaint... If you believe the EEO office at your agency is improperly processing your EEO complaint, you must first **raise that allegation with that office**... The EEOC AJ or the appellate attorney may then determine what, if any, adverse effects the processing issues have on the outcome of the complaint and they can fashion a remedy."

NEEOISO Executive Manager Caldwell, 25 April 2013 (exhibit Z), - "... Your submission contains a significant amount of misinformation; reference case law, regulations, and arbitration awards which are clearly not relevant to proceedings in the federal-sector- EEO complaint process... You dubiously contend that NEEOISO does not have 'territorial jurisdiction' to investigate complaints arising in Seattle and that only the Office of the Inspector General can investigate EEO complaints... EEOC regulations to not provide for consideration of criminal matters..."

Affirmative Defense - Failure to process my EEO Complaints according to the regulations and constitutional due process.

Affirmative Defense – Reporting criminal acts.

8 January 2013, I asked for leave, 14 January, and was denied for "coverage."

10 January 2013, Email MMO Marzec to SMO Dow, - "Attached below is a good Investigative Interview for Attendance. Edit it as needed and use it for

Lance… Jim [Norris] pointed out that just because an employee glares at us it is not grounds for discipline…"

24 January 2013, SMO Dow & MMO Marzec Investigative Interview for "attendance," (for FMLA approved absences).

24 January 2013 (exhibit Z), APWU Step 1 Grievance, - "… SMO Dow has a grudge against McDermott and will do whatever it takes to render discipline upon him.  This is clearly retaliation and discrimination under Art 2, after McDermott filed a hostile work environment on Ken Dow…"

24 January 2013 (exhibit Z), MM Allen "Request for Information Response," - "This is a response to your attached Request for Information (RFI) dated 1/29/2013 … in reference to Lance McDermott Hostile Work Environment Investigation…"

24 January 2013, Request for 80 hours of leave 27 January – 9 February 2013, - "Hostile Work Environment – Stress" - Approved by SMO.

Affirmative Defense - Denial of scheduled leave.

Affirmative Defense - Conspiracy of a HWE retaliation of investigation and discipline for taking FMLA leave.

Affirmative Defense - Approval of "Hostile Work Environment - Stress" leave.

3 February 2013 (exhibit Z), email LR Manager Foster to MMO Allen, MM Norris, HR Delgado, Dr. Picard (former EAP contractor), - "I have read the IMIP file.  Does McDermott have a history of such behavior or is this a recent development?  He is a troubled employee who feels harassed… Regarding his claim to be color blind, I suggest … and he would have to bring in the medical evidence to show he has this defect…"

4 February 2013, email MM Norris to HR Manager (A) Delgado, Dr. Picard, MMO Marzec, Sensitivity:  Confidential, - "… His medical screening should also have checked for any issues with his vision… I recommend that the medical staff be reach to see if any such restrictions were disclosed by the employee during screening…"

4 February 2013, reply HR Delgado to MM Norris, Dr. Picard, PMA Manager Abbott, MMO Marzec, - "… so the exam may have been the only thing that covered this."

5 February 2013, email OHS Nurse Daniels to LR Foster, - "He successfully met the color vision requirements on his pre-hire medical 10-24-96…" (See Medical Examination & Assessment, PS Form 2485, exhibit Z, 24 October 1996 and 30 September 1999 Physical Fitness Inquiry, PS Form 4583, signed by NR Daniels.)

Handbook ELM 665.3 (regulation) requires employee's Cooperation in Investigations, including Office of Inspector General investigations. 665.23, - "Employees acting in an official capacity must not directly or indirectly authorize, permit, or participate in any action, event, or course of conduct that subjects any person to discrimination…" I was required to participate in the HWE investigation and mentioned that I was color blind and suffered numerous injuries for my "protected" activity.

Affirmative Defense - I reported that I was color blind during a HWE IMIP.

Affirmative Defense - MM Norris, the "Manager" who placed me on unpaid enforced leave, found out about my color blindness from the HWE IMIP.

Affirmative Defense - OHS Nurse Daniels reported, - "He successfully met the color vision requirements on his pre-hire medical 10-24-96…" (and did not need accommodation.)

Agency FAD -Mixed Case, 4 December 2013, EEOC Case No. 1E-985-0006-13, (exhibit C) page 2, - "12. On February 6, 2013: a. His Manager demanded that he, at his expense and within nine days, provide more medical documentation regarding his FMLA approved medical condition (back pains and color blindness (**nondisability**)…"

Affirmative defense - the Agency's FAD called my handicap a "nondisability" that does not qualify for reasonable accommodation.

MMO Marzec, 6 February 2013 (exhibit Z), "Letter" - "Recently you have brought to the attention of Management on a couple occasions [HWE investigation] that you have two physical impairments. You claim to have an impairment that has to do with your back and another concerning your vision. In order to determine whether these impairments pose a **threat**…" (Affirmative defense - My back "physical impairment" was FMLA protected and MMO Marzec knew of the FMLA protection. My handicap is protected by the Disability Act)

EL-505, 57 Medical Suitability, 571 Policy, - "A medical assessment is administered only after an applicant is selected …" 572, "Other events that require a medical assessment include: a. Conversion/promotion/reassignment/transfer… b. Reappointment…" 714.1(a)(2), - "Employees fully meet the physical requirements of a position if they are physically able to perform the essential functions of the position, with or without reasonable accommodation where appropriate, and without posing a direct threat of harm to themselves or others…"

Title 5 Section 2635.101 Basic Obligation of Public Service, (b)(14), - "Employees shall endeavor to avoid any actions creating the appearance that they are violating the law of the ethical standards…"

     (1)  6 February 2015, When the Agency (MMO Dave Marzec) demand medical documents to verify if I had "two physical impairments … that has to do with your back and another concerning your vision."   Violating 5 CFR 339.301, *Sellman v. USPS,* 63 M.S.P.R. 145, 152 (1994) and *Gannon v. USPS,* 61 M.S.P.R. 41, 44 (1994).  5 CFR § 339.205 Medical evaluation programs.

     (a)  I was required to use my own leave time (not on the clock).

     (b) I paid out-of-pocket for the medical exams and not reimbursed.

     (2)  15 February 2013, when the Agency's Occupational Health Services (OHS) Nurse Daniels created a "Duty Status Form" from the medical information I was required to provide.

The Postal Service uses the term "limited-duty employee" to describe employees injured on the job who are rendered unable to perform their duties.  The Postal Service must provide full-time work to limited-duty employees during their rehabilitation.  *Barton v. USPS,* 2:09-cv-13750-PJD-MKM, Doc # 34 Filed 02/10/11.


7 February 2013, Email MMO Marzec, "… I asked Mr. McDermott about his reported physical and visual impairments in the IMIP conducted by Norm Allen.  He said that his back condition was a documented FMLA condition… and I told him again that he needs to supply medical doc…"

7 February 2013, LOW Charge "Failure to be Regular n Attendance" for my FMLA absences.

8 February 2013, email MM Norris to OHS Nurse Daniels, LR Foster, - "…. Once we get confirmation that the condition does exist I will have him referred to RAC.  We may be able to keep him in his job but be would have to be excluded from doing any electrical work…"

Affirmative Defense - Asking for medical documents for my bad back "impairment"violated the FMLA.

Affirmative Defense - Asking for medical documents for my handicap condition "impairment" violated the Disability Act.


5 U.S. Code § 2302(f) (2), - "If a disclosure is made during the normal course of duties of an employee, the disclosure shall not be excluded from subsection (b)(8) if any employee who has authority to take, direct others to take, recommend, or approve any personnel action with respect to the employee making the disclosure, took, failed to take, or threatened to take or fail to take a personnel action with respect to that employee in reprisal for the disclosure."

13 February 2013, after taking own leave-time and paying $100 out-of-pocket for an exam I provided the "required" medical documents to the OHS.

Affirmative Defense - Tort Claims for $100 medical exam and 8 hours of leave used.

14 February 2013, email Dr. Wagoner to RN Daniels, - "You can advise management that medical documentation regarding Lance McDermott has been received that indicates he has difficulty distinguishing colors and shades of colors."

Agency FAD -Mixed Case, 4 December 2013, EEOC Case No. 1E-985-0006-13, page 29, - "… The email indicates Mr. Marzec explained he just wanted to know if the complainant wanted to participate in the DRAC process, to which the complainant responded, 'You fired Brenda Burke on light duty. I don't want to be on light duty.'…" Page 44, - "… [Inspector] Ms. Brooks testified the complainant told her on April 8, 2013 that he felt management was targeting and harassing him.  Ms. Brooks asserted she responded that the proper channels for harassment were the EEO and grievance procedures…"

EEO Investigation Affidavit, 1E-985-0006-13, MMO Marzec, 12 July 2013 (MSPB exhibit 109), page 3, A7, - "… Norm Allen, the [MMO] … conducted the IMIP…"  Page 10, Q46, - "Was an investigation conducted into Mr. McDermott's allegations of harassment…" MMO Marzec, A46, - "I am not aware of any investigation that was conducted…"

FAD EEO No. 1E-985-0004-12, 12 February 2013 (MSPB exhibit 93), page 24, - "… One of the principal tenets of a claim of harassment that created a hostile work environment is a showing that the claimed harassment was sufficiently severe or pervasive enough as to affect a term or condition of the complainant's employment and/or that the harassment had the purpose of or effect of unreasonably interfering with the complainant's work performance, and/or the harassment had the purpose or effect of creating an intimidating, hostile, or offensive work environment.  See *McGinnis v. DOD*, EEOC Appeal No. 01902760 (1990)…"

15 February 2013 (exhibit Z), email OHS Nurse Daniels to MM Norris, LR Foster, - "Jim, A Duty Status has been issued for the medical dated 02-13-13 with the wording recommended by Dr. Wagnor.  The employee should request permanent light duty… If the employee refuses referral to DRAC, complete the above form and contact LR for assistance…"

5 February 2013 (exhibit Z), when the Agency's OHS Nurse Daniels' "Duty Status From" gave me a return-to-work Work Restriction - "May return to work

with the following RESTRICTIONS:  VISION:  Has difficulty distinguishing
certain colors and shades of color."  See PS Form 2485, 24 October 1996 (OPF),
Section 4, - Agency Doctor Approved "No Medical Risk/Restriction."

An Employee may reject a reasonable accommodation based on a personal
preference, *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 458 (6th Cir.
2004) and not lose his or her status as a "qualified individual" under Section
1630.9(d).

Affirmative Defense - Unwanted permanent work restrictions for my handicap
violates the Disability Act.

Affirmative Defense - work restrictions/light duty is only given for on-the-job
injuries.

Affirmative Defense - Doctors and Nurses who issue medical reports (work
restrictions) without examining the person violates their Hippocratic Oath.

Affirmative Defense - 20 February 2013 (exhibit Z), I was granted FMLA
#110000402232 for my color blindness that I had to take leave for (for a medical
appointment).  See approved PS 3971 FMLA leave, exhibit Z, 20 Feb 13.  I got the
FMLA protection thinking that Management would no longer harass me about my
now double protected FMLA approved handicap.

Affirmative Defense - I was wrong.

21 February 2013 (exhibit Z), email Nurse Daniels, - "Dave, Mr. McDermott
mailed a copy of the above letter dated 02-06-13 with a clinic note from his doctor
regarding his **back condition**... If the employee is not able to perform the full
duties of his position due to the **back condition**, recommend **he submit work
restrictions** and request Light Duty..."

Affirmative Defense – Medical "Referral" for on-the-job Light Duty work
restrictions for my FMLA bad back aggravated by my Supervisor knowingly
saving heavy work to do by myself.

Email MM Norris, 2 April 2013 (exhibit Z), - "...I have an employee that is
color blind... I found the following... #3 is the actual doctor's assessment ..."

Agency MSPB Hearing statement of Facts, 25 September 2013, 5, - "In
response... McDermott provided the Agency with a letter from Arthur B. Lum,
O.D. (East Hill Optometry) stating: ...Color vision testing did show red/green
color blindness, which does affects 5% of the male population."

Affirmative Defense – Violating the Privacy Act by releasing my
protected medical records.

Agency "[Mis] Statement of Facts and Issues, 25 September 2013, 6, - "On or about February 15, 2013, McDermott submitted a Duty Status From to the Agency Occupational Health Services (OHS) stating that he could return to work with the following restrictions:  VISION: Has difficulty distinguishing certain colors and shades of color."

Affirmative Defense – I did not submit the "Duty Status Form."
Considering that my medical information (Doctor's report) submitted to the Occupational Health Services is confidential personal medical information protected by the Privacy Act (PUB 316, - "…In all cases, your medical records will be kept confidential).  (See Handbook AS-353 Guide to Privacy, the Freedom of Information Act, and Records Management.)  How did MM Norris get a copy? How did the Agency Attorney get a copy?   How does the Court know what the doctor's report says since it was not presented as evidence?

Affirmative Defense - The OHS Nurse's "recommendation" for work restrictions for my FMLA protected "back condition."

Affirmative Defense - The Duty Status Form (MSPB exhibit 24) was created by RN Daniels and clearly states "may return to work."

Affirmative Defense - The Agency's Attorney publishing my protected (sent to OHS Nurse) medical records violates the Privacy Act.

Affirmative Defense - OHS forced an unwanted permanent work restriction "Has difficulty distinguishing certain colors and shades of color."    Despite my October 1996 Medical Examination and Assessment in which I reported that I was color blind and was approved by an Agency Doctor to perform all my essential job functions.

1 March 2013, I sent a complaint to the HRSSC FMLA Contractor about the harassment of my FMLA condition.

7 March 2013, Step 2 Grievance Decision, - "The Letter of Warning will be removed from the grievant's record, if he has no unscheduled absences (except approved FMLA) from now until 9/1/2013…"

Affirmative Defense - I was being denied scheduled leave.  I did not violate any unscheduled "leave taking" rule.  The Union did not have the right to make an "agreement" that I could not use any "unscheduled" leave of face (threaten with) punishment.)

11 March 2013 (exhibit Z), FMLA Data Report, - "03/11/2013 JY4TMO Telephone, Spoke with ee on 3/11/13 advised this was not the proper avenue to file a complaint about harassment or retaliatory actions by manager/supervisor." (

Affirmative Defense - Harassment and FMLA violation complaints to the National FMLA Office (Contractors) were ignored.)

19 March 2013, MMO Marzec demanded that I ask for reasonable accommodation. I said "no' and said that I did not want to participate in a "Reasonable Accommodation" process for the reason given "You fired Brenda Burke on light duty. I don't want to be on light duty." (Harassment - I said I did not want or need "reasonable accommodation" for my handicap.)

The employer's duty is not triggered unless the employee or his representative "provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation [or no accommodation wanted]." *Taylor*, 184 F.3d at 313; *See also Summers v. A. Teichert & Son*, 127 F.3d 1150, 1153 (9th Cir. 1997) (holding no triable issue of fact existed where employee had not asked for accommodation); *Well*s, 2005 WL 2035066 at *6 (explaining that employee suffering from dementia did not request a reasonable accommodation).

Affirmative defense – USERRA violation, Burke was a disabled veteran who I tried to protect and suffered adverse action because of my protected active.

Affirmative Defense - Harassment - I said I did not want "it."

Brenda Burke who was also subject to the DRAC "reasonable" accommodation process. 19 March 2013 (exhibit 26), "You fired Brenda Burke on light duty. I don't want to be on light duty."

Affirmative Defense - Disparate treatment - Burke was given 30-day administrative level when she was discharged because of her disability with no right to participate in the DRAC process. And, SMO Dow filed a false threat report against her subjecting her (and me) to a Federal Law Enforcement action and 14-day suspension after discharging her because of her disability.) Brenda Burke's testimony that she suffered the same discrimination and retaliation in the same HWE "would have changed the results of the hearing."

Affirmative Defense - The Court excluded Disabled Veteran Lester Cornette, who suffered similar injuries. See Civil Case *Cornette v. USPS*, C12-01146-JLR, asking the Equitable Relief – (a) Have Ken Dow removed as a Supervisor... (b) Have Jim Norris relieved as Lead Manager..." (See exhibit 18, similar employees adversely affected by SMO Dow.)

20 March 2013, I requested scheduled leave and received FMLA 110000402232 approval from SMO Dow for 20-21 March.

Affirmative Defense - Approved FMLA leave.

25 March 2013 (exhibit Z), EEO 1E-985-0006-13, page 3, - "Specific Issue(s): You disagreed with the processing of your prior complaint and challenged the [NEEOISO] authority to process your complaints... If you do not agree with the defined accepted issue(s), you must provide a written response specifying the nature of your disagreement..."
Affirmative Defense - Denial of the right to agree with the "accepted" EEO Complaint issues.

29 March 2013, I went to my Medical Provider for anxiety and hypertension (Assessment Plan with Psychology visits). Because I was being denied leave I asked for and received a "doctors' note for stress leave caused by the continued HWE.
Affirmative Defense – On-the-job Stress from the HWE.

1 April 2013 (exhibit Z), Monday, I planned to give SMO Dow my doctor note for leave starting Tuesday. However, SMO Dow started the day harassing me and I did not want to stay the day. I gave SMO Dow the doctor's note and a PS Form 3971 Leave Request for 32 hours. SMO Dow signed and approved as "scheduled" annual leave (exhibit Z, 1 Apr 13).
1 April 2013 (exhibit Z), email SMO Dow of MMO Marzec, - "McDermott just had be a 3971 for unscheduled sick leave and walked out the door." 2 April 7:08am, SMO Dow, - "Mr. McDermott used unscheduled sick leave... how many unscheduled absences before I issue a suspension?..." MMO Marzec, 2:58pm, - "Ken, Please write a statement as to what you observed regarding the machete..." MMO Marzec, 3:49pm, - "Again, give me the details, and copies of the leave slips..." 3 Apr, SMO Dow, - "... I approved the 32 hours of scheduled annual leave..." 4 Apr, 7:46am, SMO Dow filed a false Threat Assessment Notification. 4 Apr, 8:27am, Inspector Brooks, - "I have spoken to Ken Dow regarding M. McDermott. McDermott is currently on leave this week and is scheduled to return next week. We will be speaking with him first thing on Monday [8 April after I return from stress leave]. There was no threat communicated by McDermott..." 8 Apr, 1:56pm, SMO Dow to MMO Marzec, - "I gave Lance McDermott the letter for him to request light duty or DRAC for his condition, he stood silent. ...he would not say any thing he just kept staring at me."

2 April 2013 (exhibit Z, dtd), the Agency violated my disability right by denying me future promotion or "any" job based on my disability. Email MM

Norris, 2 April, - "... I recommend that we work towards change that ensures any individual seeking promotion can actually to the physical requirements, including vision..."

2 April – 4 April 2013, (while I was on stress leave) Maintenance Manager Jim Norris investigated my Official Personnel File (OPF), my Personal Medical File including the "doctor's assessment" and determined that I did not disclose that I was color blind. (exhibit Z, email 2 Apr 10:46am)

Email MM Norris to Western Area Henderson, Subject: "Safety concern," 2 April 2013 (exhibit Z, dtd), - "I have a situation here... I found the following: #1 is the medical questionnaire an individual fills out ...#3 is the actual doctor's assessment... I have an employee that is color blind... I recommend that we work towards change that ensures any individual seeking promotion can actually to the physical requirements, including vision..."

Email LR Manager Hanschen, 2 April 2013, - "... I'm sure anyone who is color blind realizes that if may be an issue no matter what job they are offered at the Postal Service. Feedback from a medical expert is needed. My two cents."

My Supervisor SMO Ken Dow tried to suspend me for taking the doctor approved leave (exhibit Z, 2 April, SMO Dow, - "Mr. McDermott used unscheduled sick leave yesterday 4/1/2013... how many unscheduled absences before I issue s suspension?..."

2 April 1:36pm (exhibit Z), SMO Dow to Inspector Corf, - "Can an employee have a machete in the employee parking lot? That he removes from his car on his lunch time?" Inspector Corf, - "No. No weapons on postal property..."

3 April 8:51am (exhibit Z), email SMO Dow to OIG Inspector Casey, from 7 November 2012, - "Last week I witnessed Lance McDermott taking wood out door 19, I told him that was stealing..." (Doing what I had been doing for years - Taking broken wood out of the dumpster on my break time to use as fire wood.

3 April 2013, 5:07pm (exhibit Z), emails SMO Dow, MMO Marzec, Attorney Tita, for EAP Contractor now Threat Assessment Team Leader Dr. **Picard** (and, District Complement Coordinator and eResign Coordinator), SMO Dow, - "McDermott is getting to be a concern. I told Dow to call 911 the next time he sees him with a machete on the property." Dr. **Picard**, - "Also, go ahead and fill out an incident report." MMO Marzec, - "Go to the District home page and fill out an incident report on what you observed with Lance and the machete. Click on Threats/Conflicts Report, log on, and fill out the report. I would do it, but is specifically states that the immediate supervisor should do it."

4 April 8:27am (exhibit Z), email Inspector Brooks to SMO Dow, Subject: Re: "Threat Assessment Notification," - "I have spoken to Ken Dow regarding Mr.

McDermott.  McDermott is currently on leave this week and is scheduled to return next week.  We will be speaking with him first thing on Monday.  **There was no threat communicated by McDermott…**"

Affirmative Defense –"…was no threat communicated by McDermott…"

(6)  8 April 2013, SMO Ken Dow again violated by disability rights (after the harassing Inspectors detained, interrogated, search and take my property, and left me agitated, i.e. vulnerable. ) by giving me a "notice" demanding that I "wholly voluntarily on your part" for reasonable accommodation or be given discipline – Enforced Leave (because of my handicap). \ 29 C.F.R. Pt. 1630, App. § 1630.9; *Barnett*, 228 F.3d at 1114.  Where there was a breakdown in the accommodation process, "'courts should attempt to isolate the cause of the breakdown [in the interactive process] and then assign responsibility' so that '[l]iability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown.'" *Barnett*, 228 F.3d at 1115 (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135–37 (7th Cir. 1996)).

The Enforced Leave "Notice" violates 5 U.S. Code § 4303(b)(1) entitled to—

(A) 30 days' advance written notice of the proposed action which identifies—

(i) Specific instances of unacceptable performance by the employee on which the proposed action is based; and

(ii) the critical elements of the employee's position involved in each instance of unacceptable performance;

5 CFR § 339.206 Disqualification - pose a reasonable probability of substantial harm.

"The Postal Service was not required to engage in the interactive process because Plaintiff did not make a reasonable request for an accommodation. A disabled person bears the initial burden of requesting a reasonable accommodation." - *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996).

8 April 2013, (worked Sunday 7 April) when I came back from Stress leave the Inspectors came in to the facility and demanded that I give them my machete.  I asked why and the Inspectors said that they did not need any written authority and reasonable or probable cause.   They encoded that they had "right" to search my car (not on Postal Property).  The leased facility has a public parking lot that is not posted with the required Poster 7 authority to search in (secure postal property).   I stated that they did not have a search warrant and that they were part of the

harassment by the same criminally inclined governmental officials that they, Federal Law Enforcement Officers, were directly working for.  I even reported clear criminal acts of the same Management.  They said they would look into the harassment and criminal acts (never did).  I agreed to a search after the Inspectors agreed to return my property after work.  After searching my car they took a machete and pickaxe and left. (Note:  Handbook ASM 112.31 Documentation, - "All delegations of authority must be officially documented.")

8 April 2013, After the Inspector left with my property and after that harassment SMO Dow (feeling safe) gave me a letter (exhibit Z, 8 April 2013) demanding that I "wholly voluntarily on your part" for reasonable accommodation or be given discipline – Enforced Leave. - "Recently, you informed management that you had a medical condition (color blindness) [handicap] … Any request for light duty and participation in the reasonable accommodation process [for a disability] is wholly voluntarily on your part… you respond no later than April 12, 2013 [4-days]… your refusal to take advantage of wither avenue may result in your placement in an enforced leave status [constructive suspension]…"  Noting that SMO Dow created dirty job route of vacuuming equipment (exhibit Z, 8, 9 Apr 13), extra work, when I was already stressed-out (stress leave) from doing the work of four MPEs with no "approved" scheduled time off.

Affirmative Defense –

5 U.S. Code § 4303 - Actions based on unacceptable performance **(b)(1)** An employee … is entitled to— **(A)** 30 days' advance written notice of the proposed action which identifies (i) specific instances of unacceptable performance by the employee on which the proposed action is based; and **(ii)** the critical elements of the employee's position involved in each instance of unacceptable performance.

The "Notice" does not; (1) give me 30 days to respond; (2) "specific instances;" or (3) the critical elements involved in each instance."


EEO Affidavit Inspector Brooks, 16 July 2013 (exhibit Z, 8 April 2013), - "…McDermott alleges discriminatory harassment based on Retaliation when:  On April 8, 2013: a.  Inspectors asked whether he had a machete in his car; indicated they had a right to take and demanded it out of his car… I told Mr. McDermott that I intended to seize the machete at that time… allow me to search his personnel vehicle for the machete and weapons.  I located the machete and seized it… No report was made, due to this issue not being associated to a threat…"

Affirmative Defense - SMO Dow filed a false Threat Assessment Notification (18 USC 1001).

Affirmative Defense - Privacy Act violation - Medical Records and the OPF are restricted access, HRSS Filed User Guide (exhibit Z, 2 Apr 13). *Moore v. USPS*, 609 F.Supp. 681 (E.D.N.Y.1985).)

Affirmative Defense - Then MMO Dave Marzec, SMO Dow, Inspector James Spratt, Inspector Michael Corf, Threat Assessment Team Leader Dr. David Picard (former EAP contractor), Attorney Michael Tita, Inspector Michelle Brooks, and Inspector Casey Snyder conspired to violated my rights in unlawfully conducting a "Threat" investigation for my use of a machete off postal property to cut black berries, before picking season, long the Green River during my off-duty lunch time.

Affirmative Defense - I was not using the machete on postal property.

Affirmative Defense - I was not using the machete on the clock.

Affirmative Defense - I did not threaten anyone with the machete or the entrenching tool.

Affirmative Defense - I was on stress leave SMO Dow and did not wait until "the next time" I used the machete to call Postal Inspectors.  Postal Inspectors, 4 April 2013 (MSPB exhibit 110), - "There was no threat communicated my McDermott [on stress leave] with the machete, he was only seen carrying it from his car to the green belt along the property."

Affirmative defense – lack of good faith.  I was subjected to a Federal Law Enforcement (adverse) action and not the DRAC voluntary inter-active process.)

Affirmative Defense - Inspectors violated my *Wiengarten* Rights because no Union Steward was present to witnesses.

Affirmative Defense - Inspector violated my *Miranda* Rights.

Noting that the 8 April 2013 (exhibit Z), "notice" required respond by April 12, 2013 (4-days) and the 8 May 2013, "notice" (exhibit Z) gave me till 15 May (7-days) to respond.

Affirmative Defense - The Agency did not give me the "required" 30 days to respond.

8 April 2013 (exhibit Z), email OIG Casey to Inspector Brooks, investigating my military record found the "information" that I was an "Affiliation Service Retiree."

Affirmative Defense - Postal Inspectors knew that I was retired Army National Guard.

Enforced Leave -  MM Norris' Response to RFI, 7 June 2013 (exhibit Z, dtd), MM Norris, #2 - "There is no policy for enforced leave." ... #5 - "Jim Norris does not have any investigation records."   "...it is clear that the just cause standard

requires the Postal Service to conduct a through and objective investigation before imposing any discipline…"- CBR Jan-Feb 2005, citing AIRS #41233 - USPS #H00C0$h-D 03209250 6/28/2004.

MSPB Hearing, SF-0752-13-0633-I-1, 21 November 2013 (exhibit Z), Verbatim Record Transcript, page 25, - "So did the Agency consider allowing Mr. McDermott to just continue to perform his job without entering into discussions about his condition?  Norris, A - 'No.'" Page 27, A - "I believe it would have been fairly easy to accommodate him…"  Page 45, - "Q – What policy covered the enforced leave? [Norris] A - … my response was, there is no policy for enforced leave.  My understanding, it's a legal matter."  Page 95, SMO Dow, - "When you issued that letter, were you aware that Mr. McDermott had engaged in prior EEO activity?  [A] I suppose so…"

Affirmative Defense - No policy, rule or regulation for enforced leave.

Affirmative Defense - Without rule or regulation Federal Employees are not performing their duties within the 28 USC 2679 "scope" of employment.

5 U.S.C. 7513(a), "Under regulations prescribed by the [OPM], an agency may take an action covered by this subchapter … only for such cause as will promote the efficiency of the service."

Affirmative Defense - The OPM (and the agency) does not have any regulations for enforced leave.

Affirmative Defense - The OPM has not approved a Personnel Action Code to use on the required Form PS-50, Notification of Personnel Action, Reason Code (exhibit Z, 30 May 2013).

Affirmative Defense - No OPM required PS 50 was created placing me on enforced leave.

Affirmative Defense - My OPF (exhibit Z) does not show that I was on 9-months of enforced leave.

Affirmative Defense - The Agency failed to show that the enforced leave was for the "efficiency of the service.

5 U.S.C. 7513©, requires the agency (by regulation) to provide an opportunity for a hearing.

Affirmative Defense - The Agency did not my constitutional right to notice of the just cause charge and hearing.

*Conaway v. USPS,* 93 MSPR 6 (2002),  - "… Board precedent indicates that the employee must first show that a reasonable accommodation is possible before the employer may be required to engage in the interactive process. *See Jackson v. USPS,* 79 MSPR 46, 54 (1998)…"

Affirmative Defense - My Employer did not first show that reasonable accommodation was possible, before, requiring me to engage in the "process."

Affirmative Defense - I could not "show" and the Agency did not "show" that a reasonable accommodation was possible for my disability.

Affirmative Defense - Both the Court(s) and the Agency cannot show any regulation or law that places a "must" obligation/duty on me.

5 USC § 2302(b)(10), - "discriminate for or against any employee or applicant for employment on the basis of conduct [handicap] which does not adversely affect the performance of the employee or applicant or the performance of others." Or on the basis of handicapping condition, as prohibited under section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791.

10 April 2013, I got another doctor's note to take stress leave (after federal law enforcement officials harassed me). SMO Dow approved the leave 14-18 April as scheduled (exhibit Z)

15 April 2013 (exhibit Z), after complaining of FMLA violations to the local DOL I received a right-to-sue letter from DOL for the FMLA violations.

18 April 2013 (exhibit Z), Email SMO Dow to MMO Marzec, - "I did not realize that if an employee lies on his application and that once it was discovered that employee would be removed from the postal service and no benefits would be paid." MMO Marzec, - "What are you talking about? What lie? Is there proof?" SMO Dow, 19 April 2013, - "He did not state that he was colored blind or could not distinguish colors when he applied for work with the Postal Service."

Affirmative Defense –On-the-Job HWE Stress - Doctor approved stress leave.

Affirmative defense - conspiracy to take my retirement (old age) benefits because of my disability and accusing me of criminal act - false statement on application, 18 USC 1001. The same criminal false statements I alleged against the same Government Officials performing criminal act and accusing me of criminal and misconduct acts to covering up their own misconduct.

25 April 2013 (exhibit Z), I received a response from the Postmaster General, Judicial Officer, and NEEOCISO Executive Manager William Caldwell that I cannot "mix criminal actions" or "criminal matters" in my EEO Complaints (exhibit C). EEOC Decision, 1E-985-0004-12, 9 August 2013 (MSPB exhibit 81), page 6, - "…Complainant alleges violation of the 'Constitutional fair and equal clauses' of untrained (retired Federal employees hired in violation of 18 USC 207) out-of-state (territorial jurisdiction) contractors (mercenaries) with no statutory jurisdiction doing federal investigations…" See EEOC Office List and

Jurisdictional Map and list of retired USPS Employees - Contract EEO Investigators (exhibit Z, 25 Apr 13).

Affirmative Defense - Protected activity reporting criminal acts and constitutional violations.

3 May 2013 (exhibit Z, with 2 April 2013 emails), MM Norris to MMO Marzec, Subject: Safety concern, - "FYI."

5 May 2013 (exhibit Z), I was required (in writing) to work out-of-schedule with a starting time of 8am.

8 May 2013 (exhibit Z), MMO Marzec gave me another "notice" because of my "permanent work restrictions" giving me till 15 May (7-days) to "completely voluntary" for a "reasonable accommodation" process or be given – unpaid Enforced Leave.   I was also given another non-doctor approved work restriction.

8 May 2013 (exhibit Z), MMO Marzec, - "As previous communication, I invited you to request light duty and/or reasonable accommodation as a result of information that we received that you have permanent restrictions related to color blindness…is completely voluntary on your part …" (See SMO Dow email to MMO Marzec, 9 May 13, - "MSPB Information Sheet No. 11 "Enforced Leave.")

Affirmative Defense - violation of the Disability Act.

Affirmative Defense –

5 U.S. Code § 4303 - Actions based on unacceptable performance **(b)(1)** An employee … is entitled to— **(A)** 30 days' advance written notice of the proposed action which identifies (i) specific instances of unacceptable performance by the employee on which the proposed action is based; and **(ii)** the critical elements of the employee's position involved in each instance of unacceptable performance.

The "Notice" does not; (1) give me 30 days to respond; (2) "specific instances;" or (3) the critical elements  involved in each instance."


Discrete Act -20 June 2013, MM Norris sent me a Bid Job Change, - "Effective June 29th, 2013 your start time will change to 0500.  Your days off will remain the same."

Because of that letter I returned to work, Sunday, 30 June 2013, because I thought was agreed to by the Maintenance Craft Director (start time 5am), with no SMO Dow working on Sunday and I worked all day no problem.


10 May 2013 (exhibit Z), Notice of FMLA Eligibility, - "Other information needed:  Letter from Employer dated 8 May 2013 - enforced leave."  I was granted

FMLA protection for my "serious medical" condition that I might be placed on Enforced Leave for.

15 May 2013 (exhibit Z), the National HRSSC FMLA Office (contractor) informed the District OHS Office that I needed Work Restrictions for an on-the-job injury. - "the pertinent information to [Seattle OHS] for further evaluation. OHS will then contact the appropriate manager ... to refer the employee to the [DRAC]…"

Affirmative Defense - The NRSSC FLMA Office "referred" me for Work Restrictions for my FMLA approved handicap.

16 May 2013 (exhibit Z), SMO Dow required in writing that I work out-of-schedule 21-22 May starting at 10:30am.

19 May 2013 (exhibit Z), Class Action RFI, - "1. A copy of the Handbook PO-101 Retail Optimization Plan referred to in as the "Optimization Node Study" in the Installation's Head's letter dated 23 February 2010 and the Public Notice dated 16 March 2010, from Erine Swanson, District Communications Program Specialist… 3. A copy of the decision that declared the SeaTac AMC and Post Office building excess to the needs of the Postal Service… 'This has been sent to HR'…"

MM Norris' Response, 23 May 2013 (exhibit Z), - "… In response to your request for information, we are asking that you respond to the following so your request can be acted upon. 1. Please advise as to the relevance of this request to a pending grievance. 2. What is the nature of the grievance?..."

Affirmative Defense - In retaliation for union activity (RFIs) MM Norris placed me on Enforced Leave 30 may 2013.

19 May 2013, email SMO Dow to MMO Marzec, MM Norris, Subject: "McDermott disability retirement papers." "Looks like another EEO Complaint? Lance is asking for 2 hour for tomorrow, I can give him 2 hours on Tuesday. He is the only one on duty tomorrow."

Affirmative Defense - The Agency did not process my request for disability retirement and placed me on enforced leave.

21 May 2013, I requested information (RFI) on the PO-101 Retail Optimization Plan that closed the SeaTac Post Office and PO-401 AMP Plan that closed the SeaTac AMC.

Affirmative Defense - All requests were denied and I was placed on enforce leave 30 May.

23 May 2013 (exhibit Z), Request and approved for 8-hours of FMLA Leave, #110000402232 to see the doctor and get more medical documents that SMO Dow was requiring for my FMLA leave usage.

23 May 2013, Step 1 Grievance Summary, Management Position, - "The supervisor granted the protected FMLA leave that the employee requested. The employee requested that the Postal Service grant him (paid leave) which was denied because employee refused to provide the requested documentation."

23 May 2013 (exhibit Z), "Request for Relevance Explanation" MM Norris, - "The attached information request (RFI), dated 19 May, seeks a variety of information. In response to your request for information, we are asking that you respond to the following…"

23 May 2013, I used the FMLA leave. 28 May 2013, Email SMO Dow, - "On 5/26/2013 at 14:25 I reminded Lance McDermott that if he wanted paid leave for his call in on 5/23/2013 he needed to provide me with medical documentation. He said (it's FMLA) I said (I know it's FMLA if you want FMLA LWOP I can do that, if you want to be paid I need the documentation) he said (are you threatening me Ken). I did not respond to him I left the building to go home. If Mr. McDermott does not provide the documentation by 5/31/2013 I will do a pay adjustment and changing the FMLA sick leave to FMLA LWOP."

Agency FAD 1E-985-0006-13, 4 November 2013 (exhibit C), page 21, #23 – "The complainant testified he took an FMLA leave day on May 23, 2013, and Mr. Dow demanded medical documentation or he would not get paid…"

EEO Investigation Affidavit, 1E-985-0006-13, MMO Marzec, 12 July 2013, page 6, Q34, - "Mr. McDermott contends he has been denied FMLA leave during his 'Enforced Leave' period." A34, - "Yes he was denied FMLA leave during his Enforced Leave period. That was because he was already on Enforced Leave before he made the request for FMLA leave…"

28 May 2013, I asked for a day off to see Dr. Seidemann for stress.

30 May 2013 (exhibit Z, dtd), I was given "Enforced Leave" by MM Norris, - "…due to your medical condition (color blindness)" and SMO Dow ripped up my request for PS Form 3971 FLMA Leave (exhibit Z). And, SMO Dow changed my paid FMLA sick leave 23 May 2013 to LWOP - Leave Without Pay (stole my pay).

30 May 2013 (exhibit Z), email SMO Dow to MMO Marzec, - "At 08:25 Lance McDermott was called to the office, I gave him the enforced leave papers, I gave him a 3971… Lance handed me the 3971 with annual leave checked and FMLA written in the comment box… I tore the other 3971 up and handed it back to him… I then asked SDO Johnson to witness me giving Lance a direct order and if he refused to obey he could be removed from the Postal Service…"

30 May 2013 (exhibit Z), email SDO Johnson, - "… I observed Mr. Dow tore up the 3971 that Mr. McDermott handed to him because he checked the box other and wrote 'FMLA'…"

31 May 2013 (exhibit Z), email SDO Johnson (witness for SMO Dow giving me the Enforced Leave "Notice") to Inspector Brooks, - "Today, as I mentioned to you over the phone, Maintenance employee - Lance McDermott was issued an Enforced Leave Letter… I observed employee McDermott displayed an unusual behavior [for being fired?] - very tensed, shaking, looked very upset… Though there was no altercation [I did not say a word so SMO Dow could not file a false Threat Report] no immediate threat, employee McDermott displayed behavior that makes me uncomfortable…"  ((1) EEO 1E-985-0006-13, FAD page 44 (exhibit Z, 31 May), - "Ms. Johnson testified no spoke to her about the harassing conduct toward the complainant and she is not aware of any alleged harassing conduct toward him…" (2) Email 16 May 2013 (exhibit Z, 31 May), SDO Johnson, - "… He started to tell me that he is being placed on an 'Enforced Leave' by SMO Dave Marzec.  He stated that he has FMLA due to his Back and he has Medical Certification to prove it… I asked him how he can perform his work as a mechanic if you cannot distinguish colors?...  I had to end the conversation by telling him that he needs to follow the chain of command…" (3) 23 May email SDO Johnson (exhibit Z 31 May), - "I saw Maintenance Employee Lance McDermott using the computer…" 29 May SMO Dow, - "…I'm giving you a direct order to stay off the computers…"  (4) SDO Johnson, 4 June, - "… I was with SMO Dow when he met with Lance McDermott.  Mr. Dow questioned Mr. McDermott if he was again using the computer … McDermott did not say a ward, instead he pulled his notbook from his shirt and started to write…"

Enforced Leave - MSPB Judge Richard Vitaris, Navigating an Enforced Leave Appeal, February 2008, The Army Lawyer, DA PAM 27-5--417 (MSPB exhibit 115), page 1, - "Enforced leave cases are frequently misunderstood by agency attorneys and personnel specialists.  Understanding the type of situations where enforced leave comes up will help the agency avoid problems as well as enable the agency to correct mistakes before they become costly…"  Page 3, - "…involuntary … enforced leave is constructive suspension … The distinction is simple, but essential.  The First type is where an employee is at work and leaves.  The second is where an employee is not at work and is prevented from coming back."  Appendix, page 9, - "… If the employee was ready, willing, and able to work, the agency will be obligated to pay back pay."

I have a disability and FMLA protection for that any leave taken for that disability/serious medical condition preventing me from working.  I was ready, willing, and able, to work with or without accommodation (as approved by an

agency doctor in 1996) for my disability and was involuntary given constructive suspension because of my disability.  I was fit-for-duty and denied return to work despite the Agency Doctor's 1996 (exhibit 104), OHS Nurse's February 2013 (exhibit 55), and my doctor's assessment August 2013 (exhibit 89, 116 (OHS RTW letter)) that I could RTW.  I was "allowed" to return to work with my disability without an accommodation to perform my job.  And, returning to work I was given the same work restriction, "no working on color wiring," I was given May 8, 2013 (exhibit 17) that still prevents me from doing my job repairing equipment (that do I can do "safely" without accommodation).

The added insult was that after I, the only MPE on Day-shift for over 6-months, was placed on enforced Management brought in two younger MPEs who were being forcibly displaced from the Everett P&DC into the PMA.  And, Tomas Ruiz, who had been gone for over a year "training" to be a Maintenance Supervisor - 3-MPEs to replaced me.  See EEO filed about the promotion of and the fact the less qualified Tomas Ruiz is now my Supervisor.  With the same HWE acts such as saving heavy work that hurts my FMLA bad back, if I take any unscheduled leave.  FMLA protection does not do you good if you do not have any leave, having burned over 900 hours of saved leave while on unpaid enforced leave.

Affirmative Defense - Age discrimination.   After be removed Management used younger employees Scott Myrwell and Manny Castillo on overtime several weeks to do my job.  After several weeks Management brought in two younger employees from the Everett P&DC being "closed" to do my job.  And, MPE Tomas Ruiz (3 MPEs) on tour II.

Affirmative Defense - violation of the FMLA - Denial.

Affirmative Defense - violation of the Disability Act - because of my handicap turned disability.

Affirmative Defense - violation of the FLSA - Theft of pay.

Affirmative Defense - With no rule or regulations (scope of employment) that imposes penalties for anyone who refuses to submit the "voluntary" interactive process.

Affirmative Defense - The Law requires a "good faith" process.  SMO Dow, MMO Marzec, and MM Norris knew of the stress I was suffering from the HWE.  They knew that I was taking stress leave when SMO Dow  (with no authority) gave me the first "enforced leave" letter, 8 April 2013, giving me 4-days to ask for reasonable accommodation.  How could I be "required" to ask for accommodation if I did not have a disability?   Good Faith Process?

Affirmative Defense - The Law requires non-discrimination of individual with handicaps that are not disabilities - i.e. prevent them from working.  The Law says that once a handicap prevents an individual from working it becomes a disability.

Affirmative Defense - The Agency never submitted any evidence that I was not fit for duty. Despite my handicap I was fit for Duty and the agency prevented me from working or return to work, *Tylor v. USPS*, 62 MSPR 509 (1994). "…the real issue - and the outcome determinative issue on back pay - is whether the appellant can work." - *Simonson v. USPS*, 85 MSPR 189 (2000).

(1) PS Form 2485, 24 October 1996 (exhibit Z), - "No Medical Risk/Restriction:  Examinee is medically qualified to perform essential functions of the position without accommodation."

(2)  Agency MSPB No. SF-0752-13-0633-I-1, Statement of Facts, 25 September 2013 (Doc. 21), (6), - "…February 15, 2013, McDermott submitted a Duty Status Form to the Agency [OHS] stating that he could return to work…"

(3)  1 September 2013, I tried to return to work with RTW documents given to me by OHS Nurse and the HRSSC FMLA Office filled out by my doctor saying that I could RTW without accommodation.  SMO Dow would not except my fit-for-duty documents and called Federal Law Enforcement Officers to "escort" me out of the building.

Affirmative Defense - I was fit for duty and the Agency never proved that I was not.  The Agency's affirmative defense was that it did not "know" if I could perform my duties in a safely.  (MM Norris, (exhibit Z, 6 March 2014), - "… Your safety record is commendable and it is my goal to ensure you continue your satisfactory record."

EEOC Decision, 1E-981-0044-08, 10 November 2008 (exhibit Z), - "…The Commission finds that the agency has mischaracterized complainant's claim.  A fair reading of the complainant … reveals that complainant is, in fact, alleging…"

Federal Rules of Evidence (FRE) Rule 804(d)(3) Statement against interest, - "A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, …would not have made the statement unless believing it to be true."

The Guarantees of the Sixth and Eight Amendments cannot be satisfied without a reasonably conscientious investigation into each issue "necessary to ensure that the trial is fair.  *Strickland v. Washington*, 466 U.S. 668, 685 (1984).  *Tower v. Glover*, 467 U.S. 914 (1984).

Affirmative Defense - The Agency mischaracterized, lied about, my claims.

2 June 2013 (exhibit Z), I called the Employee Leave Request 1-800 number and requested FMLA leave for 2 June - 3 July.  An auto-ERMS email Notification with "Action Required."  My auto-PS Form 3971 Leave Request for FMLA 110000402232 was disapproved by SMO Dow "employee is on enforced leave."

Affirmative Defense - Denial of FMLA Leave.

3 – 4 June 2013 (exhibit Z), SMO Dow, HR Judy Ngo, and HR Alicia Sanchez denied my on the job injury (Injured On Duty - IOD), FMLA, and OWCP claims.

Affirmative Defense - Denial of on-the-job injure of stress from the HWE.

5 June 2013 (exhibit Z), SMO Dow changed, with a TACS AdjustPay, my approved FMLA paid leave 23 May to unpaid LWOP.

Affirmative Defense - FLSA Theft of pay.

4-6 June 2013 (exhibit Z), Maintenance Craft Director Wendy Angelini met with MMO Marzec, 4 June (exhibit F), - "Per our conversation today at 1:40pm I will discuss the issue of your pay status with Management.  You requested to be in Annual Leave, FMLA, for 160hrs, for an On-the-job injury…" 6 June, - "I discussed your leave status with MMO Marzec…. However, he will not change it to FMLA.  He states that 'since the postal service put you out on enforced leave and the reason for the enforced leave has nothing to do with the FMLA case on file.  You cannot claim FMLA for this time off.'  He went on to say, they (management? Norris) were not going to let him (you tell the postal service what kind of leave he (you) get to take.  Anyway, something else for your grievance for the postal service…"

Affirmative Defense - Denial of FMLA.

7 June 2013 (exhibit Z), MM Norris RFI Response, - "…Q2 - Copy of policy for enforced leave… A2 - There is no policy for enforced leave… Q5 – Copy of all investigation records on McDermott by Jim Norris… A5 - Jim Norris does not have any investigation records…"

Affirmative Defense - No policy, rule or regulation for enforced leave.

7 June 2013 (exhibit Z), EEO #1E0985-0006-13, page 4, - "… If you do not agree with the defined accepted issue(s), you must provide a written response…"

Affirmative Defense - Denial of right to agree with the issues.

8 June 2013 (exhibit Z), Email SDO Johnson, - "… questioned him why he is inside the building on his designated day off [enforced leave]. … Union Steward Lester Cornette stated that he had permission from his Manager, Dave Marzec… I instructed Mr. McDermott to leave…"

Affirmative Defense - Denial of the right to met with union representative.

13 June 2013 (exhibit Z), email SMO Dow to MMO Marzec, MM Norris, - "Lester Cornette is claiming that Mr. McDermott has an active claim with the Post Office for light duty, he says Dave Marzec has it.  If it is true I need a copy for this RFI…"  MMO Marzec, - "I do not have it…"

Affirmative Defense - Denial that the Agency "gave" me light duty.

14 June 2013 (exhibit Z), Nurse Daniels, - "If you look at the Duty Status dated 02-15-13 (attached), next to Not Work Related is 'CA2/CA2a - decision pending'. Perhaps Mr. Cornette is assuming a claim was filed."

Affirmative Defense - Denial of CA2 for on-the-job injury.

19 June 2013 (exhibit Z), Seattle PMA Health & Safety Inspection Report, #8, - "Mail Processing: Bug Zappers not plugged in, mosquitos are biting."

Affirmative Defense - Agency was in fact hiding evidence that employees were suffering injuries and retaliation against employees who try to "fix" the injuries.

20 June 2013 (exhibit Z), MM Norris sent me (while on unpaid enforced leave) a Bid Job Change, - "Effective June 29th, 2013 your start time will change to 0500. Your days off will remain the same."

Affirmative Defense - The only Notice from the Agency I received while on enforced leave that I though was telling me to return to work with a 5am start time.

26 June 2013, MMO Hoff, sent me a Maintenance Preferred Duty Assignment Selection Form (13 April 2012, MMO Hoff denied my "Open Season" Selection Form.)

28 June 2013 (exhibit Z), EEO #1E0985-0006-13, page 4, - "... If you do not agree with the defined accepted issue(s), you must provide a written response..."

Sunday, 30 June 2013 per-MM Norris' 20 June 2013 letter, I returned to work (30 days agreed to by MMO Marzec, 4 June 2013), with no SMO Dow working on Sunday and worked all day no problem.

Affirmative Defense - I was ready and able to return to work and did so in accordance with MM Norris' letter. (5 U.S.C. § 8151(b), provides disability restoration rights.)

Monday, 1 July, SMO Dow called the Kent Police at 6am and tried to have me removed. Kent Police text Report, 1 July 2013 (exhibit Z), - "NOW, EX EMP IS AT LOC, IS NOT SUPPOSED TO BE AT LC ... DOSEN'T FEEL COMFORTABLE. ... EMPLOYEE ALLOWED ON LOCATION."

Affirmative Defense - The Kent Police left after I showed that I had FMLA protection.

Affirmative Defense - SMO Dow falsely (18 USC 1001) say to the Kent Police that I was an "ex" employee.

1 July after the Kent Police left SMO Dow gave me a signed Leave Request PS Form 3971 (ERMS -Notification, Action Required) 95039 – "DOC REQ – Greater than 24 hours – illness or injury Occupational Condition New Injury. ... Disapproved - employee is on enforced leave." I gave SMO Dow a hand written

Leave Request for FMLA Leave and SMO Dow wrote "Disapproved - employee on enforced leave" (exhibit Z, 1 July 2013).

Affirmative Defense - Denial of FMLA leave.

SMO Dow then called the Postal Inspectors who (wearing guns and flack jackets) detained, questioned me and search my backpack, toolbox, locker and car in front of my fellow employees for add embarrassment/harassment. They took my keys, Employee Identification and told me not to come back. The Inspectors told me they did not care if I had FMLA protection – "Management" wanted me removed.

Affirmative Defense – FLSA violation - I did not get paid for working Sunday or Monday.

After SMO Dow filed the first false Threat Report I was charged, investigated and searched by Federal Law Enforcement Officers for "suspicious behavior," "illegal entry," and "trespassing on federal property." Case 1898225-WPV, Memorandum of Interview, - "McDermott was interviewed by Inspector Brooks and Inspector Dahlin … regarding his **illegal entry** into the postal PMA facility and his **suspicious behavior**. Mr. McDermott was on enforced leave and was not supposed to be at work. Mr. McDermott said he was in the facility legally and he was never told he could not return to work. Mr. McDermott said he was being treated unfairly by postal management. ….Mr. McDermott was informed he was **trespassing on federal property** and was not to return until postal management authorized it. Mr. McDermott had his vehicle and belongings searched with no findings. Mr. McDermott was escorted from the facility." - Inspector Dahlin (exhibit Z, 1 Jul 13). (Note: Case 1898225-WPV, RFI 15 July 2013 (exhibit Z), SMO Dow, A5 - "By 'jacketed report' you are presumably referring to USPIS Investigative Memoranda (IM) or OIG Report of Investigation (ROI). No IM or ROI have been 'jacketed' in response to Mr. McDermott's behavior on April, 2013 or July 1, 2013." (exhibit Z, 1 Jul 13).

"… Inspector Brooks and Inspector Dahlin responded to the Kent PMA facility to **assist management in removing** Mr. McDermott off of Postal Property… Inspectors searched McDermott's backpack, locker, toolbox and personal vehicle and did not locate any weapons…" - Inspector Brooks (exhibit Z, 1 Jul 13).

Email Inspector Brooks (exhibit Z, 1 July 2013), - "Inspector Dahlin and myself responded to the Kent PMA this morning **to deal** with Lance McDermott. We searched… no weapons of any kind were found…"

Threat Report, 1 July 2013 (exhibit Z), - SMO Dow, "…I called Jim Norris and he said he would put in a call for OIG/Postal Inspector Officers…" See email 3 Apr 13 (exhibit Z), MMO Marzec, - "… Click on Threat/Conflict Report log on and fill out the report…"

Affirmative Defense - FLSA I did not get paid for working 30 June or 1 July 2013 and a grievance, MNT-75-13, was filed.  (exhibit Z, 1 Jul 13).

Affirmative Defense - Inspectors violated my *Wiengarten* Rights because no Union Steward was present to witnesses.

Affirmative Defense - Inspector violated my *Miranda* Rights.

Affirmative Defense - *Brady v. Maryland*, 373 U.S. 83 (1963) bad police defense for creating false evidence (that I was a threat) and withholding evidence (that I was not a threat) contrary to the Due Process Clause of the Fourteenth Amendment.

12 July 2013 (exhibit Z), letter to HRSSC FMLA Office, - "I wrote your office (received 17 June) about a perceived serious medical condition that Management believes prevents me from doing me job safely.  MM Norris has placed me in a bogus Enforced Leave using my own leave time..."

Affirmative Defense - The HRSSC FMLA Contractor did nothing.

RFI Response, 15 Jul 13 (exhibit Z), SMO Dow, - "...Probable cause' is not required..."

Affirmative defense – Federal Law Enforcement action based on false information and without reasonable or probable cause.

18 July 2013 (exhibit Z), Agency Response MSPB SF-0752-13-0633-I-1, - "...Appellant's military records, dated February 6, 2006 [actually OPF] show that Appellant's military service was limited to the period 1979 to 1981..."

Affirmative Defense - My true "military record" actually shows and additional 20 of Army National Guard service, Desert Strom activation and retirement from the NG.

30 July 2013 (exhibit Z), I applied for and 30 August 2013, was granted FMLA #110000501305 for stress from the HWE.  After submitting DOL Certification of Health Care Provider for Employee's Serious Health Condition, Form WH-380-E, - "hypertension/anxiety... Hostile work environment leading to anxiety..."

Affirmative Defense - FMLA approval for stress from the HWE.

6 August 2013 (exhibit Z), Step 2 Grievance Decision, MMO Sudduth, - "The FMLA LWOP [no pay] for leave n 5/23/13 will be changed to FMLA AL [paid]." (If MMO Marzec was my "Manager" why is MMO Sudduth settling grievances?)

Affirmative Defense - The Agency had to give back the money that SMO Dow stole from me.

6 August 2013 (exhibit Z), MSPB SF-0752-13-0633-I-1, Agency Reply, - "... because the Agency record revealed that Mr. McDermott was neither: (1) veteran preference eligible..."

Affirmative Defense - The Agency's Attorney lied (18 USC 1001) about my military record.

12 August 2013 (exhibit Z), APWU Step 1 Grievance, - "Lance McDermott was not paid for hours worked but was instead inputted by [SMO Dow] annual leave for June 30 2013 and July 1, 2013…"

Affirmative Defense - violation of the FLSA by not paying me for work suffered.

16 August 2013 (exhibit Z), Step 1 Grievance Summary, SMO Dow, - "Mr. McDermott was on Enforced leave and was not aloud in the building to work. He did not come to see his supervisor and he did not provide any (return to work) paper work…"

19 August 2013 (exhibit Z), APWU Step 2 Appeal, - "Lance McDermott was not paid for hours worked…"

21 August 2013 (exhibit Z), I called the HRSSC FMLA Office (contractor) about Return-To-Work (RTW) forms and received a DOL Form WH-380. I called the District Occupational Health Services (OHS) and the Nurse sent me RTW forms SPO69A and SPO69B (cc: D. Marzec MMO). I had my Doctor, 28 August 2013, fill out the SPO-69A, SPO 69B, OWCP-5a, and CA 2a.

Affirmative defense – I contacted the Agency's HRSSC FMLA Office and the District OHS Nurse and received RTW documents. MMO Marzec was informed (OHS letter 21 August 2013).

22 August 2013 (exhibit Z) MM Norris, - "It is my understanding that … the 'ability to distinguish colors' is included in your job description… participate in an interactive process to enable the Agency to determine if you can fulfill the essential functions of you position… either request a light duty assignment and/or reasonable accommodation."

Affirmative Defense - I was already give "work restrictions" by the OHS Nurse, 15 February 2013 and MMO Marzec 8 May 2013.

Affirmative Defense - 28 August 2013 (exhibit Z), I had my medical provider fill out RTW documents given to me by the OHS Nurse and HRSSC FMLA Office:

(1) The RTW Clearance given to my by the OHS Nurse. - "Nature of the condition that kept the employee off of work - 'Stress caused by hostile work environment.' … Date employee may return to work without work restrictions - '09/01/13…"

(2) RTW Clearance of Color Blindness, - "… Date employee may return to work without work restrictions - '09/01/13…"

(3) Work Restrictions - None

(4)  OWCP Form CA-1 for on-the-job injury, - "on-going stress/anxiety from Hostile Work Environment and Enforced Leave."

(5)  OWCP Attending Physician's Report, - "On the job stress caused by hostile work environment."

(6)  OWCP Form 5a, "Is the employee competent to WORK 8 hours a day? 'Yes.'"

Sunday, 1 September 2013, I returned to work with a DOL CA 1 and the RTW forms the SPO-69A, SPO 69B, OWCP-5a, and CA 20.  The Sunday Mail Processing Supervisor, Tony Kirk, (the only supervisor in the facility) was told by SMO Dow (phone call) not to accept my RTW Forms and demand that I turn in a written request for reasonable accommodation or light duty.  When I refused Postal Inspectors were called.  The Inspectors would not accept my RTW forms and tossed me out of the building.  See SMO Dow false Threat (Police) Report dated 16 September 2013.  I did not get paid for Sunday.  See 11 October 2013, Step 2 Grievance Decision, MMO Marzec, - "… Management contends that given these circumstances, he should not be paid for his unauthorized presence in the building…"

Affirmative Defense - I sent copies, certified, of my RTW documents to HR Manager Alexis Delgado.

Affirmative Defense - I also contacted the District Nurse and the HRSSC FMLA contractor.   The OHS Nurse Daniels and the HRSSC FMLA Contractor both told me there was nothing else they could do.

Affirmative Defense - 16 September 2013, SMO Dow filed another false Threat Report for the 1 September "Alleged Threat."  (Noting that "Threat Reports" are required to be filed before the Threat Assessment Team (TAT) or Federal Law Enforcement Officers take action (exhibit Z, 1 Jul 13).

19 September 2013, APWU Step 1 Grievance, - "Lance McDermott was not paid for hours worked…"

19 September 2013 (exhibit Z), NEEOISO Contract Investigator Bob Campbell's email (Privacy Act - unsecure RCampbell150@cfl.rr.com) to Engineer Don Hamel, - "…2. On multiple dates beginning January 2012 and continuing you have been subjected to harassment from Supervisor Ken Dow…"

Affirmative Defense - Reporting harassment in a EEO Complaint.

23 September 2013 (exhibit Z) Agency's 12 "General objections" to any discovery for the MSPB hearing, SF-0752-13-0633-I-1.

Affirmative Defense - Denial of Discovery.

11 October 2013 (exhibit Z), Step 2 Decision, MMO Marzec, Issue, - "… McDermott was not paid for hours worked…"  Management Position, - "…

Management contends that Mr. McDermott was not scheduled to work on September 1, 2013… Management contends that given these circumstances, he should not be paid for his unauthorized presence in the building…"

Affirmative Defense - Denial of pay - FLSA.

29 November 2013 (exhibit Z), letter to Seattle HR  Manager, - "I, Lance McDermott (EID 03272132), am ready, able and willing to return to work without accommodation or restriction after my FMLA approved leave…" (And, sent a copy to HRSSC FMLA Office, exhibit Z.)

6 December 2013, the HRSSC FMLA 'reviewed" my FMLA.

24 December 2013, HRSSC FMLA sent me a letter concerning my Class Action request, - "The documentation you have submitted has been added (as information) to your FMLA files at the HRSSC.  It is noted that this set of documents is address to your local Human Resources Manager and is in response to an issue being handled by your District…"

31 December 2013 – 8 January I made a telephone campaign to return to work and to get HR to accept my CA1 for Stress.

15 January 2014 (exhibit Z), email to new Maintenance Craft Director George Engel, - "I have FMLA for my serious medical condition that has prevented me from working.  I have the FMLA Return to Work documents for RN Daniels.  Jim Norris has copies…"  Engel response, - "I don't know about the FMLA or the return to work paperwork…"

19 January 2014, I sent the HRSSC FMLA a new DOL WH-380-E filled out by my Doctor for my color blindness 110000402232.

Affirmative Defense - 26 January 2014, the HRSSC FMLA contractor cancelled all my FLMA protection, 110000402232 (color blind), because "you have not work in the last 12 weeks."  And, (illegally) back dated a PS 50 Form showing in my OPF that I was placed on Leave Without Pay (LWOP) 12 September (when I ran out of leave time).  Noting that no required PS 50 Personnel Action Form was created or placed in my OPF for the enforced leave period. (Violation of the Privacy Act and OPM OPF regulations)

Affirmative Defense - 3 February 2014 I saw Doctor Cherry about my stress and he prescribe Prozac.

11 February 2013 (exhibit Z), HR Manager Delgado responded to my request to RTW, - "Your placement on enforced leave was the direct result of your refusal to interact with management…Absent your participation, management cannot make a proper determination and cannot return you to work…"

Affirmative Defense - Denial of RTW by the HR Manager.

14 February 2014 (exhibit Z), I requested HR Manager Delgado to return me to work and fix my OPF.

Affirmative defense – denial of FMLA RTW by the HR Manager.

3 March 2014 (exhibit Z), I requested Seattle HR, Western Area HRSSC, and USPS Records Office Washington D.C. to RTW and fix my OPF.

Affirmative Defense - Violation of the Privacy Act by not correcting me OPF when asked.

4 March 2014, APWU Maintenance Craft Director George Engel, - "Regrettably, I have to inform you that due to the high cost of maintaining our Canon copier, you no longer may utilize the Union copier/scanner for your personal litigation, MSPB appeals etc…"

Affirmative Defense - Union refusal to help me with my MSPB appeal.

4 March 2014, I met with MMO Rick Sudduth (MMO Marzec & SMO Dow retired) and performed a color wire test to his satisfaction.  I gave MMO Sudduth copies of my RTW documents given to me by Nurse Daniels, SPO 69A, SPO 69B dated 28 Aug 13, DOL Form WH-380-E (doctor signed) given to me by HRSSC FMLA dated 14 Aug 13 and a copy of my OPF's 18 October 1996 PS Form 2591Application for Employment (showing military service) and PS Form 2485 Medical Examination & Assessment (5. Eyes, e. Is color vision normal – NO. Page 6, 4, Risk Assessment, - "No Medical Risk/Restriction:  Examinee is medically qualified to perform essential functions of the position …" Agency Doctor finding).

6 March 2014 (exhibit Z) Manager Norris sent me a RTW letter with the work restriction (light duty for OID), - "… Rick presented you with various colors of wires and you successfully identified all of them… demonstrating your ability to distinguish between primary colors…. I further instruct that if you are required to do any electrical work which involves distinguishing shades of color, that you seek confirmation of the colors … Your safety record is commendable…" (See MM Norris' letter 22 December 2010 (exhibit Z, 6 March), - "Congratulations! You are commended for having accumulated over 500 hours of Sick Leave…")

I passed both "color" test and MM Norris still gave me an unwanted (adverse action) work restriction to "seek confirmation" of co-worker and then put me in the position of working alone being in fear of violating my work restriction for doing my job.  MMO Marzec could have given me the colored wires and Lantern test before the enforced leave.  The Agency could have provided the constitutional and civil service reform act required pre-hearing I could have done the same tests. Noting that work restrictions prevent employees from doing their essential job functions.

Affirmative Defense - I passed the special "color wire" test.

Affirmative Defense - I gave the Agency copies of my RTW documents that clearly stated no work restriction or accommodation needed.

Affirmative Defense - I was still given a "permanent" work restriction as a condition to RTW.

Affirmative Defense - The same work restrictions given to me 8 May 2013 by MMO Marzec, as part of the "inter-active" DRAC process, before I was placed on enforced leave.

Affirmative Defense - Without going through the DRAC's bogus "Tribunal" process.

Affirmative Defenses - Continued Hostile Work Environment –

I had permanent work restrictions given to me by the OHS Nurse 13 February 2013, (2) MMO Marzec gave me work restrictions, 8 May 2013, before the 30 May Enforced Leave. (3)  MM Norris, after the enforced leave, gave me work restrictions, no working on color wires. (4) My Supervisor gave me additional work restrictions, no welding and no equipment to perform my essential metalworking job functions that I had performed in the past.

Work restrictions are light duty and given only for on-the-job injuries. Therefore, I must have an on-the-job injury and have been denied OWCP.

Having a permanent work restrict bars me from future promotion.  Having a disability/accommodation will subject me passing special "physical requirements" for promotion.  And, if given the chance again, the agency will remove me "from the postal service and" pay no retirement benefits (exhibit Z, 19 April 2013) because of my disability that the agency forced on me against my will.   See class action *Glover v. Potter*, EEOC No. 320-A2-8011X (2006),

The Postal Service was aware of my record of impairment (handicap, serious medical condition – turned disability), and its knowledge of my "record of impairment" influenced its decision (again). *Trafton v. Sunbury Primary Care, P.A.*, 689 F. Supp. 2d 180, 189-90 (D. Me. 2010).

6 August 2014, I asked for FMLA for my father's prostate cancer care. However, after having over 900 hours of saved leave taken from me and only 6 months of working I could not take the time off needed to help my dad causing me more stress.

15 October 2014 (exhibit Z), I wrote the AFL-CIO Ethical Practices Committee (returned unopened) concerning the GSAL APWU Officers taking money from the Union Trust Funds.  Including exhibit for the: (1) AFL-CIO Constitution Ethical Practices; (2) GSAL APWU Constitutional Amendment; (3) Union Newsletter showing $145,000 in salaries be paid from the Trust Funds; (4) the number of hours 32-3.2 each (12) Officer receives each pay period; a copy for the "Members'

Bill of Rights," 7. "Members shall not be denied the right ... to vote;" and CBA Section 5(b) "vote of the majority of the members," to change the Constitution (not just a meeting majority).

12 November 2014 (exhibit Z), I wrote the DOL Office of Labor-Management Standards, - "I filed an NLRB complaint that the U.S. Postal Service violated Section 8(a)(2) and Section 7 right of employees by unlawfully dominating the Union by paying the salaries of Union Officers…"

11 December 2014, HRSSC FMLA reinstated my other FMLA Protections after I submitted more documents.

Affirmative Defense - 12 Dec 14 to 10 Feb 15 (exhibit Z), EEOC finding of a HWE in the Seattle P&DC.

5 January 2015, because of the continued HWE I requested OWCP Form CA-2 from my Supervisor Tomas Ruiz.  I also requested reinstatement of the FMLA protection for Stress Leave submitted a WH-380 filled out by my Doctor.

6 January 2015 (exhibit Z), DOL gave a right to sue letter for the days I worked but not paid for 30 June, 1 July, and 1 September before being tossed out by Inspectors.

7 January 2015 (exhibit Z),  DOL OLMS Chad Markham, - "I appreciated the opportunity to communicate with you… It is possible that certain aspects of your complaint may fall under the investigative jurisdiction of OLMS… Sec. 501(a) The Officers, agents, shop stewards and other representatives of a labor organization occupy positions of trust…"

10 January 2015, I submitted an OWCP on-the-job injury packet with 24 exhibits including the original CA-1 that SMO Dow refused to take 1 September 2013.  I also submit a request for Reasonable Accommodation for a job at the P&DC (with HVAC) and a 7am start time.

10 February 2015 (exhibit Z), the OHS Nurse Dainels responded to my request that my medical information submitted to her be protected from disclosure to the DRAC (unlike the last time).  She still required that my personal medical information would be "released" in accordance with the "rules."

16 February 2015 (exhibit Z), I wrote the OHS back that I want my medical information not to be released to the DRAC,

19 February 2015 (exhibit Z), DOL OWCP Claim Examiner Kenneth Heminger requested for me to respond with more information with 30 days. (I did)

Affirmative Defense - 23 February 2015, MMO Hank Baumgartner, wanted to "talk" to me about my reasonable accommodation request and on-the-job injury. He showed me that he had copies of everything.  I told him that he was not a District Reasonable Accommodation Committee (DRAC) Member or a DOL

OWCP Claims Examiner and I did not want to discuss my FMLA protected disabilities with him (Privacy Act).

26 February 2015 (exhibit Z), in a response to a RFI the OHS listed the individuals given access to my medical records: (1) Steward Cornette; (2) Attorney Schwartzman; and (3) Attorney Tita. (Noting that MM Norris and none of the DRAC Members are on the list.)

19 March 2015 (first day of Spring), after burning what little leave I had my father died after a long bout with cancer. (I had five days of leave left to use for bereavement. I had 960 hours of saved leave before the enforced leave.)

20 March 2015 (exhibit Z), I received notice from the DOL OWCP to resubmit my claim.

24 March 2015 (exhibit Z), I did resubmit my OWCP on-the-job injury claim.

20 May 2015 (exhibit Z), my new Supervisor SMO Tomas Ruiz (filed EEO complaint about his non-competitive promotion) - "I looked over your training records and found there are no welding courses on the list. I'm afraid if that's so, I'll not be able to allow you to weld. If there's a mistake we can look into to it." My pervious Supervisor SMO Bob Hoffman, because we needed it, had personally pick up a welder from the P&DC and returned it to the PMA. He also purchased a new gas tank for it (SMO Dow had returned the five gas tanks that were postal property 5*$300=$1,500.)

Affirmative Defense - I have had two-years of vo-tec welding in High School and passed the USPS skills test (KSAs) to qualify for the Welders Position. Yet after years of welding at work and qualified to do so, I could no longer able perform that job (change of working conditions).

Affirmative Defense - intentional and criminal loss of federal/postal property.

29 May 2015, I saw Doctor Yan for Stress and to fill out a new FMLA form.

1 June 2015, Doctor Yan filled out a DOL Form WH-380-E and letter for accommodation for color blindness and stress.

13 June 2015 (exhibit Z), the Agency restored my 5-point Veteran's Preference after MSPB Judge Carter ordered the Agency to do so (and did not fix anything else in the corrupted OPF).

22 June 2015 (exhibit Z), I submitted a DOL Form CA-2a, Notice of Recurrence, because after starting back to work March 2014 under great stress with the loss of 9-months of pay and 6-months of leave I find myself suffering the same on-the-job injuries. Starting at an ungodly 5am start time for a day-shift position and working alone doing heavy work by myself in unsafe hot conditions suffering insect bites (dock doors wide open next to a swamp) in a facility that does not have the required HVAC system to keep it cool. Management is spending $100,000 on new automated truck dock plates and not $100,000 on a

new HVAC system for the safety and health of employees (Handbook RE-4, Standard Design).

22 June 2015 (Exhibit Z), I also submitted a Reasonable Accommodation requesting – start time of 7am and not to work alone on Sundays and Mondays violating my work restriction –light duty of on-the-job injury. See DOL Form WH-380-E, 7 January letter from Doctor Cherry 23 January 2015.

24 June 2015 (exhibit Z), I went on 30-days of doctor approved FMLA/OWCP (requested) leave for stress. I also turned in a request for Reasonable Accommodation. I asked for (1) 7am start time that I had before the Hostile Work Environment causing my on-the-job stress and (2) a position in the P&DC so I would not have to work alone (violating my work restrictions) in hot conditions and get bitten by insects because the Priority Mail Annex (PMA) in Kent does not have the required HVAC system for the safety health of employees (USPS Standard Design Handbook/Public Buildings Act). USPS Handbook EL-307, An Interactive Process for Reasonable Accommodation (enclosed), page 18, requires the RA Decision "no later than 20 business days" (30-days).

Affirmative Defense - Continued unsafe and unhealthy working conditions.

1 July 2015 (exhibit Z), I again wrote OWCP London, KY, Office about my on-the-job injury claim.

9 July 2015, my Supervisor Tomas Ruiz called me at home and told me that my OWCP claim was denied, I asked about my Reasonable Accommodation (RA). He said no to the 7am start time and the District Reasonable Accommodation Committee (DRAC) was "processing" my RA. (Glen Croman called Tomas and told him my OWCP claim as pending.)

Affirmative Defenses - USPS Handbook EL-307, Reasonable Accommodation, An Interactive Process (enclosed), 307.64, shows that the Supervisor only refers to the DRAC when: (1) not sure of disability, (2) reasonableness of RA, (3) needs help, (4) should be denied, and (5) possible discharge. My supervisor did not have a valid reason to send my RA request to the DRAC or the Law Department Attorneys who muddied my MSPB complaint.

10 July 2015, I went down to the Seattle DOL OWCP office and ask if my OWCP had been denied. I was told it was still pending. DOL Glen Croman called Tomas and told him my OWCP claim as pending.

Affirmative Defense - My Supervisor told me falsely that my OWCP claims were denied.

14 July USPS OWCP HR Alexis Sanchez called me and told me that my OWCP was being processed and I did not have to turn in any more documents.  She also said that the RA was separate and the DRAC would contact me.

Affirmative defense - emails between HR Sanchez and my Supervisor Dow, 3 June 2013 (submitted exhibits), show conspiracy in the denial of my first OWCP claims. - "If he does file a claim, then you can challenge his claim.")

21 July 2015, I called Tomas asking about the OWCP claim and RA for returning to work, Sunday 25 July.  Tomas emailed me (exhibit Z, 21 July 2015) saying that I needed to turn in additional (I did for OWCP) medical documents for the DRAC and for Return to Work (RTW).  (I called the OWCP office and was advised to comply.)

21 July, I went to the doctor and he filled out the RTW forms I received from the Health Nurse and RA letter for the DRAC.

23 July, (Friday), I went to the PMA and gave the demand medical documents to SMO Tomas.  Later that day Tomas called me and said that I had approval to RTW with the 7am start time at the PMA on Sunday, 25 July.  I asked what happened to my 7am start time and job in the P&DC RA.  SMO Tomas told me that he had sent the RTW paperwork to the Law Department and the DRAC for a decision.

24 July 2015 (exhibit Z), SMO Tomas email - "You are approved to return to work on Sunday at 5am.  I reviewed your work restrictions entered by your doctor with a 7am restriction and a relocating to the P&DC with HVAC.  This is something I cannot authorize.  Only with the approval of DRAC committee is that allowed.  You can start at 7am, but the two hours from 5am till 7am will be using your personnel leave…" Reply - "I'll be there a 5am.  When can I expect a decision from the DRAC?"

Affirmative Defense - Denial of Reasonable Accommodation.

Affirmative Defense - 25 July, the PMA facility was 85-degrees inside at 5am and I suffered an insect bite on my neck that day that swelled up awful.

28 July, Tomas told me that the DRAC wanted to meet with me.  I told Tomas that I want a written notice of the meeting and the reason it was necessary (who, what, when and where).  Handbook EL-307.651, clearly states that the DRAC Meeting is only "should meet" when "the disability is not obvious or already known…" EL-307.641, - "Most limited duty and temporary light duty requests are not initially referred to the RAC.  Instead, they are processed through the mechanisms provided by Federal Employees' Compensation Act…  The RAC's role is limited, however, to evaluating the employee's eligibility for accommodation and the availability of accommodation under the law…"

29 July, Tomas told me that the DRAC did not "get everything together" for the meeting that day and I would be sent a notice of the next meeting.

7 August 2015 (exhibit Z), - "Do not bypass the eCBM APBS routes..."

12 August, 6am Maintenance Manager Hank Baumgartner asked if I was going to the DRAC meeting that day.  I told Hank that I did not receive a notice for the meeting that day.  And, with no other MPE on duty, management did not provide any coverage from the P&DC, so I could not go to the meeting and leave the PMA without a maintenance employee.

12 August 2015 (exhibit Z), after work I received first-class (and certified the next day) Notice of Reasonable Accommodation Meeting, dated 7 August (postmarked 10 August) "invited" and "accompanied by your representation" from DRAC Chairperson Carmen Dixon (enclosed).  Handbook EL-307.62 shows that the Chairperson designated by the Manager of Labor Relations – "Ensures compliance with obligations imposed by law, in consultation with the Law Department (e.g. FMLA) and Collective bargaining agreements."

11 August 2015 (exhibit Z) email from DRAC Dixon to Harjot, "Subject: lower level position," shows that the DRAC was going to offer to demote me to "level 4 Custodian" as a "Reasonable Accommodation" to help me perform my job. (Noting that I was placed on Enforced Leave for 9-months because I could not perform any maintenance job "safely"  - MM Norris testimony at MSPB Hearing.)

Affirmative Defense - Demotion to Custodian – because I ask for Accommodation.

Also 11 August 2015 (exhibit Z) a FMLA "Notice of Eligibility and Rights shows that "someone" put me in for a new FMLA "Your own serious health condition" for 6 August.  (1) I did not ask for a new FMLA case number.  I already have three DOL FMLA approved and one is for on-the-job stress.  (2) I worked 6 August.  See "someone" EL-307.642 (enclosed), - "A request for accommodating may first appear as a request for FMLA protected leave..."

12 August 2015 (exhibit Z), email DRAC Dixon to SMO Ruiz, - "...I don't know what else I could have done to ensure he was notified..."  SMO Ruiz to DRAC Dixon, - "I've made every attempt to make my communications on the issue clear..."

13 August 2015 (exhibit Z), email SMO Ruiz to DRAC Dixon, - "...I am able to deliver and communications from the DRAC, but it must be done in a timely manner..."

13 August 2015 (exhibit Z), I received a letter (enclosed) from the DRAC "Coordinator" (demoted?) Carmen Dixon (enclosed), - "...we are closing your case file in this matter."

Affirmative defense - The law "does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *Burch v. City of Nacogdoches, 174 F.3d 615, 620 (5th Cir. 1999),* at 621 (citations omitted). *Braud v. Cuyahoga Valley Career Center*, No. 1:06CV1059, 2007 WL 2816210 at *1, *13 (N.D. Ohio Sept. 27, 2007) ("Requesting an accommodation is a protected activity.") (citing *Wright v. Comp USA, Inc.*, 352 F.3d 472, 477-78 (1st Cir. 2003)).

14 August 2015 (exhibit Z), - "… the eBOX route will be done at the beginning of each day… Then through the day on the hour there will be an inspection each unit…"

Affirmative Defense - The Daily eBOX routes are once a day (exhibit Z, 14 August). Checking 5 eBOXs every hour takes 10 minutes times 8 hours = 40 minutes. Impossible when I am the only one there given over 8 hours of routes.

Affirmative Defense - 22 August 2015 (exhibit Z), Listing of Successful Bids shows that there was no bidder on a Mechanic's position at the P&DC that I could have been given as a reasonable accommodation.

DOL OWCP Denial Decision, 10 December 2015 (exhibit Z), - "… Specifically, you stated that the emotional condition occurred due to 'Hostile Work Environment (HWE) and disability discrimination.' …" (110 exhibits submitted) Accepted Event(s), - "1. You alleged that you were investigated by the Kent Police and the Inspector General's Office for bring a machete to work … You initiated the events by bringing a machete which is considered a weapon onto Federal Property… 2…and had not previously disclosed your medical condition to management… 4… Therefore it is found that all of the events that arose as a result of you attempts to claim FMLA protection…Incident(s) Alleged #3, - "You alleged a conspiracy to investigate you use of a machete. You initiated the events by bringing a machete which is considered a weapon onto Federal Property. There is no evidence to support your allegation…"

Affirmative Defense - Claim filed 01/10/2015, last request from OWCP for information 01/19/2015, I went to the OWCP Office 07/10/2015 told no more information was needed and waited - 12 months for a decision.

Affirmative Defense - Denial of OWCP.

28 December 2015 (exhibit Z), HR Alicia Sanchez, - "The [OWCP] has advised us… Based on this decision, the U.S. Postal Service will expect you to assume the full duties of your position without restrictions. If you believe that you are unable

to assume the full duties of your position, you have several options available to you:  1.  You may apply for temporary light duty… 2.  You may apply for permanent light duty… 3.  You may apply for FERS or CSRS disability retirement… 4.  You may request accommodation through the DRAC… You should advise your supervisor within 10 days …"

Affirmative Defense - I already have unwanted light duty permanent work restrictions.

The MSPB Appeals Court's Decision, SF-0752-13-0633-I-1, page 11 found - "… She [Judge Carter] also excluded transcripts from conversations the appellant recorded [Kent Police and Postal Inspectors] because he admitted lacking permission to record the conversations in potential violation of state law, and because she deemed the transcripts untrustworthy since they were created by the appellant… Wash. Rev. Code 9.73.030(1)(b)."

RCW 9.73.030, - "(1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, … (a) Private communication transmitted by telephone, telegraph, radio, or other device…"   .030(2), - "Notwithstanding subsection (1) of this section, wire communications or conversations (a) of an emergency nature, such as the reporting of a fire, medical emergency, crime, or disaster, or (b) which convey threats of extortion, blackmail, bodily harm, or other unlawful requests or demands…"

Affirmative Defenses - (1) I did not need permission to record a without reasonable or probable cause Kent Police and Federal Law Enforcement actions based on SMO Dow false statements.  The 1 July 2013 Kent Police txt Report Judge Carter allowed shows that SMO Dow told the 911 dispatcher I was a "ex" employee - four times.  (2) I did not admit any guilt of a state law violation by not getting "permission."  (3)  The state law referenced, RCW 9.73.030, is for recording cell phone conversations.  I did not violate the state law regarding recording cell phone conversations.   The Agency Attorney presented false evidence and testimony that I violated State Law.  How can any Court use a false statement/lie to determine that my evidence and testimony was "untrustworthy?

Affirmative Defense - I have a recording of Federal Law Enforcement Officers saying that they did not need any reasonable or probable cause detain, question, search and seize my property.  That evidence/recording could have verified the trustworthyness of the written transcript.  The recording also contain me asking the Inspectors if they investigated the criminal actions with they said they would when I forced to "agree" to a search (did not ask permission the second time).  The recording/transcript shows the "Inspectors" told me that they were not "required"

to investigate.  The same Federal Law Enforcement Officer who said they did not care if I had FMLA return-to-work documents with no accommodations needed. Seattle just had a case where a Metro Bus Driver used recorded conversation with two Seattle Police Officers to show that the Police were lying (and save his job).  I should have the same right.  It would seem that the Court pre-judge my evidence and witnesses as "untrustworthy" showing bias.

"...making material false statements in a matter within the jurisdiction of a federal agency, in violation of 18 U.S.C. 1001." – *United States v. Gaudin,* 515 U.S. 506 (1995), - "...The parties also agree on the definition of "materiality": the statement must have 'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed.' *Kungys* v. *United States*, 485 U.S. 759, 770 (1988)."

Affirmative Defense - Public Attorney Steven Schwartzman knowingly made a false statement of fact in his, 18 July 2013 (Doc. 6) - "Appellant's military records, dated February 6, 2006, show that Appellant's military service was limited …"  When in fact Schwartzman relied on a February 2006 false "Request Pertaining to Military Records" that only asked about my active duty time made by a Contractor out of jurisdiction (S.C.) who violated my Privacy Rights by unlawfully removing my Veterans' preference, PRC 3.3(a)(1).  Minimal Research, - "degree of acre, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer..." *Cook, Flanagan & Clausing,* 73 Wash. 2d 393, 395, 438 P.2d 865, 867 (1968).  (Noting the Contractor created an OPM approved PS Form 50, Personnel Action to remove my Veteran's Preference and PS 50 (required) was not used to place me on Enforced Leave.)

Affirmative Defense - Public Attorney Steven Schwartzman knowingly made a false statements of fact, 6 August 2013 (Doc. 9), page 5, - "As set forth above, Appellant is neither a veteran preference eligible..." that he "investigated" my OPF and "found" that I was not a veterans' preference employee, PRC 3.3(a)(1). My 18 October 1996 Application for Employment (exhibit) clearly shows my National Guard service certified by HR Employee Jay Bonner.  I worked for the Agency and was paid 14 days of Military Leave every year until I retired in 2002.

Affirmative Defense - Public Attorney Steven Schwartzman (Fed. R. Evid. 602 "personal knowledge) made a false "Statement of Facts," 4 November 2013 (Doc. 33), - "Lance McDermott was hired as a Custodian in 1988..."  (I was hired in 1996)

Affirmative Defense - Public Attorney Steven Schwartzman knowingly offer evidence that he knew to be false, PRC 3.3(a)(4).  (That I could not perform my job safely because of "a serious medical condition" disability – color blindness

when an Agency Doctor certified 24 October 1996, new-hire Medical Exam – "Examinee is medically qualified to perform essential functions of the position without accommodation."

Affirmative Defense - Attorney Steven Schwartzman knowingly violated PRC 4.1, - "In the course of representing a client a lawyer shall not knowingly: (a) make a **false statement of material fact** or law …"

The Supreme Court held that withholding <u>exculpatory evidence</u> violates due process "where the evidence is material either to guilt or to punishment"; and the court determined that under Maryland state law the withheld evidence could not have exculpated the defendant but was material to the level of punishment he would be given. Hence the Maryland Court of Appeals' ruling was affirmed.  This ruling is an extension of *Mooney v. Holohan*, <u>294 U. S. 103</u>, 112, where the Court ruled on what nondisclosure by a prosecutor violates due process. in *Mooney v. Holohan* when we said: "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *And see Alcorta v. Texas*, <u>355 U. S. 28</u>; *Wilde v. Wyoming*,. *Cf. Durley v. Mayo*, <u>351 U. S. 277</u>, 285 (dissenting opinion).  That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not "the result of guile," to use the words of the Court of Appeals. 226 Md. at 427, 174 A.2d at 169.

Respectfully sworn to and submitted this 12ᵗʰ of March 2016,

Lance McDermott
1819 So 104 ST
Seattle, WA  98168
206 331-1990
treke@hotmail.com